Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON                1126-0
GLENN T. MELCHINGER        7135-0
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
Email: gtm@ahfi.com

Attorneys for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 1 2 2005

at _____ o'clock and _____ min ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, | ) ) ) | CV 04-00126 ACK/BMK |
| Plaintiff, | ) ) ) ) | **SECOND AMENDED COMPLAINT (KAUA'I); SUMMONS; CERTIFICATE OF SERVICE** |
| vs. | ) ) ) ) | |
| KIAHUNA GOLF CLUB, LLC, a Hawai'i limited liability company; KG KAUAI DEVELOPMENT, LLC, a Hawai'i limited liability company; PUKALANI GOLF CLUB, LLC, a Hawai'i limited liability company; KG MAUI DEVELOPMENT, LLC, a Hawai'i limited liability company; MILILANI GOLF CLUB, LLC, a | ) ) ) ) ) ) ) ) ) ) ) ) | |

ATTEST: A True Copy
SUE BEITIA
Clerk, United States District
Court, District of Hawaii
By _____ Deputy

289882-2/6850-5

EXHIBIT H-3

Hawai`i limited liability company; )
QK HOTEL, LLC, a Hawai`i )
limited liability company; OR )
HOTEL, LLC, a Hawai`i limited )
liability company, and KG )
HOLDINGS, LLC, a Hawai`i )
limited liability company, )
FRANKLIN K. MUKAI, )
)
   Defendants. )
_____ )

## SECOND AMENDED COMPLAINT (KAUA`I)

Plaintiff SPORTS SHINKO (USA), CO., LTD. ("Plaintiff"), by and through its undersigned attorneys, alleges as follows:

### PARTIES

1. Plaintiff is a Delaware corporation, and its principal place of business is not in Hawai`i. Plaintiff is the sole shareholder of Sports Shinko (Hawai`i) Co., Ltd. ("SSH"), a Hawai`i corporation, which owns all of the stock of the debtor, Sports Shinko (Kaua`i) Co., Ltd. ("DEBTOR").

3. Defendant KIAHUNA GOLF CLUB, LLC ("KGC"), is a Hawai`i limited liability company, with its

principal place of business in the State of Hawai`i. The members of KGC are citizens of Hawai`i.

4.    Defendant KG KAUAI DEVELOPMENT, LLC ("KGKD"), is a Hawai`i limited liability company, with its principal place of business in the State of Hawai`i. The members of KGKG are citizens of Hawai`i. Defendants KGC and KGKD are hereinafter collectively referred to as, "KG Kauai".

5.    Defendant PUKALANI GOLF CLUB, LLC ("PGC") is a Hawai`i limited liability company, with its principal place of business in the State of Hawai`I. The members of PGC are citizens of Hawai`i.

6.    Defendant KG MAUI DEVELOPMENT, LLC ("KGMD") is a Hawai`i limited liability company, with its principal place of business in the State of Hawai`i. The members of KGMD are citizens of Hawai`i.

7.    Defendant MILILANI GOLF CLUB, LLC ("MGC") is a Hawai`i limited liability company, with its principal place

of business in the State of Hawai`i.  The members of MGC are all citizens of Hawai`i.

8.     Defendant QK HOTEL, LLC ("QK") is a Hawai`i limited liability company, with its principal place of business in the State of Hawai`i.  The members of QK are citizens of Hawai`i.

9.     Defendant OR HOTEL, LLC ("OR") is a Hawai`i limited liability company, with its principal place of business in the State of Hawai`i.  The members of OR are citizens of Hawai`i.  (Hereinafter, Defendants KGC, KGKD, PGC, KGMD, MGC, QK, and OR are collectively referred to as the "KG SUBSIDIARIES.")

10.     Defendant KG HOLDINGS, LLC ("KG"), is a Hawai`i limited liability company with its principal place of business in the State of Hawai`i.  The members of KG Holdings are all citizens of Hawai`i.

11.     Defendant FRANKLIN K. MUKAI ("MUKAI") is a citizen of Hawai`i.  At all relevant times, MUKAI was an employee and/or partner of McCORRISTON MILLER MUKAI

289882-2/6850-5                    4

MACKINNON LLP, a Limited Liability Law Partnership ("M4"),

an officer and/or director of SSH and DEBTOR, and an

attorney and agent for DEBTOR.  At all relevant times, MUKAI

acted directly and through agents of M4.

## JURISDICTION

12.   This Court has jurisdiction over this action

pursuant to 28 U.S.C. § 1332 because there is complete

diversity between the parties and the amount in controversy

exceeds $75,000.00.

13.   Venue is appropriate in this Court under 28

U.S.C. § 1391 because most of the events giving rise to

Plaintiff's claims occurred in this district.

## GENERAL ALLEGATIONS

14.   Plaintiff is, and at all relevant times was, a

creditor of DEBTOR.

15.   At all relevant times, SATOSHI KINOSHITA

("SATOSHI"), TAKESHI KINOSHITA ("TAKESHI") and TOSHIO

KINOSHITA ("TOSHIO")(collectively, the "Kinoshitas"), and

TAKUYA TSUJIMOTO ("TSUJIMOTO"), YASUO NISHIDA

("NISHIDA"), TSUGIO FUKUDA ("FUKUDA") and MUKAI (the Kinoshitas, TSUJIMOTO, NISHIDA, FUKUDA and MUKAI, are hereinafter collectively referred to as "Insiders") were officers and/or directors of DEBTOR.

16.    In 1986, DEBTOR acquired real and personal properties, which included the Kiahuna Golf Club and certain development lands (the "Kaua`i Properties").

17.    Among other things, MUKAI assisted and advised DEBTOR in marketing and selling the Kaua`i Properties.

18.    At all relevant times, DEBTOR was insolvent, and its debt exceeded the fair market value of its assets.

**THE RCC'S ATTEMPTS TO COLLECT ON DEBT**

19.    In the late 1980's and early 1990's, Sports Shinko Co., Ltd., a Japan corporation (the ultimate parent corporation of both Plaintiff and DEBTOR, and Plaintiff in two consolidated cases, hereinafter, "SS Japan") established a number of overseas subsidiaries.  SS Japan borrowed hundreds of millions of dollars from Japan-based lenders.  SS

Japan in turn loaned those funds to its overseas subsidiaries, including Plaintiff, which loaned the funds to local subsidiaries, including the DEBTOR.

20.    In the late 1990's a quasi-governmental Japan entity known as the Resolution and Collection Corporation (the "RCC") received an assignment of the majority of SS Japan's debt and became SS Japan's major creditor.  The RCC was charged with collecting non-performing loans assigned to it.

21.    The RCC engaged SS Japan in extended negotiations regarding repayment.  SS Japan approached the RCC with repayment proposals that included sales proceeds of assets in Hawai`i and elsewhere, including the Kaua`i Properties.

22.    In or about May, 2000, the RCC began legal actions to collect on debt that was secured by SS Japan's property and assets in Japan.  The RCC continued to make demands for repayment and SS Japan continued to make repayment proposals involving Hawai`i assets.  In May 2000,

SS Japan (through TOSHIO) represented the value of the Kiahuna Golf Course as $5 million to RCC.

23.    In response to the RCC's actions, Toshio Kinoshita and other Insiders formulated a plan to transfer assets held by DEBTOR and Plaintiff's other subsidiaries in Hawai`i outside the reach of the RCC and other creditors.  The plan entailed, among other things, transferring ownership and/or management rights over DEBTOR's assets to a person(s) or entity(ies) that were to be secretly controlled by some or all of the Insiders.

## RETAINING MANAGEMENT OVER DEBTOR

24.    With MUKAI's assistance, in or about August, 2000, Insiders incorporated a management company that became known as Resort Management Services (Hawai`i), Inc. ("RMS").

25.    SATOSHI provided NISHIDA, then an officer of SSH and certain SSH subsidiaries, and a former officer of DEBTOR, with the funds to purchase RMS's stock.  NISHIDA

owstensibly became the sole director, shareholder, and president of RMS in September, 2000.

26.   Contemporaneously, SATOSHI signed exclusive real estate brokerage listing agreements for several of Plaintiff's subsidiaries in Hawai`i, including the Kiahuna Properties.  Pursuant to these agreements, the real estate broker (the "Broker") began to market these properties for sale.

27.   Defendant MUKAI or some acting on his behalf and under his control drafted a stock option agreement (the "Option"), pursuant to which, NISHIDA, as the sole shareholder of RMS, granted SATOSHI, TAKESHI and Toshiya Kinoshita (the sons of TOSHIO) the right to purchase all of the stock of RMS for $1,500.00.

28.   In or about October, 2000, SATOSHI, TAKESHI, and NISHIDA executed the Option.

29.   NISHIDA was only a strawman for the Kinoshitas and he operated RMS for their benefit based upon the Option.

30.    The Insiders, including specifically MUKAI,
concealed the Option and the Kinoshita's interest in RMS from
the RCC, Sports Shinko's lenders and creditors, (and later, the
Bankruptcy Trustee for SS Japan).

31.    In or about September, 2000, the Insiders,
including specifically MUKAI prepared and implemented
agreements under which DEBTOR, and other Hawai`i-based
subsidiaries of SSH for which Insiders served as officers
and/or directors (collectively the "Sister Companies"), to enter
into management agreements with RMS (the "Management
Agreements").

32.    Pursuant to the Management Agreements,
RMS agreed to manage properties owned by DEBTOR and the
Sister Companies.  Among other things, the Management
Agreements required DEBTOR and the Sister Companies to
pay management fees, employee salaries, and other expenses
to RMS, and the payment of substantial termination fees if the
managed properties were transferred without RMS' consent
and the transferee would not assume the Management

Agreements (the "Termination Fees").  The Termination Fees
totaled $3.5 million.

33.   No present and reasonably equivalent value
was received by DEBTOR or the Sister Companies in exchange
for the Management Agreements.

34.   Insiders intended that these Management
Contracts would impair the value of the assets of DEBTOR
and the Sister Companies, and appear to make it more
difficult for the their creditors and SS-Japan's creditors to
seek any recovery from those assets and/or to transfer value
to the Kinoshita's through their secret control of RMS.

35.   Defendant MUKAI knew that the Management
Agreements and the Option were intended to transfer assets of
DEBTOR and the Sister Companies outside the reach of their
respective pre-existing creditors (including Plaintiff) for the
benefit of the Insiders, without any present and reasonably
equivalent value passing to DEBTOR or Contracting
Companies.

## MAINTAINING OWNERSHIP OF DEBTOR

36.   In early 2001, the RCC threatened to put SS Japan into legal reorganization proceedings in Japan.  The RCC also expressed interest in compelling SS Japan to sell its overseas assets and the assets of Plaintiff's direct and indirect subsidiaries.

37.   In late November, 2001, TOSHIO and other Insiders created a plan to cause RMS, or another entity owned and/or controlled by the Kinoshitas, to purchase the stock or assets of DEBTOR (the "Plan").

38.   SATOSHI informed MUKAI of the Plan.

39.   MUKAI assisted TOSHIO and the Insiders with taking steps to analyze and implement the Plan, even though they were aware that the DEBTOR was insolvent and the RCC was pursuing legal action against SS Japan's assets.

40.   The Insiders, including MUKAI, caused Grant Thornton, LLP to analyze the tax consequences of the transfers proposed under the Plan.

41.    With the assistance of MUKAI, the Insiders marketed the DEBTOR's properties in 2000 and 2001.  They received and rejected a number of offers through December, 2001.

42.    In addition to analyzing the Plan, MUKAI searched for buyers for the Hawai`i properties owned by the DEBTOR and the Sister Companies.

43.    On December 4, 2001, SATOSHI received a letter of interest to purchase all of the assets of DEBTOR and the Sister Companies from Defendant KG Holdings, LLC ("KG").  KG's interest was instigated by MUKAI, who had a social and professional relationship with insiders of KG.

44.    After it received KG's December 4, 2001 letter, DEBTOR, through SATOSHI, instructed the Broker to cease all marketing efforts.

45.    Despite the listing Agreements, the Insiders then began exclusive dealings with KG without involving the Broker.  KG's representatives flew to Japan to meet with TOSHIO and SATOSHI, among others.

46.   The Insiders rejected purchase offers provided by the Broker in order to further their plan to retain control and ownership of DEBTOR's assets, and to hinder or delay Plaintiff from being able to collect on its loans to DEBTOR, which, in turn, would hinder Plaintiff's creditors, including the RCC.

47.   In early January, 2002, the RCC asked TOSHIO to voluntarily place SS Japan into reorganization in Japan.  On or about January 15, 2002, TOSHIO met with RCC to discuss a plan for repayment of SS Japan's debts.  The RCC rejected the repayment proposal and began steps to force SS Japan into bankruptcy.

48.   On January 12, 2002, through its former Vice President Satoshi Kinoshita, DEBTOR entered into a DROA with David Resnick, *dba* Kauai Investment Partners ("Resnick") to sell the Kaua`i Properties for $10,000,000.00 (the "DROA").  The DROA was postdated to February 15, 2002.

## PURCHASE AND SALE AGREEMENT

49.   On or about January 15, 2002, DEBTOR and Defendant KG HOLDINGS and its nominees (KG Kaua`i), with the assistance of MUKAI, entered into an agreement ("PSA") to buy the assets of the DEBTOR and the Sister Companies.  The contract price was below the fair market value of the assets to be sold and substantially less than the aggregate value of competing offers from qualified buyers that the Insiders had previously rejected.

50.   On January 25, 2002, despite the DROA with Resnick, DEBTOR transferred the Kaua`i Properties to KG's nominees for $3 million.

51.   The $3 million consisted of:  an unsecured promissory note for $500,000, some cash, and the assumption of a mortgage held by Bank of Hawaii ("BOH")(the "Mortgage").

52.   The Mortgage was cross-collateralized with other properties that certain Sports Shinko subsidiaries transferred to the KG SUBSIDIARIES.

53.   The amount paid by KG Kauai was not reasonably equivalent to the DEBTOR's interest in the Kaua`i Properties at the time of the transfer.

54.   At all relevant times, the Insiders (including MUKAI), KG Kaua`i, and KG HOLDINGS knew or should have known that the amount to be paid by KG Kaua`i for the DEBTOR's assets was significantly less than (a) their fair market value, and (b) their tax assessed value, and that DEBTOR would not, and did not, receive reasonably equivalent value for its assets.

55.   At all relevant times, Insiders, KG Kaua`i, and KG HOLDINGS each knew or reasonably should have known that DEBTOR was insolvent.

56.   By selling the DEBTOR's assets to KG Kaua`i on the terms negotiated with KG HOLDINGS, the INSIDERS, with the assistance of MUKAI, realized substantially less than if they had sold to Resnick.   As a result, DEBTOR received less than it should have to repay Plaintiff.

16

57.    KG Kaua`i refused to assume the Management

Agreement concerning the Kaua`i Properties, thereby

triggering DEBTOR's obligation to pay the Termination Fees to

RMS.

58.    On or about January 28, 2002, the RCC

initiated bankruptcy proceedings against SS Japan in the

District Court in Osaka, Japan.

59.    On or about January 30, 2002, in partial

payment of the Termination Fees, Sports Shinko (Pukalani)

Co., Ltd. ("SSP"), through SATOSHI, executed a deed for

residential real property located at Makawao, Maui, at TMK (2)

3-2-020-034 (the "Pukalani Residence") to RMS.  SSP did not

receive present and reasonably equivalent value in exchange

for the transfer of the Pukalani Residence to RMS.

60.    On or about February 4, 2002, the District

Court for Osaka, Japan appointed a Trustee and Deputy

Trustees to manage SS Japan's domestic and overseas assets.

61.    In early March, 2002, the Deputy Trustee in

bankruptcy for SS Japan and his assistants met in Hawai`i

with SATOSHI, Mukai and others, who failed to disclose all material information about the Plan, the transactions described above, and the Insiders' efforts to prevent Plaintiff and its creditors from realizing the full value of the DEBTOR's assets.

62.   On January 9, 2003, the Trustee (on behalf of SS USA, DEBTOR, and other Sports Shinko entities), Resnick and his nominee, and KG Kauai together entered into a purchase and sales agreement, under which Resnick's nominee would receive the Kaua`i Properties from KG Kauai for $9,850,000.00 (the "Resnick Sale").

63.   The Trustee and KG Kauai also agreed that: (a) the net proceeds from the sale to Resnick's nominee would be paid to BOH to reduce the Mortgage; and (b) neither the sale nor the distribution of the net proceeds to BOH would prejudice any of the claims of the Trustee or Sports Shinko.

64.   In April, 2003, the sale to Resnick's nominee (Kiahuna Fund, LLC) closed and the net proceeds were used to pay down the Mortgage.

65.    Resnick's nominee sold all but one

development site of the Kaua`i Properties other than a 20 acre

portion of the vacant land to another buyer for $11.5 million

dollars.

## CLAIMS FOR RELIEF
## COUNT I:  Haw. Rev. Stat. § 651C-5(a)

### (KG HOLDINGS, KG Kaua`i)

66.    Plaintiff realleges and incorporates the

allegations contained in the preceding paragraphs, as though

fully set forth herein.

67.    The transfer of the DEBTOR's assets to

Defendants KG Kaua`i was fraudulent under Haw. Rev. Stat. §

651C-5(a) because no reasonably equivalent value was

received by DEBTOR, which was either insolvent at the time of

the transfer or rendered insolvent by the transfer.

68.    As a result of the transfer and other fraudulent

actions, creditors of DEBTOR, including Plaintiff, were

damaged and Plaintiff is entitled to damages and all other

appropriate remedies authorized by Haw. Rev. Stat. § 651C-7(a) in accordance with the proof at trial.

## COUNT II:  Haw. Rev. Stat. § 651C-4
### (KG HOLDINGS, KG Kaua`i)

69.   Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

70.   DEBTOR's transfer of the Kaua`i Properties to KG Kaua`i was fraudulent because the transfer was made with actual intent to hinder, delay, or defraud one or more of DEBTOR's creditors.

71.   The actual intent to hinder, delay or defraud is evidenced by, among other things, the following facts:

  a. The transfer to KG Kaua`i involved substantially all of DEBTORS' assets;

  b. DEBTOR was insolvent or became insolvent as a result of the transfer;

  c. Insiders destroyed documents and concealed information about the transfer

from DEBTOR's successor management

and the Bankruptcy Trustee for SS

Japan;

d.    Insiders concealed their interest in RMS

and the proceeds from the management

contracts, which encumbered the

DEBTOR's assets; and

e.    The price paid for DEBTOR's assets was

below the fair market value of those

assets.

72.    As a result of this fraudulent transfer,

creditors of DEBTOR, including Plaintiff, were damaged and

Plaintiff is entitled to all other appropriate remedies

authorized by Haw. Rev. Stat. § 651C-7(a) in accordance with

the proof at trial.

**COUNT III:  Aiding and Abetting/Conspiracy to Violate
Haw. Rev. Stat. ch. 651C
(INSIDERS, KG HOLDINGS, KG Kaua`i)**

73.   Plaintiff realleges and incorporates the
allegations contained in the preceding paragraphs, as though
fully set forth herein.

74.   The acts of MUKAI, KG HOLDINGS, and/or KG
Kaua`i caused and/or enabled the transfer of the DEBTOR's
assets to KG Kaua`i and an array of assets to RMS in violation
of Haw. Rev. Stat. Ch. 651C.

75.   SATOSHI, TAKESHI, TOSHIYA KINOSHITA,
and NISHIDA, with the help of the MUKAI and his agents,
entered into an agreements to fraudulently convey assets of
DEBTOR to Insiders in violation of Haw. Rev. Stat. ch. 651C.

76.   MUKAI, KG HOLDINGS, and KG Kaua`i knew
or should have known that the Insiders were violating and/or
intending to cause the DEBTOR to violate Haw. Rev. Stat. ch.
651C.

77.   MUKAI, KG HOLDINGS, and KG Kaua`i
knowingly gave substantial assistance or encouragement to

the Insiders in connection with their violations of Haw. Rev. Stat. ch. 651C.

78.    The Defendants' conduct injured the DEBTOR's creditors, including Plaintiff, in an amount to be determined at trial.

### COUNT IV: Breach of Fiduciary Duty (MUKAI)

79.    Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

80.    At all relevant times, MUKAI was an attorney, officer and/or director of DEBTOR, and an attorney for Plaintiff. Upon the insolvency of DEBTOR, MUKAI owed a fiduciary duty, including a duty of care and a duty of loyalty, to creditors of DEBTOR, including Plaintiff, to exercise his judgment in an informed, good faith effort to maximize the value of, and sales proceeds from, DEBTOR's assets for the benefit of Plaintiff and DEBTOR's other creditors.

23

81.   MUKAI, alone and in concert with others, breached his duties to Plaintiff by, *inter alia*, purposefully allowing Insiders to engage in self-dealing transactions, abandoning corporate opportunities to obtain the full value of DEBTOR's assets for the benefit of creditors, and by conspiring to, causing, or assisting the fraudulent conveyance of DEBTOR's assets in violation of Haw. Rev. Stat. ch. 651C.

82.   Plaintiff was proximately damaged by such breaches in an amount to be determined at trial.

## Count V:  Aiding and Abetting Breach of/ Conspiracy to Breach Fiduciary Duties (MUKAI, KG Kaua`i, KG HOLDINGS)

83.   Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

84.   Upon the insolvency of DEBTOR, the Insiders including MUKAI owed fiduciary duties to protect the interests of creditors of DEBTOR, including Plaintiff.

85.   The Insiders collaborated to prepare, execute and implement agreements that breached those fiduciary

duties to Plaintiff whereby, *inter alia*, Insiders engaged in self-dealing transactions and fraudulently conveyed DEBTOR's assets, and such conduct frustrated the rights of DEBTOR's creditors, including Plaintiff.

86.    MUKAI knew that the conduct of his fellow Insiders constituted a breach of their fiduciary duties, and gave substantial assistance and encouragement to those Insiders in such conduct.

87.    MUKAI caused and/or enabled those Insiders to breach their fiduciary duties, and such acts were in furtherance of their conspiracy.

88.    MUKAI, KG Kaua`i, and KG HOLDINGS knew or reasonably should have known of the Insiders' fiduciary duties to Plaintiff.

89.    MUKAI, KG Kaua`i and KG HOLDINGS affirmatively and knowingly agreed to aid Insiders in breaching their fiduciary duties to Plaintiff, by assisting them in, *inter alia,* self-dealing transactions and fraudulently transferring DEBTOR's assets.  MUKAI, KG Kaua`i and KG

HOLDINGS knew these actions would frustrate the rights of DEBTOR's creditors, including Plaintiff.

90.    MUKAI knowingly participated and provided substantial assistance and encouragement to the other Insiders in breaching their fiduciary duties.

91.    Plaintiff was proximately damaged by such actions and omissions in an amount to be determined at trial.

## Count VI:  Deepening Insolvency
### (MUKAI)

92.    Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

93.    MUKAI engaged in conduct that they knew would aggravate DEBTOR's insolvency and fraudulently prolong its life, including assisting Insiders in rejecting offers to purchase the Kaua`i Properties for fair market value or greater, and in accepting the offer of KG HOLDINGS, whose offer was significantly less than fair market value and less than offers previously made by other qualified buyers.

94.  By rejecting these offers, Insiders, with the assistance of MUKAI, fraudulently prolonged the life of DEBTOR and further deepened its insolvency.

95.  MUKAI fraudulently prolonged DEBTOR's life in order to hinder or prevent Plaintiff from collecting on its debt.

96.  MUKAI's acts and omissions were performed in bad faith and/or with the intent to harm the DEBTOR's creditors.

97.  Plaintiff was proximately damaged by such actions and omissions in an amount to be determined at trial.

### Count VII: Attorneys' Fees (Third Party Litigation exception)
### (MUKAI, KG HOLDINGS, KG Kaua`i)

98.  Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

99.  The wrongful acts of Defendants, and those acting under their direction and control, caused Plaintiff to incur attorneys' fees and expenses to protect its rights.

## COUNT VIII:  Creditor Fraud
## (MUKAI)

100. Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

101. At all relevant times, MUKAI knew or should have known DEBTOR was either insolvent or would be rendered insolvent by the transfer of DEBTOR's assets.

102. At all relevant times, MUKAI knew or should have known DEBTOR was not receiving reasonably equivalent value for DEBTOR's assets.

103. MUKAI knew or should have known Plaintiff was a creditor of DEBTOR.

104. MUKAI intentionally or recklessly participated in Insiders' unlawful conduct to hinder, delay, or defraud creditors of DEBTOR, including Plaintiff.

105. As a result of MUKAI's actions and omissions, Plaintiff was injured in an amount to be determined at trial.

## Count IX: Unjust Enrichment
## (Benefits Wrongly Conferred on KG and the KG
## SUBSIDIARIES)

106.   Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

107. DEBTOR and its creditor, SS USA, are entitled to the net proceeds from the Kaua`i Properties.

108. None of the KG SUBSIDIARIES nor KG has ever paid DEBTOR or SS USA the fair market value of the Kaua`i Properties.

109. Neither DEBTOR nor SS USA ever received any of the net proceeds from the sale of the Kaua`i Properties to Resnick's nominee.

110. KG and/or the KG SUBSIDIARIES have wrongfully received and retained the benefit of the net proceeds from sale of the Kaua`i Properties to the detriment of SS USA through the reduction of the mortgage encumbering their properties.  It would be unjust to allow the KG

SUBSIDIARIES and/or KG to retain the benefit of the net proceeds.

111. The KG and/or KG SUBSIDIARIES should hold the Kaua`i Properties and the other former Sports Shinko properties to which they hold title subject to a constructive trust and a mortgage lien in favor of SS USA.

112. SS USA should be equitably subrogated to the lien created by the Mortgage formerly held by BOH to the extent that any proceeds from the sale of the Kaua`i Properties were used to reduce the debt encumbering the KG SUBSIDIARIES' properties.

### Punitive Damages
### (All Defendants)

113. Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

114. Each Defendant has knowingly, willfully, and wantonly caused, conspired to, and/or substantially assisted or encouraged the other to, fraudulent convey assets of

DEBTOR and harm the creditors of DEBTOR, including

Plaintiff.

115. Plaintiff is entitled to an award of punitive

damages against each of them.

WHEREFORE, Plaintiff requests that the Court:

A.    Declare that: (1) the transfer of the Kaua`i

Properties was fraudulent as to SS USA; (2) DEBTOR (a) was

the rightful owner of the Kaua`i Properties, and that the net

proceeds from the sale of the Kaua`i Properties belong to

DEBTOR and SS USA, and (b) that SS USA is entitled to be

subrogated to the Mortgage formerly held by BOH to the

extent of any excess value realized by the KG SUBSIDIARIES;

B.    Order an accounting of all net proceeds in the

original transfer from DEBTOR to KG Kauai, any profits

earned thereon, and of the value realized by each of the KG

SUBSIDIARIES from the payment of the Mortgage, all

revenues received and expenses paid by KG HOLDINGS

and/or KG Kaua`i in connection with the Kaua`i Properties;

C.    Impose a constructive trust and a lien upon the assets of each of the KG SUBSIDIARIES to the extent that the proceeds from the sale to Resnick's nominee were used to reduce the pre-existing mortgage lien upon their properties;

D.    Avoid the foregoing transfers to the extent necessary to satisfy Plaintiff's claim and/or grant Plaintiff any other relief appropriate under Haw. Rev. Stat. § 651C-7(a);

E.    Award Plaintiff general, special and punitive damages commensurate with the proof at trial; and

F.    Award Plaintiff its attorneys' fees and costs, and such other and further relief as may be just and proper.

DATED:    Honolulu, Hawai`i, ___7/12/05___ .

_____

PAUL ALSTON
GLENN T. MELCHINGER

Attorneys for Plaintiff SPORTS
SHINKO (USA) CO., LTD.

289882-2/6850-5                    32

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> KIAHUNA GOLF CLUB, LLC, a Hawai`i limited liability company; KG KAUAI DEVELOPMENT, LLC, a Hawai`i limited liability company; PUKALANI GOLF CLUB, LLC, a Hawai`i limited liability company; KG MAUI DEVELOPMENT, LLC, a Hawai`i limited liability company; MILILANI GOLF CLUB, LLC, a Hawai`i limited liability company; QK HOTEL, LLC, a Hawai`i limited liability company; OR HOTEL, LLC, a Hawai`i limited liability company, and KG HOLDINGS, LLC, a Hawai`i limited liability company, FRANKLIN K. MUKAI, <br><br> Defendants. | CV 04-00126 ACK/BMK <br><br> **SUMMONS** |

## SUMMONS

STATE OF HAWAI`I

To the above-named Defendant(s):

You are hereby summoned and required to serve
upon ALSTON HUNT FLOYD & ING, attorneys for Plaintiff,
whose address is 18th Floor, ASB Tower, 1001 Bishop Street,
Honolulu, Hawaii  96813, an answer to the Second Amended
Complaint which is herewith served upon you, within twenty
(20) days after service of this Summons upon you, exclusive of
the day of service.  If you fail to do so, judgment by default will
be taken against you for the relief demanded in the Second
Amended Complaint.

This Summons shall not be personally delivered
between 10:00 p.m. and 6:00 a.m. on premises not open to
the general public, unless a judge of the above-entitled court
permits, in writing on this Summons, personal delivery during
those hours.

289882-2/6850-5                           2

A failure to obey this Summons may result in an entry of default and default judgment against the disobeying person or party.

DATED:  Honolulu, Hawai'i, _JUL 1 2 2005_.

SUE BEITIA
Clerk of the Above-Entitled Court

/s/ Bernadette Biacar

Deputy Clerk, United States
District Court, District of Hawaii

289882-2/6850-5                        3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation,<br><br>       Plaintiff,<br><br>   vs.<br><br>KIAHUNA GOLF CLUB, LLC, a Hawai'i limited liability company; KG KAUAI DEVELOPMENT, LLC, a Hawai'i limited liability company; PUKALANI GOLF CLUB, LLC, a Hawai'i limited liability company; KG MAUI DEVELOPMENT, LLC, a Hawai'i limited liability company; MILILANI GOLF CLUB, LLC, a Hawai'i limited liability company; QK HOTEL, LLC, a Hawai'i limited liability company; OR HOTEL, LLC, a Hawai'i limited liability company, and KG HOLDINGS, LLC, a Hawai'i limited liability company, FRANKLIN K. MUKAI,<br><br>       Defendants.<br>_____ | CV 04-00126 ACK/BMK<br><br>**CERTIFICATE OF SERVICE** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was duly served upon the following party on this date, by hand delivery as indicated and addressed as set forth below:

> WARREN PRICE III, ESQ.
> ROBERT A. MARKS, ESQ.
> Price Okamoto Himeno & Lum
> 707 Richards Street, Suite 728
> Honolulu, Hawaii  96813
>
> Attorneys for Defendants

DATED:  Honolulu, Hawai`i, JUL 1 2 2005 _____.

PAUL ALSTON
GLENN T. MELCHINGER
Attorneys for Plaintiff

289882-2/6850-5                                    2