# OPINION MEMORANDUM ON JAPANESE CORPORATE REORGANIZATION LAW

This opinion memorandum discusses the Japan Corporate Reorganization Law (Law No. 172, June 7, 1952) ("JCRL")[1] and its relevance to issues, statements and conclusions contained in: (1) the Order Denying Defendants' Motion for Summary Judgment in Civ. No. 04-00128 ACK/BMK ("Order"); and (2) the Transcript of Proceedings before the Honorable Alan C. Kay United States District Judge dated March 20, 2006 ("Transcript").

I.   THE JCRL

   A.   THE TRUSTEE UNDER JAPANESE LAW

Under the JCRL, one method by which a debtor company's business is taken over involves the reduction of capital of the debtor company and the issuance of new shares to a sponsor who provides an influx of capital. This was the method used in the corporate reorganization proceedings involving Sports Shinko Co., Ltd. ("SS-J").

The JCRL provides that a trustee ("kanzainin") is appointed when the court's decision to commence reorganization proceedings is rendered (JCRL Articles 46, 94, 95). The trustee may appoint an assistant trustee to assist with the trustee's responsibilities (JCRL Art. 98). The trustee acts on behalf of all related entities and parties to the corporate reorganization

---

[1] Although the JCRL was amended in 2003, the JCRL of 1952 was the applicable corporate reorganization law at the time of filing of the subject case.

EXHIBIT K1

(e.g., shareholders, creditors, secured parties, etc.) under the supervision of the court (JCRL Art. 98-3).

As a general matter, a trustee has three major areas of responsibility and authority:

> (1) As a company representative, to carry out the management/administration of the business of the debtor company (JCRL Art. 53);
>
> (2) As the bankruptcy administrator, to deal with the administration and disposal of the assets of the debtor company (JCRL Art. 53); and
>
> (3) Preparation and drafting of (JCRL Art. 189) and carrying out the corporate reorganization plan ("kosei keikaku") (JCRL Art. 247) and acting as an instrument of the court. (Joukai Kaisha Kousei Hou (Jou), Kaneko, Mikazuki, Takeshita, Shimojima, Maeda, Tamura & Aoyama, p. 493).

Upon the court's decision to commence reorganization proceedings, the right of management/administration of the debtor's company's business lies exclusively with the trustee (JCRL 53). The right of management/administration includes maintenance of the debtor company as a going concern. However, the authority of the trustee only extends to those activities related to the assets that are the subject of the reorganization proceedings. The trustee has the responsibility and authority of dealing with the administration and disposal of the assets of the debtor company, including filing a lawsuit, with the approval of the court, to increase the assets of the debtor company. Only the trustee may assert claims on behalf of the debtor company while corporate reorganization proceedings are pending.

Although a trustee may generally be acting on behalf of all related parties, the claims a trustee may assert are limited to only those asset related claims that the debtor company would otherwise have the right to assert. Consequently, a trustee has no advantage or conversely, disadvantage in either bringing suit or being sued when compared to the debtor company itself. (Kaishakousei-no-Jitsumu (Jou), June 10, 2005). Further, defenses that could be asserted against the debtor company can also be asserted against the trustee.  In this case, defenses relating to prior acts of the debtor company's management could also be asserted against the trustee and subsequently, the reorganized company upon close of the corporate reorganization proceedings.

The aforementioned responsibility and authority of the trustee lapses upon the close of the corporate reorganization proceeding.  In this case, such responsibility and authority would then return to the reorganized company, which is in essence, the same entity as the debtor company.  The debtor company, by going through the corporate reorganization process under the JCRL, remains the same entity and is not, to borrow a phrase from the Transcript, "born again" (Transcript, p. 11, line 16).  Aside from the restructured debt, the reorganized company is otherwise the same entity as the debtor company pre-reorganization.

    B.    STANDING

During the corporate reorganization proceedings under the JCRL, only the trustee has the power of administration and disposal of assets. (JCRL Art. 53) Under Japanese law, while the corporate reorganization proceedings

are going on, only the trustee has standing to sue (either bring suit or be sued) on matters related to the debtor company's assets. In such case, the suit must be brought in the trustee's name. (JCRL Art. 96.I)

When the corporate reorganization proceedings close, the proceedings are suspended to allow the discharge the trustee.  Although discussed more thoroughly in section I.D, the power of administration and disposal of assets then returns to the reorganized company, and as a result, only the reorganized company has the standing to sue (either bring suit or be sued). The reorganized company only holds the right to pursue asset-related claims that the debtor company held.  In precedent from a decision of the Supreme Court rendered on September 2, 1972, the court determined that a lawsuit filed by an unauthorized director while reorganization procedures were pending, would still be effective despite the original lack of standing if the reorganization procedures had been completed.

The debtor company in the underlying corporate reorganization proceedings, SS-J, is a Japanese company with a business office in Japan. Japanese laws would govern the rights of shareholders, creditors, and other interested parties in the debtor company.  The JCRL is applied not only to assets located in Japan but also those located all over the world. (Law No. 129, 2000 – deleting Article 4, the provision territorializing the application of the JCRL)

As discussed in I.B. above, upon the termination of the rights of the trustee to assert claims of the debtor company, such rights return to the debtor

company. Authority to pursue claims under Japanese law would basically be held only by the debtor company, then the trustee, and then again by the reorganized company, which as discussed above is basically the same entity as the debtor company. Under Japanese law, succession of interests would follow the same path as the authority, as previously discussed, to pursue claims.

The trustee may have considered the Hawaii-based lawsuits in his appraisal of the assets during the corporate reorganization proceedings. The trustee accordingly drafted the reorganization plan, which was subsequently approved by the creditors. Under the JCRL, proceeds of a pending lawsuit may be specifically paid, e.g. to creditors, according to the terms of the corporate reorganization plan. If payment is not specifically identified in the reorganization plan (as in this case), the litigation proceeds, if any, belong to the reorganized company.

Language in the Order indicates that the court may not have considered Japanese law in determining rights of the shareholder. For example, the Court stated:

"These choses in action were of some value, so that when Goldman Sachs purchased SS-Japan from bankruptcy, it presumably factored these lawsuits into the price it paid for stock in SS-Japan and to the extent the external creditors were compensated." (Order, p.17)

While I cannot determine whether or how Goldman Sachs valued this

litigation or the acquisition of SS-J, there is no question under Japanese law that Goldman Sachs would not be able to raise any claims against KG Holdings, and that the reorganized SS-J would be fully entitled to the proceeds, if any, of the Hawaii-based lawsuits.

        C.     <u>THE RECEIVER UNDER JAPANESE LAW</u>

It would be incorrect and improper to assume that terms used in foreign bankruptcy practice (including that of the United States) carry the same meaning and effect as identical terms used in English translations of Japanese corporate reorganization laws such as the JCRL. There is no concept of "receiver" in Japan that is identical to the "receiver" concept in the United States. Although the term "receiver" has been used in *translations* of certain Japanese laws, it is critical to understand that use of that term does not import the same meaning used in other jurisdictions.

In this reorganization case under the JCRL, there was no "receiver" to the extent that term means the same as that of "receiver" in the US. The numerous references in the Order and Transcript identifying the fact that a "receiver" was involved in the corporate reorganization proceedings are problematic. In the absence of a clear definition or description of the meaning of "receiver" in either the Order or Transcript, it is a serious concern that the court and other parties concerned incorrectly believed and determined that a "receiver", as the term is used under US law, was involved in the debtor company's reorganization proceedings under the JCRL in Japan.

Consider the following examples in the Order identifying the involvement of a "receiver":

- "In this case, however, Plaintiff is standing in the shoes of the receiver and thus the suit should be permitted." (Order, p.16);
- "The Court finds that in purchasing SS-Japan from bankruptcy, Goldman Sachs stepped into the shoes of the receiver for purposes of these pre-existing, consolidated actions" (Order, p.17);

These examples are not exclusive, but raise potential problems with using the term "receiver." First, Japan has no concept of "receiver" as the term is used in the US. Second, to the extent that the court is attributing rights and authority to the term "receiver", it is creating rights and authority that are beyond what is available under Japanese law.

### D.     THE DEBTOR COMPANY UNDER JAPANESE LAW

In this case, the entity that is the subject of reorganization under the JCRL is the same entity that went through corporate reorganization procedures and emerged from such procedures to function under the terms of the corporate reorganization plan. The reorganized company's right to pursue claims related to assets is identical to and limited to those rights held by the debtor company. Further, defenses that could be asserted against the debtor company may also be asserted against the reorganized company.

One way by which a debtor's business is taken over through a corporate reorganization proceeding (which is the way of SS-J's corporate reorganization) is the reduction of capital of the debtor and the issuance of new shares to a sponsor who provides an influx of capital and takes over

the debtor company.

The Reorganization Plan, Paragraph I.11 of the section entitled Basic Policy and the Substance of the Reorganization Plan, sets forth the mechanism of dealing with SS-J's company stock. The aforementioned paragraph provides that stock of the debtor company, issued before approval of the reorganization, will be cancelled without compensation. It further provides that new stock will be issued and allocated to South Wind Realty Finance Cayman Company, an affiliate of the Goldman Sachs Group.

The trustee is not a third-party and is not the seller or transferor of such new stock. Procedurally and based upon the reorganization plan, the debtor company, not the trustee, issues the stock, to South Wind. Factually, Goldman Sachs is only an indirect owner, through South Wind, and is not the debtor company itself.

The corporate reorganization proceeding closed on April 20, 2004, and the trustee's responsibilities and authority no longer exist after that date. The Goldman Sachs affiliate is only a stockholder in the post-reorganization debtor company, not the debtor company itself, and holds only those rights that a stockholder in a Japanese corporation would otherwise hold under Japanese law.

Because the trustee's rights are limited to those that the debtor company possesses and the fact that the trustee's rights are terminated when the

reorganization proceeding is closed after the approval of the plan, it can be said that the trustee, in carrying out his responsibilities under the JCRL, "steps into the shoes" of the debtor company, and steps right out upon the close of the reorganization procedures. At such point, the right to administer and dispose of the assets of the debtor company returns to the debtor company itself. Under Japanese law, no shareholder would "step into the shoes" of the trustee, not to mention a "receiver", the US concept of which is not applicable in Japan.

II.   CONCLUSION

Based upon my review of the Reorganization Plan, Official Gazette entries related to the reorganization of SS-J, the Order, and the Transcript, I have concluded as follows:

- One method by which a debtor company's business is taken over under the JCRL – and the method that was used in the SS-J case - involves the reduction of capital of the debtor company and the issuance of new shares to a sponsor who provides an influx of capital;
- In this case, the reorganized company is the same entity as the debtor company and has only the same rights and powers that the debtor company held;
- While corporate reorganization is pending, the trustee has the exclusive authority to assert on behalf of the debtor company claims which the debtor company would otherwise be able to assert prior to the commencement of reorganization proceedings;
- In this case, defenses that could be asserted against the debtor

company may be asserted against the trustee and the reorganized company;

- In this case, shareholders such as Goldman Sachs do not have the right under Japanese law to sue upon claims of the debtor company; and

- There is no concept of "receiver" in Japan that is identical to the "receiver" concept in the United States.