Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON              1126-0
SHELBY ANNE FLOYD        1724-0
GLENN T. MELCHINGER      7135-0
18th Floor, Pacific Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Telephone: (808) 524-1800

Attorneys for Plaintiffs

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation; SPORTS SHINKO (MILILANI) CO., LTD., a Hawai'i corporation; SPORTS SHINKO (KAUAI) CO., LTD., a Hawai'i corporation; SPORTS SHINKO (PUKALANI) CO., LTD., a Hawai'i corporation; and SPORTS SHINKO (WAIKIKI) CORPORATION, a Hawai'i corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RESORT MANAGEMENT SERVICES (HAWAI'I), INC., a Hawai'i corporation; YASUO NISHIDA, SATOSHI KINOSHITA, TOSHIO KINOSHITA, TAKESHI KINOSHITA, TOSHIYA KINOSHITA, and TSUGIO FUKUDA, and DOE DEFENDANTS 1-25,<br><br>Defendants. | CIVIL NO. 02-1-2766-11 DDD<br>(Other Civil Action)<br><br>**FIRST AMENDED COMPLAINT TO SET ASIDE FRAUDULENT TRANSFERS, FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES; SUMMONS** |

212931-3/6850-1

EXHIBIT N1

**FIRST AMENDED COMPLAINT TO SET ASIDE FRAUDULENT TRANSFERS, FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

Plaintiffs SPORTS SHINKO (USA) CO., LTD., SPORTS SHINKO (MILILANI) CO., LTD., SPORTS SHINKO (KAUAI) CO., LTD., SPORTS SHINKO (PUKALANI) CO., LTD., and SPORTS SHINKO (WAIKIKI) CORPORATION bring this action to set aside fraudulent transfers made in violation of the Uniform Fraudulent Transfer Act, Haw. Rev. Stat. Chapter 651C, for an accounting of each of the transfers, for injunctive and declaratory relief, and for damages resulting from breaches of fiduciary duties by Defendants YASUO NISHIDA, SATOSHI KINOSHITA, TAKESHI KINOSHITA, TOSHIO KINOSHITA, TSUGIO FUKUDA, and DOE DEFENDANTS 1-25.

**PARTIES**

1. SPORTS SHINKO CO., LTD., a Japanese corporation ("SS Japan"), is the subject of a corporate reorganization proceeding in the Osaka District Court in Japan, under the control of Trustee Mutsuo Tahara and Deputy Trustee Keijiro Kimura (collectively, the "Trustee"). SS Japan owns 89.1% of Plaintiff SPORTS SHINKO (USA) CO., LTD. ("SS USA"), a Delaware corporation. Plaintiff SS USA owns SPORTS SHINKO (HAWAI'I) CO., LTD. ("SSH"), a Hawai'i corporation. SSH in turn owns:

    a. Plaintiff SPORTS SHINKO (MILILANI) CO., LTD. ("SSM");

    b. Plaintiff SPORTS SHINKO (KAUAI) CO., LTD. ("SSK");

    c. Plaintiff SPORTS SHINKO (PUKALANI) CO., LTD. ("SSP"); and

212931-3/6850-1                               2

   d. SPORTS SHINKO RESORT HOTEL CORP. ("SSRHC").

  2. SSRHC owns Plaintiff SPORTS SHINKO (WAIKIKI) CORPORATION ("SSW"). Hereinafter, Plaintiffs SSM, SSK, SSP, and SSW are collectively referred to as the "Contracting Companies."

  3. All the Plaintiffs are now controlled by the Trustee.

  4. Defendant RESORT MANAGEMENT SERVICES (HAWAI'I), INC. ("RMS") is a Hawai'i corporation; Defendant YASUO NISHIDA ("NISHIDA") is RMS's sole shareholder, President, Secretary, Treasurer, and Director.

  5. NISHIDA is a resident of Hawai'i, and a citizen of Japan; at all relevant times NISHIDA was Assistant Secretary of SSRHC, SSK, SSW, and NISHIDA was Assistant Treasurer of SSH; NISHIDA served as an officer of SSP and SSM at all relevant times until 2000.

  6. Defendant SATOSHI KINOSHITA ("SATOSHI") is a resident of Hawai'i, and a citizen of Japan; at all relevant times SATOSHI was Vice President and Director of SS Japan, SS USA, SSRHC, SSH, SSK, SSM, SSP, SSW (collectively, "All SS Companies").

  7. Defendant TOSHIO KINOSHITA ("TOSHIO") is a resident and citizen of Japan; at all relevant times, TOSHIO was President and Director of All SS Companies.

  8. Defendant TAKESHI KINOSHITA ("TAKESHI") is a resident and citizen of Japan; at all relevant times, TAKESHI was Vice President and Director of All SS Companies.

9. Defendant TSUGIO FUKUDA ("FUKUDA") is a resident and citizen of Japan; at all relevant times, FUKUDA was an officer of All SS Companies.

10. Defendant TOSHIYA KINOSHITA ("TOSHIYA") is a resident and citizen of Japan; at all relevant times, TOSHIYA was a Director of SS-Japan.

11. Defendants TOSHIYA, TAKESHI, and SATOSHI are the sons of Defendant TOSHIO (collectively, the "KINOSHITA Defendants").

12. DOE DEFENDANTS 1-25 (collectively "DOES"), are persons, or entities whose names, identities, capacities, activities and/or responsibilities are presently unknown to Plaintiffs or their attorneys, except that DOES were/are connected in some manner with the defendant(s) named herein and/or were the agents, principals, parents, subsidiaries, servants, employees, representatives, co-venturers, associates, consultants, owners, lessees, lessors, guarantors, assignees, assignors, licensees, and/or licensors of the named defendant(s) and were or are in some manner presently unknown to Plaintiffs or their attorneys engaged, or involved in the activities alleged herein or responsible for the activities of which Plaintiffs complain, or should be subject to the relief Plaintiffs seek. Despite efforts to ascertain the identity of all the participants in, and beneficiaries of, transfers of the Plaintiffs' assets, due to the lack of cooperation from their former management, Plaintiffs have been

unable to confirm the identity of all the culpable parties. Plaintiffs pray for leave to certify the identities of DOES when they are ascertained.

## JURISDICTION

13. This Court has jurisdiction over this action pursuant to HRS § 603-21.5. The Court has the power to enter a declaratory judgment under HRS § 632-1.

14. This Court has personal jurisdiction over each of the Defendants under HRS §§ 634-35.

15. Venue is appropriate in this Court under HRS § 603-36 because the claims for relief arose in this circuit.

## GENERAL ALLEGATIONS

16. Plaintiffs reallege and incorporate the allegations in the paragraphs above as if fully set forth herein.

17. Plaintiff SS USA is, and at all relevant times was, a creditor of SSM, SSK, and SSP. Plaintiffs SSP and SSM are, and at all relevant times were, creditors of SSW.

18. Each of the Contracting Companies was insolvent in October 2000, and at all times thereafter.

19. Franklin Mukai, Esq. was an officer of SSH and each of the Contracting Companies at all times relevant to this Complaint.

20. Defendants SATOSHI, TAKESHI, TOSHIO, NISHIDA, and FUKUDA: (a) each owed a fiduciary duty of honesty in fact, good faith and

utmost fair dealing to, and (b) were at all relevant times "affiliates" and "insiders" of, the Plaintiffs they served as officers and/or directors.

21. At all times relevant to this Complaint, SSM owned real and personal property, including the Mililani Golf Course.

22. At all times relevant to this Complaint, SSW owned real and personal property, including the Queen Kapiolani Hotel and the Ocean Resort Hotel Waikiki.

23. At all times relevant to this Complaint, SSP owned real and personal property, including the Pukalani Country Club.

24. At all times relevant to this Complaint, SSK owned real and personal property, including the Kiahuna Golf Club.

### The Predecessor Management Companies

25. On or about August 3, 2000, Defendants TOSHIO, FUKUDA, and/or SATOSHI, together with Franklin Mukai, counsel and director of the Contracting Companies and SSH, incorporated Far East Management Services, Inc., Management Services of the Pacific, Inc., and Management Services of (USA), Inc. (collectively, the "Predecessor Management Companies").

26. The Predecessor Management Companies were formed to permit Defendants TOSHIO, FUKUDA, and/or SATOSHI to benefit from management contracts with the Contracting Companies (the "Management Contracts").

27. The Management Contracts were to provide for substantial fees and, if implemented, the Contracting Companies would have owed fees to Predecessor Management Companies without receiving any present and reasonably equivalent value.

28. Defendant SATOSHI was the sole shareholder, director and officer of the Predecessor Management Companies.

29. After realizing the Kinoshita name could not be removed from the public records concerning the Predecessor Management Companies, on August 28, 2000, Defendants TOSHIO, FUKUDA, and/or SATOSHI caused the Predecessor Management Companies to be dissolved. Then, on August 29, 2000, they established Hotel Management Services (Hawai'i), Inc. ("HMS") so that the Contracting Companies could enter the Management Contracts with a corporation which could not be traced directly to the KINOSHITA Defendants.

**Defendant RMS and the Management Contracts**

30. On or about September 6, 2000, the name of HMS was changed to "Resort Management Services (Hawai'i), Inc." ("RMS").

31. Contemporaneously, Defendants TOSHIO, FUKUDA, and/or SATOSHI agreed that Defendant NISHIDA would become RMS's sole shareholder of record and provided Defendant NISHIDA with the funds to purchase RMS's stock. Despite Defendant NISHIDA's nominal claim of ownership, the KINOSHITA Defendants have effectively owned and controlled RMS from the time of its incorporation to the present.

32. Defendant NISHIDA became the sole shareholder and officer of RMS in September 2000, with the understanding that RMS would enter into management agreements with the Contracting Companies.

33. Despite taking a position adverse to the Contracting Companies, Defendant NISHIDA continued to serve as an officer of SSH, SSK, and SSW and continued to accept economic benefits from them.

34. On or about October 18, 2000, Defendant SATOSHI entered separate 20 year Management Agreements with Defendant RMS on behalf of each of the Contracting Companies (the "Management Agreements").

35. Pursuant to the Management Agreements, RMS agreed to manage the Contracting Companies' operations. No present reasonably equivalent value was received by the Contracting Companies in exchange for the Management Agreements.

36. The Management Agreements require the Contracting Companies to pay management fees, employee salaries, and other expenses to RMS. They also require payment of substantial termination fees if the managed properties are transferred without the consent of RMS and the transferee does not assume the Management Agreements. The Termination Fees for all of the Management Agreements, as amended, total $3,500,000.

37. The Management Agreements were intended to facilitate transfer of assets of the Contracting Companies for the benefit of the Kinoshita

family without any present and reasonably equivalent benefit to the Contracting Companies.

### The Stock Option Agreement

38. In or about October, 2000, Defendants SATOSHI, TAKESHI, and TOSHIYA, at the direction of and for the benefit of Defendant TOSHIO, entered a Stock Option Agreement (the "Option Agreement") under which Defendant NISHIDA, as sole shareholder of RMS, granted Defendants SATOSHI, TAKESHI, and TOSHIYA the right to purchase all of the stock of RMS for $1,500.00.

39. In January, 2002, the KINOSHITA Defendants caused the Contracting Companies to sell all the properties owned by the companies RMS managed under the Management Agreements. The purchasers did not assume the Management Agreements. RMS now claims Termination Fees, which will yield no present or reasonably equivalent benefit to the Contracting Companies.

### Transfer of the Pukalani Residence

40. On or about February 1, 2002, SSP conveyed certain residential real property located at Makawao, Maui, at TMK (2) 3-2-020-034 (the "Pukalani Residence") to Defendant RMS, allegedly in partial satisfaction of its claim against SSP for termination fees. SSP received no present, reasonably equivalent in exchange for the transfer of the Pukalani residence to RMS.

## Count I: Breach of Fiduciary Duty

41. Plaintiffs reallege and incorporate the allegations in the paragraphs above as if fully set forth herein.

42. As a direct and proximate result of their participation in a scheme to fraudulently transfer funds, and through their self-dealing, Defendants SATOSHI, TAKESHI, TOSHIO, NISHIDA, FUKUDA and/or DOES acted in concert and breached their duties of loyalty and good faith to the companies which they served as fiduciaries.

43. The Defendants SATOSHI, TAKESHI, TOSHIO, NISHIDA, and FUKUDA, and/or DOES have acted in concert to convert to their own benefit profits, fees, and opportunities belonging to the Contracting Companies.

44. As a direct and proximate result of these Defendants' breach of fiduciary duties, each of the Contracting Companies has been damaged in an amount to be determined at trial, and each of the Contracting Companies is entitled to an order compelling Defendants to disgorge all properties, profits, and proceeds obtained by these Defendants through their misconduct.

45. The Defendants have acted in concert and collaborated with each other in the transactions described above, and they are jointly and severally liable for the resulting damages.

46. The actions of the Defendants were undertaken wilfully and in reckless disregard of the rights of Plaintiffs.

### Count II: Aiding and Abetting Breach of Fiduciary Duties

47. Plaintiffs reallege and incorporate the allegations in the paragraphs above as if fully set forth herein.

48. Defendants TOSHIYA and DOES voluntarily and intentionally assisted Defendants SATOSHI, TAKESHI, TOSHIO, NISHIDA, and FUKUDA, and/or DOES in their breaches of fiduciary duty.

49. Defendants TOSHIYA and DOES knew or should have known that Defendants' SATOSHI, TAKESHI, TOSHIO, NISHIDA, and FUKUDA, and/or DOES actions were breaches of fiduciary duty and that they would cause harm to Plaintiffs.

50. The actions of Defendants TOSHIYA and DOES to aid and abet the other Defendants' breaches of fiduciary duty also caused injury to Plaintiffs in an amount to be determined at trial, for which Defendants TOSHIYA and DOES are jointly and severally liable.

### Count III: Fraudulent Transfers (Termination Fees and Stock Option Agreement)

51. Plaintiffs reallege and incorporate the allegations in the paragraphs above as if fully set forth herein.

52. At all times relevant the Contracting Companies were each insolvent.

53. The transfers by the Contracting Companies to RMS pursuant to the Management Agreements and the transfer of rights to one or more of the KINOSHITA Defendants under the Option Agreement, were all

fraudulent because: (a) they were made with actual intent to hinder, delay, or defraud Plaintiffs; (b) they were made without the Contracting Companies receiving reasonably equivalent value in exchange, the Contracting Companies were engaged in a business for which their remaining assets were unreasonably small, and they were continuing to incur debts beyond their ability to pay as they came due; (c) the Contracting Companies received no reasonably equivalent value for the transfer and they were either insolvent at the time of the transfer or were rendered insolvent by the transfer; and (d) they were made to an insider for other than a present, reasonably equivalent value, the Contracting Companies were then insolvent, and the insiders had reasonable cause to believe that they were then insolvent.

54. As a result of these fraudulent transfers, the creditors of the Contracting Companies, including Plaintiff SS USA, SSM, and SSP have been damaged in an amount to be determined at trial.

### Count IV: Pukalani Residence

55. Plaintiffs reallege and incorporate the allegations in the paragraphs above as if fully set forth herein.

56. The conveyance of the Pukalani residence to RMS was fraudulent because: (a) it was made with actual intent to hinder, delay, or defraud Plaintiffs; (b) it was made without SSP receiving reasonably equivalent value in exchange, SSP was engaged in a business for which its remaining assets were unreasonably small, and it was continuing to incur debts beyond

its ability to pay as they came due; (c) no reasonably equivalent value was received for the transfer and SSP was insolvent at the time of the transfer; and (d) it was made to an insider for other than a present, reasonably equivalent value, SSP was then insolvent, and RMS and Defendant NISHIDA had reasonable cause to believe that SSP was then insolvent.

57.     As a result of these fraudulent transfers, the creditors of SSP, including Plaintiff SS USA have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray that the Court:

1.     Preliminarily and permanently enjoin DEFENDANT NISHIDA, his subordinates, agents, servants, attorneys and all persons acting in concert with him with knowledge of the injunction, from transferring to anyone the stock of RMS, the Pukalani Residence, and/or any other assets of RMS;

2.     Preliminarily and permanently enjoin the KINOSHITA Defendants, their subordinates, agents, servants, attorneys, and all persons acting in concert with them with knowledge of the injunction, from further transferring, conveying or encumbering their interests under the Option Agreement to third-parties;

3.     Order the KINOSHITA Defendants and NISHIDA to surrender to the Trustee (as representative of the Contracting Companies and their

creditors) all RMS stock certificates they hold and all their rights under the Option Agreement;

    4.    Declare that the Management Agreements are a nullity;

    5.    Order an accounting of all revenues received and all sums paid by RMS pursuant to the Management Agreements;

    6.    Award Plaintiffs compensatory and punitive damages with respect to the fraudulent transfers and breaches of fiduciary duties described herein; and

    7.    Award Plaintiffs their attorneys fees and costs, and such other and further relief as may be just and proper.

    DATED:    Honolulu, Hawai'i, January 7, 2003.

*[signature]*

PAUL ALSTON
SHELBY ANNE FLOYD
GLENN T. MELCHINGER
Attorneys for Plaintiffs

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation; SPORTS SHINKO (MILILANI) CO., LTD., a Hawai'i corporation; SPORTS SHINKO (KAUAI) CO., LTD., a Hawai'i corporation; SPORTS SHINKO (PUKALANI) CO., LTD., a Hawai'i corporation; and SPORTS SHINKO (WAIKIKI) CORPORATION, a Hawai'i corporation,<br><br>  Plaintiffs,<br><br>vs.<br><br>RESORT MANAGEMENT SERVICES (HAWAI'I), INC., a Hawai'i corporation; YASUO NISHIDA, SATOSHI KINOSHITA, TOSHIO KINOSHITA, TAKESHI KINOSHITA, TOSHIYA KINOSHITA, and TSUGIO FUKUDA, and DOE DEFENDANTS 1-25,<br><br>  Defendants. | CIVIL NO. 02-1-2766-11 DDD<br>(Other Civil Action)<br><br>**SUMMONS** |

SUMMONS

To the above-named Defendant(s):

You are hereby summoned and required to serve upon ALSTON HUNT FLOYD & ING, attorneys for Plaintiff, whose address is 18th Floor, Pacific Tower, 1001 Bishop Street, Honolulu, Hawai'i 96813, an answer to the First Amended Complaint which is herewith served upon you, within twenty (20) days after service of this Summons upon you, exclusive of the day of

21293 1-3/6850-1

service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the First Amended Complaint.

This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public unless a judge of the above-entitled court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

DATED: Honolulu, Hawai'i, _____ JAN -7 2003 _____.

R. HIGA            (SEAL)
_____
CLERK OF THE ABOVE-ENTITLED COURT

212931-3/6850-1                          2