PRICE OKAMOTO HIMENO & LUM

WARREN PRICE III          1212
ROBERT A. MARKS           2163
707 Richards Street, Suite 728
Honolulu, Hawaii  96813
Phone: 808.538.1113
Fax: 808.533.0549
E-mail:  wprice@pohlhawaii.com
         ram@pohlhawaii.com

Attorneys for Defendants
KG HOLDINGS, LLC, KIAHUNA
GOLF CLUB, LLC, KG KAUAI
DEVELOPMENT, LLC, PUKALANI
GOLF CLUB, LLC, KG MAUI
DEVELOPMENT, LLC, MILILANI
GOLF CLUB, LLC, QK HOTEL, LLC,
and OR HOTEL, LLC,

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br><br>   Plaintiff,<br><br> vs.<br><br>QK HOTEL, LLC, a Hawaii limited liability company, et al.,<br><br>   Defendants,<br><br> and<br><br>FRANKLIN K. MUKAI,<br><br>   Third-Party Plaintiff,<br><br> vs.<br><br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al., | CV 04-00124 ACK-BMK<br>CONSOLIDATED CASES<br><br>KG DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN CV NO. 04-00128 ACK/BMK FILED ON MARCH 29, 2006; DECLARATION OF TAKEO KOSUGI; EXHIBIT K2; DECLARATION OF TOD Z. TANAKA; PROPOSED ORDER; CERTIFICATE OF SERVICE |

|  |  |
|---|---|
| Third-Party Defendants. |  |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation,<br><br>        Plaintiff,<br><br>  vs.<br><br>PUKALANI GOLF CLUB, LLC, a Hawaii limited liability company, et al.,<br><br>        Defendants,<br><br>  and<br><br>FRANKLIN K. MUKAI,<br><br>        Third-Party Plaintiff,<br><br>  vs.<br><br>SPORTS SHINKO CO., LTD., a Japan Corporation, et al.,<br><br>        Third-Party Defendants | CV 04-00125 ACK-BMK |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation,<br><br>        Plaintiff,<br><br>  vs.<br><br>KIAHUNA GOLF CLUB, LLC, a Hawaii limited liability company, et al.,<br><br>        Defendants,<br><br>  and<br><br>FRANKLIN K. MUKAI,<br><br>        Third-Party Plaintiff,<br><br>  vs.<br><br>SPORTS SHINKO CO., LTD., a Delaware Corporation, et al.,<br><br>        Third-Party Defendants. | CV 04-00126 ACK-BMK |

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br>   Plaintiff,<br> vs.<br>OR HOTEL, LLC, a Hawaii limited liability company, et al.,<br>   Defendants,<br> and<br>FRANKLIN K. MUKAI,<br>   Third-Party Plaintiff,<br> vs.<br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al.,<br>   Third-Party Defendants. | CV 04-00127 ACK-BMK |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation,<br>   Plaintiff,<br> vs.<br>MILILANI GOLF CLUB, LLC, a Hawaii limited liability company; et al.,<br>   Defendants,<br> and<br>FRANKLIN K. MUKAI,<br>   Third-Party Plaintiff,<br> vs.<br>SPORTS SHINKO CO., LTD., a Japan Corporation, et al.,<br>   Third-Party Defendants. | CV 04-00128 ACK-BMK |

KG DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR RECONSIDERATION OF ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT IN CV NO. 04-00128 ACK/BMK
<u>FILED ON MARCH 29, 2006</u>

3

TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   SS CONCEDES THAT THE ORDER IS INCORRECT IN
      FINDING THAT KG WAS OBLIGATED TO PAY A
      TERMINATION FEE TO TOSHIO ........................................................................ 2

III.  SS CONCEDES THAT KG'S 'ADMISSIONS' WERE ONLY
      FOR THE PURPOSE OF THE SUMMARY JUDGMENT
      MOTION ................................................................................................................ 3

IV.   SS CONCEDES, OR DOES NOT DISPUTE, OTHER CRITICAL
      POINTS MADE BY KG ........................................................................................ 5

      A.   The Parties Agree That Findings Suggesting KG's Actual
           Fraud Are Not Correct Or At Least Are Disputed ........................... 5

      B.   The Parties Agree That The Law of Japan Is Applicable To
           This Case ................................................................................................ 6

V.    SS'S *IN PARI DELICTO* AND IMPUTATION ARGUMENTS
      ARE WRONG ........................................................................................................ 7

      A.   The *In Pari Delicto* Issue Is Preserved By The Order ..................... 7

      B.   SS Misconstrues U.S. Caselaw On Imputation ................................. 9

           1.   Lafferty ........................................................................................... 9

           2.   Reliance on Scholes and O'Melveny is Misplaced ............... 10

VI.   SS IS WRONG TO ASSERT THE SEPARATENESS OF THE      13
      SEWAGE TREATMENT PLANT SALE ...............................................................

VII.  CONCLUSION .................................................................................................... 14

i

# TABLE OF AUTHORITIES

**CASES**

Camerer v. California Sav. & Commercial Bank, 48 P.2d 39 (Cal. 1935) .................................................................................................................. 12-13

F.D.I.C. v. O'Melveny & Myers, 61 F.3d 17 (9th Cir. 1995) ......................... 7, 10-13

Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340 (3d Cir. 2001) ............................................................................ 9-10, 13

Scholes v. Lehmann, 56 F.3d 750 (7th Cir.), cert. denied, 516 U.S. 1028 (1995) .................................................................................................... 7, 10-13

White v. Sabatino, 2006 U.S. Dist. LEXIS 18540 (D. Hawaii 2006) ............ 4

**OTHER AUTHORITIES**

F.R.Civ.P. 12 ................................................................................................... 4

F.R.Civ.P. 56 ................................................................................................... 4

F.R.Civ.P. 59 ................................................................................................... 4

L.R. 60.1 .......................................................................................................... 4

18B Am.Jur.2d Corporations §1451 (2004) ................................................... 11

I.     **INTRODUCTION**

By this Reconsideration Motion[1], KG does not seek to have this Court reverse its denial of KG's Motion for Summary Judgment. Rather, KG seeks to have this Court simply enter an Order Denying KG's MSJ without prejudice, but vacate the findings the Court entered in its March 29, 2006 Order. See Proposed Order, attached.

The reason KG seeks this unusual relief is because, it is respectfully submitted, the Court's findings are incorrect in many material respects that are conceded by SS. Unless vacated, the result of the Order may well be inappropriate limitations on discovery or at the very least, a guaranteed dispute at every turn this case takes from this point forward.

The MSJ was filed before any depositions were taken in the case to test KG's legal theory for dismissal, a theory that was rejected by the Court. We ask the Court to recognize that the MSJ was filed before the factual record was well developed, and to therefore vacate the findings in the Order so the rest of the case is not inappropriately guided by the Order.

---

[1] KG Defendants' Motion for Reconsideration of Order Denying Defendants' Motion for Summary Judgment In CV No. 04-00128 ("Motion"). In this memorandum, "MSJ" refers to the underlying motion being reconsidered.

1

## II. SS CONCEDES THAT THE ORDER IS INCORRECT IN FINDING THAT KG WAS OBLIGATED TO PAY A TERMINATION FEE TO TOSHIO

KG fully understands how the Court would wonder about potential improprieties between Toshio and KG **_IF_** Toshio was to have received termination fees from KG as some sort of a 'kickback' after closing. Indeed, that is what the Court found.[2]

However, that is simply incorrect and SS concedes this.[3]

While SS tries to trivialize the significance of the Court's error, the reality is that the Court fundamentally misunderstood the allegations against KG. The difference is night and day. The Court misunderstood the record to establish that KG was complicit in a scam to pay post-closing termination fees to Toshio. What SS reluctantly clarifies is that Toshio, in effect, agreed to pay termination fees to himself.[4]

---

[2] [P]laintiffs allege[] Toshio caused the properties (subject to the management agreements) to be transferred to KG Defendants (and other defendants) for substantially less than fair value, knowing that the new owners would pay a total of $3.5 million in termination fees to the management company should they decide to cancel the management agreements.

Order 10 (references to second amended complaint omitted.) See also Order 24 for similar language.

[3] Mem.Opp. 3.

[4] Mem.Opp. 3-4.

2

This basic misunderstanding of the case sets the stage for the Court's other adverse "findings" and "conclusions" in the Order, whether formal or not. This is why vacating the Order (while affirming the denial of the MSJ) is appropriate.

### III. SS CONCEDES THAT KG'S 'ADMISSIONS' WERE ONLY FOR THE PURPOSE OF THE SUMMARY JUDGMENT MOTION

Another area that clearly gave this Court pause in considering the MSJ was what appeared to the Court to be an admission by KG of all the facts alleged against it. This resulted in various misstatements of the case. For example, the Order states:

> Defendants are not challenging the validity of the underlying debt in this case.[5]

In its opposition papers, SS acknowledges that this is wrong, and that KG in fact does dispute the inter-company debt alleged by SS. Mem.Opp. 23. Indeed, in spite of discovery requests, the record shows that SS has not produced <u>any</u> notes to evidence the debt, and has not even identified the specific debts they are suing upon.[6] KG anticipates this issue will be the basis for a future dispositive motion.

---

[5] Order, p. 16, n.7.

[6] "[T]he plaintiffs have thus far been unable to identify the specific promissory notes they are suing upon, or make original promissory notes available for inspection." KG Reply to MSJ filed March 9, 2006, p.8, n.12 (referring to Marks declaration attached).

3

What was stated in the MSJ[7] and clarified at the argument[8] is that KG admitted the allegations <u>only</u> for the purpose of the MSJ pursuant to F.R.Civ.P. 12(b)(6)[9] to present a clear legal theory for the termination of SS's claims. SS concedes this.[10]

KG wrote the MSJ to show the Court that SS's fraudulent transfer claims fail as a matter of law, logic and policy under the unusual circumstances of these cases, where a creditor is essentially suing itself for fraud. This Reconsideration Motion was not filed because the Court rejected the premise of the MSJ.[11] To the contrary, KG understands that the Court rejected its MSJ theory based on the

---

[7]   KG CSOF i.

[8]   Tr. 16.

[9]   The MSJ was filed pursuant to Rule 56 rather than Rule 12 because matters outside the pleadings were made a part of the motion. Accordingly, the motion was "converted" to a motion for summary judgment. F.R.Civ.P. 12(b); KG CSOF i; KG Reply 3, 10; Tr. 16.

[10]   Mem.Opp. 23.

[11]   <u>White v. Sabatino</u>, 2006 U.S. Dist. LEXIS 18540 (D. Hawaii 2006) (Kay, J.) does not provide an independent basis for denying this motion. In <u>White</u>, the issues raised in the reconsideration motion were, by necessary implication, previously raised in the underlying motion.

Here, a narrow legal issue on the applicability of HUFTA to these facts was presented in KG's MSJ. If the Court understood that KG was seeking analysis of its MSJ as though filed under Rule 12 rather than Rule 56 (as KG intended, albeit without sufficient clarity), the Court's order would likely have been substantially truncated. This is adequate reason why the court should reconsider. Further, the <u>White</u> motion was brought pursuant to Rule 59(e). This motion is brought pursuant to LR60.1.

4

record at the time. This Motion was filed only because the Court went well beyond rejecting the legal premise of the MSJ, and misinterpreted KG's limited admission of SS's allegations as though it was a general admission of the Second Amended Complaints.

### IV. SS CONCEDES, OR DOES NOT DISPUTE, OTHER CRITICAL POINTS MADE BY KG

#### A. The Parties Agree That Findings Suggesting KG's Actual Fraud Are Not Correct Or At Least Are Disputed

SS makes other concessions, or does not dispute, several other critical points, further showing that the Court fundamentally misunderstood the MSJ. For example, SS does not contest KG's characterization of SS's claims in this litigation:

> The gist of the plaintiffs' allegations against the KG parties is essentially that KG paid too little (Cplt¶42), and knew or should have known that Toshio and the other insiders were violating the Uniform Fraudulent Transfer Act.

Motion 5. That is, KG stands accused, basically, of merely getting – in SS's self-interested hindsight – too good a deal, not of participation in an actual fraud as the Court implicitly found.

Further, SS does not dispute that the "higher cash offers for the transferred property" referred to by the Court[12] were each flawed in some material way.[13]

---

[12] Order 23.

[13] Ex. B to Motion.

5

Therefore, the other offers that SS placed in the MSJ record are unreliable indicators of the value of those properties.[14]  The Order should be vacated so the development of these important factual issues are not prejudged based upon the language of the Order.

      B.    <u>The Parties Agree That The Law of Japan Is Applicable To This Case</u>

SS provides lengthy analysis about the application of choice of law principles, and after six pages, concludes that "it is impossible to see how a Hawaii court would apply Japan law under these facts to determine anything other than the powers of [a Japan trustee] and the post-reorganization owner of the reorganized company [, Goldman Sachs]."  Mem.Opp. 9.

KG's argument about Japan law was, and is, that "the nature of a Japan trustee's powers, and the succession of those powers to a reorganized Japan corporation and its shareholder are dependent on the law of Japan."  Motion 7.

That is, SS and KG agree that the following issues require the application of Japan law:

- the powers (and limits on the powers) of SS-J's former trustee, and
- the powers (and limits on the powers) of Goldman Sachs, the new owner of SS-Japan.

KG understands it is in SS's interest to make this case appear to be as complex as possible, and SS does a pretty good job of it.  However, SS's windy

---

[14]    SS does not refute KG's Exhibit B in its opposition.

analysis on choice of law is unnecessary and unhelpful in light of the parties' agreement about what issues are controlled by Japan law.

In Exhibit K2 hereto, Japan lawyer Takeo Kosugi sets forth the law of Japan law, and shows that SS-J's trustee, and the reorganized SS-J's claims are subject to the defenses that KG could assert against pre-reorganization SS-J. That is, under the law of Japan, Toshio's knowledge is imputed to SS-J's former trustee and to the reorganized company (that is, to Goldman Sachs.) Mr. Kosugi also illustrates why SS's analysis of Japan law is clearly wrong.[15]

In the context of this Motion, this very is important because the parties agree that Japan law applies to this case. The Order should be vacated so the Court can be fully briefed on how Japan law applies, particularly to the *in pari delicto* and imputation issues.

## V.     SS'S *IN PARI DELICTO* AND IMPUTATION ARGUMENTS ARE WRONG[16]

### A.     The *In Pari Delicto* Issue Is Preserved By The Order

SS argues that "this Court held the *in pari delicto*/imputation doctrines inapplicable under Scholes and O'Melveny." Mem.Opp.21. See also id., 14, 23-4. This is precisely the sort of confusion and lack of clarity that KG proposes to rectify by its request that the Order be vacated.

---

[15]    Mem.Opp.11-12 and Ex. M-1.
[16]    Mem.Opp. 14-19; 21-23.

7

As expressly recognized in the Order, Mukai's joinder in KG's MSJ "refers to the doctrine of '*in pari delicto*,' which is not raised in the Motion for Summary Judgment." Order 29 (emphasis added). The Court struck as untimely Mukai's joinder and "all substantive argument regarding the doctrine of *in pari delcito* contained in that joinder (and related papers) …" Id., 29-30. Clearly, the Court did not consider or rule on the *in pari delicto* issue since it was explicitly not before the Court.

The difficulty, of course, is that imputation and *in pari delicto* are related doctrines, and SS is exploiting this. In the Order, "*in pari delicto*" is referred to only in the discussion about striking Mukai's joinder. Id., 29-30. In the discussion about imputation, the Court found only that there are genuine issues of material fact about the application of the sole owner rule. Id., 21-26.

It is clear that neither the imputation nor *in pari delicto* issues have been decided with finality in the Order. However, if the Order stands in its present form, SS can be expected to continue to prey upon the lack of clarity.

Alternatively, if SS is correct and the *in pari delicto* issue has been decided in SS's favor, *sua sponte,* notwithstanding that the parties clearly have not been given proper notice and an opportunity to be heard on this important issue, this is clear error.

8

### B. SS Misconstrues U.S. Caselaw On Imputation

#### 1. Lafferty

In support of its argument that the *in pari delicto*, imputation and "sole actor" issues were decided in the Order,[17] SS incorrectly argues that <u>Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.</u>, 267 F.3d 340 (3d Cir. 2001) does not support KG's position, but rather, supports SS's position. In doing so, SS miscites the relevant facts and holding of <u>Lafferty</u>.

<u>Lafferty</u> addressed whether fraud committed by a debtor-corporations' owners, directors, and advisors could be imputed to the debtor-corporation, and thereby to the unsecured creditors' committee ("Committee") which asserts claims of the debtor corporations. The advisors argued that the claims should be dismissed on the basis of *in pari delicto*. The Court distinguished the two types of actions which the unsecured creditors' committee could bring: (i) claims <u>of the debtor corporation</u> which have become property of the bankruptcy estate; and (ii) claims under one or more of the trustee's independent avoiding powers. The Court ruled that because the Committee was asserting a claim of the debtor-corporation (as SS is doing here), the Committee could not be treated as an innocent successor. Accordingly, the Court held that *in pari delicto* applied and affirmed the dismissal of the case on this basis.

---

[17]   Mem. Opp. 14 et seq.

SS argues that Lafferty does not apply because this is not a bankruptcy case. The reason Lafferty applies here is that the relationship between the Committee and the debtor corporation in Lafferty is parallel to the relationship between SS-J's kanzainin and the plaintiff in the instant case (except that the kanzainin here is one step further removed from SS-USA.). The Plaintiff in CV 04-00128, SS-USA, is the corporation to which former officers' knowledge may have been imputed at times pertinent to the transaction. SS-USA is now alleging legal claims. The fact that the corporation's parent was subsequently under the control of a receiver, just as the claims in Lafferty were controlled by an authorized Committee, did not free the Plaintiff of the defenses.

### 2.   Reliance on Scholes and O'Melveny is Misplaced

In further support of their argument that *in pari delicto* is already decided by the Order, SS argues that the Court "properly relied on" Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995), and FDIC v. O'Melveny & Myers, 61 F.3d 17 (9th Cir. 1995), in concluding that SS takes free of the defenses that KG could assert against the Toshio-controlled SS entities. Mem.Opp. 20. In addition to disagreeing that the issue is decided, KG also disagrees with SS's analysis of these cases for three reasons.

First, both Scholes and O'Melveny were actions commenced by receivers. In contrast, CV 04-00128 (like CV 04-00125 and 04-00126) were filed by creditor

10

SS-USA. SS-USA never had a receiver, and no receiver ever appeared in those three cases.[18]

Both Scholes and O'Melveny analyze whether the receiver had the right to assert claims which the corporations did not have the right to assert. In the case in which summary judgment was sought by KG, there is not now, or previously, a receiver appointed or asserting claims. Scholes and O'Melveny are therefore inapposite.

Second, the imputation facts are different here. The general rule of imputation is subject to the "adverse interest" exception, which provides that courts will not impute the actions and knowledge of the corporate officers to the corporation, if the officers were acting for their own benefit and adverse to the corporation with respect to the actions complained of.[19]

The Scholes court ruled that the receiver could bring that action because the person previously in control of the corporation implicitly held an "adverse interest" to the corporation with respect to the actions at issue, and his actions and

---

[18] Only the complaints in CV 04-00124 and 04-00127 were initiated by the kanzainin. In the First Amended Complaints filed 6/14/04, SS-Japan was substituted as sole plaintiff.

[19] See 18B Am.Jur.2d Corporations§1451(2004): "The adverse interest exception applies only to fraud against the corporation, not to fraud on behalf of the corporation… [I]n the latter [case], the corporation and its shareholders actually benefit from the fraud to the detriment of the corporation's creditors. The exception allows a corporation to bring suit when management steals from the company but not when management docent steals from outsiders." (Emphasis added.)

11

knowledge, therefore, should not be imputed to the corporation. Id. at 754 (The transfers at issue "removed assets from the corporations for an unauthorized purpose and by doing so injured the corporations.")  Accordingly, for Scholes to apply here, there must be a showing that the actions complained of (i) are attributable to those individuals previously in control of SS, (ii) who were acting for their own benefit, and (iii) adverse to the interest of SS.  There are unresolved questions of fact on whether Scholes can be properly applied to this case.

Third, just as the receiver in Scholes was appointed at the request of the SEC, the receiver in O'Melveny was appointed by the request of FDIC.  The FDIC then brought suit against a law firm accused of malpractice upon its former client, a failed savings and loan.  Concluding that *in pari delicto* did not apply to bar the receiver's action, the Court observed that the bank receiver appeared "as part of an intricate regulatory scheme designed to protect the interests of third parties[.]" O'Melveny, 61 F.3d at 19.  Because of the receiver's authority to serve as plaintiff and pursue the claims in his own name as part of the regulatory scheme, the receiver stood in different shoes than the bank.

For O'Melveny to apply adversely to KG, plaintiff must appear under some special regulatory scheme vesting it with special powers.  Notably, the O'Melveny Court observed that generally a receiver under California law is subject to equitable defenses, but cited Camerer v. California Sav. & Commercial Bank, 48

12

P.2d 39 (Cal. 1935), for the exception. Camerer involved a superintendent of banks who was appointed receiver of a failed bank. (It may be that as superintendent of banks, the receiver had special powers that neither a conventional receiver nor trustee would have.) In the instant case, there has been no showing that SS-USA (or SS-J) is appearing under some regulatory scheme vesting it with special powers.

In making the foregoing argument about Lafferty, Scholes and O'Melveny, KG does not ask the Court to make any findings on the imputation or *in pari delicto* issues in connection with this Motion. KG makes these arguments only to illustrate that an important, substantive issue remains to be fully briefed and argued to the Court, and asks the Court to vacate the Order so it can be presented unclouded by SS's untenable assertion that the issues are already decided.

### VI. SS IS WRONG TO ASSERT THE SEPARATENESS OF THE SEWAGE TREATMENT PLANT SALE[20]

The Order states, "… Defendants have not presented evidence that the transfer of the sewage treatment plant was part of the same conveyance that Plaintiffs are now challenging." Order 25, n.19.

In defending the foregoing 'finding', SS argues that each of the Sports Shinko Hawaii operating companies (SS-Mililani and the others) were "entitled to obtain the fair market value for its respective asset transfers." Mem.Opp. 26.

---

[20] Mem.Opp. 25-27.

13

Taken seriously, this argument would set up a fraudulent transfer claim in every transaction where a parent company wants to sell the holdings of a number of wholly owned subsidiaries and is willing to accept a discount to consummate the sale in a single transaction.

The declaration of Tod Z. Tanaka ("Tanaka decl.") is attached. Mr. Tanaka represented KG in the purchase of the properties, including the sewage plant, from SS. Tanaka decl.¶2-3. Mr. Tanaka explains the reason for the allocations of the single purchase price to the various properties bought and sold. Id.,¶4-9. Mr. Tanaka's declaration also establishes that the sewage treatment plant sale was inseparable from the five cherry-picked transactions challenged by SS in its five lawsuits. Id.,¶5.

Accepting SS's argument would render every discounted bulk sale presumptively fraudulent, even when the single transaction includes the sale of a liability like a sewage plant. The Court should reject this nonsense proposition, and vacate the Order so as to eliminate any suggestion that this issue has been adjudicated.

## VII.  CONCLUSION

SS has loaded the record with allegations and some evidence of Toshio's efforts to defraud the creditors of the Sports Shinko entities. What is lacking, and

14

where this Court seems to misapprehend the case, is the absence of evidence tying KG to Toshio's alleged misconduct.

There are implications throughout the Order suggesting KG's participation in Toshio's alleged misconduct when none have been shown.  Therefore, KG respectfully asks the Court to vacate the Order, and substitute for it an order that grants this Reconsideration Motion and denies the MSJ without prejudice, as more as set forth in the Proposed Order, attached.

DATED:  Honolulu, Hawaii, June 16, 2006.

/s/ Robert A. Marks
WARREN PRICE III
ROBERT A. MARKS

Attorneys for Defendants
KG HOLDINGS, LLC, KIAHUNA GOLF CLUB, LLC, KG KAUAI DEVELOPMENT, LLC, PUKALANI GOLF CLUB, LLC, KG MAUI DEVELOPMENT, LLC, MILILANI GOLF CLUB, LLC, QK HOTEL, LLC and OR HOTEL, LLC