## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation, | ) Civ. No. 04-00124 ACK/BMK ) |
| Plaintiff, | ) CONSOLIDATED CASES ) ) |
| v. | ) **ORDER GRANTING IN PART AND** ) **DENYING IN PART DEFENDANTS'** |
| QK HOTEL, LLC, a Hawai`i limited liability company, KG HOLDINGS, LLC, a Hawai`i limited liability company, FRANKLIN K. MUKAI, | ) **MOTION FOR RECONSIDERATION** ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| FRANKLIN K. MUKAI, | ) ) |
| Third-Party Plaintiff, | ) ) ) |
| v. | ) ) |
| SPORTS SHINKO (USA) CO.; LTD., a Delaware corporation; SPORTS SHINKO (HAWAII) CO., LTD., a Hawai`i corporation; SPORTS SHINKO (MILILANI) CO., LTD., a Hawai`i corporation; SPORTS SHINKO (KAUAI) CO., LTD., a Hawai`i corporation; SPORTS SHINKO (PUKALANI) CO., LTD., a Hawai`i corporation; SPORTS SHINKO RESORT HOTEL CORPORATION, a Hawai`i corporation; SPORTS SHINKO (WAIKIKI) CORPORATION, a Hawai`i corporation; and OCEAN RESORT HOTEL CORPORATION, a Hawai`i corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Third-Party Defendants. | ) ) ) |

```
                                    )
SPORTS SHINKO (USA) CO., LTD.,      )  Civ. No. 04-00125 ACK/BMK
a Delaware corporation,             )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )
PUKALANI GOLF CLUB, LLC, a          )
Hawai`i limited liability           )
company; KG MAUI DEVELOPMENT,       )
LLC, a Hawai`i limited              )
liability company; KG HOLDINGS,     )
LLC, a Hawai`i limited              )
liability company, FRANKLIN K.      )
MUKAI,                              )
                                    )
          Defendants,               )
                                    )
     and                            )
                                    )
FRANKLIN K. MUKAI,                  )
                                    )
          Third-Party               )
          Plaintiff,                )
                                    )
     v.                             )
                                    )
SPORTS SHINKO CO., LTD.,            )
a Japan corporation, SPORTS         )
SHINKO (HAWAII) CO., LTD.,          )
a Hawai`i corporation, SPORTS       )
SHINKO (MILILANI) CO., LTD.,        )
a Hawai`i corporation, SPORTS       )
SHINKO (KAUAI) CO., LTD.,           )
a Hawai`i corporation, SPORTS       )
SHINKO (PUKALANI) CO., LTD., a      )
Hawai`i corporation, SPORTS         )
SHINKO RESORT HOTEL                 )
CORPORATION, a Hawai`i              )
corporation, SPORTS SHINKO          )
(WAIKIKI) CORPORATION,              )
a Hawai`i corporation, and          )
OCEAN RESORT HOTEL CORPORATION,     )
a Hawai`i corporation,              )
                                    )
          Third-Party               )
          Defendants.               )
```

ii

```
_____  )
                                 )
SPORTS SHINKO (USA) CO., LTD, a  )  Civ. No. 04-00126 ACK/BMK
Delaware corporation,            )
                                 )
          Plaintiff,             )
                                 )
     v.                          )
                                 )
KIAHUNA GOLF CLUB, LLC, a        )
Hawaiʻi limited liability        )
company; KG KAUAI DEVELOPMENT,   )
LLC, a Hawaiʻi limited liability )
company; PUKALANI GOLF CLUB,     )
LLC, a Hawaiʻi limited liability )
company; KG MAUI DEVELOPMENT,    )
LLC, a Hawaiʻi limited liability )
company; MILILANI GOLF CLUB,     )
LLC, a Hawaiʻi limited liability )
company; QK HOTEL, LLC, a        )
Hawaiʻi limited liability        )
company; OR HOTEL, LLC, a        )
Hawaiʻi limited liability        )
company, and KG HOLDINGS, LLC,   )
a Hawaiʻi limited liability      )
company,                         )
                                 )
          Defendants,            )
                                 )
     and                         )
                                 )
FRANKLIN K. MUKAI,               )
                                 )
          Third-Party            )
          Plaintiff,             )
                                 )
     v.                          )
                                 )
SPORTS SHINKO CO., LTD., a       )
Japan corporation, SPORTS        )
SHINKO (HAWAII) CO., LTD., a     )
Hawaiʻi corporation, SPORTS      )
SHINKO (MILILANI) CO., LTD., a   )
Hawaiʻi corporation, SPORTS      )
SHINKO (KAUAI) CO., LTD., a      )
Hawaiʻi corporation, SPORTS      )
SHINKO (PUKALANI) CO., LTD., a   )
Hawaiʻi corporation, SPORTS      )
```

iii

```
SHINKO RESORT HOTEL              )
CORPORATION, a Hawai`i          )
corporation, SPORTS SHINKO      )
(WAIKIKI) CORPORATION, a        )
Hawai`i corporation and OCEAN   )
RESORT HOTEL CORPORATION, a     )
Hawai`i corporation,            )
                                )
          Third-Party           )
          Defendants.           )
_____  )

SPORTS SHINKO CO., LTD., a      )   Civ. No. 04-00127 ACK/BMK
Japanese corporation,           )
                                )
          Plaintiff,            )
                                )
     v.                         )
                                )
OR HOTEL, LLC, a Hawai`i        )
limited liability company, KG   )
HOLDINGS, LLC, a Hawai`i        )
limited liability company,      )
FRANKLIN K. MUKAI,              )
                                )
          Defendants,           )
                                )
     and                        )
                                )
FRANKLIN K. MUKAI,              )
                                )
          Third-Party           )
          Plaintiff,            )
                                )
     v.                         )
                                )
SPORTS SHINKO (USA) CO., LTD.,  )
a Delaware corporation; SPORTS  )
SHINKO (HAWAII) CO., LTD., a    )
Hawai`i corporation; SPORTS     )
SHINKO (MILILANI) CO., LTD., a  )
Hawai`i corporation; SPORTS     )
SHINKO (KAUAI) CO., LTD., a     )
Hawai`i corporation; SPORTS     )
SHINKO (PUKALANI) CO., LTD., a  )
Hawai`i corporation; SPORTS     )
SHINKO RESORT HOTEL             )
CORPORATION, a Hawai`i          )
```

corporation; SPORTS SHINKO                )
(WAIKIKI) CORPORATION, a                   )
Hawai`i corporation; and OCEAN             )
RESORT HOTEL CORPORATION, a                )
Hawai`i corporation,                       )
                                           )
          Third-Party                      )
          Defendants.                      )
————————————————————————————————           )
                                           )
SPORTS SHINKO (USA) CO., LTD.,             )   Civ. No. 04-00128 ACK/BMK
a Delaware corporation,                    )
                                           )
          Plaintiff,                       )
                                           )
      v.                                   )
                                           )
MILILANI GOLF CLUB, LLC,                   )
a Hawai`i limited liability                )
company; KG HOLDINGS, LLC,                 )
a Hawai`i limited liability                )
company, FRANKLIN K. MUKAI,                )
                                           )
          Defendants,                      )
                                           )
      and                                  )
                                           )
                                           )
FRANKLIN K. MUKAI,                         )
                                           )
          Third-Party                      )
          Plaintiff,                       )
                                           )
      v.                                   )
                                           )
SPORTS SHINKO CO., LTD., a                 )
Japan corporation, SPORTS                  )
SHINKO (HAWAII) CO., LTD., a               )
Hawai`i corporation, SPORTS                )
SHINKO (MILILANI) CO., LTD., a             )
Hawai`i corporation, SPORTS                )
SHINKO (KAUAI) CO., LTD., a                )
Hawai`i corporation, SPORTS                )
SHINKO (PUKALANI) CO., LTD.,               )
a Hawai`i corporation, SPORTS              )
SHINKO RESORT HOTEL                        )
CORPORATION, a Hawai`i                     )
corporation, SPORTS SHINKO                 )

v

```
(WAIKIKI) CORPORATION, a          )
Hawai`i corporation, and          )
OCEAN RESORT HOTEL CORPORATION,   )
a Hawai`i corporation,            )
                                  )
          Third-Party             )
          Defendants.             )
                                  )
```

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION

On January 13, 2006, KG Holdings, LLC and Mililani Golf Club, LLC (collectively "Defendants" or "KG Defendants") filed a Motion for Summary Judgment in Civ. No. 04-00128 ACK/BMK. On March 28, 2006, this Court issued an Order Denying Defendants' Motion for Summary Judgment in Civ. No. 04-00128 ACK/BMK ("Order").

On April 12, 2006, Defendants filed a Motion for Reconsideration of Order Denying Defendants' Motion for Summary Judgment ("Motion for Reconsideration" or "Motion for Recon."), seeking reconsideration because "Defendants' counsel did not anticipate the factual and legal points that formed the basis for the Court's Order" and asking the Court to "vacate the Order and file an amended order that denies the Motion for Summary Judgment without prejudice, without elaboration on the law or facts." See Motion for Recon. at 1, 3-4. KG Defendants apparently mistakenly believed that the Court could decide its Motion for Summary Judgment without considering all of the issues that motion (and the opposition and reply) necessarily raised.

1

On May 22, 2006, the SS Companies ("Plaintiffs[1]")
filed an Opposition ("Opposition to Motion for Recon."). On June
16, 2006, Defendants filed a Reply in Support of the Motion for
Reconsideration ("Reply"). Pursuant to L.R. 7.2(e), the Court
finds this motion suitable for disposition without a hearing.

### STANDARD

In the Ninth Circuit, a successful motion for
reconsideration must accomplish two goals. First, it must
demonstrate some reason why the court should reconsider its prior
decision. Na Mamo O 'Aha 'Ino v. Galiher, 60 F. Supp. 2d 1058,
1059 (D. Haw. 1999) (citation omitted). Second, a motion for
reconsideration must set forth facts or law of a strongly
convincing nature to induce the court to reverse its prior
decision. Id. Courts have established three grounds justifying
reconsideration: (1) an intervening change in controlling law;
(2) the availability of new evidence; and (3) the need to correct
clear error or prevent manifest injustice. Mustafa v. Clark
County Sch. Dist., 157 F.3d 1169, 1178-79 (9th Cir. 1998); Great
Hawaiian Financial Corp. v. Aiu, 116 F.R.D. 612, 616 (D. Haw.
1987), rev'd on other grounds, 863 F.2d 617 (9th Cir. 1988). The
District of Hawaii has implemented these standards in Local Rule
60.1, which states:

---

[1]The plaintiffs and third-party defendants in each of the
consolidated cases are referred to collectively as "Plaintiffs"
or the "SS Companies."

2

> Motions for reconsideration of interlocutory orders may be brought only upon the following grounds:
> (a)  Discovery of new material facts not previously available;
> (b)  Intervening change in law;
> (c)  Manifest error of law or fact.
> Motions asserted under Subsection (c) of this rule must be filed not more than ten (10) business days after the court's written order is filed.

L.R. 60.1.

Mere disagreement with a previous order is an insufficient basis for reconsideration.  See Leong v. Hilton Hotels Corp., 689 F. Supp. 1572 (D. Haw. 1988).  Furthermore, reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision.  See Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000); Hawaii Stevedores, Inc. v. HT&T Co., 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005); All Hawaii Tours, Corp. v. Polynesian Cultural Ctr., 116 F.R.D. 645, 649-50 (D. Haw. 1987), rev'd on other grounds, 855 F.2d 860 (9th Cir. 1988). "Whether or not to grant reconsideration is committed to the sound discretion of the court." Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing Kona Enter., 229 F.3d at 883).

## DISCUSSION

Defendants argue that the Order contains seven manifest errors of law and fact.  See Motion for Recon. at 1-3.  The Court will analyze each alleged error separately.

3

### 1.   Termination Fees

On pages 1 and 4 of the Motion for Reconsideration, Defendants correctly point out that the Court's Order was in error when it stated that Toshio transferred property to Defendants " . . . knowing that the new owners would pay a total of $3.5 million in termination fees to the management company should they decide to cancel the management agreements." Order at 10; see also id. at 24 (stating that Toshio would benefit from the termination fees "should the new owners decide to cancel the management agreements once the properties were sold"). Defendants note that paragraph 45 of the Second Amended Complaint alleges: "KG Mililani refused to assume the Management Agreement concerning the Mililani Properties, thereby triggering DEBTOR'S obligation to pay the Termination Fees to RMS." Motion for Recon. at 4 (quoting Second Amended Complaint at ¶ 45, emphasis added). Plaintiffs appear to concede this point at page 3 of their Opposition to Motion for Reconsideration.

The Court was under the misunderstanding that the obligation to pay the termination fees under the management agreements had been passed on to the new owners of the subject properties. At the onset of the hearing on the Motion for Summary Judgment, the Court asked the following question of Mr. Alston: "Now, would it be fair to characterize your client's position as Toshio seeing that SS-Japan and the SS-Empire on its

way to bankruptcy transferred these properties in Hawaii to the
KG Defendants that are priced substantially below the fair market
value but, before doing so, <u>encumbered them with management
agreements</u> with the termination fee of $3.5 million?"  See
Transcript of Hearing on KG Defendants' Motion for Summary
Judgment at 6 (Mar. 20, 2006) (emphasis added) ("Transcript").
Mr. Alston responded: "That's correct, your Honor."  Id. at  6.

     Unfortunately, neither counsel corrected the Court's
obvious incorrect statement that the properties were encumbered
with the management agreements (and thus the new owners took
subject to the management agreements); although when the Court
asked Mr. Marks: "What about the management agreements?  Did that
cause you any thought, or your clients?",  Mr. Marks responded:
"I don't believe it caused any thought at all.  Apparently KG was
given an opportunity to agree to an assignment of the management
agreements, and it didn't.  It didn't accept the management
agreements."  See Transcript at 16.  The Court took this response
to mean that the KG Defendants had terminated the management
agreements, but not that the SS Companies would be responsible
for paying the termination fees.

     The Court concurs with Defendants that the Court's
misunderstanding was significant.  As indicated by the Court's
question to Mr. Marks, if the properties were being sold at
substantially below their fair market value, as alleged, and if

the new owners were obliged to pay the $3.5 million termination fees to RMS under the recently imposed management agreements, then the Defendants possibly should have been suspicious of some potential wrongdoing.  Moreover, as stated by Defendants, assuming that Toshio was intent on defrauding the SS Companies and their creditors as alleged by Plaintiffs, his scheme would have been much more effective if he had encumbered the properties with the management agreements so that the new owners would have to pay the termination fees, rather than structuring the arrangement so that he relied on the apparently insolvent SS Companies to pay the termination fees.[2]

---

[2]At footnote 10 of the Motion for Reconsideration, Defendants argue that the Court somehow erred in stating that "Plaintiff has presented evidence that Toshio ignored higher cash offers for the transferred property . . . ."  See Order at 23; Motion for Recon. at 6 n.10.  As evidence of the Court's error, Defendants cite an analysis of offers by third parties, not previously provided to the Court, that Defendants claim shows each higher offer was flawed.  First, the Court declines to consider the analysis that could have been previously presented to the Court.  See Kona Enter., 229 F.3d at 890 (motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation"); Hawaii Stevedores, 363 F. Supp. 2d at 1269 (D. Haw. 2005) ("reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision").  Defendants did not argue in their Motion for Summary Judgment or Reply in Support of Motion for Summary Judgment that other offers by third parties were flawed.  Even at the hearing, Defendants solely argued that there were no other offers "like" its offer, which included all of the SS Companies' Hawaii assets; Defendants did not argue nor present any evidence that the offers on individual properties by third parties were somehow flawed.  Second, the Court declines to reconsider this sentence of the Order because the Court did not find that higher cash offers were made; rather,

On reconsideration, to correct manifest error, the
Court amends the Order to reflect that the management agreements
provided for the SS Companies - not the new owners - to pay
termination fees if and when the management agreements were
terminated.

   2.   **Application of Japan Law**

In the Order, "The Court [found] that in purchasing SS-
Japan from bankruptcy, Goldman Sachs stepped into the shoes of
the receiver for purposes of these [lawsuits].  For this reason,
Goldman Sachs, as owner of SS-Japan and SS-USA, has standing to
bring these actions through the named plaintiffs."  <u>See</u> Order at
17.[3/]  Defendants argue that in making this finding, the Court
erred by failing to apply Japan law.  Specifically, Defendants
argue that "the nature of a Japan trustee's powers, and the
succession of those powers to a reorganized Japan corporation and
its shareholder are dependent on the law of Japan."  <u>See</u> Motion
for Recon. at 7; Reply at 6.

In their summary judgment papers, neither party raised
the issues of or briefed the Court regarding Japan law, choice of

_____

the Court merely found that Plaintiff has presented some evidence
for purposes of opposing the motion for summary judgment.

   [3/]As noted in the Order, "Goldman Sachs" refers to a
subsidiary of Goldman Sachs referenced by the parties as
Southwind.  <u>See</u> Order at 17 n.9.

law, or application of Japan law to the facts of this case.[4/]
Indeed, it is only now - in the Motion for Reconsideration - that
Defendants give notice pursuant to Federal Rule of Civil
Procedure 44.1 that they are seeking a determination of foreign
law.  <u>See</u> Motion for Recon. at 8.  As a result of the parties'
failure to raise the issue of Japan law, the Court did not
consider these issues in reaching its decision.  Now, Defendants
for the first time argue that the Court should have applied Japan
law in deciding the Motion for Summary Judgment, and ask the
Court to vacate the Order "so the Court can be fully briefed on
how Japan law applies" to this case.  <u>See</u> Reply at 7.[5/]

    The Court recognizes that these issues should have been
raised, briefed, and considered in the summary judgment

_____

     [4/]Defendants only reference to Japan law was in an unrelated
context, noting that Toshio was the Representative Director of
SS-Japan, and that the power of representative directors under
Japan law is significant.  <u>See</u> Motion for Summary Judgment at 3
n.4.  Plaintiffs made brief reference to Japan law in describing
how the intercompany debt was structured and noted that the
Motion for Summary Judgment did not raise the issue of the
structure of intercompany loans or their significance under Japan
law.  <u>See</u> Opposition to Motion for Summary Judgment at 3, 21-22.
In the context of imputation, Plaintiffs stated that Hawaii law,
as opposed to federal law, applied to this case but made no
reference to Japan law.  <u>See</u> <u>id.</u> at 12.

     [5/]In the Opposition to Motion for Reconsideration,
Plaintiffs argue that Japan law does not apply, but then state,
somewhat ambiguously: "It is impossible to see how a Hawaii court
would apply Japan law under these facts to determine anything
other than the powers of the <u>kanzainin</u> and the post-
reorganization owner of the reorganized company."  <u>See</u> Opposition
to Motion for Recon. at 9.

proceeding; however, the Court finds that since these new issues should have been raised previously, they should not form the basis of a judgment on reconsideration.  See <u>Kona Enter.</u>, 229 F.3d at 890 (motion for reconsideration "may <u>not</u> be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation"); <u>Hawaii Stevedores</u>, 363 F. Supp. 2d at 1269 (D. Haw. 2005) ("reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision").

Nonetheless, since the Court has not considered Japan law, manifest error of law could conceivably result if the Court does not permit either party to raise the issues surrounding the application of Japan law in the future.  The Court modifies the Order to clarify that it has not considered the possible application of Japan law, and that the Order is subject to the Court's future consideration of the possible application of Japan law, if such issues are raised by the parties in the future. Accordingly, the Order could be modified later if the Court finds that Japan law should apply.

3.   **Application of U.S. Law**

Defendants argue in the alternative that, even if U.S. law applies to the Court's analysis, the Court erred in its application of U.S. law to that analysis.  See Motion for Recon.

9

at 9-14.  In support of their argument, Defendants rely on
Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.,
267 F.3d 340, 356 (3d Cir. 2001) ("Lafferty").  Lafferty is a
2001 decision issued by the U.S. Court of Appeals for the Third
Circuit.  Not only is Lafferty not binding on this Court, it
should have been cited by Defendants prior to the reconsideration
stage - especially considering that Defendants are trying to use
Lafferty to distinguish O'Melveny & Myers, which was discussed in
Plaintiffs' Opposition to the Motion for Summary Judgment.  See
Federal Deposit Insurance Corp. v. O'Melveny & Myers, 61 F.3d 17
(9th Cir. 1995); see also Opposition to the Motion for Summary
Judgment at 12, 14.  Because Defendants failed to raise Lafferty
or their instant legal argument during the Court's consideration
of the Motion for Summary Judgment, the Court finds that
Defendants have presented an insufficient basis to grant
reconsideration of the Court's analysis now.  See Kona Enter.,
229 F.3d at 890 (reconsideration may not be based on legal
arguments that could have been presented at the time of the
challenged decision); Hawaii Stevedores, 363 F. Supp. 2d at 1269
(D. Haw. 2005) (same).

        Nonetheless, the Court agrees with Defendants that the
imputation doctrine (which is addressed in the Order) is at least
somewhat related to the doctrine of in pari delicto (which is not

substantively addressed in the Order).  <u>See</u> Reply at 8.[6/]  The
Court declined to address the doctrine of in pari delicto in the
Order because that doctrine was not properly raised by
Defendants.  <u>See</u> Order at 30-31 (granting Plaintiffs' motion to
strike Mukai's untimely joinder, which raised the doctrine of in
pari delicto for the first time, and ordering that all
substantive argument regarding the doctrine of in pari delicto
contained in the joinder and related papers be stricken from the
record).  However, the Court did not preclude Defendants from
raising the doctrine of in pari delicto in the future.  As a
result, the Court now modifies the Order to clarify that the
Order is subject to the Court's future consideration of the
possible application of the doctrine of in pari delicto, if the
doctrine is raised by the parties in the future.  Accordingly,
the Order, including its discussion of imputation, could be
modified later if the Court finds that such modification would be
appropriate.

**4.    Sole Owner Rule**

In the Order, the Court found that "even if [it] were
to adopt the 'sole owner rule' asserted by Defendants, a genuine

---

[6/]The Court will not consider <u>Lafferty</u> at this time for
purposes of determining whether to reconsider its Order.  The
Court notes, however, that <u>Lafferty</u> involves both the in pari
delicto and the imputation doctrines and discusses the
relationship between the two.  <u>See</u> <u>Lafferty</u>, 267 F.3d at 355 ("If
wrongdoing is imputed, then the in pari delicto doctrine comes
into play and bars a suit.").

11

issue of fact exists as to the underlying issue of whether Toshio
was a 'sole owner' for purposes of the rule." See Order 26; see
also id. at 15 n.6 ("an issue of fact remains as to whether
Toshio completely controlled and owned all of the Sports Shinko
entities"). Defendants argue that the sole owner rule should be
applied as a matter of law because there are no questions of
fact. See Motion for Recon. at 15-20. The Court disagrees.

Toshio did not own all of the stock of SS-Japan;
Kinoshita Construction (owned by Toshio's three sons) held a
33.33% interest in SS-Japan. See Stipulation in Lieu of Exhibits
B, C, D and E to KG Defendants' Motion for Summary Judgment at 4-
5 (Feb. 28, 2006). While the deposition testimony of one of
Toshio's sons, considered by the Court, presents some evidence
that Toshio may have exercised complete control over the SS
Companies,[7] it does not clearly indicate that all three of
Toshio's sons abdicated their interests to Toshio or permitted
Toshio to exercise complete control over their interests in
Kinoshita Construction and, indirectly, the SS Companies. The
Court was not erroneous in finding that for purposes of the
Motion for Summary Judgment, the less than 100% interest held by
Toshio was sufficient to raise a genuine issue of fact as to the
underlying issue of whether Toshio was the sole owner of SS-Japan

_____

[7] See Def. Con. St., Exhibit Q, Deposition of Satoshi
Kinoshita at 29, 45 (Toshio was "like a sole shareholder" and
possessed "virtually plenary authority").

12

or SS-USA.

**5.   Underlying Debt**

In footnote 7 of the Order, the Court stated that "Defendants are not challenging the validity of the underlying debt in this case." <u>See</u> Order at 16 n.7.  The Court agrees with the parties that this statement is overly broad because it does not make clear that it applies only to the Motion for Summary Judgment.  <u>See</u> Motion for Recon. at 20-21; Opposition to Motion for Recon. at 23.  The sentence in the Order is hereby modified to read: "Defendants are not challenging the validity of the underlying debt <u>for purposes of this motion</u>."

**6.   Acting in Secret**

At footnote 18 of the Order, the Court found that "Plaintiffs have raised a genuine issue of material fact as to whether Toshio was not acting secretly" in "taking actions adverse to SS-USA." <u>See</u> Order at 24 n. 18 (citing Declaration of Tsugio Fukada at 2 and 8; citing Restatement (Second) of Agency § 282 (1958)).  Defendants argue that this finding is erroneous because, according to Defendants, the record shows that the sale was not "kept secret from Fukuda or otherwise." <u>See</u> Motion for Recon. at 22-23.

The Court finds no manifest error in its finding.  As pointed out by Plaintiffs, being aware of the transaction is not dispositive; what is essential to the issue is whether Fukuda and

13

others were aware of all the terms of the transaction which were
allegedly adverse to the interest of the SS Companies.  <u>See</u> Order
at 24 n. 18.[8]

Fukuda's declaration states: "Despite my obligations as
General Manager of the IBD, I had <u>little to do with the decision</u>
to sell the Hawaii properties, was <u>not invited to meet with</u> the
KG representatives from Hawaii, and President Toshio Kinoshita
and Vice President Satoshi Kinoshita <u>handled most of that</u>
<u>transaction alone</u>, <u>without consulting me or others</u>."  <u>See</u> Fukuda
Declaration at 8 ¶22 (Feb. 17, 2006) (emphasis added).[9]  This
statement in Fukuda's declaration is enough to raise a genuine
issue of material fact as to whether Toshio was secretly taking
actions adverse to SS-USA.

_____

[8]Additionally, Defendants admit that not all of the
officers and directors of SS-Mililani actually approved the sale
of SS-Mililani's property, and at least one director of SS-USA
did not approve the sale.  <u>See</u> Motion for Recon. at 22-23.

[9]The Court notes that in a new Fukuda declaration submitted
by Plaintiffs in opposition to the Motion for Reconsideration,
Fukuda states that Defendants received a $9 million unsecured
advance from the SS Companies (which apparently is close to 50%
of the purchase price).  <u>See</u> Fukuda Declaration at 7 (May 22,
2006); <u>see also</u> Exhibit 15 to Plaintiffs' Opposition to Motion
for Summary Judgment.  Fukuda states that this transactional
structure was different than a transactional structure utilized
previously in the sale of the Diamond Head Beach Hotel, and that
he would not have signed the corporate resolutions approving the
sale to Defendants if he had been informed of the unsecured
advance.  <u>See</u> <u>id.</u>

14

7.    **Sewage Treatment Plant**

At footnote 19, the Order states:

Defendants' argument that Toshio's knowledge should be imputed to SS-USA because SS-USA ratified the transfer by seeking to retain the sewage treatment plant allegedly obtained in the transfer fails at this stage of the action because Defendants have not presented evidence that the transfer of the sewage treatment plant was part of the same conveyance that Plaintiffs are now challenging.

See Order at 25 n.19 (citing Reply in Support of Motion for Summary Judgment at 5, n.6; Pl. Con. St., Exhibit 29; Def. Con. St., Exhibit S). Defendants argue that sentence in the Order "is a manifest error of fact." See Motion for Recon. at 23. The Court agrees that it was manifest error to state that Defendants "have not presented evidence." The Purchase and Sale Agreement ("PSA") and related letter (at Def. Con. St., Exhibits S and T), despite the omission of exhibit A-6 to the PSA, constitute some evidence that the stock and assets of Pukalani STP Co., Ltd. and Sure Transportation, Inc. were included in the PSA.

Thus, the Order is modified to reflect that Defendants have presented some evidence on summary judgment that the sewage treatment plant was included in the Purchase and Sale Agreement. However, this modification does not alter the Court's overall finding in the footnote regarding Defendants' theory. Defendants did not present sufficient argument or evidence for the Court to determine on summary judgment whether Toshio's knowledge should be imputed to SS-USA under the theory that the SS Companies are

15

seeking to retain some benefit that was obtained by the agent acting fraudulently.  <u>See</u> Reply in Support of Motion for Summary Judgment at 5, n.6.  For example, Defendants did not set forth any specific facts in their concise statement regarding the sewage treatment plant or any alleged benefit sought to be retained by the SS Companies.  This failure alone was enough to deny summary judgment on this issue.  <u>See</u> L.R. 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."); <u>DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua</u>, -- F.3d --, No. 04-15695, 2006 WL 1916347 at *4 (9th Cir. July 13, 2006) (district court was obligated to consider only those facts that were identified in the concise statement).

**8.   Rule 56(d)**

Defendants request, pursuant to Federal Rule of Civil Procedure 56(d), that the Court ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted "so the parties can focus on the next round of discovery."  <u>See</u> Motion for Recon. at 26. The Court finds that it would not be practicable to make such an ascertainment at this time, especially given that Defendants admitted Plaintiffs' allegations for purposes of the Motion for

Summary Judgment and thus the parties have only presented limited evidence to the Court at this time.  <u>See</u> Fed. R. Civ. P. 56(d) (court shall, "if practicable," ascertain what material facts exist or are controverted).

<u>CONCLUSION</u>

The Court grants in part and denies in part Defendants' Motion for Reconsideration.  In summary, the Court modifies its March 28, 2006 Order Denying Defendants' Motion for Summary Judgment in Civ. No. 04-00128 ACK/BMK in the following respects: (1) the Court amends the Order to reflect that the management agreements provided for the SS Companies to pay termination fees if and when the management agreements were terminated; (2) the Court modifies the Order to clarify that the Order could be modified in the future, depending on the Court's possible future consideration of Japan law and/or the doctrine of in pari delicto; (3) the Court clarifies the Order to reflect that, for purposes of the summary judgment motion only, Defendants are not challenging the validity of the underlying debt; and (4) the Court amends the Order to reflect that Defendants have presented some evidence on summary judgment that the sewage treatment plant was part of the Purchase and Sale Agreement.  The Court denies the remaining issues asserted in the Motion for Reconsideration.

17

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 19, 2006.



_____
Alan C. Kay
Sr. United States District Judge

Sports Shinko v. QK Hotel, Civ. No. 04-00124 ACK/BMK (Consolidated); Order
Granting in Part and Denying in Part Defendants' Motion for Reconsideration.

18