IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation, | CIVIL NO. CV 04-00124 ACK/BMK |
| Plaintiff, | CONSOLIDATED CASES |
| vs. | **DECLARATION OF STEVE IWAMURA** |
| QK HOTEL, LLC, a Hawai`i limited liability company, et al., | |
| Defendants, | |
| and | |
| FRANKLIN K. MUKAI, | |
| Third-Party Plaintiff, | |
| vs. | |
| SPORTS SHINKO (USA) CO.; LTD., a Delaware corporation, et al., | |
| Third-Party Defendants. | |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, | CIVIL NO. CV 04-00125 ACK/BMK |

635313_3 / 6850-5

|  |  |
|---|---|
| Plaintiff, | ) |
| vs. | ) |
| PUKALANI GOLF CLUB, LLC, a Hawai'i limited liability company, et al., | ) |
| Defendants, | ) |
| and | ) |
| FRANKLIN K. MUKAI, | ) |
| Third-Party Plaintiff, | ) |
| vs. | ) |
| SPORTS SHINKO CO., LTD., a Japan corporation, et al., | ) |
| Third-Party Defendants. | ) |

|  |  |  |
|---|---|---|
| SPORTS SHINKO (USA) CO., LTD, a Delaware corporation, | ) | CIVIL NO. CV 04-00126 ACK/BMK |
| Plaintiff, | ) |  |
| vs. | ) |  |
| KIAHUNA GOLF CLUB, LLC, a Hawai'i limited liability company, et al., | ) |  |
| Defendants, | ) |  |
| and | ) |  |
| FRANKLIN K. MUKAI, | ) |  |
| Third-Party Plaintiff, | ) |  |

635313_1 / 6850-5

2

|  |  |  |
|---|---|---|
| vs.<br><br>SPORTS SHINKO CO., LTD., a Japan corporation, et al.,<br><br>      Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |  |
| SPORTS SHINKO CO., LTD., a Japanese corporation,<br><br>      Plaintiff,<br><br>vs.<br><br>OR HOTEL, LLC, a Hawai`i limited liability company, et al.,<br><br>      Defendants,<br><br>and<br><br>FRANKLIN K. MUKAI,<br><br>      Third-Party Plaintiff,<br><br>vs.<br><br>SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, et al.,<br><br>      Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. CV 04-00127<br>ACK/BMK |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation,<br><br>      Plaintiff, | )<br>)<br>)<br>)<br>)<br>) | CIVIL NO. CV 04-00128<br>ACK/BMK |

|  |  |
|---|---|
| vs. | ) |
| MILILANI GOLF CLUB, LLC, a Hawai`i limited liability company, et al., | ) ) ) ) |
| Defendants, | ) ) |
| and | ) |
| FRANKLIN K. MUKAI, | ) ) |
| Third-Party Plaintiff, | ) ) |
| vs. | ) ) |
| SPORTS SHINKO CO., LTD., a Japan corporation, et al., | ) ) ) |
| Third-Party Defendants. | ) ) ) |

## DECLARATION OF STEVE IWAMURA

I, STEVE IWAMURA, declare as follows:

1. I make this declaration based on personal knowledge and I am competent to testify to the matters set forth below.

2. I am a certified public accountant with my office in Osaka, Japan. During February, 2002 through April, 2004, I acted as the consultant for Trustee Mutsuo Tahara (the "Trustee"), Trustee in Bankruptcy during the then pending involuntary reorganization proceedings for Sports Shinko Co., Ltd., a Japan corporation. In that capacity, I also handled many administrative and substantive issues

for Sports Shinko (USA) Co., Ltd., a Delaware corporation ("SS USA"), as directed by Deputy Bankruptcy Trustee Keijiro Kimura.

3. My duties for the Trustee and Deputy Trustee Kimura regarding the U.S. Sports Shinko entities and properties included, among other things: (i) supervising accountants and attorneys doing work for the Sports Shinko companies; (ii) communicating with and directing Ms. Lucinda ("Cindy") Brown of Katron Group, Inc. in West Virginia as to matters concerning SS USA; (iii) communicating with and directing Thomas Hayes' work for Sports Shinko (Hawaii) Co., Ltd.; (iv) communicating with others winding up the business of SS USA; and (v) handling payments of fees to Mr. Hayes, Katron Group, Inc. (Ms. Brown), and others, all under the direction of the Trustee and Deputy Trustee.

4. I performed all of my duties for the Trustee and Deputy Trustee related to SS USA from my office in Osaka, Japan. As of February 20, 2004, all executive and managerial decisions with respect to SS USA were made by the Deputy Trustee, as approved by the Osaka District Court in Osaka, Japan. I acted based on the directions of the Trustee and Deputy Trustee in Osaka.

5. From the start of the bankruptcy in February, 2002 to its end in April, 2004, SS USA was engaged only in winding up the affairs of its subsidiaries in California, Hawai`i, and Florida, including

investigating and prosecuting various litigation, and had no business activities in the U.S.

  6. SS USA was at all relevant times a holding company that did not itself engage in any business in the United States. SS USA, as a holding company, was the parent of various subsidiaries that owned properties in California and Florida, and not exclusively in Hawai`i. The largest single asset owned by the SS USA group was the La Costa Resort & Spa in California ("La Costa"), which sold for $120,000,000.00 in November, 2001.

  7. As of February 20, 2004, SS USA was a defunct corporation; it owned no properties and engaged in no activities other than administrative activities incidental to winding down its operations and pursuing this and other litigation.

  8. In February, 2004, to the best of my knowledge the following was true:

  a. SS-USA did not hire, fire, or employ any employees in the State of Hawai`i.

  b. SS-USA owned no tangible property, including facilities, inventory, or fixed assets located in the State of Hawai`i.

  c. SS-USA did not have production or purchasing departments located in the State of Hawai`i.

  d. SS USA did not engage in manufacturing, sales or marketing activities in the State of Hawai`i.

e. SS USA did not derive income or revenue from sales in the State of Hawai`i.

f. SS USA did not maintain any inventory in the State of Hawai`i.

g. SS USA did not own property in the State of Hawai`i.

h. SS USA did not provide any services to any consumers in the State of Hawai`i.

i. SS USA had no executive or administrative offices located in the State of Hawai`i.

j. SS USA did not have corporate officers or administrative staff located in the State of Hawai`i.

k. SS USA did not perform any of its executive or administrative functions in the State of Hawai`i.

l. SS USA had no bank accounts in the State of Hawai`i.

m. SS USA engaged in no activities that involved any contact or visibility with the general public in Hawai`i.

n. SS USA maintained a bank account in West Virginia for administrative expenses.

o. SS USA's business records were stored in numerous locations in the United States and Japan, principally in the Sports Shinko offices in Osaka, Japan, and Katron's offices in Harper's Ferry, West Virginia.

9. In May 2002, after the bankruptcy filing of Sports Shinko Co., Ltd. in Osaka Japan, the Deputy Trustee in Bankruptcy retained Katron Group, Inc., ("Katron") located in Harper's Ferry, West Virginia, to assist in winding down SS USA and its California and Florida subsidiaries.

10. The Vice President of Katron, Lucinda Brown, (a.k.a. Cindy Brown), had a broad scope of activities on behalf of SS-USA. For example, Cindy Brown was authorized to communicate with attorneys, banks, insurers, and accountants on behalf of SS USA and its many California and Florida subsidiaries, as directed by the Deputy Trustee.

11. In August, 2002, the Trustee, through Deputy Trustee Keijiro Kimura, retained Mr. Thomas Hayes to assist in winding down SSH and its subsidiaries in Hawai`i. His role turned out to be very limited, primarily consisting of taking possession of and filing Sports Shinko (Hawaii) Co., Ltd.'s ("SS Hawaii") and their subsidiaries documents, functioning as the registered address of SS-Hawaii and its subsidiaries, and preparing a limited number of checks for SS-Hawaii and subsidiaries. Mr. Hayes did no work for SS USA. While certain tax forms were sent to Mr. Hayes by the IRS, he had no other involvement with the tax filings for SS USA.

12. Mr. Hayes' total billings for SSH and its subsidiaries from August, 2002 through January, 2005 were roughly $14,000.

13. SS USA made monthly payments to Katron for work performed by Ms. Brown in 2002 and 2003. I recall the billing rate being $175 an hour with the monthly billings fluctuating based upon the amount of work performed, ranging roughly between $3,000.00 to $5,000.00. These monthly payments gradually decreased in the second half of 2003, as the winding down of SS USA and its California and Florida subsidiaries approached completion. Katron still performs certain work for SS USA and its subsidiaries on occasion.

14. All work performed by Mr. Hayes and Ms. Brown were managed and directed by the Deputy Trustee and myself. From February 1, 2002 though December 31, 2002, I averaged about 70 hours a month working on various issues related to SS USA and subsidiaries. During the period January 1, 2003 though June 30, 2003, I averaged 40 hours a month on various issues related to SS USA and subsidiaries.

15. I reviewed Exhibits "6" and "7" to the KG Defendants' motion to dismiss. The notices were addressed to Mr. Hayes because they relate to the 401-k plans of SS-Hawaii subsidiaries.

16. I reviewed the 2004 email string in Exhibit "8" to the KG Defendants' motion to dismiss. While I stated that Tom Hayes "cut checks," Mr. Hayes in fact prepared only a limited number of checks for signature by Deputy Trustee Kimura for or related to SSH from an SSH account. My intent with this mail was for Grant

Thornton to obtain such payment records from him so the bookkeeping they were performing for SS-Hawaii and subsidiaries would be complete.

17.  I reviewed Exhibits "10", "11" and "12" to the KG Defendants' motion to dismiss.  Grant Thornton mistakenly used Mr. Hayes' address, contrary to my instructions to them on September 11, 2003 to utilize the West Virginia address of Lucinda Brown of Katron, Inc. for purposes of the SS USA tax returns.

*I declare under penalty of perjury under the Laws of the United States of America that the foregoing is true and correct.*

EXECUTED:   Osaka, Japan, January 25, 2007.

/s/  Steve Iwamura
STEVE IWAMURA