PRICE
OKAMOTO
HIMENO
& LUM

Attorneys at Law
A Law Corporation

Ocean View Center
707 Richards Street, Suite 728
Honolulu, Hawaii 96813
Telephone: (808) 538-1113
Fax: (808) 533-0549

Warren Price III
Kenneth T. Okamoto
Sharon R. Himeno
Bettina W. J. Lum
Terence S. Yamamoto
Robert M. Kohn

Counsel

Robert A. Marks
Rick J. Eichor
Susan C. Wilson
Norma D. Titcomb

October 14, 2005

<u>VIA MAIL AND E-MAIL</u>
Paul Alston, Esq.
Glenn T. Melchinger, Esq.
Alston Hunt Floyd & Ing
1001 Bishop Street
American Savings Tower, Suite 1800
Honolulu, Hawaii 96813

Re:  Sports Shinko Co. Ltd. v. QK Hotel, LLC,
     <u>D. Hawaii Cv. 04-00124 ACK-BMK and consolidated cases</u>

Dear Paul and Glenn:

We would like to meet and confer with you on the topics detailed in the enclosure. Bill Bordner and John Reyes-Burke may have additional topics.

Note that most of the discussion topics we have identified have been pending for a long time. Our questions about the inter-company debt attempt to further refine the formal discovery requests we presented to your clients on January 3, 2005. We hope with these refinements, we will be able to cut to the chase and identify the nature of your clients' creditor status (if indeed they are creditors).

The other major area we would like to meet and confer about will assist us in determining whether to join South Wind Realty Finance (Cayman) Company, The Goldman Sachs Group, Inc., Goldman Sachs & Co., Goldman Sachs (Japan), Limited, Goldman Sachs Realty Japan, Limited, Goldman Sachs Asset Management Co. Ltd., Japan Advisory Board, and/or other GS or GS-related entity as parties to this litigation.

We don't presently have the information we need to make determine which of these entities are proper third party defendants or otherwise joined to the litigation, although it appears that South Wind Realty Finance (Cayman) Company is a necessary party. While we sort this out, we request additional time to file our third party claims and counterclaims. Will you agree to extend time to November 30? Please let me know today, if possible.

We also invite you to consider whether you will represent any of these entities if they are joined, or whether these parties will obtain separate counsel.

**EXHIBIT 6**

Paul Alston, Esq.
Glenn T. Melchinger, Esq.
October 14, 2005
Page 2

    Please let me know when you are available to meet and confer.

                       Very truly yours,

                       PRICE OKAMOTO HIMENO & LUM

                       *[signature]*

                       Robert A. Marks

Enclosure

c:    Client
      William Bordner, Esq.

MEET AND CONFER DISCUSSION TOPICS
October 14, 2005

---

EQUITY OWNERSHIP/INTER-COMPANY FUNDING

1. Documents by which South Wind Realty Finance (Cayman) Company ("SW") acquired the capital stock of Sports Shinko Co., Ltd. ("SS-J").

   You produced the agreement between SS-J and SW to transfer the capital stock of Sports Shinko (USA) Co., Ltd. ("SS-USA") from SS-J to SW (256 0243 et seq.), but we have seen no documentation of the transfer of SS-J stock to SW.

2. Identify the shareholder(s) of SS-J as of 12/31/2003 and all changes in ownership of those shares between 1/1/2004 and present.

3. If SW obtained 100% of the stock of SS-USA on or about April 20, 2004 (see SS response to RFA No. 26), why is SW acquiring SS-USA shares from SS-J under the 9/30/2004 Share Transfer Agreement?

4. SS Document number 256 0283 indicates that SS-J held 13,200 SS-USA shares (99.2%) and Sanyo Kosan Co., Ltd. held 100 SS-USA shares (0.8%). What is the date of the SS-USA share ownership reported by 256 0283? Did SS-J acquire the 100 SS-USA shares from Sanyo Kosan? If so, provide the documents reflecting that transfer. If SW acquired the 100 SS-USA shares from Sanyo Kosan, then provide the documents reflecting that transfer.

5. Has SW acquired any loans owned by SS-USA similar to SW's acquisition of loans owned by SS-J under the 12/30/2004 Loan Purchase Agreement (256 0239 et seq.) (the "LPA") and related Supplement to Loan Purchase Agreement (256 0288 et seq.) (the "SLPA")?

6. Identify the lawsuits referred to in the first "whereas" clause of the SLPA, which refers to "claims asserted by [SS-J] in the lawsuits now pending in the State of Hawai'i USA".

7. Annex A to the LPA identifies 27 loans that SW acquired from SS-J effective 12/30/2004. Are the balances listed as "Outstanding Principal Amount" ("OPA") and "Unpaid Interests" ("UI") those amounts as of 12/30/2004?

8. What was the OPA and UI for each of the 27 loans as of (i) 01/25/2002; and, (ii) 04/15/2002?

9. Did SS-J own each of the 27 loans as of (i) 01/25/2002; and, (ii) 04/15/2002?

10. If SS-J did not own each of the loans on (i) 01/25/2002; and, (ii) 04/15/2002, produce the documentation that evidences SS-J's acquisition of each such loan, including from whom the loan was acquired, the consideration paid to acquire the loan and the date and terms of the transaction.

11. Annex A to the LPA and SLPA lists 8 loans owned by SS-J in which SS-H is shown as the borrower. Those 8 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---|
| 04/23/1986 | $6,167,500.00 |
| 04/23/1986 | $10,543,883.97 |
| 09/17/1986 | $7,227,144.32 |
| 10/02/1987 | $7,702,572.88 |
| 10/15/1987 | $10,206,307.77 |
| 10/15/1987 | $11,322,542.67 |
| 10/20/1987 | $0.00 |
| 10/30/1987 | $4,687,874.73 |

For each of these 8 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences SS-H's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves SS-H's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by SS-H, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to SS-H that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

12. Annex A to the LPA and SLPA lists 5 loans owned by SS-J in which Sports Shinko (Florida) Co., Ltd. (SS-F) is shown as the borrower. Those 5 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---|
| 09/21/1987 | $10,249,172.04 |
| 03/30/1990 | $3,000,000.00 |

| | |
|---|---|
| 04/13/1990 | $4,940,000.00 |
| 09/21/1992 | $3,000,000.00 |
| Not shown | $0.00 |

For each of these 5 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences SS-F's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves SS-F's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by SS-F, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to SS-F that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

13. Annex A to the LPA and SLPA lists 3 loans owned by SS-J in which SS-USA is shown as the borrower. Those 3 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---|
| 02/23/1989 | $6,560,000.00 |
| 02/15/1990 | $1,500,000.00 |
| 08/20/1991 | $251,500.00 |

For each of these 3 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences SS-USA's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves SS-USA's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by SS-USA, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to SS-USA that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

14. Annex A to the LPA and SLPA lists 2 loans owned by SS-J in which Ocean Resort Hotel Corporation (ORHC) is shown as the borrower. Those 2 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---|
| 02/23/1989 | $2,330,000.00 |
| 01/31/1990 | $410,000.00 |

For each of these 2 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences ORHC's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves ORHC's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by ORHC, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to ORHC that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

15. Annex A to the LPA and SLPA lists 3 loans owned by SS-J in which various SS-H subsidiaries are listed as the borrowers. Those 3 loans are identified as follows:

| Borrower | Date of Borrowing | Outstanding Principal Amount |
|---|---|---|
| Sports Shinko (Kauai) Co., Ltd. (SS-K) | 10/16/1990 | $1,600,000.00 |
| Sports Shinko (Mililani) Co., Ltd. | 08/31/1990 | $0.00 |

| | | |
|---|---|---|
| (SS-M) | | |
| Sports Shinko (Waikiki) Corp. (SS-W) | 06/05/1990 | ¥1,825,972,343 |

For each of these 3 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences each entities borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves each entities receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by each entity, or any of their affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to SS-K, SS-M and SS-W that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

16. Has SW acquired any loans owned by SS Hawaii or any of SS Hawaii's wholly-owned subsidiaries to SS-J, SS-USA or any of the subsidiaries or affiliates of SS-J or SS-USA?

17. Were credits given or offsets provided to SS Hawaii or any of its subsidiaries for any or all of the unpaid portion of their loans to a) SS-USA, b) SS-J, and/or c) SS operating companies?

18. In order to understand and evaluate SS-J's actions reflected by the financial statements for SS-USA and its subsidiaries, we need the complete general ledger with detail activity in support of the "12/31/2004 Balance Sheet", "2004 Income Statement" and "2004 Trial Balance", documents 256 0253 to 256 0282, inclusive. These data are needed for the entire time that the books and records of the subject entities were maintained by SS-J management or its nominees. We would also like you to identify the person(s) who maintain these documents and the underlying general ledgers.

19. Identify the amount of the debt outstanding as of 1/25/2002 that Sports Shinko (Mililani) Co., Ltd. ("SS-M") is alleged to have owed SS-USA.

20. Identify the amount of the debt outstanding as of 1/25/2002 that Sports Shinko (Pukalani) Co., Ltd. ("SS-P") is alleged to have owed SS-USA.

21. Identify the amount of the debt outstanding as of 1/25/2002 that Sports Shinko (Kauai) Co., Ltd. ("SS-K") is alleged to have owed SS-USA.

22. For each of the debts identified in the three preceding requests, produce:

    a. The promissory note that evidences the debt

    b. The documentation of the gross amounts allegedly loaned by SS-USA, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

    c. The documentation that proves receipt of the gross amounts allegedly loaned by SS-USA to SS-M, SS-P and SS-K, respectively.

    d. The documentation of the gross amounts paid by SS-M, SS-P and SS-K, respectively, or any of their affiliates, to SS-USA in payment on the alleged debt.

    e. The documentation of the amounts of alleged SS-USA loans to SS-M, SS-P and SS-K, respectively, that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

23. Identify the amount of the debt outstanding as of 4/15/2002 that Sports Shinko (Waikiki) Corporation ("SS-W") is alleged to have owed SS-J which is related to the Ocean Resort Hotel Waikiki.

24. Identify the amount of the debt outstanding as of 4/15/2002 that SS-W is alleged to have owed SS-J which is related to the Queen Kapiolani Hotel.

25. For each of the debts identified in the two preceding questions, produce:

    a. The promissory note that evidences the debt

    b. The documentation of the gross amounts allegedly loaned by SS-J, including the date(s) on which loan(s) were made and, if other than cash, the method used to determine the loan value.

    c. The documentation that proves receipt of the gross amounts allegedly loaned by SS-J to SS-W for each of the two properties.

    d. The documentation of the gross amounts paid by SS-W or any of SS-W's affiliates to SS-J in payment on the alleged debt.

    e. The documentation of the amounts of alleged SS-J loans to SS-W, that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

26. Produce copies of 2004 state and federal tax returns for SS-USA & subsidiaries, and all 2004 tax returns filed by or on behalf of SS-J.

27. Produce financial statements for the year ending December 31, 2004 for SS-USA and its subsidiaries and SW. If the financial statements have been reviewed, complied or audited by an accountant, we would also like the accountant's report.

28. Produce financial statements for SS-J for 2001, 2002, 2003 and 2004. (We believe the year-end cutoff is the end of the calendar year, but it may be March 31.) If the financial statements have been reviewed, compiled or audited by an accountant, also produce the related accountant's reports and any accountant's reports or letters to SS-J's management or board of directors during those periods.

29. Produce the complete general ledger with detail activity used to prepare SS-J's financial statements for 2002. We would also like you to identify the person(s) who maintain the 2002 general ledger.

## POSSIBLE ADDITIONAL PARTIES

30. We would like to have a generalized discussion of the relationships between South Wind Realty Finance (Cayman) Company, The Goldman Sachs Group, Inc., Goldman Sachs & Co., Goldman Sachs (Japan), Limited, Goldman Sachs Realty Japan, Limited, Goldman Sachs Asset Management Co. Ltd. and/or other GS or GS-related entity that had any involvement in the acquisition or control of the SS entities.

31. When was SW formed?

32. Where does SW have offices besides Cayman Islands and Tokyo? When was the Tokyo office of SW opened? Has SW's Japan office always been in the same location as the office of Goldman Sachs Realty Japan, Ltd.?

33. Who owns SW? Is it a wholly owned GS subsidiary (direct or indirect)? We are aware of instances where GS principals form companies that do business with GS entities. Is SW such a company?

34. Does SW engage in commercial transactions with entities not related to The Goldman Sachs Group, Inc., Goldman Sachs & Co., Goldman Sachs (Japan), Limited, Goldman Sachs Realty Japan, Limited, or Goldman Sachs Asset Management Co. Ltd.?

35. Is or was Milton Millman ("sole director" of SW as of 9/29/04) ever an employee, officer or director of any GS company?

36. Is or was Michihiro Chikabu ever an employee, officer or director of any GS company?

37. Is or was Yoshiaki Emori ever an employee, officer or director of any GS company?

38. Is SS-J affiliated with Accordia Golf Co.? What is the legal relationship?

## MISCELLANEOUS ITEMS

39. As we discussed in court last week, will you produce the McCorriston Miller Mukai McKinnon documents that are no longer privileged due to your clients' asserting claims against Mr. Mukai (as well as a log the documents you believe are still privileged)? As we've noted, we are particularly interested in the alleged "smoking gun" evidence of Mr. Mukai's misconduct as it relates to claims against KG entities.

40. Regarding Goldman Sachs's August 4, 2000 offer to purchase Pukalani golf course and Kiahuna golf course from SS-H ("GS offer"):

    a. Was this offer made in response to a listing of these and/or other SS Hawaii assets? If so, what other assets were offered for sale prior to the time the GS offer was received?

    b. Did SS respond to the GS offer in any way? Produce documents, if any.

    c. Identify the former GS employee involved in the GS offer, and provide information, if know, as to his or her present whereabouts.

41. When will we receive the privilege log for the Grant Thornton docs?

42. When will we receive the Hayes documents?

43. When will we receive the Grant Thornton study of inter-company loans and interest schedule (referenced on GT013032)?