IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SPORTS SHINKO CO., LTD., | ) | CV 04-00124 ACK-BMK |
| Plaintiff, | ) | CV 04-00125 ACK-BMK |
| | ) | CV 04-00126 ACK-BMK |
| vs. | ) | CV 04-00127 ACK-BMK |
| | ) | CV 04-00128 ACK-BMK |
| QK HOTEL, LLC, et al., | ) | |
| Defendants, | ) | CONSOLIDATED CASES |
| | ) | |
| and | ) | |
| | ) | |
| FRANKLIN K. MUKAI, et al., | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SPORTS SHINKO (USA) CO., LTD., et | ) | |
| al., | ) | |
| Third-Party Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SPORTS SHINKO (HAWAII) CO., LTD., | ) | |
| et al., | ) | |
| Third-Party Defendants/ | ) | |
| Counterclaimants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| QK HOTEL, LLC, et al., | ) | |
| Third-Party Counterclaim | ) | |
| Defendants. | ) | |
| | ) | |
| AND CONSOLIDATED CASES | ) | |
| ——————————————————————— | ) | |

ORDER GRANTING KG DEFENDANTS' MOTION TO DISMISS CIV. NOS. 04-
00125 ACK-BMK, 04-00126 ACK-BMK AND 04-00128 ACK-BMK
FOR LACK OF SUBJECT MATTER JURISDICTION

I.    **BACKGROUND**

The plaintiffs in these consolidated cases are Sports Shinko Co., Ltd., ("SS-Japan") and Sports Shinko (USA) Co., Ltd., ("SS-USA").  SS-Japan is the parent company of SS-USA.  SS-USA, in turn, is the parent of various Sports Shinko subsidiaries.  In these consolidated cases, the plaintiffs are creditors that are essentially complaining about the allegedly fraudulent transfer of property and assets in Hawaii from their subsidiaries (the debtors) to transferees (the defendants).[1/]

Before the Court today is a Motion To Dismiss Civ. Nos. 04-00125 ACK-BMK, 04-00126 ACK-BMK and 04-00128 ACK-BMK for Lack of Subject Matter Jurisdiction, brought by defendants KG Holdings, LLC, QK Hotel, LLC, OR Hotel, LLC, Pukalani Golf Club, LLC, and KG Maui Development, LLC (collectively "KG Defendants").  See Motion To Dismiss Civ. Nos. 04-00125 ACK-BMK, 04-00126 ACK-

---

[1/]The factual and procedural background of these consolidated cases can be found in the following orders previously issued by this Court: Order Denying Defendants' Motion for Summary Judgment in Civ. No. 04-00128 ACK-BMK (Mar. 29, 2006), Order Granting in Part and Denying in Part Defendants' Motion for Reconsideration (July 19, 2006), and Order Denying Motion To Expunge Lis Pendens (Sept. 28, 2006).  The third amended complaints involve the following counts: (1) violation of Haw. Rev. Stat. § 651C-5(a); (2) violation of Haw. Rev. Stat. § 651C-4; (3) aiding and abetting and/or conspiracy to violate Haw. Rev. Stat. ch. 651C; (4) breach of fiduciary duty; (5) aiding and abetting the breach of and/or conspiracy to breach fiduciary duties; (6) deepening the insolvency; (7) attorneys' fees; (8) rescission; (9) creditor fraud; and (10) unjust enrichment.  See, e.g., Third Amended Complaint (Pukalani), Civ. No. 04-00125 ACK-BMK (Jan. 19, 2007).

BMK and 04-00128 ACK-BMK for Lack of Subject Matter Jurisdiction
(November 16, 2006); Memorandum of Law in Support of Motion To
Dismiss Civ. Nos. 04-00125 ACK-BMK, 04-00126 ACK-BMK and 04-00128
ACK-BMK for Lack of Subject Matter Jurisdiction (November 16,
2006) ("Motion To Dismiss").[2/]  KG Defendants argue that this
Court lacks subject matter jurisdiction over the three complaints
filed by SS-USA because the Court's subject matter jurisdiction
is based on diversity of citizenship, and KG Defendants argue,
SS-USA is not diverse from KG Defendants because SS-USA was a
citizen of Hawaii at the time the complaints were filed.  See
Motion To Dismiss at 3.

        The plaintiffs SS-Japan and SS-USA, together with
third-party defendants Sports Shinko (Hawaii) Co., Ltd., Sports
Shinko (Mililani) Co., Ltd., Sports Shinko (Kauai) Co., Ltd.,
Sports Shinko (Pukalani) Co., Ltd., Sports Shinko Resort Hotel
Corporation, Sports Shinko (Waikiki) Corporation and Ocean Resort
Hotel Corporation, (collectively "Plaintiffs") filed an
Opposition, arguing that diversity of citizenship exists because
SS-USA was not a citizen of Hawaii when the lawsuits were filed.
See Opposition at 4 (Jan. 26, 2007).  KG Defendants filed a Reply
in support of the Motion To Dismiss.  See Reply (Feb. 1, 2007).

_____

        [2/]One defendant, Franklin K. Mukai, has not joined in nor
taken any position on the Motion To Dismiss.

The Court held a hearing on the motion on February 12, 2007.  At the request of the Court, Plaintiffs filed a supplemental memorandum on February 22, 2007 and KG Defendants filed a supplemental response on February 28, 2007.

## II.  STANDARD

A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).  "Once the moving party [converts] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

4

## III. DISCUSSION

SS-USA filed the instant actions based upon federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 ("Section 1332").  See, e.g., Third Amended Complaint, Civ. No. 04-00125 ACK-BMK at 3 (Jan. 19, 2007) (alleging subject matter jurisdiction pursuant to 28 U.S.C. § 1332).[3/]  Section 1332 confers subject matter jurisdiction upon federal courts over civil actions in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the action is between, inter alia, "citizens of different States." 28 U.S.C. § 1332(a).[4/]  Congress enacted this statute to "provide a separate forum for out-of-state citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the federal court."  S. Rep. No. 85-1830, at 5 (1958), as reprinted in 1958 U.S.C.C.A.N. 3099, 3101-02.

Section 1332 requires complete diversity for subject matter jurisdiction based upon diversity of citizenship: no defendant can have the same citizenship as any plaintiff.  Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 499

---

[3/]Plaintiffs allege no other basis for subject matter jurisdiction.

[4/]The Court finds, and the parties do not dispute, that the matter in controversy in each of the cases exceeds the sum or value of $75,000, exclusive of interest and costs.  See 28 U.S.C. § 1332(a).

(9th Cir. 2001); <u>see also</u> 28 U.S.C. § 1332(a).  In determining whether there is diversity between corporate parties, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ."  28 U.S.C. § 1332(c); <u>see also</u> <u>Tosco</u>, 236 F.3d at 499.  "Thus, corporations are citizens of both the state where they are incorporated and the state where they have their principal place of business."  <u>Tosco</u>, 236 F.3d at 499.

In amending the language of § 1332(c) in 1958 to make a corporation a citizen of the state where it has its principal place of business, Congress sought to eliminate "the evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another State."  S. Rep. No. 85-1830, at 5 (1958), <u>as reprinted in</u> 1958 U.S.C.C.A.N. 3099, 3101-02.

For purposes of determining the existence of diversity jurisdiction, the citizenship of the parties is determined with reference to the facts as they were at the time the lawsuit was filed.  <u>See</u> <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 569-71 (2004); <u>Stock West Corp. v. Taylor</u>, 964 F.2d 912, 917 (9th Cir. 1992).  "Any doubt as to whether jurisdiction exists is normally resolved <u>against</u> a finding of such jurisdiction."  <u>See</u>

6

Hon. David Hittner, Hon. William W. Schwarzer, Hon. A. Wallace
Tashima & James M. Wagstaffe, Federal Civil Procedure Before
Trial ¶ 2:233 (5th ed. 2006); see also Lew v. Moss, 797 F.2d 747,
749 (9th Cir. 1986) (party asserting diversity jurisdiction bears
the burden of proof); Kantor v. Wellesley Galleries, Ltd., 704
F.2d 1088, 1092 (9th Cir. 1983) (congressional grant of diversity
jurisdiction must be strictly construed); Seelye v. Cornthwaite,
Inc., No. CV-06-13-BU-SCO, 2007 WL 28460, at *3 (D. Mont. Jan. 3,
2007) (presumption is against jurisdiction; party asserting
jurisdiction has the burden of establishing jurisdiction; any
doubt about existence of jurisdiction is resolved against finding
jurisdiction) (quoting Federal Civil Procedure Before Trial ¶
2:233); China Basin Properties, Ltd. v. Allendale Mutual Ins.
Co., 818 F. Supp. 1301, 1303 (N.D. Cal. 1992) ("diversity statute
is strictly construed, and any doubts are resolved against
finding jurisdiction").

        The parties agree that KG Defendants were (and still
are) citizens of Hawaii.  See, e.g., Motion To Dismiss at 8;
Third Amended Complaint, Civ. No. 04-00125 ACK-BMK at 2-3.

        The parties agree that SS-USA was (and still is)
incorporated in Delaware.  See, e.g., Motion To Dismiss at 8;
Third Amended Complaint, Civ. No. 04-00125 ACK-BMK at 2.
Therefore, the parties agree that SS-USA is a citizen of Delaware
and that its Delaware citizenship does not destroy diversity

because no defendants are citizens of Delaware.  <u>See</u> 28 U.S.C. §
1332(c) (corporation is a citizen of state by which it has been
incorporated, in addition to state in which it has its principal
place of business).

At issue is whether, pursuant to Section 1332(c), SS-
USA had its principal place of business in Hawaii at the time the
lawsuits were filed, making SS-USA a citizen of Hawaii and thus
destroying diversity for purposes of subject matter jurisdiction.
In its original complaints, SS-USA alleges that its principal
place of business is in West Virginia.  <u>See, e.g.</u>, Complaint,
Civ. No. 04-00125 ACK-BMK at 2 (Feb. 20, 2004).[5/]  In its second
and third amended complaints, SS-USA revises its allegation,
stating that its "principal place of business is not in Hawaii."
<u>See, e.g.</u>, Second Amended Complaint, Civ. No. 04-00125 ACK-BMK at
2 (Jul. 12, 2005); Third Amended Complaint, Civ. No. 04-00125
ACK-BMK at 2.  In its Opposition, SS-USA argues that, at the time
the lawsuits were filed, it was (and still is) an inactive
corporation, and therefore it has no principal place of business
for purposes of diversity jurisdiction.  <u>See</u> Opposition at 11-
15.[6/]

---

[5/]The statement in one complaint that SS-USA's principal
place of business is in "Virginia" - as opposed to West Virginia
- appears to be a typographical error.  <u>See</u> Complaint, Civ. No.
04-00126 ACK-BMK (Feb. 20, 2004).

[6/]SS-USA argues in the alternative that, even if it was an
active corporation with a principal place of business, its

The applicable approach to determining a corporation's principal place of business varies depending on whether the corporation is active or inactive.[7/]  Accordingly, this Court must first determine whether SS-USA was inactive at the time it filed the instant lawsuits.  Only then can the Court determine what approach should be applied to identify SS-USA's principal place of business.

A.    Determination of Inactive Corporation Status

Courts have generally held that a corporation that has ceased business activity and is engaged in winding up operations is an inactive corporation.  In the Ninth Circuit's only decision on the subject, it found that a corporation could not be found inactive in a situation where it had "not formally terminated its operations and engaged in winding up procedures" and had not "permanently abandoned its efforts seeking investment opportunities and tax benefits."  Co-Efficient Energy Systems v. CSL Industries, Inc., 812 F.2d 556, 558 n.2 (9th Cir. 1987).  In that case, the corporation was created to engage in the business of buying energy management systems and generating tax shelters;

principal place of business would have been Japan or West Virginia, but not Hawaii.  See Opposition at 15-26.

[7/]See infra Section III.B. (discussing the approaches used to determine citizenship of an inactive corporation); see also Tosco Corporation v. Communities for a Better Environment, 236 F.3d 495 (9th Cir. 2001) (in a case concerning an active corporation, discussing the approaches used to determine principle place of business).

9

the corporation pursued this course of action with the defendant,
and such action was the basis of the lawsuit.  Id., 812 F.2d at
558 ("Simply because [the corporation] is not engaged in
traditional business activities in California, e.g.,
manufacturing goods or supplying services, it does not
necessarily follow that [the corporation] is an inactive
corporation and has no place of business.").

Similarly, the Third Circuit has defined an inactive
corporation as "a corporation that has ceased any and all
business activity." Midlantic National Bank v. Hansen, 48 F.3d
693, 695-96 (3d Cir. 1995) (finding company to be inactive where
it had no active subsidiary company, no business activities, and
its only activities related to pursuit of litigation).

A decision from the District of Arizona found a
corporation to be inactive where it ceased business activity and
began winding up old business.  See Comtec v. Nat'l Technical
Schools, 711 F. Supp. 522, 522 (D. Ariz. 1989) (corporation
inactive despite owning accounts receivable where it ceased
business activity, began winding up old business, closed its
offices, did not have any employees, and did not own any tangible
assets).  Likewise, a decision from the Northern District of
California defined an inactive corporation as one that has
"ceased any revenue-generating activities." Sellers v. Kohlberg
& Co., LLC, No. C 01-01365 WHA, 2001 WL 761187 at *1 n.1 (N.D.

10

Cal. June 29, 2001) (finding corporations to be "inactive" where they had not engaged in any revenue-generating activity for 22 months, even though they had renewed their registrations so as to retain active status with the Secretary of State during that time). See also Athena Automotive, Inc. v. DiGregorio, 166 F.3d 288, 289 (4th Cir. 1999) (corporation that ceased its business operations but maintained its corporate good standing with the Secretary of State and pursued litigation was inactive); Harris v. Black Clawson Co., 961 F.2d 547, 549-50 (5th Cir. 1992) (construction company with no business office, no employees or service personnel, and no ongoing business activities was inactive); Patel v. Sugen, Inc., 354 F. Supp. 2d 1098, 1101, 1113 (N.D. Cal. 2005) (corporation that laid off all employees and ceased operations was inactive); Homestake Lead Co. v. Doe Run Resources Corp., 282 F. Supp. 2d 1131, 1137 (N.D. Cal. 2003) (corporation that ceased all revenue-generating activity was inactive).

Following these precedents, this Court finds that for the purpose of determining diversity jurisdiction in the instant lawsuits, SS-USA was an inactive corporation when these lawsuits were filed.  According to multiple declarations submitted by Plaintiffs, at the time the instant lawsuits were filed on February 20, 2004, SS-USA engaged in no activities other than activities incidental to winding up its operations and pursuing

litigation.  <u>See</u> Brown Decl. at ¶14; Iwamura Decl. at ¶7.  SS-USA
was a "defunct corporation" at the time the lawsuits were filed.
<u>See</u> Iwamura Decl. at ¶7.

        That SS-USA may have indicated to some governmental
entities that it was an active corporation does not change this
Court's determination that, for diversity purposes, SS-USA was
inactive at the time the lawsuits were filed.  For example, that
SS-USA indicated in its 2004 Annual Franchise Tax Report for the
State of Delaware that it had no periods of inactivity is not
dispositive of whether SS-USA was inactive in February 2004.
<u>See, e.g.</u>, <u>Athena Automotive, Inc.</u>, 166 F.3d at 289 (finding
corporation inactive despite maintaining its corporate good
standing with the Secretary of State); <u>Harris v. Black Clawson
Co.</u>, 961 F.2d 547, 550 (5th Cir. 1992) (finding corporation
inactive despite its representations in annual reports and other
documents filed with the Secretary of State that its principal
place of business was in Louisiana); <u>Sellers</u>, 2001 WL 761187 at
*1 n.1 (finding corporations inactive despite renewing
registrations so as to retain active status with the Secretary of
State); <u>see also</u> <u>Insurance Corp. of Ireland, Ltd. v. Compagnie
des Bauxites de Guinee</u>, 456 U.S. 694, 702 (1982) (in a case
involving personal jurisdiction, finding that personal
jurisdiction could be waived but holding that subject matter
jurisdiction can never be waived and that "no action of the

parties can confer subject-matter jurisdiction upon a federal court").[8/]  The Court must look to the underlying facts, not merely the parties' representations, to make an independent determination of those facts.  See Mennen Co. v. Atlantic Mutual Ins., 147 F.3d 287, 293-94 (3d Cir. 1998).

Considering all of the evidence, the Court finds that SS-USA was inactive on February 20, 2004 when it filed the instant lawsuits.

**B.  Determination of an Inactive Corporation's Principal Place of Business**

**1.  Split of Authority**

The Ninth Circuit has not addressed what approach district courts should take to determine an inactive corporation's principal place of business under Section 1332(c). Other courts that have addressed the issue have adopted three

---

[8/]Likewise, that SS-USA had represented in court that it had a principal place of business in California in 2003 and 2004 (see infra footnote 13), or that SS-USA may have planned to open a bank account in Hawaii to deal solely with ongoing litigation (see Reply, Exhibit 25) do not transform SS-USA into an active corporation, considering that - at the time the lawsuits were filed - it was engaging in no business activity other than winding up its affairs and pursuing litigation.  See, e.g., Midlantic National Bank, 48 F.3d at 695-96 (corporation inactive despite engaging in activities related to pursuit of litigation); Comtec, 711 F. Supp. at 522 (corporation inactive despite owning accounts receivable where it had ceased business activity and had begun winding up old business).

In the same vein, that SS-USA was not registered to do business in Hawaii in 2004 is not dispositive proof that SS-USA was inactive in Hawaii or elsewhere in 2004.  See Opposition, Exhibit M-2 (Hawaii Department of Commerce and Consumer Affairs statement that SS-USA was not registered to do business in 2004).

differing approaches, as outlined below.

>    **a.   Second Circuit's "Last Business Transaction"
>          Approach**

The Second Circuit has adopted the approach that when a corporation is inactive, diversity jurisdiction "is determined not only by its state of incorporation, but also by the place it last transacted business." Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 141 (2d Cir. 1991). In other words, under the Second Circuit's approach, an inactive corporation's principal place of business under Section 1332(c) is in the state where it last transacted business.  Within the Ninth Circuit, at least three district court decisions have adopted this approach.  See China Basin Properties, Ltd. v. One Pass, Inc., 812 F. Supp. 1038, 1040-41 (N.D. Cal. 1993); China Basin Properties, Ltd. v. Allendale Mutual Ins. Co., 818 F. Supp. 1301, 1305 (N.D. Cal. 1992); Comtec, Inc. v. Nat'l Technical Schools, 711 F. Supp. 522, 525 (D. Ariz. 1989).  See also Ball v. Dynamic Details Inc., Arizona, No. CV-06-1661-PHX-FJM, 2007 WL 778410 at *3 (D. Ariz. Mar. 12, 2007) (finding the Second Circuit's bright line approach to be persuasive, but finding no need to choose between that approach and the Fourth and Fifth Circuit's approach because under either approach the parties lacked diversity).

The reasoning of the courts that have adopted this approach has focused on the conjunction "and" in the statute and

14

Congress' intent in amending the statute.  <u>See</u> <u>Sellers v.</u>
<u>Kohlberg & Co., LLC</u>, 2001 WL 761187 at *2 (summarizing the
approaches taken by various courts).  They have reasoned that the
"use of the conjunction 'and' implies that Congress intended all
elements to be met before diversity jurisdiction will attach."
<u>China Basin Properties, Ltd. v. One Pass, Inc.</u>, 812 F. Supp. at
1040.  Thus, they reason that because Congress amended § 1332(c)
to make a corporation a citizen of both its state of
incorporation and its principal place of business, the statute
contains the implicit assumption that <u>every</u> corporation (even an
inactive corporation) must have a principal place of business.
<u>Comtec</u>, 711 F. Supp. at 524.

        These courts caution that to adopt an approach in which
an inactive corporation has no principal place of business would
"allow inactive corporations to avoid inquiry into where they
were last active [and] would give them a benefit Congress never
planned for them, since under such a rule a defunct corporation,
no matter how local in character, could remove a case to federal
court based on its state of incorporation."  <u>Passalacqua</u>, 933
F.2d at 141.

> **b.   Third Circuit's "No Principal Place of
>        Business" Approach**

        The Third Circuit has adopted the approach that an
inactive corporation "has no principal place of business, and is
instead a citizen of its state of incorporation only."

<u>Midlantic</u>, 48 F.3d at 696.  This Court is aware of no district court decisions within the Ninth Circuit adopting the Third Circuit's approach.

In adopting its "no principal place of business" approach, the Third Circuit focused on what it called the "plain meaning" of the statue, noting that the statute uses the present tense verb "has."  <u>See id.</u> at 698; <u>see also</u> 28 U.S.C. § 1332(c) (". . . where it has its principal place of business . . .").  "Congress could easily [have] provided that a corporation shall be deemed a citizen of the state in which it 'has <u>or has had</u>' its principal place of business.  Clearly, however, Congress provided no such thing."  <u>Midlantic</u>, 48 F.3d at 698 (emphasis added).

### c.   Fourth and Fifth Circuits' "Case by Case" Approach

The Fourth and Fifth Circuits have adopted the middle ground approach that "where a corporation has been inactive in a state for a substantial period of time . . . that state is not the corporation's principal place of business."  <u>Harris v. Black Clawson Co.</u>, 961 F.2d 547, 551 (5th Cir. 1992); <u>see also</u> <u>Athena Automotive, Inc. v. DiGregorio</u>, 166 F.3d 288, 291 (4th Cir. 1999).  The question of whether the corporation has been inactive for a "substantial period of time" must be decided on a case by case basis.  <u>See</u> <u>Harris</u>, 961 F.2d at 551 n.10; <u>Athena Automotive</u>, 166 F.3d at 291.  If a corporation has not been inactive for a substantial amount of time, then under this approach, the place

16

of the corporation's last business activity would be relevant
(but not dispositive) in determining its principal place of
business.  See Harris, 961 F.2d at 551; Sellers v. Kohlberg &
Co., LLC, No. C 01-01365 WHA, 2001 WL 761187 at *3 (N.D. Cal.
June 29, 2001).

Within the Ninth Circuit, at least three district court
decisions have adopted the Fourth and Fifth Circuits' approach.
See Patel v. Sugen, Inc., 354 F. Supp. 2d 1098, 1112 (N.D. Cal.
2005); Homestake Lead Co. v. Doe Run Resources Corp., 282 F.
Supp. 2d 1131, 1137 (N.D. Cal. 2003); Sellers v. Kohlberg & Co.,
LLC, No. C 01-01365 WHA, 2001 WL 761187 at *3 (N.D. Cal. June 29,
2001).

In adopting this "case by case" approach, courts have
reasoned that the bright line approaches of the Second and Third
Circuits are too extreme and can lead to a reduction or expansion
of the scope of diversity jurisdiction not intended by Congress.
See Patel, 354 F. Supp. 2d at 1112.  Instead, the courts have
reasoned that a flexible, case by case approach strikes a
reasonable middle ground and considers the reality that: "A
corporation's business does not usually end with the abruptness
of closing its doors.  Even when a corporation has ceased all
operations and has become inactive, the continuing impact of its
business in a given locale could linger on to an extent
sufficient to give it a geographical identity there as a

17

principal place of business." Athena Automotive, 166 F.3d at

291; see also Patel, 354 F. Supp. 2d at 1112.

> ### 2.    Adoption of the Fourth and Fifth Circuits' "Case by Case" Approach

After careful consideration, this Court finds the "case

by case" approach adopted by the Fourth and Fifth Circuits to be

the best, most appropriate and comprehensive approach to

determining an inactive corporation's principal place of

business.  The Second and Third Circuits' approaches are overly

formalistic and therefore do not give enough deference to the

entire language of the statute and the purpose behind it.  See

Sellers, 2001 WL 761187 at * 3 (discussing the shortcomings of

the Second and Third Circuits' approaches).

For example, the Second Circuit's "last business

activity" approach would deny federal diversity jurisdiction to a

corporation that has ceased activity for such a long period of

time that there exists no more local ties or influences.  Id.

Such a corporation could face the very prejudices by local courts

and local juries that Congress sought to safeguard against, yet

the corporation would be denied diversity jurisdiction under the

Second Circuit's approach.  See S. Rep. No. 85-1830, at 5 (1958),

as reprinted in 1958 U.S.C.C.A.N. 3099, 3101-02 (Congress enacted

the statute to "provide a separate forum for out-of-state

citizens against the prejudices of local courts and local juries

by making available to them the benefits and safeguards of the

18

federal court").  Additionally, the Second Circuit's "last

business activity" approach could "lead to the odd result that an

inactive corporation may be held to have its principle place of

business in a jurisdiction in which it never would have been held

to have its principal place of business while it was active."

Harris, 961 F.2d at 551.[9]

        The Third Circuit's "no principal place of business"

approach could lead to an opposite - though equally odd - result

by permitting a local corporation to file a lawsuit in federal

court the day after it ceased business activities, despite the

---

[9] While the Ninth Circuit has not explicitly determined what
test to apply to determine an inactive corporation's principal
place of business, at least one court has interpreted the Ninth
Circuit as having rejected the Second Circuit's "last business
activity" approach.  See Patel, 354 F. Supp. 2d at 1112.  In
Stock West Corp. v. Taylor, the Ninth Circuit affirmed a district
court's finding of diversity jurisdiction, holding that Stock
West was an "Oregon corporation" where it was incorporated in
Oregon, had terminated its business operations in Washington
three years prior to filing the lawsuit, and had undertaken no
activity other than participating in the litigation since
terminating its business operations in Washington.  See Stock
West Corp. v. Taylor, 964 F.2d 912, 917 (9th Cir. 1992).  The
Ninth Circuit found that complete diversity existed because Stock
West was an "Oregon corporation" and defendant was a citizen of
Washington.  Id.  The Patel decision interprets the Ninth Circuit
as rejecting the "last business activity" approach since Stock
West's last business activity was in Washington - if the Ninth
Circuit had utilized the "last business activity" test, complete
diversity could not have existed.  See Patel, 354 F. Supp. 2d at
1112.  This Court declines to read Stock West as adopting or
rejecting any approach, since the Ninth Circuit did not make any
such explicit holding.  Rather, this Court views the Ninth
Circuit as not having addressed the specific issue of what test
to apply to determine an inactive corporation's principal place
of business.

local character of the corporation and the unlikelihood of prejudice in local courts.  Id.  In fact, the Third Circuit recognized that its approach may subvert the intent of Congress in such a case, since Congress amended § 1332(c) to prevent a local institution from bringing its litigation into federal court.  See Midlantic, 48 F.3d at 698; see also S. Rep. No. 85-1830, at 5 (1958), as reprinted in 1958 U.S.C.C.A.N. 3099, 3101-02.

        The Court adopts the "case by case" approach of the Fourth and Fifth Circuits because this approach avoids the odd consequences of the Second and Third Circuits' formalistic approaches and gives the greatest deference to the entire language of the statue as well as the legislative intent.  See Sellers, 2001 WL 761187 at *3.  By considering the residual impact of an inactive corporation's prior business activities upon the locality at the time of suit, the functional approach prevents a local corporation that very recently became inactive from filing the suit in federal court based on diversity jurisdiction; yet, it allows the filing of a federal suit for a corporation that very recently became inactive but has no local connections, or for a corporation that very recently became inactive but had a past principal place of business somewhere other than the place of its last activity.  Id.

Accordingly, this Court adopts the Fourth and Fifth Circuits' "case by case" approach to determining the principal place of business (if any) of an inactive corporation.[10]

### 3.   Application of the Fourth and Fifth Circuits' "Case by Case" Approach

The Court having determined that SS-USA was an inactive corporation at the time the lawsuits were filed and that it will apply the "case by case" approach to determine SS-USA's principal place of business, Plaintiff must demonstrate that it had been inactive for a substantial period of time when the instant lawsuits were filed.  See Harris, 961 F.2d at 551.  If Plaintiff had been inactive for a substantial period of time, its principal place of business cannot have been in Hawaii (and therefore complete diversity exists).  Id.  However, if Plaintiff cannot demonstrate that it had been inactive for a substantial period of time, for complete diversity to exist, Plaintiff must demonstrate that its principal place of business was not in Hawaii at the time the lawsuits were filed.  Id.

### a.   No Substantial Period of Inactivity

Courts have found periods of three, five and thirteen years to be substantial periods of inactivity under the "case by case" approach.  See Athena Automotive, 166 F.3d at 291 (three

---

[10]The Court notes that it would reach the same result in this order if it were to adopt the Second Circuit's "last business transaction" approach.

years is substantial); <u>Harris</u>, 961 F.2d at 549 (five years is
substantial); <u>Homestake Lead Co.</u>, 282 F. Supp. 2d at 1137
(thirteen years is substantial).  Conversely, courts have found
periods of half a year and less than two years to be
insubstantial periods of inactivity.  <u>See</u> <u>Patel</u>, 354 F. Supp. 2d
at 1113 (half a year is insubstantial); <u>Sellers</u>, 2001 WL 761187
at *4 (less than two years is insubstantial).

     The Court finds that SS-USA was inactive for less than
two years at the time the instant lawsuits were filed on February
20, 2004.  Plaintiffs' counsel conceded at the hearing that after
the sale of SS-USA's subsidiaries' properties in Hawaii in
January 2002, SS-USA still had "months" of work to do after the
closing because of the complex nature of the properties and that
SS-USA was engaged in "significant operations" during that time.
<u>See</u> Transcript of Defendants' QK Hotel, LLC, KG Holdings, LLC's
Motion To Dismiss Before the Honorable Alan C. Kay, United States
District Judge at 43-45 (Feb. 12, 2007) ("Transcript of
Hearing").  Plaintiffs' counsel did not dispute KG Defendants'
counsel's representation that the sale of the Waikiki properties
in Hawaii did not even close until <u>late April 2002</u> - less than
two years prior to the filing of the instant lawsuits.  <u>See</u>
Transcript of Hearing at 47.[11/]  Prior to the closing of the

_____

    [11/]The Court considers SS-USA's activities, but not those of
its subsidiaries, in making diversity jurisdiction determinations
because (as counsel for KG Defendants confirmed at the hearing)

Waikiki properties, SS-USA certainly maintained its business
activity of indirect ownership and management of resort
properties.

A September 2002 email from Mr. Iwamura (consultant for
the trustee in SS-Japan's reorganization proceeding in Japan)
indicated that tax returns for SS-USA and subsidiaries for 2002
should be handled in Hawaii because the "<u>only significant
remaining operations in 2002 were in Hawaii</u>."  <u>See</u> Reply, Exhibit
20 at GT034424 (emphasis added).  In January 2003, SS-USA's
outside accountants confirmed that "The trustees in Japan are

---

KG Defendants are not asking this Court to make an alter ego
finding for purposes of this Motion To Dismiss.  <u>See</u> <u>Danjaq, S.A.
v. Pathe Communications Corp.</u>, 979 F.2d 772, 775 (9th Cir. 1992)
("citizenship of a parent is distinct from its subsidiary where .
. . there is no evidence of an alter ego relationship").
However, as a holding company whose primary business is indirect
ownership and management of resort properties through wholly-
owned subsidiaries, SS-USA's business activities (even during the
heyday of the company) could be affected by property transactions
made by its subsidiaries.  In fact, Plaintiffs' counsel admitted
that SS-USA had to do work before and after the transaction in
January 2002, related to that transaction, despite the fact that
the properties were held by SS-USA's subsidiaries.  <u>See</u>
Transcript of Hearing at 43-44 ("In 2002, Sports Shinko USA, at
least for January, did at that time indirectly own a number of
resort properties in Hawaii.  And once the transaction closed –
you know, it's not like a light shutting off.  In terms of
accounting work, there's still reconciliations to be done related
to those.  You have to allocate . . . revenues and expenses from
before and after the closing."  As a result, "there were
<u>significant operations</u> in the earlier part of 2002," although
those significant operations would not continue into 2004.)
(emphasis added).  SS-USA was still engaged in its holding
company business immediately after its subsidiaries' January 2002
transactions closed and certainly until its subsidiaries'
transaction regarding the Waikiki property closed later that
year.

planning to switch control over the USA engagement from Vienna to Honolulu primarily because the time element makes it more convenient.  Plus, <u>they are doing things in Hawaii that may continue for a while</u>."  <u>See</u> Reply, Exhibit 20 at GT036787 (emphasis added).

Tellingly, approximately fifteen months before the instant lawsuits were filed, SS-USA represented that it had its principal assets and principal place of business in Hawaii - an unlikely representation for an inactive corporation.  On November 25, 2002, SS-Japan (the parent company of SS-USA) filed in the United States Bankruptcy Court for the District of Hawaii a Petition To Commence Case Ancillary To Foreign Proceeding Under 11 U.S.C. § 304.  <u>See</u> Motion To Dismiss, Exhibit 2 ("Bankruptcy Court Declaration").  In support of that petition, SS-Japan filed a declaration of Keijiro Kimura, its deputy trustee and the president of SS-USA.  <u>See</u> <u>id.</u>; <u>see also</u> Kimura Decl. at ¶¶2-7 (Jan. 26, 2007).  The declaration explicitly states that SS-USA is "a company with its principal place of business and principal assets located in [Hawaii]."  <u>See</u> Bankruptcy Court Declaration at ¶8.  Thus, according to SS-USA's president, in a sworn declaration subject to the penalty of perjury, as of November 20, 2002, <u>SS-USA had assets located in Hawaii, those assets in Hawaii were SS-USA's principal assets, and SS-USA maintained its principal place of business in Hawaii</u>.  These statements are

24

particularly compelling, given that they were volunteered, under
penalty of perjury, in a federal judicial forum in the State of
Hawaii - the same state where this district court is located.
See Etradeshow.com, Inc. v. Netopia Inc., No. Civ.A.3:03-CV-1380-
K, 2004 WL 515552 (N.D. Tex. Jan. 30, 2004) (in determining
diversity jurisdiction, finding statement made in judicial
complaint to be one piece of evidence demonstrating principal
place of business).[12]  It is unlikely that an inactive company
would make such representations that it maintained principal
assets and a principal place of business in the state.

        The United States Bankruptcy Court for the District of
Hawaii relied on the Bankruptcy Court Declaration to find venue

_____

        [12]The Court is not persuaded by Plaintiffs' argument that it
should disregard the Bankruptcy Court Declaration because
"[p]rincipal place of business for purposes of bankruptcy venue
is fundamentally different than principal place of business for
purposes of diversity jurisdiction." Opposition at 27.  The
principal place of business language contained in Section 1332(c)
is modeled, in part, on the principal place of business standard
found in the bankruptcy code.  See S. Rep. No. 85-1830 (1958), as
reprinted in 1958 U.S.C.C.A.N. 3099, 3102.  Courts have
recognized the similarity between the statutes and have used
bankruptcy precedent to guide their rulings on diversity of
citizenship.  See, e.g., Passalacqua, 933 F.2d at 141; Comtec,
711 F. Supp. at 524; cf. In re Commonwealth Oil Refining Co.,
Inc., 596 F.2d 1239, 1247 n. 17 (5th Cir. 1979) (noting that the
policy concerns underlying the diversity and bankruptcy statutes
are different because the diversity statute was intended to
reduce the availability of jurisdiction while the bankruptcy rule
was intended to expand venue choices; not commenting on the
similarity or dissimilarity of the phrase "principal place of
business" employed by each).  Therefore, the Court finds SS-USA's
statement in a bankruptcy proceeding regarding its principal
place of business and principal assets to be highly relevant
here.  See infra footnote 16.

appropriate in Hawaii and grant the petition.   See Motion To

Dismiss, Exhibit 3 (Order Granting Petition To Commence Case

Ancillary To Foreign Proceeding Under 11 U.S.C. § 304, Filed

November 25, 2002) (dated Feb. 11, 2003).[13]

    Moreover, at the conclusion of 2003 (less than two

months prior to the filing of the instant lawsuits), SS-USA was

not without significant assets.   For example, it had cash in a

Wells Fargo Bank checking account.   See Reply, Exhibit 29.[14]

This cash was in addition to SS-USA's "principal assets," which

_____

[13]The Court is troubled that SS-USA made contradictory
representations about its principal place of business within a
short time frame.   In November 2002, SS-USA represented to the
bankruptcy court that its principal place of business was Hawaii.
Then in February 2004, SS-USA represented to this Court that its
principal place of business was West Virginia.   These
representations were made in documents filed by the same
attorneys, a fact that makes the apparent contradiction even more
troubling.   Moreover, in April 2003 and again in February 2004
(the same month the instant lawsuits were filed), SS-USA
represented to a third court in California that its principal
place of business was California.   See Motion To Dismiss,
Exhibits 13-14.   SS-USA has not provided this Court with an
adequate explanation of its inconsistency.   For example, Mr.
Kimura's statement now that he is not the appropriate person to
interpret SS-USA's "principal place of business" appears somewhat
disingenuous.   See Kimura Decl. at ¶17.   It appears to this Court
that SS-USA may have engaged in some questionable tactics in
making contradictory representations to different courts in order
to shop for its preferred forum for each action.

[14]The SS-USA address where the Wells Fargo statement was
mailed is in Harpers Ferry, West Virginia (the address of Lucinda
Brown of Katron Group, Inc., - a consulting company that assists
corporations with managing their assets and business affairs -
who was hired as an outside consultant to assist SS-USA).   See
Reply, Exhibit 29; see also Brown Decl. at ¶¶2-3.   The account
was opened at a Wells Fargo branch in Southern California.   See
Iwamura Supp. Decl. at ¶4.

were located in Hawaii.  <u>See</u> Bankruptcy Court Declaration at ¶8.
According to tax records, SS-USA had assets in the six figures at
the end of 2003.  <u>See</u> Cohan Decl. at ¶7.  Almost all of SS-USA's
assets consisted of its investment in subsidiaries.  <u>Id.</u>  Of SS-
USA's investment in subsidiaries, at least 68% was in its Hawaii
subsidiaries.  <u>Id.</u> at ¶¶12-13.

After considering all of the evidence submitted by the
parties,[15/] the Court concludes that SS-USA was inactive for less
than two years at the commencement of the instant lawsuits and
that this period of inactivity is not a "substantial period of
inactivity."  <u>See</u> <u>Sellers</u>, 2001 WL 761187 at *4.  Accordingly,
the Court must ascertain whether SS-USA's principal place of
business was Hawaii at the time the lawsuits were filed.

### b.    Principal Place of Business

Since SS-USA was not inactive for a substantial amount
of time before the lawsuits were filed, under the "case by case"
approach, the place of SS-USA's last business activity is

---

[15/]Although SS-USA has submitted some evidence that it was
inactive for the two year period prior to commencement of the
instant lawsuits, the Court finds SS-USA's evidence to be
contradicted by - and far outweighed by - the evidence discussed
in the text of this order.  For example, while representations by
SS-USA officers and consultants that SS-USA was inactive in
February 2004 remain largely unchallenged, see supra Section
III.A., representations that the period of inactivity began in
January or February of 2002 are contradicted by the evidence
discussed herein.  SS-USA has failed to explain why the evidence
discussed in the text of this order does not demonstrate business
activity.

relevant in determining where its principal place of business was at the time the lawsuits were filed.  See Harris, 961 F.2d at 551; Sellers v. Kohlberg & Co., LLC, No. C 01-01365 WHA, 2001 WL 761187 at *3 (N.D. Cal. June 29, 2001).  In this case, SS-USA's last business activity appears to have taken place in Hawaii.

    In November 2002, approximately fifteen months before the instant lawsuits were filed, SS-USA believed that its principal assets were located in Hawaii, and that its principal place of business was in Hawaii.  See Bankruptcy Court Declaration at ¶8.  SS-USA expressed these beliefs in a sworn declaration, made by its president, under the penalty of perjury.[16]

---

    [16]Since this is an issue of subject matter jurisdiction, the Court declines to apply the doctrine of judicial estoppel to prohibit SS-USA from arguing that it had a principal place of business outside of Hawaii in November 2002, when it made a contrary representation to the bankruptcy court.  See Insurance Corp. of Ireland, Ltd. v. Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("principles of estoppel do not apply" to determinations of subject matter jurisdiction); see also American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17-18 (1951).  Likewise, the Court declines to apply the doctrine of judicial admission to SS-USA's prior statement, made in a declaration in the unrelated bankruptcy proceeding.  Cf. Tosco, 236 F.3d at 502 (finding that plaintiff's representation in a prior lawsuit that its principal place of business was California "undermines" its current argument that its principal place of business is not California, but not discussing or applying the doctrine of judicial admissions to establish the prior representation as a fact that could not be challenged); but see Gradetech, Inc. v. American Employers Group, No. C 06 02991 WHA, 2006 WL 1806156 (N.D. Cal. June 29, 2006) (finding that allegations of principal place of business made in complaints in prior unrelated lawsuits were judicial admissions, binding upon defendants in current lawsuit). Nonetheless, the Court can and does consider SS-USA's prior

As discussed <u>supra</u> Section III.B.3.a., it appears that
SS-USA was engaging in business activity related to the
management and sale of properties in Hawaii owned by its
subsidiaries well into 2002 - the closing of some of the
properties did not even take place until months after the
targeted closing date of January 25, 2002.[17/]  For a company whose
business was (and always had been) indirect ownership and
management of resort properties, working on property transactions
and their ramifications, and continuing to indirectly own and

---

representation as a relevant piece of evidence to be used in
determining its principal place of business.  <u>See, e.g.</u>, <u>Harris</u>,
961 F.2d at 551 n. 11; <u>Etradeshow.com, Inc.</u>, 2004 WL 515552 at
*1.  Indeed, SS-USA's prior representation to the bankruptcy
court - indicating that it believed fifteen months prior to the
instant lawsuits that its principal assets were located in Hawaii
and that its principal place of business was in Hawaii - is
highly indicative of where SS-USA's principal place of business
was at that time.  <u>See also</u> <u>supra</u> footnote 12.

[17/]Certain additional real property on Maui was not
transferred on the January 25, 2002 closing date due to errors in
the property descriptions provided by the title company.  <u>See</u> KG
Defendants' Supplemental Memorandum, Exhibit 34.  That property
was the subject of litigation in Hawaii state court between SS-
USA's subsidiaries and KG Defendants, which resulted in an order
by the state court on February 21, 2007 directing that a
correction deed be executed to transfer title to KG Defendants.
<u>See</u> Melchinger Second Supp. Decl. at ¶ 6.  For purposes of this
order, this Court will assume that the subsidiaries' continued
ownership of the disputed Maui property during litigation did not
result in any business activity on SS-USA's part.  Plaintiffs'
counsel and email documentation indicated that SS-USA undertook
some business activity related to all of the property
transactions, both before and after the transactions closed;
however, the parties have not submitted evidence that SS-USA
conducted separate business activities specifically with respect
to the Maui property after that time.

29

manage some resort properties (in Waikiki), constitutes ongoing
business activity.  Cf. Transcript of Hearing at 37 (Plaintiffs'
counsel stating that "I think Sports Shinko USA at the time when
it indirectly owned properties in Hawaii[,] it conducted business
with respect to, you know, its role as the shareholder of guiding
at a high level the operations of the Hawaii subsidiaries.").

        Indeed, Mr. Iwamura (a CPA and consultant for the
trustee in SS-Japan's reorganization proceeding in Japan)
indicated in an email in September 2002 that tax returns "for SS-
USA and subsidiaries" should be handled by Grant Thornton (an
accountant firm under contract with SS-USA) in Hawaii because the
"only significant remaining operations in 2002 were in Hawaii."
See Reply, Exhibit 20 (emphasis added); see also Reply, Exhibit
20 at GT036787 (email in which outside accountant states: "The
trustees in Japan are planning to switch control over the USA
engagement from Vienna to Honolulu primarily because the time
element makes it more convenient.  Plus, they are doing things in
Hawaii that may continue for a while.") (emphasis added).

        Around December 2003 and January 2004, SS-USA took the
affirmative step of changing its address of record with the
Internal Revenue Service from West Virginia to Hawaii.  See
Reply, Exhibit 20.1 (Change of Address, Form 8822).  Although
such action is not dispositive of where SS-USA's principal place
of business was located at that time, certainly, such action does

not indicate that SS-USA was moving its principal assets <u>out of</u>
<u>Hawaii</u> or changing its principal place of business <u>from Hawaii</u> to
West Virginia or elsewhere.   SS-USA listed its address as Hawaii
in its 2003 U.S. Corporation Income Tax Return.   <u>See</u> Motion To
Dismiss, Exhibit 11.[18]

---

[18]The Court notes that it considers SS-USA's activities, but
not those of its subsidiaries, in making diversity jurisdiction
determinations because (as counsel for KG Defendants confirmed at
the hearing) KG Defendants are not asking this Court to make an
alter ego finding for purposes of this Motion To Dismiss.   <u>See</u>
<u>Danjaq, S.A. v. Pathe Communications Corp.</u>, 979 F.2d 772, 775
(9th Cir. 1992) ("citizenship of a parent is distinct from its
subsidiary where . . . there is no evidence of an alter ego
relationship").   In this case, consultant Thomas Hayes was hired
to do work for SS-USA's Hawaii subsidiaries, but not for SS-USA
itself.   <u>See</u> Opposition, Exhibit H-2 (engagement letter).   While
it appears that Mr. Hayes' engagement may have changed somewhat
over time, to permit SS-USA to use his mailing address in Hawaii,
the parties have presented no evidence that Mr. Hayes engaged in
any business activity on behalf of SS-USA other than receiving
its mail.   <u>See, e.g.</u>, Reply, Exhibit 20.1.
    Of note, California tax documents also list a Hawaii address
for SS-USA.   <u>See</u> Motion To Dismiss, Exhibits 10-11; Reply,
Exhibit 20.1.   The parties have not submitted any SS-USA tax
documents for the State of Hawaii, nor indicated for what years
SS-USA may have filed a Hawaii tax return.

Considering all of the evidence presented,[19] the Court finds that SS-USA has not met its burden of demonstrating that its principal place of business was not Hawaii.  See Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986) (party asserting diversity jurisdiction bears the burden of proof).  Accordingly, the Court finds that SS-USA's principal place of business was in Hawaii at the time the instant lawsuits were filed.[20]  At the time the instant lawsuits were filed, SS-USA retained a local character and presence that had not been lost by the passage of time.

---

[19]SS-USA has presented some evidence that its last business activity and principal place of business were not in Hawaii.  For example, SS-USA was not registered to do business in Hawaii in 2002-2004 and it represented to a California state court in 2003 and 2004 that its principal place of business was California. See Opposition, Exhibit M-2; Plaintiffs' Supplemental Memorandum, Exhibits M-9 and M-10; Motion To Dismiss, Exhibits 13-14. Additionally, Mr. Kimura now states that in 2002 (at the time he signed the Bankruptcy Court Declaration stating that SS-USA's principal place of business was Hawaii), SS-USA's principal place of business was probably West Virginia or Japan.  See Kimura Decl. at ¶¶17-18.  However, the Court finds that this evidence is contracted by (and far outweighed by) the evidence discussed in the text of this order that SS-USA's last business activity and principal place of business were in Hawaii.

[20]Since this Court determined that SS-USA was inactive at the time it filed the instant lawsuits, the traditional tests for determining an active corporation's principal place of business - the place of operations test and the nerve center test - were not applied.  However, the Court notes that even under these tests, SS-USA's principal place of business was Hawaii at the time these lawsuits were filed.  Under the place of operations test, Hawaii contained a substantial predominance of SS-USA's corporate operations.  See Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 500 (9th Cir. 2001).  Moreover, the nerve center test would be inapplicable because Hawaii contained such a substantial predominance.  Id.

## IV.   CONCLUSION

The Court is mindful that it is a court of limited jurisdiction, and any doubts as to whether jurisdiction exists must be resolved against a finding of jurisdiction.[21/]  Applying the Fourth and Fifth Circuits' "case by case" approach to determine an inactive corporation's principal place of business, the Court finds that SS-USA's principal place of business at the time these lawsuits were filed was in Hawaii.  Since SS-USA and KG Defendants are citizens of Hawaii, the Court finds that complete diversity does not exist between the parties.  Furthermore, the Court finds that SS-USA is not likely to face any prejudices in the local courts or by local juries if it chooses to bring suit in state court.

Accordingly, the Court grants KG Defendants' Motion To Dismiss Civ. Nos. 04-00125 ACK-BMK, 04-00126 ACK-BMK and 04-00128

---

[21/]See Hon. David Hittner, Hon. William W. Schwarzer, Hon. A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial ¶ 2:233 (5th ed. 2006); see also Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986) (party asserting diversity jurisdiction bears the burden of proof); Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1092 (9th Cir. 1983) (congressional grant of diversity jurisdiction must be strictly construed); Seelye v. Cornthwaite, Inc., No. CV-06-13-BU-SCO, 2007 WL 28460, at *3 (D. Mont. Jan. 3, 2007) (presumption is against jurisdiction; party asserting jurisdiction has the burden of establishing jurisdiction; any doubt about existence of jurisdiction is resolved against finding jurisdiction) (quoting Federal Civil Procedure Before Trial ¶ 2:233); China Basin Properties, Ltd. v. Allendale Mutual Ins. Co., 818 F. Supp. 1301, 1303 (N.D. Cal. 1992) ("diversity statute is strictly construed, and any doubts are resolved against finding jurisdiction").

ACK-BMK for Lack of Subject Matter Jurisdiction.[22/]  The complaints in Civ. Nos. 04-00125 ACK-BMK, 04-00126 ACK-BMK, and 04-00128 ACK-BMK are hereby dismissed without prejudice to bring suit in the appropriate forum.[23/]

Since this Court lacked subject matter jurisdiction over these three cases from their inception, the Court hereby vacates the following prior orders: Order Denying Defendants' Motion for Summary Judgment in Civ. No. 04-00128 ACK-BMK (Mar. 28, 2006); Order Granting in Part and Denying in Part Defendants' Motion for Reconsideration, Civ. No. 04-00128 ACK-BMK (July 19, 2006); Order Denying Motion To Expunge Lis Pendens, Civ. No. 04-00125 ACK-BMK (Sept. 28, 2006).[24/]

---

[22/]KG Defendants' cursory request for a continuance, which does not meet the standards set forth in Federal Rule of Civil Procedure 56(f), is moot since the Court grants KG Defendants' Motion To Dismiss.  See Reply at 18 (requesting a continuance if "the Court harbors any doubt about whether this Motion should be granted").

[23/]KG Defendants have not challenged this Court's subject matter jurisdiction over the two remaining consolidated lawsuits, Civ. Nos. 04-00124 ACK-BMK and 04-00127 ACK-BMK, in which SS-Japan is the named plaintiff.

[24/]With dismissal of Civ. No. 04-00125 ACK-BMK, it appears that the Notice of Pendency of Action filed in the State of Hawaii Bureau of Conveyances and the State of Hawaii Office of Assistant Registrar regarding Civ. No. 04-00125 ACK-BMK should be expunged and that the appeal to the Ninth Circuit of this Court's Order Denying Motion To Expunge Lis Pendens has been rendered moot.

34

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 5, 2007.



_____
Alan C. Kay
Sr. United States District Judge

Sports Shinko Co., Ltd. v. QK Hotel, LLC, et al., Civ. Nos. 04-00124 ACK-BMK,
04-00125 ACK-BMK, 04-000126 ACK-BMK, 04-000127 ACK-BMK, 04-00128 ACK-BMK
(Consolidated Cases), Order Granting KG Defendants' Motion To Dismiss Civ.
Nos. 04-00125 ACK-BMK, 04-000126 ACK-BMK and 04-00128 ACK-BMK for Lack of
Subject Matter Jurisdiction.