PRICE OKAMOTO HIMENO & LUM

WARREN PRICE III            1212
ROBERT A. MARKS            2163
707 Richards Street, Suite 728
Honolulu, Hawaii  96813
Phone: 808.538.1113
Fax: 808.533.0549
e-mail: ram@pohlhawaii.com

GELBER GELBER INGERSOLL & KLEVNSKY

SIMON KLEVANSKY            3217-0
ALIKA L. PIPER            6949-0
CARISA LIMA KA'ALA HEE 7372-0
Suite 1400, Fort Street Tower
745 Fort Street
Honolulu, Hawaii  96813
Phone:  (808) 524-0155
Fax:  (808) 531-6963
E-mail: sklevansky@ggik.com
        apiper@ggik.com;
        kaalahee@ggik.com

Attorneys for Defendants, Counterclaimants
and Third-Party Plaintiffs KG HOLDINGS,
LLC, KIAHUNA GOLF CLUB, LLC,
KG KAUAI DEVELOPMENT, LLC,
PUKALANI GOLF CLUB, LLC,
KG MAUI DEVELOPMENT, LLC,
MILILANI GOLF CLUB, LLC,
QK HOTEL, LLC, AND OR HOTEL, LLC,

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation,<br><br>        Plaintiff,<br><br>     vs. | CV 04-00124 ACK-BMK CONSOLIDATED CASES REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CV NOS. 04-00125 ACK-BMK, 04-00126 ACK-BMK AND |

QK HOTEL, LLC, a Hawaii limited liability company, KG HOLDINGS LLC, a Hawaii limited liability company, FRANKLIN K. MUKAI,

      Defendants,

    and

FRANKLIN K. MUKAI, QK HOTEL, LLC, a Hawaii limited liability company and KG HOLDINGS LLC, a Hawaii limited liability company,

      Third-Party Plaintiffs,

    vs.

SPORTS SHINKO (KAUAI) CO., LTD., a Hawaii corporation, SPORTS SHINKO (WAIKIKI) CORPORATION, a Hawaii corporation, SPORTS SHINKO (MILILANI) CO., LTD., a Hawaii corporation, SPORTS SHINKO (PUKALANI) CO., LTD., a Hawaii corporation, and SPORTS SHINKO (HAWAII) CO., LTD., a Hawaii corporation and SPORTS SHINKO RESORT HOTEL CORPORATION, a Hawaii corporation,

      Third-Party Defendants,

    and

SPORTS SHINKO (HAWAII) CO., LTD., a Hawai'i corporation; SPORTS SHINKO RESORT HOTEL

04-00128 ACK-BMK;
DECLARATION OF TAKEO KOSUGI; DECLARATION OF ROBERT A. MARKS; EXHIBITS 17-30; CERTIFICATE OF WORD COUNT; CERTIFICATE OF SERVICE
HEARING
DATE:   February 12, 2007
TIME:   9:30 a.m.
JUDGE:  Hon. Alan C. Kay

CORPORATION, a Hawai'i
corporation; and SPORTS SHINKO
(WAIKIKI) CORPORATION, a Hawai'i
corporation,

        Third-Party Defendants /
        Counterclaimants,

    vs.

QK HOTEL, LLC, a Hawai'i limited
liability company; KG HOLDINGS,
LLC, a Hawai'i limited liability
company; and FRANKLIN K. MUKAI,

        Third-Party Counterclaim
        Defendants
_____

SPORTS SHINKO (USA) CO., LTD.,        CV 04-00125 ACK-BMK
a Delaware corporation,

        Plaintiff,

    vs.

PUKALANI GOLF CLUB, LLC, a
Hawaii limited liability company and
KG MAUI DEVELOPMENT, LLC, a
Hawaii limited liability company, KG
HOLDINGS LLC, a Hawaii limited
liability company, FRANKLIN K.
MUKAI,

        Defendants,

    and

FRANKLIN K. MUKAI, PUKALANI
GOLF CLUB, LLC, a Hawaii limited
liability company and KG MAUI

DEVELOPMENT, LLC, a Hawaii
limited liability company and KG
HOLDINGS LLC, a Hawaii limited
liability company

       Third-Party Plaintiffs,

   vs.

SPORTS SHINKO (KAUAI) CO.,
LTD., a Hawaii corporation, SPORTS
SHINKO (WAIKIKI)
CORPORATION, a Hawaii
corporation, SPORTS SHINKO
(MILILANI) CO., LTD., a Hawaii
corporation, SPORTS SHINKO
(PUKALANI) CO., LTD., a Hawaii
corporation, and SPORTS SHINKO
(HAWAII) CO., LTD., a Hawaii
corporation and SPORTS SHINKO
RESORT HOTEL CORPORATION,
a Hawaii corporation,

       Third-Party Defendants,

   and

SPORTS SHINKO CO., LTD., a
Japanese corporation; SPORTS SHINKO
(HAWAII) CO., LTD., a Hawai'i
corporation; and SPORTS SHINKO
(PUKALANI) CO., LTD., a Hawai'i
corporation,

       Third-Party Defendants /
       Counterclaimants,

   vs.

PUKALANI GOLF CLUB, LLC, a

4

Hawai'i limited liability company; KG
MAUI DEVELOPMENT, LLC, a
Hawai'i limited liability company; KG
HOLDINGS, LLC, a Hawai'i limited
liability company; and FRANKLIN K.
MUKAI,

       Third-Party Counterclaim
       Defendants.

---

SPORTS SHINKO (USA) CO., LTD.,
a Delaware corporation,

       Plaintiff,

   vs.

KIAHUNA GOLF CLUB, LLC, a
Hawaii limited liability company; KG
KAUAI DEVELOPMENT, LLC, a
Hawaii limited liability company;
PUKALANI GOLF CLUB, LLC, a
Hawaii limited liability company; KG
MAUI DEVELOPMENT, LLC, a
Hawaii limited liability company;
MILILANI GOLF CLUB, LLC, a
Hawaii limited liability company; QK
HOTEL, LLC, a Hawaii limited
liability company; OR HOTEL, LLC,
a Hawaii limited liability company;
KG HOLDINGS, LLC, a Hawaii
limited liability company,
FRANKLIN K. MUKAI,

       Defendants,

   and

FRANKLIN K. MUKAI, KIAHUNA
GOLF CLUB, LLC, a Hawaii limited

CV 04-00126 ACK-BMK

liability company; KG KAUAI
DEVELOPMENT, LLC, a Hawaii
limited liability company;
PUKALANI GOLF CLUB, LLC, a
Hawaii limited liability company; KG
MAUI DEVELOPMENT, LLC, a
Hawaii limited liability company;
MILILANI GOLF CLUB, LLC, a
Hawaii limited liability company; QK
HOTEL, LLC, a Hawaii limited
liability company; OR HOTEL, LLC,
a Hawaii limited liability company;
and KG HOLDINGS, LLC, a Hawaii
limited liability company,

       Third-Party Plaintiffs,

  vs.

SPORTS SHINKO (KAUAI) CO.,
LTD., a Hawaii corporation, SPORTS
SHINKO (WAIKIKI)
CORPORATION, a Hawaii
corporation, SPORTS SHINKO
(MILILANI) CO., LTD., a Hawaii
corporation, SPORTS SHINKO
(PUKALANI) CO., LTD., a Hawaii
corporation, SPORTS SHINKO
(HAWAII) CO., LTD., a Hawaii
corporation and SPORTS SHINKO
RESORT HOTEL CORPORATION,
a Hawaii corporation,

       Third-Party Defendants,

  and

SPORTS SHINKO (HAWAII) CO.,
LTD., a Hawai'i corporation and
SPORTS SHINKO (KAUAI) CO.,

LTD., a Hawai'i corporation,

       Third-Party Defendants /
       Counterclaimants,

    vs.

KIAHUNA GOLF CLUB, LLC, a
Hawaii limited liability company; KG
KAUAI DEVELOPMENT, LLC, a
Hawai'i limited liability company;
PUKALANI GOLF CLUB, LLC, a
Hawai'i limited liability company; KG
MAUI DEVELOPMENT, LLC, a
Hawai'i limited liability company; QK
HOTEL, LLC, a Hawai'i limited
liability company; OR HOTEL, LLC,
a Hawai'i limited liability company;
KG HOLDINGS, LLC, a Hawai'i
limited liability company; and
FRANKLIN K. MUKAI,

       Third-Party Counterclaim
       Defendants.

_____

SPORTS SHINKO CO., LTD., a
Japanese corporation,

       Plaintiff,

    vs.

OR HOTEL, LLC, a Hawaii limited
liability company, KG HOLDINGS,
LLC, a Hawaii limited liability
company, FRANKLIN K. MUKAI,

       Defendants,

    and

CV 04-00127 ACK-BMK

FRANKLIN K. MUKAI, OR HOTEL,
LLC, a Hawaii limited liability
company and KG HOLDINGS, LLC,
a Hawaii limited liability company,

       Third-Party Plaintiffs,

   vs.

SPORTS SHINKO (KAUAI) CO.,
LTD., a Hawaii corporation, SPORTS
SHINKO (WAIKIKI)
CORPORATION, a Hawaii
corporation, SPORTS SHINKO
(MILILANI) CO., LTD., a Hawaii
corporation, SPORTS SHINKO
(PUKALANI) CO., LTD., a Hawaii
corporation, SPORTS SHINKO
(HAWAII) CO., LTD., a Hawaii
corporation and SPORTS SHINKO
RESORT HOTEL CORPORATION,
a Hawaii corporation,

       Third-Party Defendants,

   and

SPORTS SHINKO (HAWAII) CO.,
LTD., a Hawai'i corporation;
SPORTS SHINKO RESORT HOTEL
CORPORATION, a Hawai'i
corporation; and SPORTS SHINKO
(WAIKIKI) CORPORATION, a
Hawai'i corporation,

       Third-Party Defendants /
       Counterclaimants,

   vs.

8

OR HOTEL, LLC, a Hawai'i limited
liability company; KG HOLDINGS,
LLC, a Hawai'i limited liability
company; and FRANKLIN K.
MUKAI,

       Third-Party Counterclaim
       Defendants.

_____

SPORTS SHINKO (USA) CO., LTD.,
a Delaware corporation,

       Plaintiff,

   vs.

MILILANI GOLF CLUB, LLC, a
Hawaii limited liability company; KG
HOLDINGS LLC, a Hawaii limited
liability company, FRANKLIN K.
MUKAI,

       Defendants,

   and

FRANKLIN K. MUKAI, MILILANI
GOLF CLUB, LLC, a Hawaii limited
liability company and KG
HOLDINGS LLC, a Hawaii limited
liability company,

       Third-Party Plaintiffs,

   vs.

SPORTS SHINKO (KAUAI) CO.,
LTD., a Hawaii corporation, SPORTS
SHINKO (WAIKIKI)
CORPORATION, a Hawaii

CV 04-00128 ACK-BMK

9

corporation, SPORTS SHINKO
(MILILANI) CO., LTD., a Hawaii
corporation, SPORTS SHINKO
(PUKALANI) CO., LTD., a Hawaii
corporation, SPORTS SHINKO
(HAWAII) CO., LTD., a Hawaii
corporation and SPORTS SHINKO
RESORT HOTEL CORPORATION,
a Hawaii corporation,

       Third-Party Defendants,

  and

SPORTS SHINKO CO., LTD., a
Japan Corporation, SPORTS SHINKO
(PUKALANI) CO., LTD., a Hawaii
corporation, SPORTS SHINKO
(HAWAII) CO., LTD., a Hawaii
corporation, SPORTS SHINKO
(MILILANI) CO., LTD., a Hawaii
corporation,

       Third-Party Defendants/
       Counterclaimants,

  vs.

MILILANI GOLF CLUB, LLC, a
Hawaii limited liability company; KG
HOLDINGS, LLC, a Hawaii limited
liability company, FRANKLIN K.
MUKAI,
       Third-Party Counterclaim
       Defendants.

_____

<u>TABLE OF CONTENTS</u>

I.    THERE IS EVIDENCE THAT SS-USA WAS NOT
      AN INACTIVE CORPORATION WHEN THE
      COMPLAINTS WERE FILED, AND IN ANY EVENT,
      SS-USA'S ANALYSIS IS WRONG ABOUT THE
      PRINCIPAL PLACE OF BUSINESS OF AN
      INACTIVE CORPORATION .................................................................. 3

      A.    There is Ample Evidence That SS-USA Activities
            "Predominated" in Hawaii When The Complaints
            Were Filed ...................................................................... 3

      B.    There Is Substantial Evidence That SS-USA Was Not
            "Winding Up" or "Inactive" ............................................ 6

II.   THE "NERVE CENTER" TEST DOES NOT APPLY ON
      THESE FACTS .............................................................................. 8

III.  KIMURA'S SWORN STATEMENT TO THE
      BANKRUPTCY COURT THAT HAWAII IS SS-USA'S
      PRINCIPAL PLACE OF BUSINESS IS A STATEMENT
      OF FACT EQUALLY APPLICABLE TO A DIVERSITY
      DETERMINATION ...................................................................... 10

IV.   THERE IS NO DOUBT THAT THE HAWAII
      BANKRUPTCY COURT RELIED UPON
      KIMURA'S 2002 DECLARATION ............................................ 13

V.    FROM 2002 TO THE PRESENT, SS-USA HAS
      ENGAGED IN EXTENSIVE "CHICANERY" ............................ 14

VI.   CONTROLLING PRECEDENT REQUIRES THAT THIS
      MOTION BE GRANTED ............................................................ 16

VII.  CONCLUSION ............................................................................ 17

# TABLE OF AUTHORITIES

CASES

China Basin Properties, Ltd. v. Allendate Mut. Ins. Co., 818
F.Supp. 1301 (N.D. Cal. 1992) .......................................................... 7

China Basin Properties, Ltd. v. One Pass, Inc., 812 F.Supp.
1038 (N.D. Cal. 1993)....................................................................... 7

Comtec, Inc. v. National Technical Schools, 711 F.Supp.
522 (D. Ariz. 1989) ........................................................................... 7

DeFortuno v. Pueblo Int'l, Inc., 62 F.R.D. 94 (D.P.R. 1972)........... 18

Deja Vu Showgirls of Las Vegas, L.L.C. v. Nev. Dep't of
Taxation, 2006 U.S. Dist. LEXIS 52505 (D. Nev. 2006)................. 18

Forbes v. Hotel Inter-Continental Maui, 1987 WL 247013
(D.Hawaii 1987)............................................................................... 12

Gradetech, Inc. v. Am. Employer's Group, 2006 U.S.Dist.
LEXIS 47047 (N.D. Cal. 2006) ....................................................... 16

Inland Rubber Corp. v. Triple A Tire Service, Inc., 220
F.Supp. 490, 496 (S.D.N.Y.1963)) .................................................. 11

In re Commonwealth Oil Refining Co., Inc., 596 F.2d 1239
(5th Cir. 1979) .................................................................................. 10

In Re Peachtree Lane Assocs., Ltd., 150 F.3d 877
(7th Cir. 1998) .................................................................................. 10

Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090,
1094 (9th Cir. 1990) ..................................................................... 6, 8,
                                                                                      10, 11

Jedrejcic v. Croatian Olympic Committee, 190 F.R.D. 60
(S.D.N.Y. 1999) ................................................................................. 7

Johnson v. Oregon, 141 F.3d 1361 (9th Cir. 1998) .......................... 16

Mortensen v. First Federal Sav. and Loan Ass'n, 549
F.2d 884 (3rd Cir. 1977) .................................................................. 18

Steele v. Anderson, 2004 WL 45527 (N.D.N.Y 2004)...................................... 16

The Mennen Company v. Atlantic Mut. Inc. Co., 147 F.3d
287 (3rd Cir. 1998)........................................................................... 17

Tosco Corp. v. Communities for a Better Environment,
236 F.3d 495 (9th Cir. 2001)...................................................... 6, 8, 10,
11, 16

United Nuclear Corporation v. Moki O. & M. Co., 364
F.2d 568 (10th Cir. 1966), cert. denied, 385 U.S. 960 (1966).......................... 12

United States v. 7108 W. Grand Ave., 15 F.3d 632 (7th Cir.),
cert. denied sub nom. Flores v. United States, 512
U.S. 1212, 114 S.Ct. 2691 (1994)) ...................................................... 1

United States v. 8136 S. Dobson St., Chicago, Ill., 125 F.3d
1076 (7th Cir.1997) ....................................................................... 1

TREATISE, STATUTES AND LEGISLATIVE HISTORY

13B Wright Miller & Cooper, Federal Practice & Procedure
§ 3625 (2006) ................................................................. 7, 9,
16, 18

28 U.S.C. § 1410 ............................................................... 10

28 U.S.C § 1332................................................................ 11, 18

S. Rep. No. 1830, 85th Cong., 2d Sess. 4 (1958) ........................... 9, 10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD.,<br><br>          Plaintiff,<br><br>     vs.<br><br>QK HOTEL, LLC, et al.,<br><br>          Defendants,<br><br>     and<br><br>FRANKLIN K. MUKAI, et al.,<br><br>          Third-Party Plaintiffs,<br><br>     vs.<br><br>SPORTS SHINKO (USA) CO., LTD.,<br>et al.,<br><br>          Third-Party Defendants,<br><br>     and<br><br>SPORTS SHINKO (HAWAII) CO.,<br>LTD., et al.,<br><br>          Third-Party Defendants/<br>          Counterclaimants,<br><br>     vs.<br><br>QK HOTEL, LLC, et al.,<br><br>          Third-Party Counterclaim<br>          Defendants.<br><br>AND CONSOLIDATED CASES | CV 04-00124 ACK-BMK<br>CV 04-00125 ACK-BMK<br>CV 04-00126 ACK-BMK<br>CV 04-00127 ACK-BMK<br>CV 04-00128 ACK-BMK<br><br>CONSOLIDATED CASES<br><br>REPLY MEMORANDUM IN<br>SUPPORT OF MOTION TO DISMISS<br>CV NOS. 04-00125 ACK-BMK, 04-<br>00126 ACK-BMK AND 04-00128<br>ACK-BMK |

On November 20, 2002, Keijiro Kimura, then the president of SS-USA,[1] informed the Bankruptcy Court for the District of Hawaii, under oath, that Hawaii is SS-USA's "principal place of business" and the place where its "principal assets" are located.

Now, over four years later, Kimura swears under oath he was wrong in November 2002 about SS-USA's principal place of business.  He asserts he was misled by his attorneys in 2002 – the same lawyers that represent SS-USA in this litigation today.[2]  Kimura now states that SS-USA's "principal place of business" in November 2002 was in West Virginia or Japan.[3]

Kimura should not be an easy person to mislead.  He obtained an LL.M. from Cornell, was licensed to practice law in New York, is fluent in English, familiar with the United States Bankruptcy Code, and experienced in U.S.

---

[1]    See Ex. 17 hereto.  Terms defined in the Motion to Dismiss CV Nos. 04-00125 ACK-BMK, 04-00126 ACK-BMK AND 04-00128 ACK-BMK shall have the same meanings here.

[2]    Of course, it makes no difference whether Kimura relied on the bad advice of his attorneys.  Attorneys' representations are binding on clients, even if the attorney is grossly negligent or worse.  See, e.g., United States v. 8136 S. Dobson St., Chicago, Ill., 125 F.3d 1076, 1084 (7th Cir.1997) (citing United States v. 7108 W. Grand Ave., 15 F.3d 632, 634-35 (7th Cir.), cert. denied sub nom. Flores v. United States, 512 U.S. 1212, 114 S.Ct. 2691 (1994)) ("[A]n attorney's negligence, gross negligence, or even intentional misconduct still [binds] his client and [is] not grounds for Rule 60(b) relief.")

[3]    Declaration of Keijiro Kimura dated January 26, 2006 ("Kimura decl.") ¶ 17, attached to the Sports Shinko Companies' Memorandum in Opposition to the Motion filed January 25, 2007 ("Mem.Opp.").

bankruptcy law.  He practiced law in the United States, was involved in international insolvency matters, and even "reviewed the cases" related to the statute that provided jurisdiction for Sports Shinko's ancillary bankruptcy petition filed in the Bankruptcy Court in Hawaii.[4]  He stated all the foregoing facts about his background and experience to the Bankruptcy Court in November 2002, ostensibly to assure the Court that he has the experience, expertise and knowledge necessary to make the declaration.

Yet even as he recants his prior sworn statement, Kimura now states, again under oath, that in November 2002, he "expected the bulk of SS-USA's activities would consist of actions to recover the former Hawaii assets..."[5]  While this was to have been done "through SS-USA's subsidiaries in Hawaii"[6], SS-USA – <u>not</u> its Hawaii subsidiaries – initiated these three lawsuits.

It is also important to remember that while Kimura now recants his 2002 "principal place of business" statement, he does <u>not</u> specifically recant his sworn statement that Hawaii is where SS-USA's "principal assets" were located.[7]  To do so would admit a fraud on the Bankruptcy Court, because there would be no factual support for venue for the ancillary bankruptcy proceeding in this district.

---

[4]    Ex. 1 to Motion at ¶ 2.

[5]    Kimura decl. ¶ 13.

[6]    <u>Id.</u>

[7]    Kimura decl. ¶¶ 15-17.

The complaints in the SS-USA cases[8] filed on February 20, 2004 asserted that SS-USA's principal place of business was then in West Virginia. SS-USA has done nothing to explain what changed between November of 2002 and February 2004 to justify a new principal place of business.

This motion must be granted for two basic reasons:

- Kimura's November 2002 sworn statement that Hawaii was SS-USA's "principal place of business" was well founded in fact.

- SS-USA has put forth no evidence whatsoever to show anything changed between November 20, 2002 and the date the complaints were filed, February 20, 2004, to justify a change in its principal place of business to a location outside Hawaii.

I.    THERE IS EVIDENCE THAT SS-USA WAS NOT AN INACTIVE CORPORATION WHEN THE COMPLAINTS WERE FILED, AND IN ANY EVENT, SS-USA'S ANALYSIS IS WRONG ABOUT THE PRINCIPAL PLACE OF BUSINESS OF AN INACTIVE CORPORATION

SS-USA's lead argument would have this Court apply the law of the Third Circuit to conclude that SS-USA is a citizen only of Delaware. To so find would be erroneous as a matter of fact and law.

A.    There is Ample Evidence That SS-USA Activities "Predominated" in Hawaii When The Complaints Were Filed

At its heyday, SS-USA's businesses (and assets) were in three states: California, Florida and Hawaii. By November 2002, when Kimura made his declaration in support of SS-Japan's ancillary bankruptcy proceeding in Hawaii,

---

[8]    Exs. 9A, 9B and 9C to the Motion.

only the Hawaii assets were of continuing interest to SS-USA because the

California and Florida assets had already been disposed of.

- The California asset – the La Costa Resort and Spa – was sold in November 2001.[9]

- The Florida asset – the Grenelefe Resort – was the subject of a bankruptcy proceeding in the Middle District of Florida initiated on February 18, 2002. Its assets were essentially sold by June 27, 2002.[10]

Steven Iwamura was responsible for "administrative and substantive issues,"

including "supervising accountants and attorneys" for SS-USA.[11] Iwamura was

effectively Deputy Trustee Kimura's "right hand man".[12] On September 10, 2002,

Iwamura asked SS's accountants in Hawaii:

Can you take over the entire compilation and tax returns *for SS-USA* and subsidiaries *for 2002*? My reasons:

- *only significant remaining operations in 2002 were in Hawaii...*[13]

The engagement of Grant Thornton's Hawaii office as the place for SS-

USA's accounting services is confirmed in a January 23, 2003 e-mail exchange

---

[9]    Declaration of Steven Iwamura dated January 25, 2007 attached to Mem.Opp. ("Iwamura decl.") ¶ 6; Declaration of Lucinda Brown dated January 25, 2007 attached to Mem.Opp. ("Brown decl.") ¶ 13; Kimura decl. ¶ 13.

[10]    Brown decl. ¶ 13; Kimura decl. ¶ 13, and Ex. 18 hereto.

[11]    Iwamura decl. ¶¶ 2, 3.

[12]    See Ex. 19, an e-mail dated May 25, 2002, in which Kimura introduces himself as the new president of SS-USA and also introduces Iwamura. Kimura directs the many addressees to "please send c.c. to [Iwamura] if you send e-mail to me. Also, please answer any questions [Iwamura] may have in connection with SS entities."

[13]    Ex. 20 hereto at GT034424 (emphasis added).

between two accountants at Grant Thornton, one in Honolulu (Howard Hanada) and one in Vienna, Virginia (John Hangartner).  Hanada wrote:

> John:  the trustees in Japan are planning to switch control over **the USA engagement** from Vienna to Honolulu...  **[T]hey are doing things in Hawaii that may continue for awhile**.[14]

The move of SS-USA's "business location" from West Virginia to Hawaii was formalized with the IRS and the California tax authorities in early January 2004, *only weeks before the SS-USA cases were filed*.[15]  Iwamura was informed of this and apparently signed the forms to effectuate the change.[16]  Of course, this is irreconcilable with Iwamura's declaration, in which he blames *the accountants* for using Mr. Hayes' address for SS-USA's taxes after September 2003.[17]

Hence, the evidence is clear that both the "principal assets" and the "only significant remaining operations" of SS-USA remaining when Kimura filed his November 2002 declaration -- and at the time the complaints were filed 15 month later -- was in Hawaii.

---

[14]    Ex. 20 hereto at GT036787 (emphasis added).

[15]    Ex. 20.1 hereto.

[16]    Id. at GT032993-94.

[17]    Iwamura decl. ¶ 17.  Iwamura's effort to blame the accountants is also difficult to reconcile with other evidence which shows he acquiesced to SS-USA's accountants' continued use of Hayes' address when this was brought to his attention on December 19, 2003 and again on October 20, 2004.  See Ex. 27 hereto.

The record also shows that any change in SS-USA's operations between November 20, 2002 and February 20, 2004 supports relocation of SS-USA to Hawaii.[18]  Since SS-USA's activities clearly "predominated" in Hawaii when the SS-USA cases were filed, Hawaii was SS-USA's principal place of business.

In the Ninth Circuit, the location of the company's principal assets and primary operations are key indicators of a corporation's "principal place of business" under 28 USC § 1332.  Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1094 (9th Cir. 1990) (courts look to various factors, including where tangible property is located and where the sources of income are); Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 500 (9th Cir. 2001) ("if the amount of [the] corporation's business activity in one state be significantly larger than any other state", that state is its principal place of business, irrespective of where its "nerve center" is.)  Therefore, under the controlling case law of the Ninth Circuit, Hawaii was SS-USA's principal place of business when the SS-USA cases were filed.

B.    There Is Substantial Evidence That SS-USA Was Not "Winding Up" or "Inactive"

SS-USA places great emphasis on its contention that SS-USA is "inactive", "winding up" or "defunct", and invites the Court to apply doctrines that are not the law of the Ninth Circuit to excuse it from its admitted Hawaii citizenship.  Beyond

---

[18]    Exs. 20 and 20.1 hereto.  See also Exs. 25 and 28, discussed infra.

the fact that most district courts in this circuit have followed the rule of the Second

Circuit (treating an inactive corporation as a citizen of the last state in which it did

business),[19] there is considerable evidence that SS-USA is not "winding up" or

"inactive".

In particular, SS-USA has made statements to the States of Delaware and

California suggesting it is not inactive or winding up.  In addition, it has not

registered to do business in either Japan or West Virginia[20], the two alternate

venues SS-USA now insists were its principal place of business in February 2004.

While not dispositive, these regulatory filings, like the address given on a tax

return, are factors the Court should consider in determining principal place of

business.[21]

In its statements to the California Secretary of State in June 2002 and August

2006[22], SS-USA states that SS-USA's "type of business" is "real estate/resort

investment".  Kimura signed the June 2002 statement.  The CEO/President of SS-

USA signed the August 2006 statement.

---

[19]     See, e.g., China Basin Properties, Ltd. v. One Pass, Inc., 812 F.Supp. 1038
(N.D. Cal. 1993) (Weigel, J); China Basin Properties, Ltd. v. Allendate Mut. Ins.
Co., 818 F.Supp. 1301 (N.D. Cal. 1992) (Armstrong, J.), Comtec, Inc. v. National
Technical Schools, 711 F.Supp. 522 (D. Ariz. 1989) (Meucke, J.).

[20]     Ex. 21 and Declaration of Takeo Kosugi attached hereto.

[21]     13B Wright, Miller & Cooper, Federal Practice & Procedure § 3625, n.47
(2006), citing Jedrejcic v. Croatian Olympic Committee, 190 F.R.D. 60 (S.D.N.Y.
1999).

[22]     Ex. 22 hereto.

Similarly, in its August 2005 statement to the State of Delaware, SS-USA's president stated that the "nature of [its] business" is "real estate/resort management".[23]

Moreover, the Delaware form specifically allows a corporation to describe its "date of inactivity" on its annual filing. Notably, in each of its Delaware filings since 2002, SS-USA has not described **any** periods of inactivity.[24]

Finally, unlike SS-Japan (the plaintiff in two of the consolidated cases), SS-USA has never filed for bankruptcy or been the subject of any other type of insolvency proceeding.[25] SS-USA has continuing and uninterrupted corporate existence since it was formed in 1987.[26] There is no basis to presume it is winding down or has ceased operations, particularly when it has given no such indication in its public filings.

## II.    THE "NERVE CENTER" TEST DOES NOT APPLY ON THESE FACTS

Under Tosco, Industrial Tectonics and other controlling cases from the Ninth Circuit, the Court should not look to the "nerve center" of a corporate party to determine citizenship unless "no state contains a substantial predominance of the corporation's business activities." Industrial Tectonics, 912 F.2d at 1994. On this

---

[23]    Ex. 23 hereto. It wasn't until the August 2005 statement that SS-USA asserted its "principal place of business outside of Delaware" is in Japan. Id.

[24]    Exs. 23 & 24 hereto.

[25]    Declaration of Robert A. Marks hereto at ¶ 20.

[26]    Exs. 23 & 24 hereto.

record, the "predominance" of SS-USA's activities in both November 2002 and

February 2004 were clearly in Hawaii as Hawaii was the only state left in which

SS-USA had both substantial assets (as SS-USA concedes) and substantial

business activities.[27]

    While there is authority that the principal place of business of a holding

company is where its "nerve center" is[28], the controlling rule in this circuit is that

---

[27]    See discussion *supra* at pp. 4-5.

    It is not unusual that a holding company has no employees, tangible property, production activities or sales activity, as holding companies act through subsidiaries.  SS-USA interprets this to mean that a holding company's principal place of business must always be determined from the "nerve center" test, even when its business "predominates" in a single state.  Mem.Opp. at 17.  That flies in the face of congressional intent:

> The underlying purpose of diversity of citizenship legislation ... is to provide a separate forum for out-of State citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the Federal Courts ...

S. Rep. No. 1830, 85th Cong., 2d Sess. 4 (1958).  There is no danger of such prejudice when the holding company's business predominates in one state.  See also n. 28.

[28]    "[W]hen a corporation has substantial contacts with several states other than that of its incorporation, a 'visibility' test may be employed to designate the place where that corporation's presence is most visible to the public as its principal place of business.  If however, managerial control, as well as actual operations, is split among several states or is located in the same state as the executive offices, then the site of executive and administrative offices should be relied upon to determine a corporation's principal place of business for purposes of diversity jurisdiction.  For example, this result is appropriate particularly in cases involving holding companies that own and control several different subsidiary corporations."  (footnotes omitted.)

13B Wright Miller & Cooper, Federal Practice & Procedure ("Wright & Miller") § 3625 (2006).

the "nerve center" test should only be applied in instances that involve a company

operating in several states where no one state predominates.  Tosco, Industrial

Tectonics, supra. That was clearly not the case here, where the record shows SS-

USA's "principal assets," "new business location" and "only significant remaining

operations" were located within the District of Hawaii.[29]

III.    KIMURA'S SWORN STATEMENT TO THE BANKRUPTCY COURT
        THAT HAWAII IS SS-USA'S PRINCIPAL PLACE OF BUSINESS IS
        A STATEMENT OF FACT EQUALLY APPLICABLE TO A DIVERSITY
        DETERMINATION

        SS-USA minces very fine when it comes to the use of the phrase "principal

place of business" in former Bankruptcy Rule 116.[30]  In Commonwealth Oil

Refining, the Court observed that the policy objectives of the diversity statute – "to

reduce the availability of diversity jurisdiction" and "protect nonresidents from any

possible prejudice they might encounter in local courts"[31] is different than the

policy of the bankruptcy venue rule, which is "intended to expand venue choices

---

[29]    Exhibits 20, 20.1 and Ex. 1 to Motion at 8.

[30]    The primary case SS-USA relies upon, In re Commonwealth Oil Refining
Co., Inc., 596 F.2d 1239 (5th Cir. 1979), does not construe 28 U.S.C. § 1410, the
statute that controls venue for foreign bankrupts like Sports Shinko.
Commonwealth, and the other case SS-USA cites, In Re Peachtree Lane Assocs.,
Ltd., 150 F.3d 877 (7th Cir. 1998) construe domestic bankruptcy venue law and are
therefore of dubious relevance here.

        SS-USA's reliance upon Peachtree Lane is particularly obtuse because it
does not even discuss the use of the phrase "principal place of business" in
diversity and bankruptcy venue contexts.

[31]    Commonwealth, 596 F.2d at 1247, quoting, in part, S.Rep. No. 1830, 85th
Cong., 2d Sess. (1958).

for bankruptcy proceedings." It therefore chose not to follow the cases construing 28 USC § 1332 to construe the bankruptcy venue rule.

The bankruptcy venue rule is designed to be inclusive and allow for various convenient fora where a bankruptcy may be heard. After all, a bankruptcy will always occur in a federal court. In contrast, disputes subject to diversity jurisdiction may be heard in state or federal court, and diversity jurisdiction, by Congressional design, is limited.

When looking at appropriate bankruptcy venues, the Commonwealth Court concluded that "principal place of business" refers to the place "where the corporation transacts its corporate business..."[32] "Where the corporation transacts is corporate business" is virtually *indistinguishable* from the Ninth Circuit's "nerve center" test:

> The "nerve center test" locates a corporation's principal place of business in the state where the majority of its executive and administrative functions are performed.

Tosco, 236 F.3d at 500, citing Industrial Tectonics, 912 F.2d at 1092-93 (9th Cir.1990), citing Inland Rubber Corp. v. Triple A Tire Service, Inc., 220 F.Supp. 490, 496 (S.D.N.Y.1963)).

In short, and under the clear precedent of Tosco, SS-USA's analysis gets it nowhere. While the policies driving bankruptcy venue decisions and diversity

---

[32]    Id., 596 F.2d at 1246.

decisions about a company's "principal place of business" are different, a bankruptcy venue determination of a company's "principal place of business" is essentially a determination of the company's "nerve center" for diversity purposes.

Applying this analysis here, Kimura's November 2002 sworn statement to the Bankruptcy Court that Hawaii was SS-USA's "principal place of business" must mean Kimura, a person with expertise in these issues,[33] believed that Hawaii was "where [SS-USA] transacts is corporate business," and therefore, its nerve center. This augurs *against* SS-USA's argument today that it was a citizen of West Virginia or Japan in November 2002, and *in favor* of a finding that it was a citizen of Hawaii.

Perhaps even more important, however, when Kimura stated that Hawaii was SS-USA's "principal place of business" in November 2002, he was stating a *fact,* not a complex legal question or convoluted mixed question of law and fact. Commonwealth, 596 F.2d at 1241 ("[t]he location of a debtor's principal place of business is a question of fact."); Forbes v. Hotel Inter-Continental Maui, 1987 WL 247013 (D.Hawaii 1987) (Fong, J.) (citing United Nuclear Corporation v. Moki O. & M. Co., 364 F.2d 568 (10th Cir. 1966), cert. denied, 385 U.S. 960 (1966)) ("As a

---

[33]    Kimura "was involved in a few international insolvency matters [while practicing in the United States,] reviewed the cases regarding Section 304 of Title 11 of the U.S. Code [, the statute establishing bankruptcy court jurisdiction over non-U.S. bankruptcies like Sports Shinko's,]" ... and is "familiar with the U.S. Bankruptcy Code." Ex. 1 to Motion at ¶2.

general rule, a determination of a corporation's principal place of business [under the diversity statute] is a question of fact that is based upon a totality of all of the circumstances.") (emphasis added).

Certainly Kimura was both competent and authorized to state where SS-USA's principal place of business was.  He was familiar with "the totality of all the circumstances" of SS-USA and stated unequivocally the fact that Hawaii was its principal place of business.  Indeed, Kimura, then SS-USA's president and a person with expertise in U.S. bankruptcy law, asserted his competence and authority in his declaration, and stated that he had "personal knowledge of the facts ... and if called as a witness, [ ] could and would testify competently thereto."[34]

## IV.   THERE IS NO DOUBT THAT THE HAWAII BANKRUPTCY COURT RELIED UPON KIMURA'S 2002 DECLARATION

SS-USA's argument that the Bankruptcy Court did not rely on Kimura's declaration is ludicrous and patently false.  The only evidence before the Bankruptcy Court that venue for Sports Shinko's ancillary proceeding was proper in Hawaii was Kimura's sworn statement, which stated:

> Venue is appropriate in Hawai'i.  SS Japan owns 89.1% of the interest in SS-USA, a company with its principal place of business and principal assets located in the jurisdiction of this U.S. District Court.[35]

---

[34]   Ex. 1 to Motion at ¶¶ 1, 2 & 5 and Ex. 17 hereto.

[35]   Ex. 1 to Motion at ¶ 8.

Judge Faris granted the petition by Order filed February 11, 2003.[36]  Having no

reason to believe venue was proper outside Hawaii (as Kimura now states), Judge

Faris took jurisdiction in the District of Hawaii.

V.    FROM 2002 TO THE PRESENT, SS-USA HAS ENGAGED IN
      EXTENSIVE "CHICANERY"

SS-USA argues that judicial estoppel is not appropriate because SS-USA has

not been involved in "chicanery, but only inadvertence or mistake."  To the

contrary, the record shows unmistakable "chicanery" and ample reason to hold SS-

USA to the (true) facts stated by Kimura to the Bankruptcy Court that SS-USA's

principal place of business is in Hawaii.

In addition to the material sworn equivocations (or worse) of Messrs.

Kimura and Iwamura discussed above:

- Iwamura asserts that SS-USA maintained a bank account in West
  Virginia.[37]  This is apparently wrong, as the bank account was
  apparently in an Oregon depository.[38]

  More material, however, Iwamura (and Kimura) have failed to
  divulge the ***secret accounts*** SS-USA kept in Hawaii (and probably
  also in Japan).[39]  These secret accounts were apparently opened at
  about the time the SS-USA lawsuits were initiated.[40]  They were kept
  secret to screen important information from Katron's Lucinda Brown,

---

[36]    Ex. 3 to Motion.

[37]    Iwamura decl. ¶ 8(n).

[38]    Ex. 29 hereto.

[39]    Ex. 25 hereto.

[40]    Id.

whose colleague (and fellow officer of Katron), Ron Thompson, was then being sued by SS-USA in California.[41]

SS-USA's argument that West Virginia was its principal place of business is ludicrous since material financial information was withheld from Brown, its only operative in West Virginia.

- SS-USA asks the Court to compare the billings of Cindy Brown against Tom Hayes' billings to conclude that West Virginia was SS-USA's principal place of business.[42]

SS-USA misleads the Court by ignoring that the vast majority of accounting work for SS-USA was done **in Hawaii** by Grant Thornton.[43]  Kimura, *sub silentio*, concedes the point:

> During my tenure, ***other than the legal counsel and accounting firms***, SS USA's activities in the United States consisted only of the work being done by Ms. Brown at Katron.[44]

SS-USA asserts that the accounting work of Brown <u>is</u> the business of SS-USA, but does not address the work of Grant Thornton, its primary accountants and auditors, whose work was done <u>in Hawaii</u> because Hawaii was where SS-USA's "***only significant remaining operations***" were as of 2002.[45]

The amount of the invoices to SS-USA by Grant Thornton's Hawaii office overwhelm the amount of Brown's bills.  <u>Compare</u> Exhibit 26 hereto (detailing Grant Thornton's Hawaii office's aggregate fees to SS-USA of $█████ between April-September 2004)[46] <u>with</u> Mem.Opp. Ex. B-1 (detailing Brown's aggregate fees of $█████ during the same period).

---

[41]    Ex. 25 hereto; Ex. 13 to Motion.  <u>See</u> also declaration of Robert Marks at ¶ 21.

[42]    Mem.Opp. at 20-21.

[43]    Exs. 20 & 26 hereto

[44]    Kimura decl. ¶18 (emphasis added); <u>see also</u> <u>id.</u>, ¶ 8.

[45]    Ex. 20 hereto at GT034424; Ex. 20.1.

[46]    See also Ex. 27.1 at GT033782, showing that as of October 31, 2005, Grant Thornton's Hawaii office had already charged considerable fees for work done for SS-USA.

- Iwamura insists Tom Hayes was not involved in SS-USA's affairs, conceding only that certain tax forms were sent to Mr. Hayes.[47]

  This is also apparently wrong too, since Mr. Hayes had documents in his possession that would have been useful in the preparation of SS-USA's 2002 tax returns.[48]

In short, there is an abundant record to support judicial estoppel. We note that the Ninth Circuit reviews the District Court's invocation of judicial estoppel for abuse of discretion.[49]

## VI.  CONTROLLING PRECEDENT REQUIRES THAT THIS MOTION BE GRANTED

The Ninth Circuit in Tosco, 236 F.3d at 502, held a litigant to its prior representations in pleadings about its principal place of business, finding insufficient evidence that the plaintiff's corporate restructuring resulted in a change in its principal place of business. The District Court in Gradetech, Inc. v. Am. Employer's Group, 2006 U.S.Dist.LEXIS 47047 (N.D. Cal. 2006) described a litigant's prior assertion of its principal place of business as the "strongest evidence."

Similarly, in Steele v. Anderson, 2004 WL 45527 (N.D.N.Y 2004), cited, 13B Wright & Miller § 3625, n. 7 (2006), the defendant corporation in previous litigation represented its principal place of business was in California. The Court

---

[47]    Iwamura decl. ¶ 11.

[48]    Ex. 28 hereto.

[49]    Johnson v. Oregon, 141 F.3d 1361, 1364 (9th Cir. 1998).

estopped it from claiming domicile other than those asserted earlier and remanded the removed case to state court.

SS-USA has utterly failed to provide a factual record to demonstrate a change in its principal place of business between the time of Kimura's November 2002 declaration to the Bankruptcy Court and when the SS-USA cases were filed on February 20, 2004. Because of the absence of this proof, the Court should hold SS-USA to its prior sworn representation that Hawaii is its principal place of business.[50]

SS-USA has shown it will say whatever it has to say – under oath or otherwise – to obtain federal jurisdiction. This Court should not tolerate SS-USA's overt manipulation of the federal courts of this district.

VII.    <u>CONCLUSION</u>

SS-USA's opposition to the Motion rests on the recent contention that Kimura, a sophisticated attorney with an advanced law degree from Cornell and fluent English-speaker,[51] was somehow confused when he stated a fact: that SS-USA's principal place of business was in Hawaii. This factual statement is not

---

[50]    In a case relied upon by SS-USA, <u>The Mennen Company v. Atlantic Mut. Inc. Co.</u>, 147 F.3d 287, 293, n.8 (3rd Cir. 1998), the litigant's earlier incorrect representations about its principal place of business in other proceedings were withdrawn in the record of those proceedings. SS-USA has not done that.

[51]    Ex. 1 to Motion at ¶ 2.

shrouded in complexity.  It is a factual statement Kimura was competent to make, and that is well supported by the record.

This is not a summary judgment motion where unresolved questions of fact require the Court to deny the motion.  Here, the party asserting jurisdiction – SS-USA – must prove subject matter jurisdiction by a preponderance of the evidence.[52]  It has failed in its burden to do so.

"There is no simple formula that will provide an answer to the principal-place-of-business question. The task that confronts the federal court is to consider the structure and various operations of a corporation and to evaluate realistically the place where the corporate activity is greatest.  This determination should be influenced by the underlying policies of Section 1332(c) and hence by a parallel assessment of where a corporation's public contacts are most numerous."  13B Wright & Miller § 3625 (2006).  This record shows that SS-USA's activities were "greatest" in Hawaii on February 20, 2004, and this Motion should be granted.

If, however, the Court harbors any doubt about whether this Motion should be granted, KG asks leave of court to continue the Motion so discovery on subject matter jurisdiction can be undertaken.[53]

---

[52]    See Deja Vu Showgirls of Las Vegas, L.L.C. v. Nev. Dep't of Taxation, 2006 U.S. Dist. LEXIS 52505 (D. Nev. 2006) (citing Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977)).

[53]    DeFortuno v. Pueblo Int'l, Inc., 62 F.R.D. 94 (D.P.R. 1972).

DATED: Honolulu, Hawaii, February 1, 2007.


 /s/ Robert A. Marks
WARREN PRICE III
ROBERT A. MARKS
SIMON KLEVANSKY
ALIKA L. PIPER
CARISA LIMA KA'ALA HEE

Attorneys for Defendants and
Third-Party Plaintiffs

KG Holdings, LLC, QK Hotel, LLC, OR
Hotel, LLC, Pukalani Golf Club, LLC, KG
Maui Development, LLC, Mililani Golf
Club, LLC, Kiahuna Golf Club, LLC and
KG Kauai Development, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., | CV 04-00124 ACK-BMK |
|       Plaintiff, | CV 04-00125 ACK-BMK |
| | CV 04-00126 ACK-BMK |
|    vs. | CV 04-00127 ACK-BMK |
| QK HOTEL, LLC, et al., | CV 04-00128 ACK-BMK |
|       Defendants, | |
|    and | CONSOLIDATED CASES |
| FRANKLIN K. MUKAI, et al., | CERTIFICATE OF WORD COUNT |
|       Third-Party Plaintiffs, | |
|    vs. | |
| SPORTS SHINKO (USA) CO., LTD., et al., | |
|       Third-Party Defendants, | |
|    and | |
| SPORTS SHINKO (HAWAII) CO., LTD., et al., | |
|       Third-Party Defendants/ Counterclaimants, | |
|    vs. | |
| QK HOTEL, LLC, et al., | |
|       Third-Party Counterclaim Defendants. | |
| AND CONSOLIDATED CASES | |

<u>CERTIFICATE OF WORD COUNT</u>

Pursuant to LR 7.5(e) of the Rules of the United States District Court for the District of Hawaii, the undersigned certifies that the attached memorandum of law contains 4,457 words.

1

The foregoing word count is according to the word processing program used to produce the document, and is inclusive of headings, footnotes and quotations.

DATED: Honolulu, Hawaii, February 1, 2007.

 /s/ Robert A. Marks
WARREN PRICE III
ROBERT A. MARKS
SIMON KLEVANSKY
ALIKA L. PIPER
CARISA LIMA KA'ALA HEE

Attorneys for Defendants and
Third-Party Plaintiffs

KG Holdings, LLC, QK Hotel, LLC, OR
Hotel, LLC, Pukalani Golf Club, LLC, KG
Maui Development, LLC, Mililani Golf
Club, LLC, Kiahuna Golf Club, LLC and
KG Kauai Development, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD.,<br><br>       Plaintiff,<br><br>    vs.<br><br>QK HOTEL, LLC, et al.,<br><br>       Defendants,<br><br>    and<br><br>FRANKLIN K. MUKAI,<br><br>       Third-Party Plaintiff,<br><br>    vs.<br><br>SPORTS SHINKO (USA) CO., LTD.,<br>et al.,<br><br>       Third-Party Defendants,<br><br>    and<br><br>SPORTS SHINKO (HAWAII) CO.,<br>LTD., et al.,<br><br>       Third-Party Defendants/<br>       Counterclaimants,<br><br>    vs.<br><br>QK HOTEL, LLC, et al.,<br><br>       Third-Party Counterclaim<br>       Defendants.<br><br>AND CONSOLIDATED CASES | CV 04-00124 ACK-BMK<br>CV 04-00125 ACK-BMK<br>CV 04-00126 ACK-BMK<br>CV 04-00127 ACK-BMK<br>CV 04-00128 ACK-BMK<br><br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the KG PARTIES' NOTICE

OF RE-FILING REPLY MEMORANDUM IN SUPPORT OF MOTION TO

DISMISS CV NOS. 04-00125 ACK-BMK, 04-00126 ACK-BMK AND 04-00128

ACK-BMK and REPLY MEMORANDUM IN SUPPORT OF MOTION TO

DISMISS CV NOS. 04-00125 ACK-BMK, 04-00126 ACK-BMK AND 04-00128

ACK-BMK, in the form attached hereto, was served electronically through

CM/ECF on the following on April 6, 2007:

PAUL ALSTON, ESQ.              palston@ahfi.com
GLENN T. MELCHINGER, ESQ.     gmelchinger@ahfi.com

Attorneys for Plaintiffs
SPORTS SHINKO CO., LTD. and
SPORTS SHINKO (USA) CO., LTD.

WILLIAM BORDNER, ESQ.         bbordner@bmbe-law.com

Attorney for Defendant
FRANKLIN K. MUKAI

DATED: Honolulu, Hawaii, April 6, 2007.

/s/ Robert A. Marks
WARREN PRICE III
ROBERT A. MARKS
SIMON KLEVANSKY
ALIKA L. PIPER
CARISA LIMA KA'ALA HEE

Attorneys for Defendants and
Third-Party Plaintiffs

KG Holdings, LLC, QK Hotel, LLC, OR
Hotel, LLC, Pukalani Golf Club, LLC, KG
Maui Development, LLC, Mililani Golf
Club, LLC, Kiahuna Golf Club, LLC and
KG Kauai Development, LLC