IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br>       Plaintiff,<br>  vs.<br>QK HOTEL, LLC, a Hawaii limited liability company, et al.,<br>       Defendants,<br>  and<br>FRANKLIN K. MUKAI, et al.,<br>       Third-Party Plaintiffs,<br>  vs.<br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al.<br>AND CONSOLIDATED CASE | CV 04-00124 ACK-BMK<br>CV 04-00127 ACK-BMK<br>CONSOLIDATED CASES<br>MEMORANDUM IN SUPPORT OF MOTION |

MEMORANDUM IN SUPPORT OF MOTION

I.    INTRODUCTION

In 2002, Sports Shinko (Waikiki) Corporation ("SS-Waikiki") sold a hotel to defendant QK Hotel, LLC, and a different hotel to OR Hotel, LLC. Both of these LLCs are subsidiaries of Defendant KG Holdings, LLC. The sale of these hotels was part of the 2002 bulk sale of all the Sports Shinko Companies' Hawaii assets.[1]

---

[1] Pursuant to a January 25, 2002 Purchase and Sale Agreement, three Hawaii golf courses (and adjacent development lands) and the foregoing two hotels owned by Sports Shinko companies were sold to subsidiaries of KG Holdings, LLC. The Sports Shinko companies selling assets are: Sports Shinko (Hawaii) Co., Ltd. ("SS-Hawaii"), Sports Shinko (Kauai) Co., Ltd., Sports Shinko (Mililani) Co., Ltd., Sports Shinko (Pukalani) Co., Ltd. and SS-Waikiki. Each of these companies are

The ultimate parent of SS-Waikiki is SS-Japan. In these lawsuits, SS-Japan alleges it is a creditor of SS-Waikiki,[2] and that because the above-mentioned hotels were sold to the KG subsidiaries for less than their true value, SS-Japan has been unable to recover on the debt it was owed.[3] On this basis, SS-Japan has sued QK Hotel LLC, OR Hotel LLC, and KG Holdings, LLC under the Hawaii Uniform Fraudulent Transfer Act.[4]

These fraudulent transfer claims, however, fail as a matter of law. This is simply because SS-Japan cannot sustain its burden to prove with "convincing clarity"[5] the foundation of its claims -- that it is a <u>creditor</u> of SS-Waikiki.

If SS-Japan is not a creditor of SS-Waikiki – even if it was at one time – it cannot be the victim of an alleged fraudulent transfer of property. A fraudulent transfer action would only lie if SS-Waikiki had a debt to SS-Japan that SS-Japan

---

subsidiaries of Sports Shinko Co., Ltd. ("SS-Japan"), the plaintiff in these cases, and Sports Shinko (USA) Co., Ltd. ("SS-USA").

[2]    Third Amended Complaints ("TAC") filed in D. Hawaii CV Nos. 04-00124 ACK-BMK and 04-00127 on January 19, 2007, ¶¶ 1, 7 ("[SS-Japan] is, and at all relevant times was, a creditor of [SS-Waikiki].") The Third Amended Complaints are attached to the Concise Statement of Facts ("CSOF") as Exhibits 1A & 1B.

[3]    TAC (Exhibits 1A & 1B) ¶ 42.

[4]    Hawaii Revised Statutes ("HRS") Ch. 651C ("HUFTA"). The fraudulent transfer claims are set forth in TAC Counts I, II and III (Exhibits 1A & 1B) and in Counts I, II and III of the Third Party Counterclaims filed on January 13, 2006 (Exhibits 2A & 2B).

[5]    <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 254, 106 S.Ct. 2505 (1986).

could not collect because of the alleged fraudulent transfer. If there is no enforceable debt owed to SS-Japan, there is no loss to remediate.

As demonstrated below, while there was inter-company 'paper debt' carried on the books of various SS companies, including SS-Waikiki, these were mere bookkeeping entries that tracked amounts being shifted among commonly owned companies.[6] The best evidence that there is no enforceable debt owed to SS-Japan by SS-Waikiki is 1) the 2004 tax return filed by SS-USA to the Internal Revenue Service and 2) SS-Waikiki's 2004 financial statements, discussed below.

Further underscoring that no real debt exists between SS-Japan and SS-Waikiki – and that SS-Japan is not a creditor of SS-Waikiki – is the fact that this litigation has been pending for more than 3 years, and to this day SS-Japan – and its successor in interest to the alleged debt, South Wind[7] – have been unable to produce a shred of evidence of an enforceable debt.

---

[6] Alleged debts between a parent and subsidiary are subject to particular scrutiny because the control element suggests the opportunity to contrive a fictional debt. U.S. v. Uneco, Inc., 532 F.2d 1204, 1207 (8th Cir. 1976).

[7] "South Wind" is South Wind Realty Finance Cayman Company, a Cayman Island exempted limited liability company. According to the complaints, "[o]n December 30, 2004, [SS-Japan] transferred its loans to [SS-Waikiki] to [South Wind]. [SS-Japan], however, retains an interest in, and the right and obligation to pursue, this lawsuit for itself and South Wind." TAC at ¶ 7 (Exhibits 1A & 1B).

Through a series of intermediary corporations, South Wind is wholly owned by The Goldman Sachs Group, Inc., a Delaware corporation whose stock is traded on the New York Stock Exchange.

The following is a discussion of the above points that demonstrates that there are no genuine issues of fact relating to this motion and that the KG defendants are entitled to Summary Judgment on the fraudulent transfer claims as a matter of law.

II.   CORPORATE RELATIONSHIPS OF THE SS COMPANIES

The following corporate structure is not disputed:

- Sports Shinko Resort Hotel Corporation ("SSRHC") owns SS-Waikiki.
- Sports Shinko (Hawaii) Co., Ltd. ("SS-Hawaii:) owns SSRHC.
- SS-USA owns SS-Hawaii.
- Prior to February 24, 2004, SS-Japan controlled SS-USA.

As of February 24, 2004:

- South Wind/Goldman Sachs acquired SS-Japan.[8]
- South Wind/Goldman Sachs acquired control of SS-USA.[9]
- As a result, SS-Waikiki -- the alleged debtor in this case, came under the control of South Wind -- the alleged creditor in this case.[10]

---

[8]   Exhibit 3 at 256 1598. On March 31, 2005, after SS-USA and subsidiaries' 2004 tax year ended, South Wind transferred the stock of SS-Japan to Accordia Golf Co., Ltd., but South Wind/Goldman Sachs remained a 100% indirect owner of SS-Japan through its ownership of Accordia Golf. See Exhibit 5 at 5-6.

[9]   This fact is established in the 2004 U.S. Corporation Income Tax Return filed by SS-USA and its subsidiaries. Excerpts of this tax return are attached to the CSOF as Exhibit 3. See Exhibit 3 at 256 1598 ("South Wind TK indirectly acquired 100% of the stock of [SS-USA] on February 24, 2004 when it acquired 100% of the stock of [SS-Japan] from its previous shareholder.") South Wind directly acquired the stock of SS-USA on September 30, 2004. Exhibit 5 at 5.

During the two-year period before SS-Japan came under the control of South Wind, a Japan bankruptcy trustee controlled it.[11]  These lawsuits were filed on February 20, 2004, during the final days of the trustee's control of SS-Japan.

III. THERE IS NO ENFORCEABLE DEBTOR-CREDITOR RELATIONSHIP BETWEEN SS-WAIKIKI AND SS-JAPAN

    A. The 2004 Federal Tax Return Filed On Behalf of SS-Waikiki Confirms There Is No Debtor-Creditor Relationship Between SS-Japan and SS-Waikiki

SS-USA filed a single U.S. Corporation Income Tax Return for itself and its subsidiaries – including SS-Waikiki – for the year ending December 31, 2004.[12] When this tax return was signed on behalf of SS-USA on September 18, 2005,[13]

---

[10]    In a typical fraudulent transfer case, the defrauded creditor sues the defrauding debtor as well as the transferee.  With the parties so aligned, the debtor can defend on the basis that there is no enforceable debt owing.  The transferee would obviously benefit from that showing.

Here, however, the KG Defendants are left to prove that a debt they were not a party to is unenforceable.  In these cases, the creditor and debtor are essentially one and the same in the joint pursuit of the transferee.  In this fashion, HUFTA is converted into a mechanism to promote, rather than remediate, fraud.  Plaintiff has cited no case showing this distortion of HUFTA has precedent.

[11]    TAC (Exhibits 1A & 1B) ¶ 48 ("On or about February 4, 2002, the District Court for Osaka, Japan appointed a Trustee and Deputy Trustee to manage [SS-Japan's] domestic and overseas assets.")

[12]    Exhibit 3 at 256 1583-84.  The return reflects the aggregate tax reporting information for SS-USA and the ten identified subsidiaries for calendar year 2004.

[13]    Exhibit 3 at 256 1550.

SS-USA and subsidiaries had been under the control of South Wind for over a year and a half.[14]

In the 2004 SS-USA tax return there are two separate entries that show ***no*** debt is owed by SS-Waikiki to SS-Japan as of the end of 2004. One entry shows that the amount of debt owing to SS-Japan by SS-USA (and subsidiaries) by the end of 2004 is "***none***".

In addition, in a separate statement, SS-USA reported to the IRS that during 2004, SS-Japan made ***a tax-free transfer*** to SS-USA -- and its subsidiaries (including SS-Waikiki) -- ***of 100% of the net amount of all the alleged 'debt' owed by SS-USA and its subsidiaries to SS-Japan.***[15]

Thus, by December 31, 2004, when South Wind controlled SS-USA, SS-USA reported to the IRS that it and all of its subsidiaries (including SS-Waikiki) owed ***no debt*** to SS-Japan.

Notwithstanding this, in these lawsuits, SS-Japan claims that it 'sold' the 'loan' it had made to SS-Waikiki to South Wind on December 30, 2004, the day before the end of SS-USA's 2004 tax year.[16] This 'sale', which SS-Japan has

---

[14]  See n.8.

[15]  Exhibit 3 at 256 1599 and Appendix I.

[16]  See n.6 and Exhibit 4.

6

produced a handful of documents to support, involved the sale of only one loan where the borrower was SS-Waikiki.[17]

However, this purported sale is just another 'paper' transaction. Indeed, if the alleged SS-Waikiki 'debt' had been sold to South Wind the day before SS-USA reported to the IRS that it (and its subsidiaries) had no debt to SS-Japan – a foreign corporation – then SS-USA (and its subsidiary, SS-Waikiki) would have then had a debt to South Wind – another foreign corporation. However, SS-USA did not report any such debt to the IRS.[18]

The 2004 Tax Return is addressed in further detail in Appendix I.

At the end of 2004, **if** South Wind was a creditor of SS-Waikiki, this debt would have appeared on the books of SS-Waikiki. As discussed below, it did not. This illustrates that regardless of what 'paper debt' might have been carried on South Wind's or SS-Japan's books, no real, enforceable debt existed.

---

[17] The Loan Purchase Agreement and Supplement to Loan Purchase Agreement are attached as Exhibit 4. See Exhibit 4 at 256 0292 and 0242 (referencing a single alleged debt owed to SS-Japan by SS-Waikiki).

[18] Previously, debts owed by SS-USA and subsidiaries to a non-U.S. company (SS-Japan) were reported on IRS Form 5472. There is no Form 5472 reporting the alleged debt owed by SS-Waikiki to South Wind, a Cayman Island company, as of December 31, 2004. Exhibit 3 at 256 1596-97.

      B.      SS-Waikiki's Financial Statements For The Year Ending December 31, 2004 Confirms That There Is No Debt Owing To Anyone, Including SS-Japan (Or South Wind)

Assuming that there was an enforceable debt between SS-Waikiki and SS-Japan at one time, and further assuming SS-Japan sold this debt to South Wind as of December 30, 2004 *(which assumes there was a 'debt' for SS-Japan to 'sell' to South Wind after SS-Japan had reported to the IRS that it had forgiven all the debts owed by SS-USA and subsidiaries in a tax-free transfer during 2004)*, this debt to South Wind would be reflected on the books of SS-Waikiki as of December 31, 2004.

However, just the opposite is true. SS-Waikiki's financial statements as of December 31, 2004 confirm what SS-USA reported to the IRS as of December 31, 2004: *there is **no debt** owed by SS-Waikiki **to anyone** (SS-Japan, South Wind, etc.) at the end of 2004.* Indeed, SS-Waikiki's balance sheet for the period ending December 31, 2004 shows *zero* "notes payable", *zero* "other liabilities", and *zero* "total liabilities".[19]

---

[19] The balance sheet, income statement and trial balances for SS-Waikiki for the year ending December 31, 2004 are attached to the CSOF as Exhibit 6. See Exhibit 6 at 256 0274.

Moreover, the SS-Waikiki trial balance as of December 31, 2004 shows a positive number for "due to/from affiliate", meaning that as the end of 2004, SS-Waikiki was a net *creditor* vis à vis its affiliated companies, not a debtor.[20]

Like the 2004 SS-USA tax return, SS-Waikiki's 2004 financial statements were prepared well after South Wind acquired ownership and control of SS-Japan and SS-USA (and subsidiaries).[21] This is significant because it is South Wind that controlled the preparation of all of these documents, and it is South Wind that allegedly now 'owns' the very debt that one of its companies did not report on its books.

The bottom line is that both the financial statements of SS-Waikiki and the tax return of SS-USA and subsidiaries flatly contradict SS-Japan's claim that it 'sold' to South Wind the 'debt' it was owed by SS-Waikiki. All of these documents were prepared when South Wind controlled all the Sports Shinko companies.

    C.    The Handful of Documents Produced By SS-Japan To Support The Alleged Debt Owing By SS-Waikiki Confirms <u>There Is Not Now, And Never Was, An Enforceable Debt</u>

After many months of requests, on March 23, 2007, counsel for the SS Parties produced a 6″ stack of "promissory notes and related documents" related to

---

[20]    Exhibit 6 at 256 0276.

[21]    The financial statements reflected the finances of SS-Waikiki as of December 31, 2004, and therefore had to be prepared after that date.

9

alleged inter-company debt.[22] This production includes all the documents of that description that plaintiff could locate.[23]

However, of the over 1,000 pages produced, there is absolutely no evidence of a debt existing between SS-Japan and SS-Waikiki. While there are some copies of an *unexecuted* promissory note for ¥10 billion, and a borrowing resolution signed by one director, most telling is that there is an <u>un</u>executed copy of a form lending resolution for SS-Japan, which, if it was executed, would authorize a ¥10 billion loan ***to a different borrower***.[24]

IV. SUMMARY JUDGMENT IS PROPER BECAUSE SS-JAPAN CANNOT PROVE IT IS A CREDITOR OF SS-WAIKIKI, MUCH LESS WITH "CONVINCING CLARITY"

The Hawaii Supreme Court recently ruled that a HUFTA plaintiff must prove the elements of its claim with clear and convincing evidence.[25] Counts I, II

---

[22] These documents were produced just days before the Order Dismissing SS-USA cases were filed. The overwhelming majority of the documents relates to the dismissed cases.

[23] See declaration of Robert A. Marks. Proof of the alleged SS inter-company debt is the subject of KG's Motion to Compel filed April 5, 2006 and subsequently amended. The motion is set for hearing before Judge Kurren on June 1, 2007.

[24] See penultimate page of Exhibit 7. This exhibit consists of the foregoing documents, which are the only documents from the March 23, 2007 production that could possibly pertain to a SS-Waikiki loan from SS-Japan.

[25] Kekona v. Abastillas, 113 Hawaii 174, 180, 150 P.3d 823 (2006) (clear and convincing evidence standard of proof is required for fraudulent transfer cases, reversing the Hawaii Intermediate Court of Appeals, which had held that only a preponderance of the evidence was required).

and III of the Third Amended Complaints and Counts I, II and III of the Third Party Counterclaims are all claims under HUFTA.

In diversity cases, federal law controls procedural issues related to summary judgment.[26]

When federal courts are presented with a motion for summary judgment on claims requiring proof by clear and convincing evidence, the standard for summary judgment changes consistent with the heavy burden of proof on the plaintiff. A plaintiff with a burden to adduce "clear and convincing evidence" can "escape summary judgment only if the evidence in the record would permit a reasonable finder of fact, by clear and convincing evidence, to conclude" that the plaintiff has sustained its burden.[27] This special rule for summary judgment has been applied in the Ninth Circuit,[28] and has been applied in fraud cases.[29]

---

[26]  Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F.3d 1080, 1093 (9th Cir. 2001).

[27]  Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 508, 111 S.Ct. 2419, 2428 (1991), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-256, 106 S.Ct. 2505, 1513-14 (1986) (defamation cases). "If the [plaintiff's] evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

[28]  In re First Alliance Mortg. Co., 471 F.3d 977, 998-99 (9th Cir. 2006) (punitive damages claim).

[29]  See, e.g., Invest Almaz v. Temple-Inland Forest Products Corp., 243 F.3d 57, 76 (1st Cir. 2001); Huntington Bank, Inc. v. Gilchrist Timber Co., 1995 WL 710843, *1 (9th Cir. 1995).

11

V.  THE SS PARTIES' THIRD PARTY COUNTERCLAIM
    HUFTA CLAIMS ARE ALSO SUBJECT TO
    <u>SUMMARY JUDGMENT</u>

On January 13, 2006, SS-Japan subsidiaries SS-Hawaii, Sport Shinko Resort Hotel Corporation and SS-Waikiki brought third party counterclaims against certain KG Parties and Mukai.[30]  The third party counterclaims allege essentially the same material allegations as the Third Amended Complaints, and suffer the same fatal flaws with respect to the HUFTA claims.  Summary judgment should be granted in favor of the KG Parties and against the SS Third Party Counterclaimants for the reasons set forth herein.[31]

VI.  <u>CONCLUSION</u>

Summary judgment should be granted in favor of the KG Parties and against the Sports Shinko parties on all the fraudulent transfer claims in the Third Amended Complaints and Third Party Counterclaims.

DATED:  Honolulu, Hawaii, May 10, 2007.

---

[30]  Exhibits 2A & 2B.

[31]  The Third Party Counterclaims alleges that SS-Hawaii, as well as SS-Japan, is a creditor of SS-Waikiki.  Exhibits 2A & 2B at ¶ 10.  The Third Party Counterclaims also contain passing references that SSRHC is a creditor of SS-Waikiki as well, but these appears to be editing errors.  Compare Exhibits 2A & 2B at ¶¶ 10 and 55, and see Exhibit 2A at ¶ 59.  The KG Parties are aware of no notes or other writings supporting the origination of an enforceable debt from SS-Waikiki to SS-Hawaii or SSRHC.  See Declaration of Robert Marks.  See also Exhibit 6, showing that as of December 31, 2004, SS-Waikiki had no debts or other liabilities.

/s/ Robert A. Marks
WARREN PRICE, III
ROBERT A. MARKS
SIMON KLEVANSKY
ALIKA L. PIPER
CARISA LIMA KA'ALA HEE

Attorneys for the KG Parties