IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation, | CIVIL NO. 04-00124 ACK/BMK |
| Plaintiff, | **THIRD-PARTY COUNTERCLAIM AGAINST FRANKLIN K. MUKAI, ET AL.** |
| vs. | |
| QK HOTEL, LLC, a Hawai`i limited liability company, KG HOLDINGS, LLC, a Hawai`i limited liability company, FRANKLIN K. MUKAI, | |
| Defendant. | |
| FRANKLIN K. MUKAI, | |
| Third-Party Plaintiff, | |
| vs. | |
| SPORTS SHINKO (USA) CO.; LTD., a Delaware corporation;SPORTS SHINKO (HAWAII) CO., LTD., a Hawai`i corporation; SPORTS SHINKO (MILILANI) CO., LTD., a Hawai`i corporation; SPORTS SHINKO (KAUAI) CO., LTD., a Hawai`i corporation; SPORTS SHINKO (PUKALANI) CO., LTD., a Hawai`i corporation; SPORTS SHINKO RESORT HOTEL CORPORATION, a Hawai`i corporation; SPORTS SHINKO (WAIKIKI) CORPORATION, a Hawai`i corporation; and OCEAN RESORT HOTEL CORPORATION, a Hawai`i corporation, | |
| Third-Party Defendants. | |

592261-1 / 6850-5

EXHIBIT 2A

```
SPORTS SHINKO (HAWAII) CO.,      )
LTD., a Hawai`i corporation;     )
SPORTS SHINKO RESORT HOTEL       )
CORPORATION, a Hawai`i           )
corporation; and SPORTS SHINKO   )
(WAIKIKI) CORPORATION, a Hawai`i )
corporation,                     )
                                 )
      Third-Party Defendants/    )
      Counterclaimants,          )
                                 )
      vs.                        )
                                 )
QK HOTEL, LLC, a Hawai`i limited )
liability company, KG HOLDINGS,  )
LLC, a Hawai`i limited liability )
company, FRANKLIN K. MUKAI,      )
                                 )
      Third-Party Counterclaim   )
      Defendants.                )
_____)
```

## THIRD-PARTY COUNTERCLAIM AGAINST FRANKLIN K. MUKAI, ET AL.

Third-Party Defendants SPORTS SHINKO (HAWAII) CO.,
LTD., SPORTS SHINKO RESORT HOTEL CORPORATION, and SPORTS SHINKO
(WAIKIKI) CORPORATION, (collectively, the "SS Third-Party
Counterclaimants"), by and through their attorneys, Alston Hunt
Floyd & Ing, hereby allege their Third-Party Counterclaim against
Franklin K. Mukai ("Mukai") *et al.* as follows:

### PARTIES

1. Third Party Counterclaimant Sports Shinko (Hawaii)
Co., Ltd. ("SSH") is and was at all relevant times a Hawaii for
profit company with its principal place of business in Hawai`i

2.  Third Party Counterclaimant Sports Shinko Resort
Hotel Corporation ("SSRHC") is and was at all relevant times a

Hawaii for profit company with its principal place of business in Hawai`i.

3.   Third Party Counterclaimant Sports Shinko (Waikiki) Corporation ("SSW") is and was at all relevant times a Hawaii for profit company with its principal place of business in Hawai`i.  Collectively, SSJ, SSRHC, and SSW are the "SS Third Party Counterclaimants."

4.   SSH owns and at all relevant times has owned the stock of the following subsidiaries:  Sports Shinko (Mililani) Co., Ltd. ("SSM"), Sports Shinko (Pukalani) Co., Ltd. ("SSP"), Sports Shinko (Kauai) Co., Ltd. ("SSK"), and SSRHC.  SSRHC owns the stock of Ocean Resort Hotel Corp. and SSW.

5.   Defendant QK HOTEL, LLC ("QK HOTEL") is a Hawai`i limited liability company with its principal place of business in the State of Hawai`i.  The members of QK HOTEL are all citizens of Hawai`i.

6.   Defendant KG HOLDINGS, LLC ("KG HOLDINGS"), is a Hawai`i limited liability company with its principal place of business in the State of Hawai`i.  The members of KG HOLDINGS are all citizens of Hawai`i.

7.   Third Party Plaintiff/Counterclaim Defendant FRANKLIN K. MUKAI ("MUKAI") is a citizen of Hawai`i.  At all relevant times, MUKAI was an employee and/or partner of McCORRISTON MILLER MUKAI MACKINNON LLP, a Limited Liability Law Partnership ("M4"), an officer and/or director of SSH and the

Third Party Counterclaimants, and an attorney and agent for SSW. At all relevant times, MUKAI acted directly and through agents of M4.

### JURISDICTION

8.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1367, and under principles of supplemental jurisdiction.

9.   Venue is appropriate in this Court under 28 U.S.C. § 1391 because most of the events giving rise to the SS Third Party Counterclaimants' claims occurred in this district.

### GENERAL ALLEGATIONS

10.   SSJ and SSH are, and at all relevant times were, creditors of SSW.

11.   At all relevant times, SATOSHI KINOSHITA ("SATOSHI"), TAKESHI KINOSHITA ("TAKESHI") and TOSHIO KINOSHITA ("TOSHIO")(collectively, the "Kinoshitas"), and TAKUYA TSUJIMOTO ("TSUJIMOTO"), YASUO NISHIDA ("NISHIDA"), TSUGIO FUKUDA ("FUKUDA") and MUKAI (the Kinoshitas, TSUJIMOTO, NISHIDA, FUKUDA and MUKAI, are hereinafter collectively referred to as "Insiders") were officers and/or directors of SSW.

12.   In 1988, SSW acquired real and personal properties, which included the Queen Kapiolani Hotel (the "Hotel").

13.   Among other things, MUKAI assisted and advised SSW in managing, marketing and selling the Hotel.

14.  At all relevant times, SSW was insolvent, and its debt exceeded the fair market value of its assets.

**THE RCC'S ATTEMPTS TO COLLECT ON DEBT**

15.  In the late 1980's and early 1990's, SSJ, (the ultimate parent corporation of SSW, SSH, SSK, SSM, SSRHC and SSP, and Plaintiff in two of the consolidated cases) established a number of overseas subsidiaries.  SSJ borrowed hundreds of millions of dollars from Japan-based lenders.  SSJ in turn loaned those funds to its overseas subsidiaries, including SS USA, which loaned the funds to local subsidiaries, including SSW.

16.  In the late 1990's a quasi-governmental Japan entity known as the Resolution and Collection Corporation (the "RCC") received an assignment of the majority of SSJ's debt and became SSJ's major creditor.  The RCC was charged with collecting non-performing loans assigned to it.

17.  The RCC engaged SSJ in extended negotiations regarding repayment.  SSJ approached the RCC with repayment proposals that included sales proceeds of assets in Hawai`i and elsewhere, including the Hotel.

18.  In or about May, 2000, the RCC began legal actions to collect on debt that was secured by SSJ's property and assets in Japan.  The RCC continued to make demands for repayment and SSJ continued to make repayment proposals involving Hawai`i assets.  In May 2000, SSJ (through TOSHIO) told RCC the QK Hotel

would not be sold, so that certain Japan club members could use the Hotel.

19.   In response to the RCC's actions, Toshio Kinoshita and other Insiders formulated a plan to transfer assets held by SSW and SSJ's other subsidiaries in Hawai`i outside the reach of the RCC and other creditors.  The plan entailed, among other things, transferring ownership and/or management rights over SSW's assets to a third party that was to be secretly controlled by the Insiders.

**RETAINING MANAGEMENT OVER SSW**

20.   With MUKAI's assistance, in or about August, 2000, the Insiders incorporated a management company that became known as Resort Management Services (Hawai`i), Inc. ("RMS").

21.   SATOSHI provided NISHIDA, who was then an officer of SSH and certain SSH subsidiaries, and a former officer of SSW, with the funds to purchase RMS's stock.  NISHIDA ostensibly became the sole director, shareholder, and president of RMS in September, 2000.

22.   Contemporaneously, SATOSHI signed exclusive real estate brokerage listing agreements for several of SSJ's subsidiaries in Hawai`i.  Pursuant to these agreements, the real estate broker (the "Broker") began to market these properties for sale.  The Queen Kapiolani Hotel was not listed for sale.

23.   Defendant MUKAI or some acting on his behalf and under his control drafted a stock option agreement (the

"Option"), pursuant to which, NISHIDA, as the sole shareholder of RMS, granted SATOSHI, TAKESHI and Toshiya Kinoshita (the sons of TOSHIO) the right to purchase all of the stock of RMS for $1,500.00.

24.   In or about October, 2000, SATOSHI, TAKESHI, and NISHIDA executed the Option.

25.   NISHIDA was only a strawman for the Kinoshitas, and he operated RMS for their benefit based upon the Option.

26.   The Insiders, including specifically MUKAI, concealed the Option and the Kinoshita's interest in RMS from the RCC, Sports Shinko's lenders and creditors, (and later, the Bankruptcy Trustee for SSJ).

27.   In or about September, 2000, the Insiders, including specifically MUKAI prepared and implemented agreements under which SSW, and other Hawai`i-based subsidiaries of SSH for which Insiders served as officers and/or directors (collectively the "Sister Companies"), to enter into management agreements with RMS (the "Management Agreements").

28.   Pursuant to the Management Agreements, RMS agreed to manage properties owned by SSW and the Sister Companies. Among other things, the Management Agreements required SSW and the Sister Companies to pay management fees, employee salaries, and other expenses to RMS, and the payment of substantial termination fees if the managed properties were transferred without RMS' consent and the transferee would not assume the

Management Agreements (the "Termination Fees"). The Termination Fees totaled $3.5 million.

29. No present and reasonably equivalent value was received by SSW or the Sister Companies in exchange for the Management Agreements.

30. Insiders intended that these Management Contracts would impair the value of the assets of SSW and the Sister Companies, and appear to make it more difficult for their creditors and SS-Japan's creditors to seek any recovery from those assets and/or to transfer value to the Kinoshita's through their secret control of RMS.

31. Defendant MUKAI knew that the Management Agreements and the Option were intended to transfer assets of SSW and the Sister Companies outside the reach of their respective pre-existing creditors (including SSJ) for the benefit of the Insiders, without any present and reasonably equivalent value passing to SSW or Contracting Companies.

**MAINTAINING OWNERSHIP OF SSW**

32. In early 2001, the RCC threatened to put SSJ into legal reorganization proceedings in Japan. The RCC also expressed interest in compelling SSJ to sell its overseas assets and the assets of SSJ's direct and indirect subsidiaries.

33. In late November, 2001, TOSHIO and other Insiders created a plan to cause RMS, or another entity owned and/or

controlled by the Kinoshitas, to purchase the stock or assets of SSW (the "Plan").

34.   SATOSHI informed MUKAI of the Plan.

35.   MUKAI assisted TOSHIO and the Insiders with taking steps to analyze and implement the Plan, even though they were aware that SSW was insolvent and the RCC was pursuing legal action against SSJ's assets.

36.   The Insiders, including MUKAI, caused Grant Thornton, LLP to analyze the tax consequences of the transfers proposed under the Plan.

37.   With the assistance of MUKAI, the Insiders marketed SSW's assets in 2000 and 2001.  They received and rejected a number of offers through December, 2001.

38.   In addition, MUKAI searched for buyers for the Hawai`i properties owned by SSW and the Sister Companies.

39.   On December 4, 2001, SATOSHI received a letter of interest to purchase all of the assets of SSW and the Sister Companies from Defendant KG Holdings, LLC ("KG").  KG's interest was instigated by MUKAI, who had a social and professional relationship with insiders of KG.

40.   After it received KG's December 4, 2001 letter, SSW, through SATOSHI, instructed the Broker to cease all marketing efforts.

41.   Despite the listing Agreements, the Insiders then began exclusive dealings with KG without involving the Broker.

KG's representatives flew to Japan to meet with TOSHIO and SATOSHI, among others.

42. The Insiders rejected more lucrative purchase offers provided by the Broker in order to further their plan to retain control and ownership of SSW's assets, and to hinder or delay SSJ from being able to collect on its loans to SSW, which, in turn, would hinder SSJ's creditors, including the RCC.

43. In early January, 2002, the RCC asked TOSHIO to voluntarily place SSJ into reorganization in Japan. On or about January 15, 2002, TOSHIO met with RCC to discuss a plan for repayment of SSJ's debts. The RCC rejected the repayment proposal and began steps to force SSJ into bankruptcy in Japan.

**PURCHASE AND SALE AGREEMENT**

44. On or about January 15, 2002, SSW and Defendant KG HOLDINGS and its nominee (QK HOTEL), with the assistance of MUKAI, entered into an agreement ("PSA") to buy the assets of SSW and the Sister Companies. The contract price was below the fair market value of the assets to be sold and substantially less than the aggregate value of competing offers from qualified buyers that the Insiders had previously rejected.

45. At all relevant times, the Insiders (including MUKAI), QK HOTEL, and KG HOLDINGS knew or should have known that the amount to be paid by QK HOTEL for SSW's assets was significantly less than their fair market value, and that SSW

would not, and did not, receive reasonably equivalent value for its assets.

46.  At all relevant times, Insiders, QK HOTEL, and KG HOLDINGS each knew or reasonably should have known that SSW was insolvent.

47.  By selling SSW's assets to QK HOTEL on the terms negotiated with KG HOLDINGS, the INSIDERS, with the assistance of MUKAI, realized substantially less than if they had sold to others at arm's length.  As a result, SSW received less than it should have to repay SSJ.

48.  QK HOTEL refused to assume the Management Agreement concerning the Hotel, thereby triggering SSW's obligation to pay the Termination Fees to RMS.

49.  On or about January 28, 2002, the RCC initiated bankruptcy proceedings against SSJ in the District Court in Osaka, Japan.

50.  On or about January 30, 2002, in partial payment of the Termination Fees, SSP, through SATOSHI, executed a deed for residential real property located at Makawao, Maui, at TMK (2) 3-2-020-034 (the "Pukalani Residence") to RMS.  SSP did not receive present and reasonably equivalent value in exchange for the transfer of the Pukalani Residence to RMS.

51.  On or about February 4, 2002, the District Court for Osaka, Japan appointed a Trustee and Deputy Trustees to manage SSJ's domestic and overseas assets.

52.   In early March, 2002, the Deputy Trustee in bankruptcy for SSJ and his assistants met in Hawai`i with SATOSHI, Mukai and others, who failed to disclose all material information about the Plan, the transactions described above, and the Insiders' efforts to prevent SSJ and its creditors from realizing the full value of SSW's assets.

## CLAIMS FOR RELIEF

### COUNT I: Haw. Rev. Stat. § 651C
### (KG HOLDINGS, QK HOTEL)

53.   The SS Third Party Counterclaimants reallege and incorporate the allegations contained in preceding paragraphs, as though fully set forth herein.

54.   The transfer of SSW's assets to Defendant QK HOTEL was fraudulent under Haw. Rev. Stat. § 651C-5(a) because no reasonably equivalent value was received by SSW, which was either insolvent at the time of the transfer or rendered insolvent by the transfer.

55.   As a result of the transfer and other fraudulent actions, creditors of SSW, including SSH and SSRHC were damaged, and SSH and SSRHC are entitled to damages and all other appropriate remedies authorized by Haw. Rev. Stat. § 651C-7(a) in accordance with the proof at trial.

## COUNT II: Haw. Rev. Stat. § 651C-4
### (KG HOLDINGS, QK HOTEL)

56. SS Third Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

57. SSW's transfer of the Hotel to QK HOTEL was fraudulent because the transfer was made with actual intent to hinder, delay, or defraud one or more of SSW's creditors.

58. The actual intent to hinder, delay or defraud is evidenced by, among other things, the following facts:

a. The transfer to QK HOTEL involved substantially all of SSW's assets;

b. SSW was insolvent or became insolvent as a result of the transfer;

c. Insiders destroyed documents and concealed information about the transfer from SSW's successor management and the Bankruptcy Trustee for SSJ;

d. Insiders concealed their interest in RMS and the proceeds from the management contracts, which encumbered SSW's assets; and

e. The price paid for SSW's assets was below the fair market value of those assets.

59. As a result of this fraudulent transfer, creditors of SSW, including SSH and SSRHC, were damaged and SSH is entitled

to all other appropriate remedies authorized by Haw. Rev. Stat. §
651C-7(a) in accordance with the proof at trial.

### COUNT III: Aiding and Abetting/Conspiracy to Violate
### Haw. Rev. Stat. ch. 651C
### (KG HOLDINGS, QK HOTEL)

60. The SS Third Party Counterclaimants reallege and
incorporate the allegations contained in the preceding
paragraphs, as though fully set forth herein.

61. The acts of MUKAI, KG HOLDINGS, and/or QK HOTEL
caused and/or enabled the transfer of SSW's assets to QK HOTEL
and an array of assets to RMS in violation of Haw. Rev. Stat. Ch.
651C.

62. SATOSHI, TAKESHI, TOSHIYA KINOSHITA, and NISHIDA,
with the help of the MUKAI and his agents, entered into
agreements to fraudulently convey assets of SSW to Insiders in
violation of Haw. Rev. Stat. ch. 651C.

63. MUKAI, KG HOLDINGS, and QK HOTEL knew or should
have known that the Insiders were violating and/or intending to
cause SSW to violate Haw. Rev. Stat. ch. 651C. MUKAI, KG
HOLDINGS, and QK HOTEL knowingly gave substantial assistance or
encouragement to the Insiders in connection with their violations
of  Haw. Rev. Stat. ch. 651C.

64.  The Defendants' conduct injured SSW's creditors, including SSRHC and SSH, in an amount to be determined at trial.

**COUNT IV:  Breach of Fiduciary Duty**
**(MUKAI)**

65.  The SS Third Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

66.  At all relevant times, MUKAI was an attorney, officer and/or director of the SS Third Party Counterclaimants. Upon the insolvency of SSW, MUKAI owed fiduciary duties, including a duty of care and a duty of loyalty, to creditors and shareholders of SSW, including SSRHC and SSH, to exercise his judgment in an informed, good faith effort to maximize the value of, and sales proceeds from, SSW's assets for the benefit of SSRHC, SSH and SSW's other creditors, and for SSW.

67.  MUKAI, alone and in concert with others, breached his duties to SSRHC, SSH and SSW by, *inter alia*, purposefully allowing Insiders to engage in self-dealing transactions, neglecting and abandoning corporate opportunities to obtain more value for SSW's assets for the benefit of creditors and shareholders, and by conspiring to, causing, or assisting the

fraudulent conveyance of SSW's assets in violation of Haw. Rev. Stat. ch. 651C.

68.  SSRHC, SSH, and SSW were proximately damaged by such breaches in an amount to be determined at trial.

## Count V:  Aiding and Abetting Breach of/ Conspiracy to Breach Fiduciary Duties
### (MUKAI, QK HOTEL, KG HOLDINGS)

69.  The SS Third Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

70.  Upon the insolvency of SSW, the Insiders including MUKAI, owed fiduciary duties to protect the interests of SSW and the creditors and shareholders of SSW, including SSRHC and SSH.

71.  The Insiders collaborated to prepare, execute and implement agreements that breached those fiduciary duties whereby, *inter alia*, Insiders engaged in self-dealing transactions and fraudulently conveyed SSW's assets, and such conduct frustrated the rights of SSW and SSW's creditors and shareholders, including SSRHC and SSH.

72.  MUKAI knew that the conduct of his fellow Insiders constituted a breach of their fiduciary duties, and gave

substantial assistance and encouragement to those Insiders in such conduct.

73. MUKAI caused and/or enabled those Insiders to breach their fiduciary duties, and such acts were in furtherance of their conspiracy.

74. MUKAI, QK HOTEL, and KG HOLDINGS knew or reasonably should have known of the Insiders' fiduciary duties to Third Party Counterclaimants.

75. MUKAI, QK HOTEL and KG HOLDINGS affirmatively and knowingly agreed to aid Insiders in breaching their fiduciary duties to Third Party Counterclaimants, by assisting them in, *inter alia,* self-dealing transactions and fraudulently transferring SSW's assets. MUKAI, QK HOTEL and KG HOLDINGS knew these actions would frustrate the rights of SSW and SSW's creditors and shareholders, including SSRHC and SSH.

76. MUKAI knowingly participated and provided substantial assistance and encouragement to the other Insiders in breaching their fiduciary duties.

77. SSRHC, SSH and SSW were proximately damaged by such actions and omissions in an amount to be determined at trial.

## Count VI:  Deepening Insolvency
### (MUKAI)

78.  The SS Third Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

79.  MUKAI engaged in conduct that he knew would aggravate SSW's insolvency and fraudulently prolong its life, including assisting Insiders in rejecting offers to purchase the Hotel for fair market value or greater, and in accepting the offer of KG HOLDINGS, whose offer was significantly less than fair market value and less than offers previously made by other qualified buyers.

80.  By rejecting these offers, Insiders, with the assistance of MUKAI, fraudulently prolonged the life of SSW and further deepened its insolvency.

81.  MUKAI fraudulently prolonged SSW's life in order to hinder or prevent Plaintiff from collecting on its debt.

82.  MUKAI's actions and omissions were performed in bad faith and/or with the intent to harm SSW's creditors and shareholders.

83.  SSRHC and SSH were proximately damaged by such actions and omissions in an amount to be determined at trial.

**Count VII:   Attorneys' Fees (Third Party Litigation exception)**
**(MUKAI, KG HOLDINGS, QK HOTEL)**

84.   SS Third Party Counterclaimants reallege and incorporate the allegations contained in the paragraphs above, as though fully set forth herein.

85.   The wrongful acts of Defendants, and those acting under their direction and control, caused SSRHC, SSH, and SSW to incur attorneys' fees and expenses to protect their rights.

**COUNT VIII:   Rescission**
**(QK HOTEL)**

86.   The SS Third Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

87.   QK HOTEL had notice of limitations of Insiders' authority to transfer the Hotel, namely, that Insiders owed a fiduciary duty to SSRHC and SSH, and were obligated to exercise judgment in an informed, good faith effort to maximize SSW's long-term wealth creating capacity.

88.   QK HOTEL knew or should have known that Insiders were acting improperly by causing SSW to reject offers to purchase SSW's assets for at or above fair market value, and to accept the significantly lower offer of QK HOTEL.

89.   QK HOTEL had reason to believe that Insiders were acting for their own benefit.

90.   The sale of SSW's assets to QK HOTEL was suspicious on its face given the speed of the transaction and its terms.

91.   Circumstances indicated Insiders were acting in fraud of SSW's creditors and shareholders.

92.   QK HOTEL knew or should have known that Insiders were not acting for the benefit of SSW's creditors and shareholders.

93.   SSRHC, SSH, and SSW are entitled to rescission of the transfer of the Hotel.

## COUNT IX:  Creditor Fraud
### (MUKAI)

94.   The SS Third Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

95.   At all relevant times, MUKAI knew or should have known SSW was either insolvent or would be rendered insolvent by the transfer of SSW's assets.

96.   At all relevant times, MUKAI knew or should have known SSW was not receiving reasonably equivalent value for SSW's assets.

97.  MUKAI knew SSRHC and SSH were creditors of SSW and/or had claims on SSW's assets.

98.  MUKAI intentionally or recklessly participated in Insiders' unlawful conduct to hinder, delay, or defraud creditors of SSW, including SSRHC and SSH.

99.  As a result of MUKAI's acts and omissions, SSRHC and SSH were injured in an amount to be determined at trial.

### COUNT X:  Shareholder Claims
### (MUKAI)

100.  The SS Third Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

101.  SSRHC is and was the sole shareholder for SSW when the Pukalani Residence and Pukalani Property were transferred to RMS and/or QK HOTEL.  SSH was the shareholder for SSRHC at all relevant times.  SSH was an indirect shareholder of SSW.

102.  At all relevant times, MUKAI and the Insiders acted on behalf of SSW.

103.  MUKAI and the Insiders caused SSW to transfer substantially all its assets to QK HOTEL for substantially less than their market value.

104. SSW's transfer of all its income producing, valuable assets caused injury to SSRHC and SSH, SSW's shareholder and indirect shareholder, including without limitation, making SSW's stock worthless, causing SSW to be unable to pay dividends, and the loss of any ability to sell SSW's stock to any purchaser.

105. As a result of MUKAI's acts and omissions, SSRHC and SSH were injured in an amount to be determined at trial.

### Punitive Damages
### (MUKAI, KG HOLDINGS, QK HOTEL)

106. The SS Third Party Counterclaimants reallege and incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

107. MUKAI, KG HOLDINGS and/or QK HOTEL has knowingly, willfully, wantonly, and in reckless disregard of their civil obligations caused, conspired to, and/or substantially assisted or encouraged the other to, fraudulent convey assets of, and harm SSRHC, SSH and SSW.

108. SSRHC, SSH and SSW are each entitled to an award of punitive damages against each of the Defendants.

WHEREFORE, the SS Third Party Counterclaimants request that the Court:

A. Declare that SSW's transfer of the Hotel to Defendants KG HOLDINGS and/or QK HOTEL was fraudulent as to SSRHC and SSH;

B. Avoid the foregoing transfers to the extent necessary to satisfy Plaintiff's claim and/or grant SSRHC and SSH any other relief appropriate under Haw. Rev. Stat. § 651C-7(a);

C. Impose a constructive trust on all assets transferred by SSW to KG HOLDINGS and/or QK HOTEL, and all profits earned thereon;

D. Order an accounting of all revenues received and expenses paid by KG HOLDINGS and/or QK HOTEL in connection with the Hotel and the Pukalani Residence;

F. Award SSRHC, SSH and SSW general, special, and punitive damages commensurate with the proof at trial; and

G. Award SSRHC, SSH and SSW their attorneys' fees and costs, and such other and further relief as may be just and proper.

DATED: Honolulu, Hawai`i, January 13, 2006.

PAUL ALSTON
GLENN T. MELCHINGER

Attorneys for Plaintiff
and Third-Party Defendants,
the SS Entities

592261-1 / 6850-5

23