PRICE OKAMOTO HIMENO & LUM

| | |
|---|---|
| WARREN PRICE III | 1212 |
| ROBERT A. MARKS | 2163 |

707 Richards Street, Suite 728
Honolulu, Hawaii  96813
Phone: 808.538.1113
Fax: 808.533.0549
e-mail: ram@pohlhawaii.com

KLEVANSKY & PIPER, LLC

| | |
|---|---|
| SIMON KLEVANSKY | 3217-0 |
| ALIKA L. PIPER | 6949-0 |
| CARISA LIMA KA'ALA HEE | 7372-0 |

Bishop Square, Pauahi Tower
1001 Bishop Street, Suite 770
Honolulu, Hawaii 96813
Phone:  (808) 536-0200
Fax:  (808) 536-0221
E-mail: sklevansky@kplawhawaii.com
        apiper@ kplawhawaii com
        kaalahee@ kplawhawaii com

Attorneys for Defendants, Counterclaimants and
Third-Party Plaintiffs KG HOLDINGS, LLC,
QK HOTEL, LLC, and OR HOTEL, LLC
("KG PARTIES")

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., | CV 04-00124 ACK-BMK |
| Plaintiff, | CV 04-00127 ACK-BMK |
| vs. | CONSOLIDATED CASES |
| QK HOTEL, LLC, et al., | KG PARTIES' REPLY MEMORANDUM IN SUPPORT OF SECOND AMENDED MOTION TO COMPEL DISCOVERY AND TO SET |
| Defendants, | |
| and | |

FRANKLIN K. MUKAI, et al.,

      Third-Party Plaintiffs,

    vs.

SPORTS SHINKO (USA) CO., LTD.,
et al.,

      Third-Party Defendants,

    and

SPORTS SHINKO (HAWAII) CO.,
LTD., et al.,

      Third-Party Defendants/
      Counterclaimants,

    vs.

QK HOTEL, LLC, et al.,

      Third-Party Counterclaim
      Defendants.

AND CONSOLIDATED CASE

SCHEDULING ORDER;
PROPOSED ORDER;
DECLARATION OF ROBERT A.
MARKS; EXHIBITS 14 – 18;
CERTIFICATE OF SERVICE

DATE:    June 1, 2007
TIME:    2:00 PM
JUDGE:  Hon. Barry M. Kurren

KG PARTIES' REPLY MEMORANDUM IN SUPPORT OF SECOND
AMENDED MOTION TO COMPEL DISCOVERY
AND FOR A SCHEDULING ORDER

I.    WHY THE DISCOVERY SOUGHT BY THIS MOTION REMAINS
      RELEVANT AND CRITICAL

At long last, in its opposition to this motion, SS[1] has identified the single

'debt' upon which its fraudulent transfer claims are based.  The KG Parties ask the

Court to accept SS's representation and find 1) that the alleged ¥10 billion 'debt' is

the *sole* debt that forms the basis for SS-Japan's status as a creditor such that it

may pursue claims under HUFTA,[2] and 2) that the documents attached to the

motion as Exhibit 9A comprise all the documentary evidence of the formation of

that debt.

In addition, the KG Parties seek two things by this motion:

First, SS should be ordered to provide the basic accounting documents

underlying the December 31, 2004 financial statements of the U.S. subsidiaries of

SS-Japan.  These documents should explain, for example, why SS-Waikiki

reported *no debt of any kind as of the end of 2004* (and hence, that SS-Japan cannot

---

[1]    Defined terms in the Second Amended Motion for Protective Order shall
have the same meaning here.

[2]    SS points to two documents to support the 'debt' – Mem.Opp. Exhibits 2
and 3.  SS Exhibit 2 is a 'copy' of a ¥10 billion promissory note (and is one of
documents comprising KG Exhibit 9A).  Exhibit 3 is SS-Hawaii and subsidiaries'
*compiled* financial statements as of December 31, **2002**.  Mem. Opp. Exhibit 3 is
vulnerable for a number of reasons, not least of which is it is not audited.

Exhibit 3 is also irrelevant to understanding what occurred at the end of
**2004**, when it appears the 'debt' was written off by SS-Japan and payment was
forgiven.

1

be a creditor as it has alleged.)

Second, SS should also be ordered to identify what happened to the 'debt' since its alleged formation. Was it paid? Discharged? Forgiven? Adjusted? Converted to equity? What interest rate(s) have been charged? Assuming an enforceable debt ever existed, what, if anything, is now due?

Both these areas of discovery are highly relevant and discoverable. Unless the 'debt' exists right up through the time of judgment, SS-Japan does not have a claim for fraudulent transfer. The fraudulent transfer claims exist only if SS-Japan, or its assignee, is a creditor of SS-Waikiki. The plaintiff may only recover damages up to the amount of the debt that the creditor was unable to recover because of the alleged fraudulent transfer of the debtor's property. If there is no debt, there are no damages as a matter of law, and thus, no claim for fraudulent transfer.

II.    SS-JAPAN SHOULD BE ORDERED TO PRODUCE THE
       2004 ACCOUNTING RECORDS OF ITS U.S. SUBSIDIARIES[3]

KG seeks an order compelling production of:

---

[3]    SS-Japan's primary argument against producing these documents is that the KG Parties have better access to this information than SS-Japan does. The argument is specious on its face. As SS-Japan itself observes, the KG Parties agreed to provide bookkeeping information for the SS Hawaii entities through the end of **2002**. This bears no relation to the requested accounting detail underlying the December 31, **2004** financial statements. Mem. Opp. at 14-15.

the general ledgers, including transaction details, that are the source of information for the balance sheets, income statements and trial balances for SS-USA and its subsidiaries as of December 31, 2004.[4]

The December 31, 2004 financial statements produced by SS reveal that ***there is no debt whatsoever owed by SS-Waikiki***.  Of course, this is irreconcilable with the assertion that SS-Waikiki is indebted to SS-Japan on the alleged ¥10 billion note that SS has (finally) identified as the source of its alleged creditor status.[5]

The December 31, 2004 financial statement of SS-Waikiki is one of the key documents on which the KG Parties' Motion for Partial Summary Judgment, filed May 10, 2007 relies.[6]  A key premise of that motion is that as of the end of 2004, there is no debt owed by SS-Waikiki to SS-Japan, and hence, the fraudulent transfer claims must fail.  The Motion for Partial Summary Judgment is set for hearing before Judge Kay on September 17, 2007.

---

[4]    Motion at 3, item 9.  These records are referred to as the "**2004 Accounting Records**" herein.  There is no formal discovery request clearly demanding these specific documents, but there is an informal request, the most recent version of which is KG Exhibit 12.  The Sports Shinko parties have taken the position that they will respond to informal discovery requests.  KG Exhibit 13.

[5]    These financial statements are also relevant to SS-Japan's allegation that "[a]t all relevant times, [SS-Waikiki] was insolvent, and its debt exceeded the fair market value of its assets."  Exhibits 1A & 1B at ¶ 11; cf. HRS §§ 651C-2(a); 651C-4(b)(9); 651C-5.  The financial statements show that SS-Waikiki is solvent as of the end of 2004.

[6]    The Motion for Partial Summary Judgment, Concise Statement and the key supporting exhibits is attached as Exhibit 14.  The balance sheet that shows no debt owed by SS-Waikiki as of December 31, 2004 is found at Exhibit 14 hereto at Exhibit 6, Bates 256 0274.

3

Based on a very recent (May 10, 2007) supplemental production of documents by SS's accountants, Grant Thornton, it is now apparent that:

❑ Goldman Sachs Realty Japan, Limited[7] was performing accounting services for SS-Japan's U.S. subsidiaries, including the alleged 'debtor' and third party defendant, SS-Waikiki.[8]

❑ *Goldman Sachs Realty Japan, Limited prepared the December 31, 2004 financial statements for SS-USA and its subsidiaries.*[9]

❑ ***As of the end of August, 2005, Goldman Sachs Realty Japan, Limited had possession of the 2004 Accounting Records KG seeks by this motion***.[10]

SS-Japan dodges providing this critical accounting information by stating,

"SS Japan has produced all the financial information related to SS USA ***in its control***."[11]  However, these claims are being prosecuted by SS-Japan as the *agent of South Wind*,[12] a wholly owned Goldman Sachs entity.[13]  South Wind, as SS-

---

[7]    According to SEC filings, Goldman Sachs Realty Japan, Limited ("GSRJL") is a "significant subsidiary" of The Goldman Sachs Group, Inc.  See Exhibit 16 hereto.

[8]    See highlighted portions of Exhibit 15 hereto.  KG Exhibit 15 is essentially the same document as SS Exhibit 5.

[9]    Exhibit 15 hereto at GT037987.

[10]   Id.  The new evidence from Grant Thornton also shows, curiously, that GSRJL declined Grant Thornton's request for a copy of the 2004 Accounting Records when Grant Thornton was preparing the 2004 U.S. tax returns of SS-Japan and its subsidiaries.  The records were not produced to Grant Thornton because they are "impossible ... to understand."  Id.

[11]   Mem.Opp. at 5 (emphasis added).

[12]   KG Exhibit 2B at ¶ 3(a); KG Exhibits 1A & 1B at ¶7.

[13]   Exhibit 15 hereto at GT038048-49; GT038052.

4

Japan's principal, is obligated to obtain its records from GSJRL, which also wholly

owned by Goldman Sachs.[14]

As a matter of law, SS-Japan has "control" of these accounting records even

if the records are in the physical custody of GSRJL. When a company gives its

accounting records to its accountant, the company's accounting records are still

within the company's possession and control.[15] Moreover, frustrating the

discovery process by lodging documents with related non-parties is not proper.[16]

SS-Japan's refusal to provide the 2004 Accounting Records is particularly

egregious because the non-party who has these key records is in Japan and not

---

[14]    Exhibit 16 hereto.

[15]    Wardrip v. Hart, 934 F.Supp. 1282, 1286 (D.Kan. 1996) (financial records
of the defendant in the possession of defendant's accountant are documents which
defendant has the legal right to obtain. Therefore, defendant should have produced
the financial records of defendant's accountant upon receipt of the request for
production and the deposition notice. Plaintiff does not have to seek those
documents from the accountant.) (cited in 8A Wright & Miller § 2210).

[16]    In re Infant Formula Antitrust Litig., 1992 WL 503465, *10 (N.D.Fla. 1992)
(after finding that a third party with a substantial interest in the litigation cannot be
allowed to frustrate the rules of discovery to the disadvantage of another party, the
Court ordered all assignors in the case be treated as parties for the purposes of
discovery) (quoting Compagnie Francaise D'Assurance Pour Le Commerce
Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 34 (S.D.N.Y. 1984)); Bank of
New York v. Meridien Biao Bank Tanz., 171 F.R.D. 135, 148 (S.D.N.Y. 1997);
Natta v. Hogan, 392 F.2d 686, 691 (10th Cir. 1968).

directly subject to subpoenae or deposition.[17]

Compounding the problem further, the attorney for ***Goldman Sachs (Japan) Ltd.*** (and presumably also attorney for other Goldman Sachs entities in Japan) has ***flatly rejected KG's request to voluntarily cooperate*** with discovery.[18]

If Goldman Sachs elects to place the relevant, discoverable and critical 2004 Accounting Records beyond the reach of SS-Japan, it should do so at the peril of discovery sanctions.

III.    SS-JAPAN IMPROPERLY USES RULE 33(d) TO RESPOND TO MUKAI'S INTERROGATORIES ABOUT THE 'DEBT'

Without irony, SS-Japan complains[19] that the KG Parties are attempting to shift the burden to identify and quantify the debt owed to SS, ignoring that this is a burden that the law places on SS-Japan.[20]

SS-Japan asserts that it has done all that is required by Rule 33(d) of the Federal Rules of Civil Procedure in responding to Mukai's interrogatories. Rule 33(d) sets forth the limited circumstances in which a party may produce business records rather than providing an answer to an interrogatory. As demonstrated

---

[17]    Japan is not a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters. http://travel.state.gov/law/info/judicial/judicial_678.html.

[18]    Exhibit 17 hereto.

[19]    Mem.Opp. at 8.

[20]    Kekona v. Abastillas, 113 Hawaii 174, 180, 150 P.3d 823 (2006) (a HUFTA plaintiff must prove its case by clear and convincing evidence).

below, the option to produce business records is a narrow one that is not available to SS-Japan.

Wright & Miller discuss four "prerequisites" that have evolved from courts' experience under Rule 33(d).  SS-Japan fails all four tests, and accordingly, it should be ordered to respond to the discovery requests from the KG Parties (and Mukai) providing details of the amount due on the alleged debt as set forth in the attached proposed order.  The "prerequisites" are each discussed below.

A.    SS-Japan Has Not Affirmed That The Interrogatory Answer
       Will Be Found in the Identified Documents

"The first [prerequisite to the use of Rule 33(d)] is that the responding party must affirm that the information sought by the interrogatory in fact is available in the specified records."[21]  While the law requires this straightforward assertion from the responding party, SS-Japan waffles.  In their answers to the interrogatories propounded by Mukai, SS-Japan repudiates this "prerequisite," stating:

> [SS-Japan] has already produced, or will produce, non-privileged documents in response to [Mukai Interrogatory No. 5, requesting details about the alleged debt owed by SS-Waikiki].  See attached chart of Bates Numbers of *certain* responsive documents.  ***Plaintiff has no obligation to provide, and will not provide, an exhaustive list***.[22]

---

[21]    8A Wright, Miller & Marcus § 2178 (2007 Supp.) ("Wright & Miller")

[22]    KG Exhibits 5A & 5B at 16 (emphasis added).

Courts have rejected SS-Japan's approach. "[T]he party invoking the option [of producing business records rather than answering an interrogatory] **must be able to represent that the party will be able to secure the information sought within the business records.** It is not sufficient to speculate that an answer may be available. This is little more than an offer to play the **discredited game of blind man's bluff** at the threshold level of discovery."[23]

Similarly, courts have concluded that a party invoking Rule 33(d) "may not do so if all which can be said is that the answer 'might' be found in the records; the party invoking the option must be able to represent that the party will be able to secure the information which is sought by the interrogatory in the records."[24]

What SS-Japan attempts to do is use Rule 33(d) "as a procedural device for avoiding the duty to give information by shifting the obligation to find out whether information is ascertainable from the records that have been tendered."[25]  This is clearly an abuse of Rule 33(d) under the case law, and accordingly, SS should be ordered to provide a proper response detailing the amount of the alleged 'debt'.

---

[23]    DCA Inc. v. Resorts Intern. Inc. of New Jersey, 1989 WL 138846, *2 (E.D.Pa. 1989) (emphasis added; citations omitted) (quoted in Wright & Miller).
[24]    Sabel v. Mead Johnson & Co., 110 F.R.D. 553, 555 (D. Mass. 1986).
[25]    Budget Rent-A-Car of Missouri, Inc. v. Hertz Corp., 55 F.R.D. 354, 357 (D. Mo. 1972).

B.    SS-Japan Has Not Shown That Providing The Requested Information
About The 'Debt' Imposes A Burden On It

The "second prerequisite" Wright & Miller note is that Rule 33(d) "is

implicitly limited to situations in which answering the interrogatory would impose

a significant burden on the responding party."[26]  Proof of the debt and

quantification of the amount due are essential elements of a plaintiff's case under

Hawaii's fraudulent transfer law.[27]  While proving the recently identified 'debt'

and ascertaining the amount due may be challenging, these are essential elements

of SS-Japan's HUFTA claims against the KG Parties.  This proof must be provided

by the time of trial, as SS-Japan concedes.[28]  Doing the analysis now, nearly *40*

*months* after the complaints were filed, is hardly a burden.

C.    The Burden Of Proving The Debt Is Not Equally
Shared By The Parties

The 'third prerequisite' cited by Wright and Miller is one found in the

language of Rule 33(d): "the burden of deriving or ascertaining the answer is

substantially the same for the party serving the interrogatory as for the party

served[.]"[29]  SS-Japan does not meet this test either.

SS-Japan asks the Court to excuse its inability to decipher its own records

---

[26]    8A Wright & Miller § 2178, citing cases

[27]    HRS §§ 651C-4, -5 and -8.

[28]    Mem. Opp. n.3 at 9.

[29]    Rule 33(d), Federal Rules of Civil Procedure.

without an expert's aid because a deputy bankruptcy trustee appointed by the

Osaka court originally filed the cases.[30]  The excuse should be rejected for two

reasons.

1.      These cases were filed on Friday, February 20, 2004.  The *very next business day*, Goldman Sachs' South Wind acquired the stock of SS-Japan.[31]  Given the timing, there can be no serious doubt that Goldman Sachs directed the deputy trustee to file these cases.  Hiding behind the deputy trustee's decision to file is simply not availing under the circumstances.

2.      The deputy trustee's counsel, Alston Hunt Floyd & Ing, who are also SS-Japan's counsel, signed the complaint (including subsequent iterations) certifying that the factual contentions have evidentiary support and that the legal claims are warranted by existing law.[32]  These contentions have consistently included an alleged debtor-creditor relationship between SS-Waikiki and SS-Japan.  SS's counsel has made this certification after having the opportunity to acquire detailed familiarity with these claims through its legal representation of SS-Japan in its ancillary bankruptcy proceeding in Hawaii and otherwise for *well over a year* before these lawsuits were filed.[33]

---

[30]     Mem. Opp. 6-7; 9, n.3.

[31]     SS-Japan's stock was acquired by Goldman Sachs' subsidiary on Tuesday, February 24, 2004.  Exhibit 14 hereto at Exhibit 3, Bates 256 1598.  When it was February 24 in Japan (where the stock transfer occurred), it was Monday, February 23 in Hawaii.

[32]     Rule 11(b), Federal Rules of Civil Procedure.

[33]     The Ancillary Bankruptcy Petition of SS-Japan was filed by Alston Hunt in the United States Bankruptcy Court for the District of Hawaii on November 25,

Therefore, SS-Japan should not now be heard to complain of the burden of proving the claims it was obliged to have investigated before filing these lawsuits.

There are other important reasons why the burden does not fall equally on SS-Japan and the KG Parties, as Rule 33(d) requires. A very large number of the nine boxes of documents identified in lieu of answers to Mukai's interrogatories about the alleged intercompany debt are in Japanese. SS-Japan is a Japanese corporation with ready access to bilingual personnel. Indeed, by culling and identifying large numbers of Japanese language documents in its Rule 33(d) response to Mukai's interrogatories, SS-Japan has *already* done extensive review of Japanese language documents by someone familiar with the claims and proficient in Japanese and English. The KG Parties have no comparable access to translation services.

In addition, these cases present a unique reason why it is appropriate that SS-Japan be ordered to state the unpaid amount of the debt and provide a detailed accounting of the quantification of the amount due. This is because of the twisted alignment of the parties in these cases.

In a typical fraudulent transfer case, the defrauded creditor will sue the

---

2002. See Exhibit 18 hereto. See also Mem.Opp. Kim decl. ¶ 2, referencing lawsuits filed in the Hawaii First Circuit Court by Alston Hunt for the deputy trustee in November 2002.

defrauding debtor as well as the debtor's transferee. That did not occur here.

Instead, SS-Waikiki, the debtor who allegedly defrauded SS-Japan, is aligned with

SS-Japan in pursuit of the transferee, the KG Parties. That is, the 'defrauded'

creditor and the debtor who 'defrauded' the creditor are *both* represented by Alston

Hunt. This means that *Alston Hunt has access to the accounting records of both*

*the debtor and the creditor, and puts them in the ideal position to both quantify*

*and explain the amount due on the debt*.

This twisted alignment of the parties also deprives the KG Parties of

protection that is usually available to a transferee in a fraudulent transfer case. In a

typical case where the creditor sues both the debtor and the transferee, the debtor,

who is adverse to the creditor, can be counted on to assert that the debt is invalid or

the plaintiff's quantification of the debt is wrong. Here, the transferee KG Parties,

who are strangers to the alleged 17 year-old 'debt', should not be left with the

burden of quantification of the debt based upon nine boxes of confusion.

> D.    SS-Japan Has Failed To Specify Which Records Contain The
>       <u>Information Sought by the Interrogatory</u>

The fourth prerequisite identified by Wright & Miller requires SS-Japan to

specify which records contain the information sought by the interrogatory.[34] SS-

Japan has again failed to meet the requirement. The commentary to the 1980

---

[34]    8A Wright & Miller § 2178, citing cases.

amendment to Rule 33 states:

> A party who is permitted by the terms of [Rule 33(d)] to offer records
> for inspection in lieu of answering an interrogatory should offer them
> in a manner that permits the same direct and economical access that is
> available to the party.

The nine boxes of documents identified by SS-Japan is a continuation of

their dump truck discovery method.  The nine boxes are a complete jumble, with

most documents being identified many times under different bates numbers.

In addition, the same nine boxes of documents are identified as being

responsive to a number of distinct interrogatories.[35]  This is a far cry from the

"roadmap" anticipated by Rule 33(d).[36]

> ### E.    SS-Japan's Use of Rule 33(d) Is Improper Because SS-Japan Identifies Third-Party Records

There is yet another flaw in SS-Japan's Rule 33(d) response.  Rule 33(d)

may ordinarily be used only when

---

[35]    See KG Exhibits 5A & 5B, in which SS identifies the same documents in response to Interrogatories 5, 6, 7and 8.

[36]    8A Wright & Miller § 2178.  See also Colorado ex rel. Woodard v. Schmidt-Tiago Const. Co., 108 F.R.D. 731 (D. Colo. 1985) (a party who invoked Rule 33(d) and referred to thousands of documents would be required to list specific documents which would answer a specific interrogatory or request for production, indicating the page or paragraphs that were responsive to the interrogatory); O'Connor v. Boeing North American, Inc., 185 F.R.D. 272 (C.D.Cal. 1999) (where plaintiff's broad interrogatories justified a response under Rule 33(d), the defendant could not engage in the wholesale dumping of documents.  Instead, they had to specify, by category and location, the pertinent records from which the answers to the interrogatories could be derived.)

13

the information be obtainable from the records of the responding party, not those of somebody else.  Whatever the duty on a responding party to consult the records of others to provide a proper answer to an interrogatory, Rule 33(d) does not provide an option for designating those instead of obtaining responsive information.[37]

Here, SS-Japan identifies many thousands of pages of documents from Sports Shinko's attorneys, accountants (prefixes "GT," "GTV" or "KPMG"), its West Virginia bookkeeper, Cindy Brown (bates prefix "CB"), and Tom Hayes ("T" prefix).[38]  These third party designations are not permitted by the rule, which allows the production of a party's <u>own</u> business records in a Rule 33(d) interrogatory response.

For all these reasons, SS-Japan's Rule 33(d) 'answer' is insufficient to meet its burden to identify the details of the alleged debt it is owed by SS-Waikiki.

IV.    SS-JAPAN'S FAILURE TO RESPOND TO DISCOVERY IS NOT LIMITED TO DEFECTIVE RESPONSES TO MUKAI'S INTERROGATORIES

SS-Japan's recent failure to respond properly to Mukai's interrogatories[39] is but the most recent in a long series of failures to provide proper discovery.  SS-Japan defended this motion principally relying on its response to Mukai's

---

[37]    8A Wright & Miller § 2178, citing cases.

[38]    KG Exhibits 5A & 5B.  SS-Japan produced its attorneys' records as though they were its own (most often without identifiable bates prefixes).  The accountants', Brown's and Hayes' records were only produced because the KG Parties' subpoenaed them.

[39]    KG Exhibits 5A & 5B.

14

interrogatories, which we have addressed in detail above.  However, SS-Japan's

failures to provide discovery have occurred in connection with the formal and

informal discovery requests made by the KG Parties.[40]  These discovery defaults

also form the basis for this motion to compel.

V.    CONCLUSION

The KG Parties respectfully request that the Second Amended Motion to

Compel be granted and an order be entered in the form attached hereto.

DATED: Honolulu, Hawaii, May 21, 2007.

/s/ Robert A. Marks
WARREN PRICE III
ROBERT A. MARKS
SIMON KLEVANSKY
ALIKA L. PIPER
CARISA LIMA KA'ALA HEE

Attorneys for Defendants, Counterclaimants
and Third-Party Plaintiffs KG HOLDINGS,
LLC, QK HOTEL, LLC, and OR HOTEL,
LLC

---

[40]    KG Exhibits 3, 4, 6-11, 13.  See also n.4 hereto (the SS Parties have agreed to provide discovery pursuant to informal discovery requests from the KG Parties.)