Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

| | |
|---|---|
| PAUL ALSTON | 1126-0 |
| BRUCE H. WAKUZAWA | 4312-0 |
| GLENN T. MELCHINGER | 7135-0 |
| JASON H. KIM | 7128-0 |

American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawai'i  96813
Telephone:  (808) 524-1800
Facsimile:  (808) 524-4591
Email:  palston@ahfi.com
          bwakuzawa@ahfi.com
          gmelchinger@ahfi.com
          jkim@ahfi.com

Attorneys for Plaintiffs
and Third-Party Defendants
the Sports Shinko Companies

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SPORTS SHINKO CO., LTD., | ) CV 04-00124 BMK |
| | ) CV 04-00127 BMK |
| Plaintiff, | ) |
| | ) CONSOLIDATED CASES |
| vs. | ) |
| | ) **DECLARATION OF TSUGIO** |
| QK HOTEL, LLC, et al., | ) **FUKUDA;** EXHIBITS 1-3, 5-6, |
| | ) 8-28; 30-38, 41-53, 58-59 and |
| Defendants, | ) 61-63 |
| | ) |

and                                        )
                                           )
FRANKLIN K. MUKAI, et al.,                 )
                                           )
          Third-Party Plaintiffs,          )
                                           )
     vs.                                   )
                                           )
SPORTS SHINKO (USA) CO.,                   )
LTD., et al.,                              )
                                           )
          Third-Party                      )
          Defendants,                      )
                                           )
     and                                   )
                                           )
SPORTS SHINKO (HAWAII) CO.,                )
LTD., et al.,                              )
                                           )
     Third-Party Defendants/               )
     Counterclaimants,                     )
                                           )
     vs.                                   )
                                           )
QK HOTEL, LLC, et al.,                     )
                                           )
     Third-Party Counterclaim              )
     Defendants.                           )
                                           )
AND CONSOLIDATED CASES                     )
_____   )


## DECLARATION OF TSUGIO FUKUDA

I, TSUGIO FUKUDA, being duly sworn under oath, declare as follows:

1. I make this declaration based on personal knowledge and I am competent to testify to the matters set forth in this Declaration.

2. I was employed by Plaintiff Sports Shinko Co. Ltd. ("SS Japan") from 1986 through 2002.

3. From 1988 through 2002, I served as the General Manager of SS Japan's International Business Department. My responsibilities included: (a) acting as a liason between SS Japan executive management in Japan and the management of SS Japan's United States-based subsidiaries, including subsidiaries based in Hawai'i; and (b) supervising finance and accounting matters relating to SS Japan's United States subsidiaries, including tracking and reconciling intercompany debt between SS Japan and its subsidiaries.

4. Sports Shinko (Waikiki) Corporation ("SSW") was incorporated in 1990. SS Japan indirectly owned SSW, though a number of other subsidiaries. I was a Director of SSW from 1990 through 2002, Treasurer of SSW from 1991 through 2002, and Secretary in 1990 and from 1997 through 2002.

5.    In June 1990, SSW purchased the leasehold interest in two hotel properties, Queen Kapiolani Hotel and Ocean Resort Hotel Waikiki, formerly known as the Quality Inn.

6.    The purchase was funded by: (1) a ¥ 5 billion yen equity investment (through subsidiaries) by SS Japan; and (2) a ¥ 10 billion loan to SSW, payable in five years and accruing simple interest at 8 per cent per year ("Loan").

7.    Attached as Exhibit 1 is a true and correct copy of excerpts from a June 4, 1990 offer by SSW to purchase the Quality Inn Hotel Waikiki and Queen Kapiolani Hotel with adjacent and contiguous parcel signed by Toshio Kinoshita and sent to Matsuzato Hawaii, Inc.

8.    Attached as Exhibit 2 is a true and correct copy of a May 14, 1990 document titled Request for Internal Decision relating to the funding of the hotel purchase. Exhibit 2 is a fully executed *ringi-sho*, a document used in Japanese corporations to memorialize corporate decisions. *Ringi-sho* are akin to corporate resolutions and contain proposals for action, usually with supporting documents attached. They are circulated through the corporation to obtain the seals of officers and/or directors to authorize corporate actions.

9.     Attached as Exhibit 3 is a true and correct copy of a December 27, 1990 letter regarding the capital structure of the Sports Shinko Group that I received from Mr. Franklin Mukai. I am not aware of the present location of the attachments referenced in that letter.

10.     Attached as Exhibit 5 is a true and correct copy of a May 29, 1990 letter regarding the payment of balance of purchase price that I sent to Mr. Mukai. This letter reflects the intent of SS Japan and SSW regarding the structure of the financing of the purchase of the hotels.

11.     Attached as Exhibit 6 is a true and correct copy of a May 17, 1990 submission by SS Japan to the Japanese Ministry of Finance titled Written Notification regarding Loan Agreement for Monies Related to Direct Foreign Investment.

12.     The method of funding the acquisition of the hotels was similar to the method used by SS Japan for all its overseas' acquisitions. Generally speaking, SS Japan obtained financing from Japanese lenders and, in turn, loaned those funds to local subsidiaries formed to purchase and hold the acquired properties.

13.     There were several reasons for structuring the financing of overseas acquisitions, including the purchase of the

hotels, in this way. First, Japanese banks generally did not loan directly to United States companies. Second, the banks and SS Japan's auditors preferred that a portion of the purchase financing by SS Japan be in the form of loans to maintain a health balance sheet for SS Japan. Third, SS Japan understood that structuring a portion of the purchase as a loan would lead to beneficial treatment of repayments under United States' tax law.

14. SS Japan and SSW both intended for the Loan to be fully enforceable between the parties and valid according to United States tax and accounting standards. SS Japan and SSW sought and relied upon advice from their attorneys and accountants, including Defendant Franklin Mukai and Howard Hanada at the accounting firm Grant Thornton, to ensure that the Loan was valid.

15. Based on financial projections from the previous owner of the hotels, SS Japan anticipated that the hotels would generate sufficient free cash flow during the initial five year term of the loan to pay all the interest on the Loan accruing during that period and at least a portion of the principal.

16. After the acquisition, the financial performance of the hotels was worse than expected and the hotels generated

substantially less free cash flow than anticipated at the inception of the Loan.

17.    In 1993, SS Japan's auditors became concerned that SS Japan's outstanding receivables in the form of intercompany loans were too high.  In addition, in 1994, currency fluctuations led to a foreign currency loss for SSH arising from the Loan that could have resulted in negative equity for SSH.  As a result, SS Japan began a process of restructuring and/or capitalizing its intercompany loans, including the Loan.

18.    Thus, in 1993, 1994, and 1995, SS Japan converted a total of ¥ 5 billion of the Loan into equity (held indirectly through various subsidiaries).

19.    Attached as Exhibit 8 is a true and correct copy of a December 22, 1993 letter I received from Mr. Howard Hanada of Grant Thornton.

20.    Attached as Exhibit 9 is a true and correct copy of a December 29, 1993 facsimile I sent to Mr. Hanada of Grant Thronton.

21.    Attached as Exhibit 10 are true and correct copies of a Unanimous Consent in Lieu of Special Meeting of the Board of Directors of Sports Shinko USA Co., Ltd., ("SS USA") a Consent in

Lieu of Special Meeting of Sole Shareholder of SS USA,  Consent in
Lieu of Special Meeting of Sole Shareholder of SSH, and a
Unanimous Consent in Lieu of Special Meeting of the Board of
Directors of SSH, which are dated December 30, 1993.

      22.   As reflected in Exhibits 8-9, SS Japan and SSW's
intent was for a portion of the Loan to be capitalized.  Exhibit 10
mistakenly references the wrong entities (SS USA and SSH instead
of SS Japan and SSW), apparently due to a misunderstanding by
counsel.  Nonetheless, SS Japan and SSW considered the
capitalization reflected in Exhibits 8-9 to have been effectuated.

      23.   Attached as Exhibit 11 are true and correct copies
of a Unanimous Consent in Lieu of Special Meeting of the Board of
Directors of SS USA, an Assignment Agreement addressed to SS
USA, an Assignment Agreement addressed to SSH, Ltd. a
Unanimous Consent in Lieu of Special Meeting of the Board of
Directors of Sports Shinko Resort Hotel Corporation, an
Assignment Agreement addressed to Sports Shinko Resort Hotel
Corporation, a Unanimous Consent in Lieu of Special Meeting of
the Board of Directors of SSW, and an Assignment Agreement
addressed to SSW, which are dated December 19, 1994.

24.    Attached as Exhibit 12 are true and correct copies of a Unanimous Consent in Lieu of Special Meeting of the Board of Directors of SSW, an Assignment Agreement addressed to SSW, Unanimous Consent in Lieu of Special Meeting of the Board of Directors of SSH, an Assignment Agreement addressed to SSH, a Unanimous Consent in Lieu of Special Meeting of the Board of Directors of Sports Shinko Resort Hotel Corporation, an Assignment Agreement addressed to Sports Shinko Resort Hotel Corporation, an Assignment Agreement addressed to SS USA, and Unanimous Consent in Lieu of Special Meeting of the Board of Directors of SS USA, which are dated December 22, 1995.

25.    Another property indirectly owned by SS Japan, the La Costa Resort and Spa ("La Costa"), required large amounts of cash for maintenance, operations, and repayment of debt. Rather than seeking repayment from SSW on the Loan and then forwarding the repayment proceeds from SS Japan to La Costa, SSW loaned funds directly to La Costa.

26.    Between 1991 and 1995, SSW loaned over $12 million to La Costa. These loans prevented SSW from making any repayment on the Loan from 1991 through 1995. Prior to 1991, SS Japan had been lending funds to La Costa, but after SSW acquired

-9-

the Hawaii hotels in 1990, and the "bubble" economy in Japan
collapsed in 1991 or so, SSW began loaning funds to La Costa.
These loans from SSW were documented by numerous *Ringi-sho*.
After 1995, alternative sources of funding were found to loan to La
Costa so the need for loans from SSW disappeared.

27.    Attached as Exhibit 13 is a true and correct copy of
a November 8, 1995 document titled Hawaii-La Costa Funds
Remittance Statement prepared by my department. This document
lists loans from the two components of SSW, the Ocean Resort
Hotel and the Queen Kapiolani Hotel, to La Costa. Exhibit 13 was
made at or near the time by, or from information transmitted by, a
person with knowledge of these loans and was kept in the course of
SS Japan's regularly conducted business activity. It was the
regular practice of SS Japan to make this type of statement.

28.    La Costa was sold in 2001. SS Japan applied $10
million of the proceeds of the sale as repayment of the Loan in light
of SSW's loans to La Costa from 1991 through 1995.

29.    Attached as Exhibit 14 is a true and correct copy of
a December 5, 2001 Request for Internal Decision drafted by my
department regarding the treatment of remittance from overseas.
This is another *ringi-sho*, as described above.

30.    Attached as Exhibit 15 is a true and correct copy of a December 28, 2001 transfer slip.

31.    Attached as Exhibit 16 is a true and correct copy of a August 23, 2001 interoffice memorandum from my department to Sports Shinko's Accounting Section Manager Nakamura.

32.    Exhibits 15 and 16 were made at or near the time by, or from information transmitted by, a person with knowledge of the payment referenced in those exhibits and were kept in the course of SS Japan's regularly conducted business activity. It was the regular practice of SS Japan to make and keep this type of record of payment.

33.    The Loan was extended for another five year period in 1995.

34.    Attached as Exhibit 17 is a true and correct copy of a February 6, 1995 facsimile I sent to Mr. Hanada  that informs him of the extension of the Loan.

35.    From 1996 through 2000, SSW made a number of payments on the Loan, totaling ¥ 1,765,500,000. In some cases, SSW borrowed money from other SS Japan indirect subsidiaries to fund the payments. The payments are reflected in Exhibits 19 -28

and 30 - 36 described below and were made soon after the dates of my requests.

36. When SSW began to make these payments, I requested advice from Howard Hanada as to whether the payments should be applied to principal or interest. Mr. Hanada advised that characterizing the payments as interest would require withholding pursuant to United States' tax law. To avoid withholding, SS Japan and SSW applied the payments to principal.

37. Attached as Exhibit 18 is a true and correct copy of a March 15, 1996 facsimile I sent to Mr. Hanada requesting advice on the above issue.

38. Attached as Exhibit 19 is a true and correct copy of a March 18, 1996 facsimile I sent to Mr. Shigeru Tomita regarding repayment of Parent Company Loan and Bank of Hawaii Acknowledgment dated March 21, 1996.

39. Attached as Exhibit 20 is a true and correct copy of a June 13, 1996 facsimile I sent to Mr. Tomita regarding repayment of Parent Company Loan.

40. Attached as Exhibit 21 is a true and correct copy of an August 22, 1996 facsimile I sent to Mr. Tomita regarding repayment of Parent Company Loan.

41.    Attached as Exhibit 22 is a true and correct copy of a September 27, 1996 facsimile I sent to Mr. Tomita regarding repayment of Parent Company Loan.

42.    Attached as Exhibit 23 is a true and correct copy of a December 12, 1996 facsimile I sent to Mr. Tomita regarding repayment of Parent Company Loan.

43.    Attached as Exhibit 24 is a true and correct copy of a June 12, 1997 facsimile I sent to Mr. Tomita regarding repayment of Parent Company Loan and a June 16, 1997 facsimile I received from Mr. Takuya Tsujimoto, Assistant Treasurer or Sports Shinko Mililani Co., Ltd., that was addressed to Mr. Conrad Moriwake at the Bank of Hawaii.

44.    Attached as Exhibit 25 is a true and correct copy of an August 22, 1997 facsimile I sent to Mr. Tomita regarding repayment of Parent Company Loan.

45.    Attached as Exhibit 26 are true and correct copies of two November 18, 1997 facsimiles and a November 19, 1997 facsimile I sent to Mr. Tomita regarding repayment of parent company loan.

46.    Attached as Exhibit 27 are true and correct copies of a December 12, 1997 facsimile regarding repayment of parent

company loan that I sent to Mr. Tomita, and a December 15, 1997 facsimile I received from Mr. Yasuo Nishida, Assistant Secretary of Sports Shinko Mililani that was addressed to Mr. Moriwake.

47.    Attached as Exhibit 28 is a true and correct copy of a June 12, 1998 facsimile regarding repayment of parent company loan that I sent to Mr. Tomita.

48.    Attached as Exhibit 30 is a true and correct copy of a July 16, 1998 facsimile regarding repayment of parent company loan that I sent to Mr. Tomita.

49.    Attached as Exhibit 31 is a true and correct copy of a November 12, 1998 facsimile regarding repayment of parent company loan that I sent to Mr. Tomita.

50.    Attached as Exhibit 32 is a true and correct copy of a December 18, 1998 facsimile regarding repayment of parent company loan that I sent to Mr. Tomita.

51.    Attached as Exhibit 33 is a true and correct copy of a January 14, 1999 facsimile regarding repayment of parent company loan that I sent to Mr. Tomita.

52.    Attached as Exhibit 34 is a true and correct copy of a July 19, 1999 facsimile regarding repayment of parent company loan that I sent to Mr. Tomita and a July 28, 1999 facsimile

-14-

regarding repayment of parent company loan that I sent to Mr. Tomita. Also included in Exhibit 34 is another copy of the first page of my July 19, 1999 facsimile with handwritten corrections. I do not know who wrote in the corrections but the corrections accurately reflect the remaining principal on the Loan after the requested payment. My statement in the July 19, 1999 facsimile as to the remaining principal is incorrect.

53.    Attached as Exhibit 35 is a true and correct copy of an October 15, 1999 facsimile regarding repayment of parent company loan that I sent to Mr. Tomita. My statement as to the remaining principal after the requested payment is incorrect.

54.    Attached as Exhibit 36 is a true and correct copy of a June 19, 2000 facsimile that I sent to Mr. Satoshi Kinoshita. In Exhibit 36, I corrected the error as to the remaining principal on the Loan that appears in Exhibits 34 and 35.

55.    Exhibits 19 – 28 and 30 – 36 were made at or near the time by, or from information transmitted by, a person with knowledge of the payment referenced in those exhibits and were kept in the course of SS Japan's regularly conducted business activity. It was the regular practice of SS Japan to make and keep this type of record of payment.

56. The Loan was again extended in 2000 for another five year term.

57. Attached as Exhibit 37 is a true and correct copy of a March 10, 2000 facsimile that I sent to Mr. Hanada that includes my handwritten notations to a March 9, 2000 facsimile that I received from him informing him of the extension of the Loan.

58. In 2001, as described above, $10 million was credited to repayment of principal on the Loan after the sale of La Costa.

59. In 2002, after the sale of the hotels to KG Holdings LLC, a portion of the sales proceeds (¥ 39,900,000) were credited to repayment of principal on the Loan.

60. Attached as Exhibit 38 is a true and correct copy of a February 13, 2002 letter that I sent to Mr. Keijiro Kimura. Exhibit 38 was made at or near the time by, or from information transmitted by, a person with knowledge of the payment referenced in this exhibit and was kept in the course of SS Japan's regularly conducted business activity. It was the regular practice of SS Japan to make and keep this type of record of payment.

61. Attached as Exhibit 41 are true and correct copies of excerpts from the 1990 financial statements of SSH.

62.    Attached as Exhibit 42 are true and correct copies of excerpts from the 1991 financial statements of SSH.

63.    Attached as Exhibit 43 are true and correct copies of excerpts from the 1992 financial statements of SSH.

64.    Attached as Exhibit 44 are true and correct copies of excerpts from the 1993 financial statements of SSH.

65.    Attached as Exhibit 45 are true and correct copies of excerpts from the 1994 financial statements of SSH.

66.    Attached as Exhibit 46 are true and correct copies of excerpts from the 1995 financial statements of SSH.

67.    Attached as Exhibit 47 are true and correct copies of excerpts from the 1996 financial statements of SSH.

68.    Attached as Exhibit 48 are true and correct copies of excerpts from the 1997 financial statements of SSH.

69.    Attached as Exhibit 49 are true and correct copies of excerpts from the 1998 financial statements of SSH.

70.    Attached as Exhibit 50 are true and correct copies of excerpts from the 1999 financial statements of SSH.

71.    Attached as Exhibit 51 are true and correct copies of excerpts from the 2000 financial statements of SSH.

72.    Attached as Exhibit 52 are true and correct copies of excerpts from the 2001 financial statements of SSH.

73.    Attached as Exhibit 53 are true and correct copies of excerpts from the 2002 financial statements of SSH.

74.    Exhibits 41 through 53 were made at or near the time by, or from information transmitted by, a person with knowledge of the financial information referenced in those exhibits and were kept in the course of SS Japan's regularly conducted business activity.  It was the regular practice of SS Japan to make and keep this type of financial statement.

75.    Attached as Exhibit 58 is a true and correct copy of my department's internal interest computations for interest on the Loan (as well as other intercompany loans) for 1993 through 1998. The documents in Exhibit 58 were made at or near the time by, or frm information transmitted by, a person with knowledge of the balances referenced in those documents and were kept in the course of SS Japan's regularly conducted business activity.  It was the regular practice of SS Japan to make and keep these types of records.

76.    Attached as Exhibit 59 are true and correct copies of excerpts from SS Waikiki's financial statement for 1992 and

1991. Exhibit 59 was made at or near the time by, or from information transmitted by, a person with knowledge of the financial information referenced in this exhibits and was kept in the course of SS Japan's regularly conducted business activity. It was the regular practice of SS Japan to make and keep this type of financial statement.

77. Attached as Exhibit 61 is a true and correct copy of a November 2, 1993 letter from a former colleague in my department, Taizo Sato, to various managers of the Sports Shinko Hawai`i companies and Mr. Hanada. This letter informed the recipients of SS Japan's decision to reduce the interest rate on the Loan (and other intercompany loans) effective January 1, 1993.

78. Attached as Exhibit 62 is a true and correct copy of a December 27, 1996 letter that I sent to Mr. Gregory Shulte of KPMG regarding audit information- 1996. This letter informed KPMG of SS Japan's decision to reduce the interest rate on the Loan (and other intercompany loans) effective January 1, 1997.

79. Attached as Exhibit 63 is a true and correct copy of a table dated March 10, 2002 prepared by my department regarding loans due from SS USA and its subsidiaries to SS Japan.

As referenced in this letter, SS Japan decided not to charge interest on the Loan (and other intercompany loans) for 2001 and 2002.

80.    The interest rate on the Loan was reduced from 1990 through 2001. Generally speaking, the interest reductions reflected the overall drop in the prime interest rate for commercial loans in Japan during this time period. Also, SS Japan decided to lower the interest rates throughout this period to facilitate the repayment of the loans.

I swear that the foregoing is true under penalties of perjury of the United States of America.

EXECUTED: Honolulu, Hawai'i August 23, 2007

Tsugio Fukuda