PRICE OKAMOTO HIMENO & LUM
WARREN PRICE III            1212
ROBERT A. MARKS            2163
707 Richards Street, Suite 728
Honolulu, Hawaii  96813
Phone: 808.538.1113
Fax: 808.533.0549
E-mail:      wprice@pohlhawaii.com
             ram@pohlhawaii.com

KLEVANSKY PIPER & VAN ETTEN, LLC
SIMON KLEVANSKY            3217-0
CARISA LIMA KA'ALA HEE 7372-0
Bishop Square, Pauahi Tower
1001 Bishop Street, Suite 770
Honolulu, Hawaii 96813
Phone:  (808) 536-0200
Fax:  (808) 536-0221
E-mail:      sklevansky@kpvlawhawaii.com
             kaalahee@ kpvlawhawaii com

Attorneys for KG Parties[1]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>QK HOTEL, LLC, a Hawaii limited liability company, et al.,<br><br>        Defendants, | CV 04-00124 BMK<br>CV 04-00127 BMK<br><br>CONSOLIDATED CASES<br><br>KG PARTIES' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT; WORD COUNT CERTIFICATE; |

---

[1]      The KG Parties are Defendants, Counterclaimants, and Third-Party Plaintiffs KG HOLDINGS, LLC, KIAHUNA GOLF CLUB, LLC, KG KAUAI DEVELOPMENT, LLC, PUKALANI GOLF CLUB, LLC, KG MAUI DEVELOPMENT, LLC, MILILANI GOLF CLUB, LLC, QK HOTEL, LLC, and OR HOTEL, LLC

and

FRANKLIN K. MUKAI, et al.,
    Third-Party Plaintiffs,

    vs.

SPORTS SHINKO (USA) CO., LTD.,
a Delaware Corporation, et al.,

       Third-Party Defendants.

SPORTS SHINKO CO., LTD., a
Japan corporation,

      Plaintiff,

    vs.

OR HOTEL, LLC, a Hawaii limited
liability company, et al.,

      Defendants,

    and

FRANKLIN K. MUKAI, et al.,
      Third-Party Plaintiffs,

    vs.

SPORTS SHINKO (USA) CO., LTD.,
a Delaware Corporation, et al.,

      Third-Party Defendants.

DECLARATION OF ROBERT A.
MARKS; EXHIBITS 8-19;
DECLARATION OF MICHAEL A.
COHAN; EXHIBITS C1 – C5;
DECLARATION OF ROGER H.
EPSTEIN; EXHIBIT E1;
CERTIFICATE OF SERVICE

CV 04-00127 BMK

KG PARTIES' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................1

II.   KG'S EVIDENCE AND THE SS RESPONSE ...........................................2

III.  THE ▮▮ CLAIMED BY SS-USA .............................................4

      A. SS-USA Claimed The ▮▮ In 2004 With The Clear
         Understanding That The 'Debt' Was Eliminated ................................4

      B. SS-USA Has Also Claimed ▮▮ In 2005 and 2006 ........................7

IV.   SS'S ARGUMENT THAT THERE WAS A 'MISTAKE' IN THE
      2004 RETURN IS NOT SUPPORTED BY ANY CREDIBLE
      EVIDENCE ...........................................................................8

      A.    There Was No Mistake In The 2004 Form 5472 ................................8

      B.    The 2005 Form 5472 Did Nothing To 'Correct'
            The 2004 Filing ...............................................................9

      C.    No Amendments To The 2004 Return Were Filed In
            Subsequent Years To 'Correct' the 'Error' .......................................10

V.    THE ACCOUNTING RECORDS OF SS-W SHOW NO LIABILITY
      FOR ANY DEBT, INCLUDING THE ¥10 BILLION DEBT ....................11

VI.   SS'S DECLARANTS DO NOT DISPUTE THAT THERE
      IS NO DEBT OWING FROM SS-W TO SS-JAPAN .................................12

      A.    The Declaration from SS-W .................................................12

      B.    The Declaration from SS-Japan .............................................13

      C.    The Declaration from South Wind ..........................................13

i

VII.   UNDER HAWAII LAW, THE ELIMINATION OF THE 'DEBT'
       ALSO 'ELIMINATES' SS'S FRAUDULENT TRANSFER CLAIMS  .....15

VIII.  CONCLUSION .............................................................................................17

## TABLE OF AUTHORITIES

**Case Law**                                                                 **Page**

Block v. City of Los Angeles, 253 F.3d 410 (9th Cir. 2001) ...................................14

Cleveland v. Policy Management Systems Corp., 526 U.S. 795,
(1999) .................................................................................................................14

Jahner v. Jacob, 515 N.W.2d 183 (N.D. 1994) ................................................15, 16

In re Kekauoha-Alisa, 2007 WL 1752266 (Bankr. D. Hawaii 2007) ..............15, 16

Laidley v. Heigho, 326 F.2d 592 (9th Cir. 1963) ....................................................16

TSA Intern. Ltd. v. Shimizu Corp., 92 Hawaii 243, 990 P.2d 713
(1999) .............................................................................................................15, 16

**Statutes**

HRS Ch. 651C (HUFTA) ..........................................................................15, 16, 17

Internal Revenue Code § 382(b)(1) ..........................................................................4

HRS § 235-2.3..........................................................................................................4

I.    INTRODUCTION

In KG's memorandum in support of its motion for partial summary judgment, KG presented evidence to the Court demonstrating that the alleged 'debt' that was owed by SS-W (and the debts of its parent, SS-USA) to SS-Japan was extinguished in connection with the 2004 acquisition of SS-Japan by South Wind.[2]

In response, SS argues that the evidence presented by KG establishes nothing of the sort, and that the 'debt' of SS-W is still in full force and effect.  In support of this claim, SS presents declaration testimony about the bookkeeping and tax return entries that 'erroneously' make it <u>appear</u> as if the liability of SS-W was extinguished.

In addition, SS offers the declaration of the current president of SS-W who testifies that the debt was not written off or abandoned by SS-Japan or South Wind, as well as declarations from South Wind and SS-Japan indicating that the 'debt' is still <u>*on the Japan books*</u> of South Wind and SS-Japan.

As demonstrated below, however, SS's 'evidence' does not show that the alleged SS-W 'debt' survived the 2004 purchase of SS-Japan by South Wind.  It clearly did not.  Indeed, the best evidence of this is the fact that ***IF*** SS-W and SS-USA have a liability to SS-Japan or South Wind that survived the purchase, then

---

[2]    South Wind is a subsidiary of The Goldman Sachs Group, Inc., as is Goldman Sachs Realty Japan Limited.  KG Exs. 8 and 9.

1

SS-USA has committed tax fraud by claiming a ███████████████████████ ███████ – that will reap it millions of dollars in tax benefits – that is predicated on there being <u>no debt</u> owed by SS-USA or SS-W to <u>anyone</u>.

Unless South Wind and its parent, Goldman Sachs, are prepared to admit they committed tax fraud, what has clearly happened in this case is that, on the one hand, South Wind eliminated the prior 'debt' to secure the benefit of the ████, then, on the other hand, <u>'resurrected' the debt *on paper*</u> in Japan to attempt to pursue this case.

Goldman Sachs/South Wind, however, cannot have it both ways.  Either they – through their wholly owned subsidiary SS-USA – committed tax fraud and is a debtor, or it has not committed tax fraud, is not a debtor, and cannot pursue the fraudulent transfer claims against KG.  There is simply no middle ground.

II.    <u>KG'S EVIDENCE AND THE SS RESPONSE</u>

KG offered two key pieces of evidence to support this motion:  SS-USA and subsidiaries' consolidated 2004 federal tax return (KG Ex. 3), and the 2004 financial statements of SS-Waikiki (KG Ex. 6), both of which clearly show no debt owing by SS-W by the end of 2004.

Plaintiff responds that KG relied on an erroneous, early version of SS-W's financial statements that were subsequently corrected (SS Ex. 66), and that there were misunderstandings with respect to the 2004 tax returns that were

2

subsequently corrected (SS Ex. 68; Declaration of Doreen Griffith; MIO 31-2).

 In this reply, KG will demonstrate:

—  The detailed accounting records of SS-W and SS-USA produced <u>after</u> this motion was filed confirm that since February 2004, and until as recently as April 30, 2007, SS-W has <u>no debt</u> on its books <u>to anyone</u>, including SS-Japan and South Wind.

—  the state and federal tax returns filed by SS-USA and subsidiaries in 2004, 2005 and 2006 show that SS-USA has claimed – and will continue to claim – substantial tax benefits for ███ that can <u>only</u> exist if SS-USA and its subsidiaries have no external[3] debt whatsoever.

—  Regardless of what was conveniently placed on the balance sheet in Japan, the <u>evidence</u> offered by SS-Japan in its opposition does not contradict the undisputed fact that SS-W has no liability for the 'debt'.

 For purposes of this motion, KG will assume[4] that the facts as set forth by SS in its opposition papers are true, including SS's assertion that the 'debt' was valid and enforceable at the time of the sale of the golf course and hotel assets to KG in 2002.[5]  However, what the evidence shows is that effective in February 2004, the 'debt' was ultimately transferred from the creditor (SS-Japan) to the debtor (SS-Waikiki) and eliminated from the books of SS-W.  This was necessary so that the ███ could legally be claimed.

---

[3]  "External" debt is debt owed to entities outside of the SS-USA family of companies which filed the consolidated tax return.

[4]  This assumption is purely to facilitate the Court's analysis in considering this motion.  All factual disputes are reserved.

[5]  MIO at 1.

III.    THE ▓▓ CLAIMED BY SS-USA

When one company buys another and wishes to claim the tax benefit of the NOLs of the acquired company, the NOLs that may be claimed are limited by the date-of-acquisition fair market value of the company that is acquired.[6]

As shown below, the existence of the substantial debt owing to SS-Japan by SS-USA and its subsidiaries created a situation where the stock of SS-USA would have had no value whatsoever when SS-USA was acquired by South Wind in February 2004. This meant SS-USA and subsidiaries' ████████████ could not be utilized <u>unless</u> the debt owed to SS-Japan was in some fashion taken off the books of the SS-USA consolidated U.S. group.

After identifying the problem, Goldman Sachs made a deliberate and informed decision to eliminate <u>all</u> the debt owed by SS-USA (and its subsidiaries, including SS-W) to SS-Japan, by transferring that debt to SS-USA as a contribution of capital. The elimination of the debt owing to SS-Japan increased the value of SS-USA such that it could claim the tax benefit of some of SS-USA's preacquisition NOLs. This is further explained in the declaration of Roger Epstein ("Epstein decl.") pp. 2-4.

   A.    SS-USA Claimed The ███ In 2004 With The Clear
          <u>Understanding That The 'Debt' Was Eliminated</u>

After Goldman Sachs purchased SS-Japan, it identified a problem in the

---

[6]    Internal Revenue Code § 382(b)(1) and HRS § 235-2.3.

4

planning process for the filing of the 2004 tax return for SS-Japan's subsidiary, SS-USA[7] (the parent of the parent of SS-Waikiki).  The problem as that the ███████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████

Indeed, the debts to SS-Japan were vastly larger than the only assets of the

SS-USA companies – the "Kobayashi notes".[8]  These notes, in the aggregate

amount of $9 million, were made by certain KG Parties for the unpaid balance due

under the January 15, 2002 Purchase and Sale Agreement pursuant to which the

hotels and golf courses were transferred from the SS Parties to the KG Parties.[9]

---

[7]    South Wind's acquisition of SS-USA was "indirect" since South Wind acquired the stock of SS-Japan in February 2004, and the assets of SS-Japan included stock of SS-USA and subsidiaries.  ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[8]    The Kobayashi notes are attached as KG Exs. 13A-E.  The notes were allocated among the SS-Hawaii subsidiary payees as follows:

| | |
|---|---|
| The three SS golf course companies: | $1,500,000 ($500,000 each x 3) |
| SS-Waikiki: | 7,500,000 |
| TOTAL AMOUNT OF KOBAYASHI NOTES | $9,000,000 |

[9]    There is abundant and uncontroverted evidence that the $9 million value assigned to the stock of SS-USA ████████████████ reflects the value of the Kobayashi notes.  A September 16, 2005 "Memo to File" prepared by Grant Thornton, states that the "████████████████████████████████████████████
████████████"  KG Ex. 14 at GT038373.  Similarly, Grant Thornton's September 5,

As a matter of fact, South Wind/Goldman Sachs identified this problem even before the 2004 tax year ended.  In a November 5, 2004 e-mail exchange between SS's tax advisor, Steven Iwamura,[10] and Takashi Murata of Goldman Sachs (also copied to the then-president of the SS-USA and its subsidiaries, Yoshihiko Machida), Mr. Iwamura stated:



This problem was also considered among various Grant Thornton tax analysts.  Doreen Griffith, SS's declarant on tax issues on this motion, stated:



Goldman's dilemma was clear.  <u>Either</u> the debts to SS-Japan could continue in existence <u>or</u> the extremely valuable ████ could be claimed.  In the end, SS-USA and subsidiaries' 2004 tax returns were signed and filed, under penalty of



2005 e-mail to Goldman Sachs (Mr. Okuzumi) and others, states: "███████████████████████████████████████" KG Ex. 15 at GT037986/SS Ex . 65 at GT037986.

[10]     Mr. Iwamura is an accountant and partner of Deloitte Touche Tomatsu in its Osaka, Japan office.  He is familiar with US tax and accounting issues.  See KG Exs. C-5.3 and 19.

[11]     KG Ex. 16 at GT03121-22 (emphasis added).

[12]     <u>Id.</u>

perjury, and in them, the ▮▮▮ was claimed based on the value of SS-USA and

subsidiaries at $9 million - the value of the Kobayashi notes - <u>without **any**</u>

<u>offsetting liabilities</u>.[13]  That is, SS "zeroed out" the (alleged) debt owed by SS-

USA (including SS-W) to SS-Japan on or before February 24, 2004 in order to

claim the ▮▮▮.

    B.   <u>SS-USA Has Also Claimed ▮▮▮ In 2005 and 2006</u>

Confirming that all debts owed by SS-USA (or SS-Waikiki) were transferred

– and eliminated – in 2004 to obtain the ▮▮▮ is the fact that the ▮▮▮ continued

to be claimed in 2005.  Once again, under penalty of perjury, SS-USA filed state

and federal tax returns which included an ▮▮▮ claim based on the acquisition

value of SS-USA equal to the $9 million Kobayashi notes – that is, based upon SS-

USA having no external debts (including no debts to SS-Japan) as of February

2004.[14]

Further confirming that as of 2004 no 'debt' existed – notwithstanding what

might be on paper in Japan (discussed below), *SS-USA made the same ▮▮▮ claim*

*just a month ago* in its *2006 Hawaii and federal tax returns*.[15]

---

13   KG Exs. 3 at 256 1598 (federal return) and 10A at GT038440 (Hawaii return).

14   KG Exs. 11A at GT037053 (federal return) and 11B at GT037697 (Hawaii return).

15   KG Exs. 12A at 261 1191 (federal return) and 12B at 261 1869 (Hawaii return).

IV.   SS'S ARGUMENT THAT THERE WAS A 'MISTAKE' IN THE 2004
      RETURN IS NOT SUPPORTED BY ANY CREDIBLE EVIDENCE

   A.    There Was No Mistake In The 2004 Form 5472

   SS's argument that there was a clear direction from Goldman Sachs to not

write off the 'debt' in connection with the 2004 tax returns is unpersuasive and

unsupported by any credible evidence. The tax accountants at Grant Thornton

("GT") prepared the 2004 tax returns showing the debts to SS-Japan were

eliminated from the books of SS-USA based upon Goldman's unambiguous

direction to claim the ███████.[16]  Moreover, any uncertainty on Grant Thornton's

part about the treatment of the debts to SS-Japan was brought to SS's attention in

GT's e-mail transmitting the Form 5472 for 2004 to SS. Grant Thornton stated:



Having been admonished to confirm the accuracy of the Form 5472, SS filed it "as

is", showing the elimination of all debt owing from SS-USA and its subsidiaries to

SS-Japan.[18] Until this motion was filed, there was no indication that the 2004

Form 5472 as filed with the IRS was not accurate, and there have been no amended

---

[16]    KG Ex. 15 at GT037986/SS Ex. 65 at GT037986.

[17]    KG Ex. 15 at GT037984 (emphasis added) (also in the record as part of SS
Ex. 65).

[18]    KG Ex. 3 at 256 1596-97; SS Ex. 67 at GT037890-91.

returns filed correcting the 'error'.

B.      The 2005 Form 5472 Did Nothing To 'Correct' The 2004 Filing

SS argues that the 2005 Form 5472[19] somehow corrected the 2004 form.[20]
This is clearly wrong. <u>First</u>, the 2005 form shows that during calendar year 2005,
SS-USA and subsidiaries loaned $███████ to South Wind. That is, South
Wind became the **debtor of SS-USA**, <u>not</u> its **creditor**. Epstein decl. p. 11. If, as
SS now alleges, SS-USA was the borrower, the information would have been
reported on a line 7 of Form 5472, not line 18.

Second, the 2005 Form 5472 shows ███████ at the beginning of 2005.[21]
If this form was to 'correct' anything from 2004, it would have had to show █
███████ at the beginning of 2005 reflecting the alleged acquisition of the debts
owing to SS-Japan by South Wind as of the 12/30/04 Loan Purchase Agreement.[22]
It does not. Rather, the beginning balance line (on both line 7(a) and 18(a)) are
blank, indicating a <u>new</u> loan was formed during 2005.

Third, if the 2004 Form 5472 had errors, SS-USA could file an amendment
correcting the error. It has not done so. Moreover, if the arguments SS makes here

---

[19]     KG Ex. 11A at GT037051-52/SS Ex. 68 at GT037051-52.

[20]     MIO p. 31.

[21]     See ███████████ on KG Ex. 11A at GT-37052/SS Ex. 68,
GT037052.

[22]     KG Ex. 4/SS Exs. 39 & 40.

9

regarding the debt are true, SS-USA is subject to a $10,000 penalty from the IRS.[23]

      C.    No Amendments To The 2004 Return Were Filed In Subsequent Years To 'Correct' the 'Error'

The 'mistakes' in the 2004 return now conveniently asserted by SS have no support whatsoever in the tax filings of SS-USA. According to SS, the 2004 Statement of Tax-Free Incorporation Transfer, KG Ex. 3 at 256 1599 ("Tax-Free Transfer Statement") was filed "as a precaution to explain why no taxable income was recognized by SS-USA when SS-USA no longer owed debt to SS Japan, as reflected in the Form 5472." Griffith decl. ¶ 10.

That is, the Tax-Free Transfer Statement – which states that all amounts owed between SS-USA and subsidiaries and SS-Japan were transferred and eliminated in a tax-free transaction – was necessary to avoid tax on millions of dollars of imputed cancellation of indebtedness income. Epstein decl. pp. 6-8. Indeed, the Tax-Free Transfer Statement has never been amended or rescinded in SS-USA's subsequent tax filings.

In fact, the 2004 state and federal tax returns reveal three seamless representations to the tax authorities, each of which confirms the debt to SS-Japan was eliminated in February 2004.

    (1)    The ███████████ (the existence of which depend on the elimination of that debt in its entirety, and which have again been

---

[23]    Epstein p. 6.

claimed as recently as the 2006 returns filed in September 2007);

(2)    the 2004 Form 5472 (showing no foreign debt owing by SS-USA as

of December 31, 2004); and

(3)    the Tax-Free Transfer Statement (which SS admits was filed to

prevent the assessment of tens of millions of dollars in imputed

income related to the elimination of the debt).

None of these statements in the 2004 tax returns were amended or superseded, and

all make it clear that the debt to SS-Japan ceased to exist in 2004.

V.    THE ACCOUNTING RECORDS OF SS-W SHOW NO LIABILITY FOR
       ANY DEBT, INCLUDING THE ¥10 BILLION DEBT

In the six months since this motion was filed, SS-Japan has produced

voluminous accounting records in response to the order granting the KG Parties'

Motion to Compel.  These detailed accounting records for the period from

February 2004 – April 2007 confirm what the U.S. tax returns show:  **that SS-W**

**has no debt on its books to anyone, including SS-Japan and South Wind.**[24]

---

[24]    SS Exs. 66 and 74 purport to show a debt owed by SS-W at December 31,
2004.  However, these balance sheets are not supported by the comprehensive and
detailed accounting records produced by SS since the motion was filed.  See KG
Exs. C-2, C-3 and C-4; Cohan decl. ¶¶ 7-9.  Apparently, SS has concocted exhibits
that are inconsistent with their accounting records.

Also, SS Ex. 74 is of no consequence as it reflects the Japan books of SS-
Japan, not the U.S. GAAP compliant books of SS-USA and subsidiaries.  See
Cohan decl. ¶ 11; Epstein decl. p. 13.

11

See declaration of Michael A. Cohan and exhibits cited therein.

VI.    SS'S DECLARANTS DO NOT DISPUTE THAT THERE IS NO DEBT
       OWING FROM SS-W TO SS-JAPAN

SS submits declarations of principals from SS-W (Steven Douglas Sears),

SS-Japan (Tadashi Yoshida) and South Wind (HungKe Lee) with its opposition.

What the declarants say, and what they <u>don't</u> say, is particularly revealing.  These

declarants artfully avoid perjury by, ultimately, never denying that SS-W is no

longer in debt to SS-Japan.

    A.    The Declaration from SS-W

SS-W's President and Director Sears states SS-Japan and South Wind have

not "assigned, forgiven or otherwise cancelled" the 'debt'.  Sears decl. ¶ 3.  Of

course, Sears is incompetent to testify about what SS-Japan and South Wind have

done as he is not identified as an officer or director of either of them.

What Sears <u>doesn't</u> say is that SS-W carries the 'debt' – or any debt – on its

books (since it clearly does not, as Mr. Cohan has found and South Wind's Mr.

Lee admits.)  Moreover, Sears' use of the phrase "assigned, forgiven or otherwise

cancelled" is also telling, because the evidence shows the debts to SS-Japan were

---

Moreover, SS Exs. 66 and 74's self serving assertions about the existence of
the debt at the end of 2004 are also contradicted by the balance sheets recently
produced by SS.  See KG Ex. C4.1-4.3.

"transferred", not "assigned, forgiven or otherwise cancelled."[25]

### B.    The Declaration from SS-Japan

In his declaration, SS-Japan's Director Yoshida merely authenticates exhibits, including schedules and financial statements that were attached to the filed Japan tax returns of SS-Japan. However, the fact that the 'debt' is recorded on Japan tax returns and financial statements is of no consequence, since transnational financial and tax reporting laws and standards often results in disparate reporting across borders. Epstein decl. p. 13; Cohan decl. ¶ 11. That is, SS-Japan's and South Wind's reporting in Japan follow different criteria and methodologies that may not comport with U.S. accounting principles or tax laws. What controls in this case, brought under U.S. law, are U.S. tax returns and books of account maintained consistent with U.S. law, not Japan standards.

Also, Yoshida fails to state that the 'debt' was not "assigned, forgiven or otherwise cancelled," – or *transferred* – as a matter of U.S. law. Of course, unlike Sears, Yoshida, the declarant for creditor SS-Japan, would be competent to testify to such facts, but has failed to do so.

### C.    The Declaration from South Wind

The declaration of HungKe Lee, a Director of South Wind, is the most

---

[25]    See KG Ex. 3 at 256 1599 (Tax Free Transfer Statement identifying over ▮▮▮▮▮ of accounts receivable that were "transferred"); KG Ex. C-3.1 (entries to SS-W's general ledger showing "*transfer* BS [balance sheet] accounts to RE [Retained Earnings]".) (emphasis added.)

revealing of all. He *admits that the 'debt' is no longer carried on SS-W's books:*

> In regard to the loans on the books of the subsidiaries of SS-USA, including SS-W, **they were reduced to zero**… [T]he inter-company loans to [South Wind] were all booked in SS-USA's books and not allocated to SS USA's subsidiaries.[26]

Like Mr. Yoshida, Mr. Lee fails to state that the 'debt' was not "assigned, forgiven or otherwise cancelled" – or *transferred* – as a matter of U.S. law, even though this would be within Mr. Lee's competence speaking for South Wind.

In sum, while SS <u>argues</u> that the debt continues to exist, they have not <u>adduced evidence</u> that contradicts the fact that as of February 2004, SS-W's 'debt' to SS-Japan was eliminated.[27] See Cohan decl. and Epstein decl. and exhibits cited therein.

By insisting the debt still exists, SS asserts fraudulent transfer rights that flow from the 'debt', but that fly in the face of SS-USA's unequivocally disavowal the existence of the 'debt' in its U.S. tax returns. These choices are mutually

---

[26]    Lee decl. ¶ 6 (emphasis added).

[27]    If SS submitted declarations inconsistent with its tax returns which were filed under penalty of perjury (and again, SS has carefully avoided doing so to date), those declarations would properly be stricken as a sham.  See <u>Cleveland v. Policy Management Systems Corp.</u>, 526 U.S. 795, 806 (1999) ("a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement … without explaining the contradiction or attempting to resolve the disparity."); <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 419 n. 2 (9th Cir. 2001) ("a party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts.").

exclusive, and – unless Goldman wishes to concede tax fraud by SS-USA – they must acknowledge the 'debt' does not exist.

VII.    UNDER HAWAII LAW, THE ELIMINATION OF THE 'DEBT' ALSO 'ELIMINATES' SS'S FRAUDULENT TRANSFER CLAIMS

The theory of SS's case is that in early 2002, there was a fraudulent transfer when SS-W sold two hotels to KG for less than value. As a result, SS-Japan, the creditor of SS-W, was unable to collect on the 'debt' SS-W owed to SS-Japan.[28]

However, according to South Wind's Mr. Lee, SS-W's liability for the 'debt' was "reduced to zero" and "booked" on SS-USA's books. Thus, SS-W is no longer a debtor to SS-Japan. This is confirmed in voluminous tax and accounting evidence summarized above.

The legal consequence of the elimination of the 'debt' is that SS's fraudulent transfer claims, whether pled in the complaints or in the third party counterclaims,[29] fail. Under HUFTA, the plaintiff/creditor must have "a valid, **_presently enforceable debt against the original transferor_**[.]" This is "an **_essential element_** of action **_against [the] transferee_** to set aside fraudulent transfer." TSA Intern. Ltd. v. Shimizu Corp., 92 Hawaii 243, 262-263, 990 P.2d 713, 732-733 (1999) (emphasis added) (relying upon Jahner v. Jacob, 515 N.W.2d 183, 185 (N.D. 1994)); In re Kekauoha-Alisa, 2007 WL 1752266, *10 (Bankr. D.

---

[28]    KG Exs. 1A and 1B at ¶¶ 7, 9, 11-12, 36, 41, 44, 50-62.

[29]    Exhibits 1 and 2.

Hawaii 2007)(Faris, J.).

When the TSA court refers to a debt that is "presently enforceable against the original transferor," it means the debt must *continue to exist throughout the fraudulent transfer litigation.* This is clear from the Hawaii court's reliance upon Jahner, which clarifies, "[e]ven if the claimant was a 'creditor' when the fraudulent transfer occurred, the claimant loses her status as a creditor if her claim against the transferor becomes barred by the statute of limitations, a non-claim statute, or other method." Id. at 515 N.W. 185 (citations omitted).

As the Jahner court explains, "without a debt enforceable against the transferor, a creditor has no claim against the transferee." Id., 515 N.W.2d at 185. The Ninth Circuit reached the same conclusion in a fraudulent transfer case. Laidley v. Heigho, 326 F.2d 592, 593-94 (9th Cir. 1963) (applying California fraudulent transfer law, affirming dismissal of claim by creditor whose claims against the debtor were not preserved).

As admitted by South Wind's Mr. Lee and apparent from the evidence, SS-W owes no debt to SS-Japan (or anyone else). This is fatal to SS's HUFTA claims for an additional independent reason. Assuming that the debt is now owed by SS-USA (which appears to be what Mr. Lee states), SS-USA was not a party to the Purchase and Sale Agreement that provided for the sale of hotels (and golf courses) to KG. Therefore a debt owing by SS-USA to plaintiff SS-Japan cannot be the

16

basis for a HUFTA claim against KG since <u>KG was not SS-USA's transferee</u>.[30]

VIII.  CONCLUSION

Once again, SS can't keep its stories straight.  Judge Kay was "troubled" that SS "may have engaged in questionable tactics" by representing one thing to the bankruptcy court and another thing to this Court with respect SS-USA's principal place of business.[31]  SS has again proven it will say whatever it needs to say, under penalty of perjury or otherwise, to advance its interests.  Whether or not this Court is troubled as Judge Kay was, in the face of SS's clear and continuing representations to federal and state tax authorities that the debt was eliminated, no reasonable jury could find by clear and convincing evidence that the 'debt' between SS-W and SS-Japan continues to exist.  Accordingly, summary judgment on the HUFTA claims should be granted in favor of the KG Parties.

---

[30]    Moreover, since SS-W has no debt, it is not insolvent because it owns $7.5 million in notes receivable that are payable in early 2012.  KG Exs. 13A & B. Therefore, the SS Parties' HUFTA claims, which depend to varying degrees on the debtor's insolvency, are impaired.

[31]    Order Granting KG Defendants' Motion to Dismiss Civ. Nos. 04-00125ACK-BMK, 04-00126ACK-BMK and 04-00128 ACK-BMK for Lack of Subject Matter Jurisdiction, filed April 5, 2007 at 26, n. 13.

DATED Honolulu, Hawaii, October 19, 2007.

/s/ Robert A. Marks
WARREN PRICE III
ROBERT A. MARKS

Attorney for the KG Parties
KG HOLDINGS, LLC, KIAHUNA GOLF
CLUB, LLC, KG KAUAI
DEVELOPMENT, LLC, PUKALANI
GOLF CLUB, LLC, KG MAUI
DEVELOPMENT, LLC, MILILANI GOLF
CLUB, LLC, QK HOTEL, LLC & OR
HOTEL, LLC