1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF HAWAII

 3
    SPORTS SHINKO CO., LTD.,      ) CV 04-00124 ACK-BMK
 4  etc.,                         ) (Consolidated case)
                                  )
 5            Plaintiff,          ) Honolulu, Hawaii
                                  ) March 20, 2006
 6       vs.                      ) 1:30 p.m.
                                  )
 7  QK HOTEL, LLC, a Hawaii       ) KG Defendants' Motion for
    limited liability company,   ) Summary Judgment in
 8                                ) CV 04-00128 ACK-BMK and
              Defendant.          ) Defendant Franklin K.
 9  _____) Mukai's Joinder in KG
                                  ) Defendants' Motion for
10                                ) Summary Judgment in
                                  ) CV 04-00128 ACK-BMK and
11                                ) Motion to Strike Joinder by
                                  ) Defendant Mukai in KG
12                                ) Defendants' Motion for
                                  ) Summary Judgment in
13                                ) CV 04-00128 filed on
                                  ) February 17, 2006
14                                )
                                  )
15  SPORTS SHINKO (USA) CO.,      ) CV 04-00125 ACK-BMK
    LTD., a Delaware              )
16  corporation,                  )
                                  )
17            Plaintiff,          )
                                  )
18       vs.                      )
                                  )
19  PUKALANI GOLF CLUB, LLC, a    )
    Hawaii limited liability     )
20  company and KG MAUI           )
    DEVELOPMENT, LLC, a Hawaii    )
21  limited liability company,   )
                                  )
22            Defendant.          )
                                  )
23  _____)
    SPORTS SHINKO (USA) CO.,      ) CV 04-00126 ACK-BMK
24  LTD., a Delaware              )
    corporation,                  )
25
```

```
 1
                                      )
 2            Plaintiff,              )
                                      )
 3      vs.                           )
                                      )
 4  KIAHUNA GOLF CLUB, LLC, ET        )
    AL.,                              )
 5                                    )
              Defendant.              )
 6  _____  )
                                      )
 7  SPORTS SHINKO CO., LTD., a        )  CV 04-00127 ACK-BMK
    Japanese corporation in           )
 8  reorganization, through           )
    KEIJIRO KIMURA, its Deputy        )
 9  Trustee,                          )
                                      )
10            Plaintiff,              )
                                      )
11      vs.                           )
                                      )
12  OR HOTEL, LLC, a Hawaii           )
    limited liability company,        )
13                                    )
              Defendant.              )
14  _____  )
                                      )
15  SPORTS SHINKO (USA) CO.,          )  CV 04-00128 ACK-BMK
    LTD., a Delaware                  )
16  corporation,                      )
                                      )
17            Plaintiff,              )
                                      )
18      vs.                           )
                                      )
19  MILILANI GOLF CLUB, LLC, a        )
    Hawaii limited liability          )
20  company,                          )
                                      )
21            Defendant.              )
                                      )
22  _____

23
                    TRANSCRIPT OF PROCEEDINGS
24              BEFORE THE HONORABLE ALAN C. KAY
                   UNITED STATES DISTRICT JUDGE
25
```

```
 1   APPEARANCES:

 2   For the Plaintiffs        PAUL ALSTON, ESQ.
     and Counter Claimants:    GLENN T. MELCHINGER, ESQ.
 3                             Alston Hunt Floyd & Ing
                               American Savings Bank Tower
 4                             1001 Bishop Street, Suite 1800
                               Honolulu, Hawaii  96813
 5
     For the Defendant:        ROBERT A. MARKS, ESQ.
 6                             WARREN PRICE, III, ESQ.
                               Price Okamoto Himeno & Lum
 7                             Ocean View Center
                               707 Richards Street, Suite 728
 8                             Honolulu, Hawaii  96813

 9   For the Defendant and     WILLIAM A. BORDNER, ESQ.
     Third-Party Plaintiff:    JOHN REYES-BURKE, ESQ.
10                             Burke McPheeters Bordner & Estes
                               Pacific Guardian Center, Mauka Tower
11                             737 Bishop Street, Suite 3100
                               Honolulu, Hawaii  96813
12
     Official Court Reporter:  Sharon Ross, CSR, RPR, CRR
13                             United States District Court
                               300 Ala Moana Blvd., Room C-283
14                             Honolulu, Hawaii  96850
                               (808) 535-9200
15

16

17

18

19

20

21

22

23

24

25   Proceedings recorded by machine shorthand, transcript produced
     with computer-aided transcription (CAT).
```

4

```
           1   MONDAY, MARCH 20, 2006                            1:30 P.M.
           2              COURTROOM MANAGER:  Calling Civil No. 04-00124
           3   ACK-BMK, Civil No. 04-00125 ACK-BMK, Civil No. 04-00126
           4   ACK-BMK, Civil No. 04-00127 ACK-BMK and Civil No. 04-00128
01:32PM    5   ACK-BMK.  This is Sports Shinko Company versus various
           6   defendants.  This hearing has been called for KG defendants'
           7   motion for summary judgment, defendant Franklin K. Mukai's
           8   joinder, motion to strike joinder by defendant Mukai and also
           9   the motion to strike.
01:33PM   10              Counsel, your appearances for the record, please.
          11              MR. ALSTON:  Good afternoon, Your Honor.  Paul Alston
          12   and Glenn Melchinger appearing for the plaintiffs.
          13              THE COURT:  Good afternoon.
          14              MR. MARKS:  Good afternoon, Judge Kay.  Robert Marks
01:33PM   15   and Warren Price for the KG parties.
          16              THE COURT:  Good afternoon.
          17              MR. BORDNER:  William Bordner and John Reyes-Burke for
          18   defendant Mukai.
          19              THE COURT:  Good afternoon.  Please be seated.
01:33PM   20   Counsel have been working on this case for several years, and
          21   I've only been exposed to it for several days.  So, if you'd
          22   bear with me, I have a few questions I'd like to ask of
          23   Mr. Alston first.  I feel that I've just gotten through,
          24   perhaps, the first chapter of this, which appears to be a very
01:33PM   25   lengthy book.
```

       THE COURT: Now, was the Goldman Sachs affiliate aware of this alleged fraud before it purchased the properties -- or before it purchased the SS companies?

       MR. ALSTON: Right. The litigation was ongoing for a substantial period of time before the sale of the companies through the Japan bankruptcy.

       THE COURT: And the Goldman Sachs affiliate purchased the stock from the trustee in bankruptcy or the receiver or --

       MR. ALSTON: Actually, as I understand it, it's a little bit different than one might expect in a U.S. bankruptcy. Apparently the original stock is canceled and new stock is issued out of the bankruptcy. So, it's not a matter of the same shares passing from one hand to another and ending up in the hands of Southwind, which is the name of the Goldman Sachs entity.

       THE COURT: Like being born again.

       MR. ALSTON: Somewhat, yes, uh-huh. I mean, it's not the same shares that have passed through.

       THE COURT: So, before the bankruptcy was closed, everyone, including the external creditors, were aware of the ongoing litigation in the state court?

       MR. ALSTON: I believe so, Your Honor. I believe certainly the trustee, the assistant trustee and other people involved with the administration of the bankruptcy were aware because we provided reports to them. I can't say specifically

```
            1   chapter and verse what was told; but I believe that they all
            2   were aware, yes, sir.
            3           THE COURT:  But as I understand it, you're not seeking
            4   standing as a creditor through the external creditors or the
01:46PM     5   trustee in bankruptcy.  You're seeking standing only through
            6   the internal corporate loans; is that right?
            7           MR. ALSTON:  Well, based on the internal corporate
            8   loan, that's right; but what we're saying is that Southwind has
            9   succeeded to the interests controlled by the bankruptcy
01:47PM    10   trustee.  And so, in that -- in that respect, he is not the
           11   normal successor in interest to that -- that might be bound by
           12   equitable defenses.
           13           Rather, in the language of the O'Melveny case, which
           14   is 61 F.3d, as Judge Kozinski put it, we are -- we are standing
01:47PM    15   here representing an innocent successor by operation of law
           16   since they have succeeded to the interests of the trustee.
           17           THE COURT:  So, would it be fair to say that Goldman
           18   Sachs' affiliate -- and their name is what?
           19           MR. ALSTON:  Southwind.
01:47PM    20           THE COURT:  Southwind?
           21           MR. ALSTON:  It's a long -- it's a long name, but the
           22   first --
           23           THE COURT:  Okay.
           24           MR. ALSTON:  -- the first part of it is Southwind.
01:48PM    25           THE COURT:  So that when they purchased the SS
```

```
              1    companies, they took into consideration that there may be some
              2    further recovery in the Hawaii State Court litigation?
              3              MR. ALSTON:  So I would believe, Your Honor.  That's
              4    right.
  01:48PM     5              THE COURT:  And in this -- the State Court litigation
              6    is now settled?
              7              MR. ALSTON:  The one case in State Court has been
              8    settled.  We're only -- at least all the monetary terms have
              9    been resolved and we've recovered and sold the Maui property.
  01:48PM    10    The one thing that remains there is that, as part of the
             11    settlement, Satoshi Kinoshita was required to recover the data
             12    on his computer that crashed and turn that over to us.  And
             13    that's the one small piece that remains unconcluded.
             14              THE COURT:  There seemed to be some allusion to -- in
  01:48PM    15    one of the papers that instead of taking the $3-1/2 million
             16    cancellation fee, he took a Maui Pukalani residence.
             17              MR. ALSTON:  No, Your Honor.  There was -- as I
             18    mentioned before, there was a series of cancellation fees that
             19    aggregated $3-1/2 million.  The cancellation fee on the Maui
  01:49PM    20    prop -- the Pukalani property was paid in kind, if you will, by
             21    giving him a residence which we subsequently sold for the
             22    benefit of Southwind at a price of approximately $575,000.  And
             23    so, the property was worth approximately the cash value of the
             24    cancellation fee.
  01:49PM    25              THE COURT:  Thank you.  I'll now let Mr. Marks proceed
```

14

1    with his motion.
2            MR. MARKS:  Thank you, Your Honor.  Your Honor, I have
3    only two very brief points to make.  The first is that the law
4    does not permit a company to defraud itself and then make
01:50PM  5    itself whole from a third party.
6            Your Honor, if I may, I have a demonstrative aid that
7    might assist the Court.  I've given it to Mr. Alston.
8            THE COURT:  Very well.  Do you have a copy for my
9    clerk, too?  Thank you.
01:50PM 10            MR. MARKS:  Never forget the clerk.  Your Honor,
11    I've -- the facts stated on that document entitled "road map"
12    outline the key undisputed facts that are necessary in order to
13    grant this motion.
14            What the plaintiff has pled in the complaint and
01:50PM 15    conceded in discovery and further animated in the discussion
16    just now is that Toshio controlled all of the Sports Shinko
17    companies, including the creditor and the debtor; that he owned
18    all the Sports Shinko companies, including the creditor and
19    debtor; that Toshio told the Japan banks that he would sell the
01:51PM 20    Hawaii assets of Sports Shinko to pay the Japan bank creditor
21    of Sports Shinko Japan; that Toshio masterminded this grand
22    conspiracy that was supposed to net $3-1/2 million.  But
23    somehow I suppose the allegation is necessarily that Toshio
24    wasn't such a great conspirator because he only netted a house
01:51PM 25    that's apparently worth $400,000.  But apparently this

|  |  |  |
|---|---|---|
|  | 1 | elaborate conspiracy was designed to defraud the Japan banks; |
|  | 2 | and in addition to all that, there's no dispute -- |
|  | 3 | THE COURT: Well, while you're speaking about |
|  | 4 | conspiracy, when the KG defendant purchased the properties, did |
| 01:51PM | 5 | they think that the prices were unreasonably below the fair |
|  | 6 | market value? |
|  | 7 | MR. MARKS: What KG believed is that they were buying |
|  | 8 | all the parcels, two hotels and three golf courses from a |
|  | 9 | company that they knew were having -- was having problems. And |
| 01:52PM | 10 | they bought it in the immediate aftermath of September 11th |
|  | 11 | when the industry was very unstable and there were problems, |
|  | 12 | serious problems. They had been involved in prior |
|  | 13 | transactions -- |
|  | 14 | THE COURT: What industry are you referring to? |
| 01:52PM | 15 | MR. MARKS: The visitor industry, the golf industry. |
|  | 16 | People weren't coming to Hawaii at that point. It was a very |
|  | 17 | unstable market. |
|  | 18 | KG had also previously been involved in a transaction |
|  | 19 | with Shinowa on Maui where they were to buy assets there. And |
| 01:52PM | 20 | it was a very long process and in the end there was a very |
|  | 21 | accelerated closing process and none of this seemed unusual to |
|  | 22 | KG. |
|  | 23 | They made an offer in December. The purchase and sell |
|  | 24 | agreement was executed some weeks later, and it closed fairly |
| 01:53PM | 25 | quickly thereafter. |

16

```
                   1         So, there is very much a question of fact about
                   2   whether the price paid was a fair price, especially considering
                   3   the sewage treatment plant; but we're willing to look past all
                   4   of that for the purposes of this motion, Your Honor, and
01:53PM            5   concede the facts as stated in the complaint are true.
                   6         THE COURT:  Concede what fact?
                   7         MR. MARKS:  That the price was too little.  I mean,
                   8   we'll concede that for purposes of this motion.  This motion
                   9   began as a Rule 12 motion, and we -- as more evidence was
01:53PM           10   developed to support it, it became a Rule 56 motion.  And then
                  11   it was filed under Rule 56 because of the attachments.
                  12         THE COURT:  I didn't hear you.
                  13         MR. MARKS:  The motion was filed pursuant to Rule 56
                  14   because we had exhibits attached; but in our mind's eye as we
01:53PM           15   started this, it was a Rule 12(b)(6) motion.
                  16         THE COURT:  What about the management agreements?  Did
                  17   that cause you any thought, or your clients?
                  18         MR. MARKS:  I don't believe it caused any thought at
                  19   all.  Apparently KG was given an opportunity to agree to an
01:54PM           20   assignment of the management agreements, and it didn't.  It
                  21   didn't accept the management agreements.
                  22         THE COURT:  I mean, these management agreements were
                  23   just executed shortly before the sale, weren't they?
                  24         MR. MARKS:  I don't know the dates of it.  Probably, I
01:54PM           25   believe so.  But the -- you know, the point is that the
```

|  |  |
|---|---|
|  | 1  management agreements were presented to KG; and if I understand |
|  | 2  correctly, they declined to accept them.  So -- |
|  | 3       THE COURT:  And that caused the $3-1/2 million fee to |
|  | 4  the management company. |
| 01:54PM | 5       MR. MARKS:  And KG acting in its own best interests |
|  | 6  believed that it could pursue management in a more |
|  | 7  cost-effective way without taking the assignment of those |
|  | 8  agreements. |
|  | 9       You know, there's nothing in that that I can see that |
| 01:54PM | 10  suggests any impropriety by KG at all.  There were incumbent |
|  | 11  managers at the golf courses and hotels.  KG had the option to |
|  | 12  accept or reject them, and they rejected them. |
|  | 13       But most importantly, Your Honor, the sale of the KG |
|  | 14  assets -- I'm sorry -- of the Sports Shinko (Hawaii) assets to |
| 01:55PM | 15  KG were specifically approved by Toshio.  These are the only |
|  | 16  material facts that are necessary to be -- to find in favor of |
|  | 17  KG on this motion. |
|  | 18       Sports Shinko's whole case presumes Toshio's complete |
|  | 19  control of the Sports Shinko empire because without that |
| 01:55PM | 20  complete control, Sports Shinko Japan could not reach anywhere |
|  | 21  into the corporate structure and sell remote subsidiaries' |
|  | 22  assets to pay the Japan company's debts.  This is, indeed, the |
|  | 23  very heart of the plaintiff's case that Sports Shinko defrauded |
|  | 24  itself. |
| 01:55PM | 25       This distorts fraudulent transfer law and turns it |

18

|          |    |                                                                      |
|----------|----|----------------------------------------------------------------------|
|          |  1 | into a vehicle to commit fraud rather than redress it.  In a         |
|          |  2 | fraudulent transfer case, Your Honor, at least two basic             |
|          |  3 | showings are necessary before a transferee has exposure.             |
|          |  4 |        First, there's a creditor who is defrauded by a               |
| 01:56PM  |  5 | debtor; and the second is an enforceable debt between them.  In     |
|          |  6 | an ordinary fraudulent transfer case, that would be an issue to      |
|          |  7 | be contested between the parties who know about the debt, the       |
|          |  8 | creditor and the debtor.  And the transferee is insulated            |
|          |  9 | unless there are findings that push the case toward a                |
| 01:56PM  | 10 | fraudulent transfer case; that is, if the creditor was not           |
|          | 11 | defrauded by the debtor or if there was no debt, there's no          |
|          | 12 | claim against the transferee.                                        |
|          | 13 |        In this case where the fraud victim controls the fraud        |
|          | 14 | perpetrator, all of this gets glossed over in a combined effort      |
| 01:56PM  | 15 | by the debtor and the creditor to pursue the transferee.  And       |
|          | 16 | that's what's happened here.  Fraudulent transfer law is turned      |
|          | 17 | on its head, and a whole new species of fraudulent transfer         |
|          | 18 | case is invented.                                                    |
|          | 19 |        If Sports Shinko's theory is correct, we can expect           |
| 01:57PM  | 20 | that sellers will sell their properties through a wholly owned       |
|          | 21 | controlled subsidiary that is indebted to the parent company.        |
|          | 22 | The sale will occur.  The debt will not be repaid, and then the     |
|          | 23 | seller's parent waits.  And in a rising market, the seller's         |
|          | 24 | parent then sues the buyer and picks the buyer's pocket for          |
| 01:57PM  | 25 | additional money.                                                    |

40

1               COURT REPORTER'S CERTIFICATE
2           I, Sharon Ross, Official Court Reporter, United
3   States District Court, District of Hawaii, do herby certify
4   that the foregoing is a correct transcript from the record of
5   proceedings in the above-entitled matter.
6           DATED at Honolulu, Hawaii, March 24, 2005.
7
8                           /s/Sharon Ross
9                           SHARON ROSS
10                          CSR 432, RPR, CRR
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25