IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br>　　　　Plaintiff,<br>　vs.<br>QK HOTEL, LLC, a Hawaii limited liability company, et al.,<br>　　　　Defendants,<br>　and<br>FRANKLIN K. MUKAI, et al.,<br>　　　Third-Party Plaintiffs,<br>　vs.<br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al.,<br>　　　Third-Party Defendants. | CV 04-00124 BMK<br>CV 04-00127 BMK<br><br>DECLARATION OF ROGER H. EPSTEIN; EXHIBIT E1 |
| SPORTS SHINKO CO., LTD., a Japan corporation,<br>　　　　Plaintiff,<br>　vs.<br>OR HOTEL, LLC, a Hawaii limited liability company, et al.,<br>　　　　Defendants,<br>　and<br>FRANKLIN K. MUKAI, et al.,<br>　　　Third-Party Plaintiffs,<br>　vs.<br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al.,<br>　　　Third-Party Defendants. | CV 04-00127 BMK |

<u>DECLARATION OF ROGER H. EPSTEIN</u>

ImanageDB:776738.2

I. I am the Chairman of the Tax Department of Cades Schutte LLP. During my 40 years as a tax professional, I have had substantial experience working with each of the tax issues involved in this matter. (See KG Exhibit E1.) I make this declaration based on my review of the 2004, 2005 and 2006 Consolidated Federal and Hawaii tax returns of Sports Shinko (USA) Co., Ltd. and its Subsidiaries ("SS-USA") including Sports Shinko (Waikiki) Corporation ("SS-Waikiki") and numerous other relevant information and documents. I am competent to testify to the matters set forth below.

In my opinion, all of the U.S. tax filings of SS-USA (which include SS-Waikiki) unequivocally state (under penalties of perjury) that on or before February 24, 2004, Sports Shinko Co., Ltd. ("SS-Japan") ceased to be a creditor of SS-USA (including SS-Waikiki). The 2004 Federal tax return signed by Yoshihiko Machida as President of SS-USA, unequivocally states that SS-Japan relinquished all of its interest in all debt owed it by SS-USA by contributing such interest to the capital of SS-USA on or before February 24, 2004.

The acquisition of 100% ownership of SS-Japan and its U.S. subsidiaries by South Wind TK ("SWTK") on February 24, 2004, triggered the ███████████ ████████████████████████████ ███████████████. Under Code section ███, the annual deduction for unused ███ of an acquired company are limited to a percentage of the fair market value

of the acquired company (here, the SS-USA group). For this purpose, SS-USA explicitly stated it had a fair market value of $▮ (the outstanding amount owed by KG to the SS-USA group) on February 24, 2004, and indicated consistently throughout its 2004 return that this value only arose through the elimination of debt the SS-USA group owed to SS-Japan.

Thus, solely through SS-Japan's relinquishment of all its interest in this debt on or before February 24, 2004, the SS-USA group preserved potential Federal tax savings from NOL carryovers otherwise lost of approximately $▮ and potential Hawaii tax savings of $▮ (at current tax rates). Consistently, the 2005 and 2006 SS-USA tax returns state that SS-Japan ceased to be a creditor of SS-USA on or before February 24, 2004, and that because of this SS-Waikiki enjoyed Hawaii tax savings $▮ in 2005 (in addition to the savings of $▮ in 2004), and The Goldman Sachs Group may realize the remaining $▮ tax benefit by merely moving any business assets that generate at least $▮ of taxable income into SS-USA at any time before December 31, 2025.

Contrary to Plaintiff's statements, SS-Japan could not and did not transfer to South Wind Realty Finance (Cayman) Company ("South Wind") the SS-Waikiki debt, since that debt was not owed to SS-Japan on the purported transfer date of December 30, 2004. I also note that U.S. tax rules required SS-USA's 2004 U.S. tax return to include a Form 5472 indicating the presence of any debt between SS-

USA and South Wind, if such debt had existed on December 31, 2004. ████
████████████████████████████

Communications between SS Group executives and their U.S. accountant discuss that all the SS-USA companies' debt to SS-Japan must be eliminated to preserve the U.S. ████, and that contributing the debt to SS-USA rather than merely canceling that debt avoided the triggering of approximately $████ of taxable income to the SS-USA group. For some reason, none of this information concerning the need to move the debt into the SS-USA group to preserve ████ is included in those Declarations of these executives or accountant attempting to explain why the SS-USA tax returns have an explicit statement that the ████
████████████████████████████

The statements on each of SS-USA's 2004-2006 U.S. tax returns, made under penalties of perjury, are directly contrary to and irreconcilable with paragraph 7 on page 3 and/or 4 of Plaintiff's Third Amended Complaint, filed on January 19, 2007 (See KG Exhibits 1A and 1B), that "Plaintiff [SS-Japan] is, and at all relevant times was, a creditor of Debtor [SS-USA companies]." SS-USA unequivocally stated on its U.S. tax returns for each of those years that SS-Japan had ████████████████████████ by February 24, 2004 and on its 2004 tax return that SS-Japan was ████████████ December 31, 2004.

II.  My opinion is based on the following facts and documents:

A.  <u>2004 Tax Year Form 5472</u> - Informational Return of a 25% [or greater] Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business (See KG Exhibit 3 – 256 1596 and 256 1597).

1.  Code section 6038A and Treasury Regulations ("Treas. Reg.") section 1.6038A-2 require a U.S. corporation that is 25% or more foreign owned to file Form 5472 and report certain transactions between the U.S. corporation and a "related party" during the tax year.  A "related party" includes a direct or indirect 25% foreign shareholder of the U.S. corporation as well as an entity who has a 50% or greater common ownership with the 25% foreign shareholder.  Reportable transactions include amounts loaned to the U.S. corporation by the related party and amounts borrowed from the U.S. corporation by the related party.

2.  SS-USA filed Form 5472 for 2004 reporting the transactions it had with SS-Japan.  The Form states that as of January 1, 2004, SS-USA had outstanding $███████ in borrowed funds from SS-Japan and $███████ of loaned funds to SS-Japan.  Subtracting the amount loaned ███████ from the amount borrowed ($███████) results in a net balance of $███████ that SS-USA owed to SS-Japan as of January 1, 2004.  Said another way, SS-Japan had net Accounts Receivable of $███████ due from SS-USA.

3. The same Form also states the ending balance on December 31, 2004 of amounts borrowed as well as amounts loaned from SS-Japan as "NONE". Thus, this form reflects that during 2004, SS-USA's beginning year debt of $[redacted] to SS-Japan was eliminated.

4. Treas. Reg. § 1.6038A-2 requires a separate Form 5472 to be filed for each related party with which the U.S. corporation had any reportable transaction. In 2004, South Wind was a related party since it became an indirect 25% foreign shareholder of SS-USA. Therefore, if, as asserted by plaintiff, SS-Japan sold all the SS-USA debt to South Wind on December 30, 2004, a separate Form 5472 should have been filed to report that SS-USA owed a debt to South Wind at year end. Failure to file such form when due is subject to the assessment of a $10,000 penalty to SS-USA. Treas. Reg. § 1.6038A-4. The absence of such reporting in this case indicates either that no debt existed between SS-USA and South Wind or SS-USA is subject to the $10,000 penalty.

B. <u>2004 Tax Year Section 1.351-3 Statement</u> - Transferor Shareholder's Statement of Tax-Free Incorporation Transfer Pursuant to Reg. § 1.351-3 (See KG Exhibit 3 – 256 1599).

1. Code section 351 and Treas. Reg. § 1.351-3 require this statement to be filed with a tax return for a year when property has been transferred by an 80% or greater shareholder(s) (i.e., SS-Japan) to a corporation owned by the

shareholder(s) (i.e., SS-USA or its Subsidiaries) in exchange for the corporation's stock or securities. The transfer is tax-free to the shareholder(s).

2.  Item 256 1599 states:



This amount is exactly the net amount SS-USA owed to SS-Japan as of January 1, 2004, as stated on Form 5472 (discussed above).

3.  This statement clearly explains how the SS-USA debt was disposed of and is consist with the zero ending balance of amounts owed from SS-USA to SS-Japan as reported in Form 5472 (discussed above).

4.  The statement plainly shows that SS-Japan eliminated the SS-USA debt ($█████) in 2004 by transferring it to SS-USA. Upon receiving the debt, SS-USA did not recognize any income. Under general tax rules, if a shareholder/creditor exchanges debt owed to it by the debtor for the debtor's stock, the debtor must recognize discharge of indebtedness income. Income recognition can only be avoided where an existing 80% or greater corporate shareholder (i.e., SS-Japan) contributes debt owed to it ($█████) to the debtor corporation (i.e., SS-USA or its Subsidiaries) in a transaction constituting a contribution of capital. Accordingly, SS-USA's non-recognition of over $█████ of income on the

termination of its debt is entirely consistent with the tax return statement that SS-Japan contributed the SS-USA debt to the capital of SS-USA.

    5.    Thus, regardless of plaintiff's assertion that Grant Thornton LLP was uncertain of the exact disposition of the debt and that South Wind and SS-Japan informed Grant Thornton that the debt continued in existence, the filing of this statement unequivocally evidences that SS-USA treated the debt as extinguished as of February 24, 2004 for U.S. tax purposes.

    C.    <u>2004 Tax Year Section 382(b)(1) Statement</u> - Information Statement Required by Loss Corporation Under Code § 382(b)(1) (See KG Exhibit 3 – 256 1598).

    1.    Treas. Reg. § 1.382-11(a) requires a sold corporation (i.e., SS-USA) with net operating losses to explain any ownership change in a statement filed with its tax return in the year of sale.

    2.    Item 256 1598 states:



    3.    Code section 382 limits the amount of net operating loss ("NOL") a sold corporation may carryforward to offset income in each of the future years. The formula to calculate this annual limitation amount multiplies "the value of the pre-acquisition loss corporation [i.e., SS-USA and its

Subsidiaries] times the long-term tax-exempt rate." Thus, to preserve any ▇ to carry forward, an acquired corporation must have a positive value.

4. As discussed below, in calculating the ▇ carryforward limitation in its 2004, 2005, and 2006 tax returns, the value of SS-USA's consolidated group's stock was stated as $▇.

5. The $▇ value placed on SS-USA's stock is explained in an email dated September 5, 2005, from Doreen Griffith, tax partner at the Honolulu office of Grant Thornton, LLP, to Japanese executives of Sports Shinko in connection with her office's preparation of SS-USA's 2004 tax return. (See KG Exhibit 15 – 037986.) The email explains that in determining the value of SS-USA for purposes of the ▇ limitation from South Wind's acquisition of SS-Japan in February 2004: "▇▇▇▇" This is confirmed in KG Exhibit 14 at GT 038373.

6. As of January 1, 2004, SS-USA had $▇ of debt to SS-Japan and its only valuable asset was the $9,000,000 in purchase money notes owed by certain subsidiaries of KG Holdings LLC. (See KG Exhibit 13A-E). Thus, were this $▇ obligation outstanding outside the SS-USA consolidated return group, the group's value would have been a negative $▇ (i.e. $9,000,000 of assets minus $▇ of debt). Since the value

of SS-USA on February 24, 2004 was stated as $███████, this means that from at least that date forward, SS-USA owed zero debt to offset this asset. The only way for SS-USA to have a positive $███████ of value on February 24, 2004, as stated on this form (filed under penalties of perjury) and in Ms. Griffith's email, is for the debt to SS-Japan to have been eliminated.

       7.     Benefit to SS-USA's U.S. Taxes from Items II.C.3. and II.C.4.

          a.     SS-USA had $███████ of net operating loss carryforwards at the end of 2003. If the SS-Japan notes had not been contributed to SS-USA's capital before the February 24, 2004 change of ownership, SS-USA would have been insolvent (i.e., assets $9 million and debt $███████) and the formula limitation under Code section 382(b)(1) would have permitted -0- carryforwards of the existing $███████████.

          b.     Thus, contributions of SS-Japan's interest in the debt to SS-USA's capital increased the value of SS-USA from zero to $███████ on February 24, 2004, permitting $██████ per year to be carried forward (for up to 20 years) thereby allowing up to $███████ of future Federal and Hawaii income offsets, which at current rates (aggregate of 40%) would reduce future total taxes by roughly $████████.

          c.     On its 2004 Hawaii tax return, SS-USA reported, NOL carryforwards eliminating otherwise due Hawaii taxes of $██████ and preserved

the future Hawaii remaining tax savings of $▮ for 19 more years. Its Federal tax return did not permit the current use of any ▮, but indicated the preservation of the future tax savings of $▮.

D.  2005 Tax Year Form 5472 (See KG Exhibit 11A - GT 037051 and GT 037052).

1.  SS-USA's Form 5472 for the 2005 tax year reports SWTK as the shareholder of SS-USA and South Wind as a related party. The Form reported ▮ of borrowings from ▮. Thus, these parties declared that SS-USA loaned South Wind ▮ during 2005. This declaration directly contradicts plaintiff's position that "in SS USA's 2005 consolidated federal tax return, SS USA reported that it now owed a large amount of debt to South Wind." Memorandum in Opposition at p. 15 and 31.

2.  Moreover, the Form 5472 statement of a ▮ opening balance confirms, rather than adjusts or corrects, the prior filing regarding the elimination of all obligations to SS-Japan in 2004.

E.  2005 Tax Year Section 382(b)(1) Statement - Information Statement Required by Loss Corporation Under Code § 382(b)(1) (See KG Exhibit 11A - GT 037053).

1. Item GT 037053 repeats the 2004 statement that for purposes of Code section 382(b)(1) "███████████████████████████████████████████████████████████████████████████████████████████████████████," and restates that the annual limitation for NOL carryforwards is based on a value of SS-USA's stock of "$████." The statement and amount are identical to those reported on the 2004 tax return.

2. This continued valuation of SS-USA on February 24, 2004 as $█████ resulted in further Hawaii tax reductions of $████ in 2005, and carried forward all of the future Federal and the remaining Hawaii tax savings for 18 more years.

F. <u>2006 Tax Year Section 382(b)(1) Statement</u> - Information Statement Required by Loss Corporation Under Code § 382(b) (See KG Exhibit 12A - 2611148 and 2611191).

1. This form repeats the 2004 and 2005 statements that for purposes of Code section 382(b)(1) "████████████████████████████████████████████████████████████████████████████████████████████████████████████" and restates that the annual limitation is based on a value of SS-USA's stock of

$███████. The statement and amount are identical to those reported on the 2004 and 2005 tax returns.

  2. This continued valuation of SS-USA on February 24, 2004 as $███████ did not result in additional direct tax savings in 2006, but reflects a continued ability to realize the remaining Federal and Hawaii tax savings from the pre-acquisition NOLs for an additional 17 years.*

 G. The 2004, 2005, and 2006 Federal tax returns for SS-USA were timely filed. No amended tax returns for such years have been filed thus far.

 H. The information in the Federal and Hawaii tax returns may be substantially different from that reported in the Japan or any other foreign return. However, in my experience, it is not unusual for foreign tax returns to reflect disparate results from U.S. tax returns as the tax laws differ between countries and operate under a different set of criteria.

---

* N.B. SS-USA can receive as a contribution or acquire any businesses whatsoever during the next 17 years to generate the roughly $███████ of taxable income to be absorbed (sheltered) by the remaining pre-acquisition net operating loss carryforwards, pursuant to Code Sections 172, 382 and 1502. To benefit from the Hawaii NOLs, this income would need to be Hawaii sourced income. HRS § 235-2.3.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED: Honolulu, Hawaii, October 19, 2007.

_____
Roger H. Epstein