IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| SPORTS SHINKO CO., LTD., | ) CV 04-00124 BMK |
| | ) CV 04-00127 BMK |
| Plaintiff, | ) |
| | ) CONSOLIDATED CASES |
| vs. | ) |
| | ) **MEMORANDUM IN SUPPORT** |
| QK HOTEL, LLC, et al., | ) **OF MOTION** |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| FRANKLIN K. MUKAI, et al., | ) |
| | ) |
| Third-Party Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| SPORTS SHINKO (USA) CO., | ) |
| LTD., et al., | ) |
| | ) |
| Third-Party | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| SPORTS SHINKO (HAWAII) CO., | ) |
| LTD., et al., | ) |
| | ) |
| Third-Party Defendants/ | ) |
| Counterclaimants, | ) |
| | ) |
| vs. | ) |

661,494 / 6850-5

QK HOTEL, LLC, et al.,                )
                                       )
        Third-Party Counterclaim       )
        Defendants.                     )
                                       )
AND CONSOLIDATED CASES                 )
                                       )

## MEMORANDUM IN SUPPORT OF MOTION

In support for their Motion for Partial Summary Judgment on whether Plaintiff Sports Shinko Co. Ltd. ("SS Japan") has standing to pursue a claim under Hawai`i's Uniform Fraudulent Conveyance Act ("UFTA") as a "creditor" of SS Waikiki, the KG Parties have submitted a purported expert declaration from attorney Roger H. Epstein that is indistinguishable from a legal brief.  Mr. Epstein does nothing more than duplicate the Court's role in interpreting various provisions of federal tax law and applying his view of the law to his view of the evidence.

Mr. Epstein's purported expert opinion should be excluded both because it (1) contains improper legal opinions and (2) is otherwise "utterly unhelpful" to this Court in understanding either the applicable law or the underlying facts.  *See Aguilar v.*

-2-

*International Longshoremen's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992) (trial court properly excluded expert opinion on reasonableness and forseeability of reliance).  Furthermore, Mr. 4Epstein's opinion in part supports a new argument relating to SS USA's use of credits for net operating loss that is outside the proper scope of a reply memorandum.  Thus, Mr. Epstein's declaration should be stricken.

## II.    BACKGROUND

This case arises out of the sale by Third-Party Defendant / Third-Party Counterclaimant Sports Shinko (Waikiki) Corp.'s ("SSW") sale of two hotels, the Ocean Resort Hotel and the Queen Kapiolani Hotel, to Defendants OR Hotel LLC and QK Hotel LLC in January 2002.   Among SSJ's claims is that, as a "creditor" of the transferor of the hotels, it is entitled to rescind the transfers pursuant to UFTA.

On May 10, 2007, the KG Parties filed their Motion for Partial Summary Judgment, arguing that there is no genuine issue of material fact that: (1) at the time of the transfer, SS Japan had no enforceable debt against SSW; and (2) subsequent to the

transfer, as part of a corporate reorganization of SS Japan in 2004, the SS Japan /SSW debt was forgiven or cancelled.  SS Japan filed a comprehensive and detailed opposition memorandum, supported by numerous affidavits and dozens of exhibits, on August 24, 2007. In response, the KG Parties suddenly abandoned their first argument and presented new evidence and arguments that purportedly support their forgiveness theory.

The KG Parties have proffered the Declaration of Roger H. Epstein ("Epstein Dec.") in support of their reply memorandum.  Mr. Epstein is a self-proclaimed specialist in tax law.  Epstein Dec. at 2.  The heart of the Epstein Declaration is his ultimate opinion that "all of the U.S. tax filings of SS-USA (which include SS-Waikiki) unequivocally state (under penalties of perjury) that on or before February 24, 2004, Sports Shinko Co., Ltd. ("SS-Japan") ceased to be a creditor of SS-USA (including SS-Waikiki)." Epstein Dec. at 2.

Mr. Epstein's support for this conclusion consists entirely of his characterization and interpretation of certain tax documents filed by Sports Shinko (USA) Co., Ltd. ("SS USA"), a

former subsidiary of SS Japan and a parent company of SSW, as well as his interpretation of certain provisions of the Internal Revenue Code ("IRC") and the related Treasury Regulations ("Treas. Regs."). For example, on page 2-3, he describes the legal effect of IRC § 382 relating to carry-overs of net operating loss and purports to characterize statements in SS USA's 2004 federal tax return. And on page 3-4, he describes the requirements of "U.S. tax rules" (without citing any particular rule) and implies that SS USA failed to comply with such rules.

In part II of his declaration, Mr. Epstein describes the facts and documents on which his opinion is based. He again repeatedly purports to explain various provisions of the IRC and tax regulations and applies that law to the facts of this case. *See, e.g.,* Epstein Dec. at 5 (interpreting IRC § 6038A and Treas. Reg. § 1.6038A-2) and 8-10 (interpreting IRC § 382 and applying it to SS USA's financial information reported on its 2004 tax return).

Nowhere does Mr. Epstein provide a single ***fact*** (as opposed to conclusion or argument) that is not available either from the applicable law and regulations or the face of the documents

661,494 / 6850-5

-5-

that he purports to be interpreting. For example, Mr. Epstein does not provide any insight into standard practices in tax return preparation or standard methods for valuing the stock of a corporation for purposes of IRC § 382.

## III. ARGUMENT

### A. THE EPSTEIN DECLARATION PROVIDES IMPROPER OPINIONS ABOUT FEDERAL LAW – A TOPIC ON WHICH THIS COURT IS ALREADY EXPERT.

The Epstein Declaration violates the long-standing and fundamental rule that expert opinion about domestic law is inadmissible. *Aguilar*, 966 F.2d at 447 (9th Cir. 1992); *In Re Initial Public Offering Securities Litigation*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("the testimony of an expert on matters of domestic law is inadmissible for *any* purpose") (emphasis in original). Although admission of expert opinion is usually left to the Court's discretion, exclusion of legal opinions is ***mandatory***. *Id.* at 63.

"The rule prohibiting experts from providing their legal opinions or conclusions is so well-established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle." *Id.* at 64 (internal quotation omitted). The

rationale for this rule is obvious: "each courtroom comes with a legal expert, called the judge." *Burkhart v. Washington Metro. Area Transportation Authority*, 112 F.3d 1207, 1213 (D.C. Cir. 1997). This is especially true with respect to federal statutory law – a subject on which the Court is certainly expert.

Much of the Epstein Declaration consists solely of Mr. Epstein's interpretation and explanation of various provisions of the IRC and related regulations. *See, e.g,* Epstein Dec. at 5 (interpreting IRS § 6038A and Treas. Reg. § 1.6038A-2); 6-7 (interpreting Treas. Reg. § 1.351.-3); 7-8 (interpreting "general tax rules" regarding contribution of capital in lieu of debt without citing any law or regulation); 8 (interpreting Treas. Reg. § 1.382-11(a); 8-9 (interpreting IRC § 382). He even opines that SS USA has violated these regulations. *See* Epstein Dec. at 3-4 (opinion that SS USA violated unspecified "tax rules" by failing to file a Form 472 indicating a debt between SS USA and Southwind); *McCabe v. Crawford & Company*, 272 F. Supp. 2d 736, 740 (N.D. Ill. 2003) (expert may not opine on whether certain conduct violated the Fair Debt Collection Practices Act).

It is both improper and unnecessary for Mr. Epstein to explain the relevant provisions of the IRC and tax regulations to this Court.  Although Mr. Epstein may have great experience with tax law, "experience is hardly a qualification ... where there is a knowledgeable gentlemen in a robe whose exclusive province is to instruct the jury on the law."  *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2nd Cir. 1977).  This Court can and must apply the relevant portions of the IRC and regulations without Mr. Epstein's assistance.

**B.    THE EPSTEIN DECLARATION ALSO DOES NOT "ASSIST THE TRIER OF FACT" AS REQUIRED BY F.R.E. 702.**

Even those parts of the Epstein Declaration that are not purely statements of law should be excluded.  Expert testimony may be considered where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact at issue."  F.R.E. 702.  Nothing in the declaration is helpful to this Court acting as fact-finder on the motion for partial summary judgment.  Purported expert testimony that merely applies the record evidence to the law is "utterly unhelpful"

-8-

and should be excluded pursuant to F.R.E. 702.  *See Aguilar*, 966 F.2d at 447.

Like the expert testimony excluded in *Aguilar*, the Epstein Declaration presumes to substitute Mr. Epstein's judgment of the law and the evidence for this Court's.  The Epstein Declaration is naked legal advocacy disguised as an expert opinion – indeed, it is indistinguishable from a legal brief.  Thus, it is not at all helpful to the finder of fact.

The Second Circuit in *Marx & Co.*, 550 F.2d at 509-11, rejected a similar attempt to introduce legal expert testimony.  The expert in that case, a purported expert in securities regulation, was allowed to testify as to his interpretation of one party's obligations under a contract and "repeatedly gave his conclusions as to the legal significance of various facts adduced at trial."  *Id.* at 510.  For example, he testified that the opposing party had no excuse for non-performance of the contract, "based merely on his examination of documents and correspondence which were equally before the jury."  *Id.*

The Second Circuit reversed based on the admission of this improper expert opinion. *Id.* at 508. The court characterized the witness' testimony as "superfluous" because it "amounts to no more than an expression of the witness' general belief as to how the case should be decided." *Id.* at 510 (*citing* McCormick on Evidence, § 12 at pp. 26-27. Furthermore, "it is for the jury to evaluate the facts in the light of the applicable rules of law, and it is therefore erroneous for a witness to state his opinion on the law of the forum." *Id.*

Numerous other courts have upheld the exclusion of purported expert testimony that is nothing more than the expert's interpretation of the legal significance of the evidence or reversed the trial court where such opinions have been admitted. *See, e.g, Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537 (11th Cir. 1990) (trial court erred by allowing expert testimony regarding insurer's obligation under insurance contract; "[a] witness ... may not testify as to the legal implications of conduct"); *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) (trial court properly excluded expert testimony from attorney as to the legal significance

of various documents); *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 104 (D. Conn. 2006) (expert opinion regarding whether defendant exercised reasonable care in preventing discrimination and harassment was inadmissible where opinion offered "no specialized knowledge but merely a legal conclusion" and was based on evaluating facts in the record that the jury was equally able to evaluate).

The Epstein Declaration consists of nothing more than his interpretation of the record evidence in light of his interpretation of various provisions of the IRC and tax regulations. *See, e.g.,* Epstein Dec. at 8-10 (interpreting IRC § 382 and applying it to SS USA's financial information reported on its 2004 tax return). He offers no independent facts, such as custom or practice in tax return preparation, that could assist the Court.

Indeed, rather than contributing anything useful, he strays far beyond his purported expertise in tax law and demonstrates that he is acting solely as an advocate. For example, he offers his own slanted characterization of unspecified "communications between SS Group executives and their U.S.

accountant."  Epstein Dec. at 4.[1]  As a tax lawyer, he has no

particular qualifications to interpret such communications – this

Court is able to make its own judgments about their import and

meaning.  He even goes so far as to opine on the credibility of SS

Japan's declarants, commenting that "[f]or some reason, none of

this information concerning the need to move the debt into the SS-

USA group to preserve NOLs is included in those Declarations ...

attempting to explain why the SS-USA tax returns have an explicit

statement that the SS-Japan debt had been contributed to SS-

USA."  *Id.*  Again, this is beyond his expertise and invades the

function of the Court.

---

[1] Because Mr. Epstein has not cited his sources, it is difficult
to understand which communications he is referring to.  For
example, counsel for SS Japan is not aware of any communications
between the SS Group and its accountants that "discuss that all
the SS-USA companies' debt to SS-Japan must be eliminated to
preserve the U.S. NOLs."  The substance of Mr. Epstein's
declaration will be addressed in SS Japan's surreply memorandum,
to be filed on November 9, 2007.  The lack of proper evidentiary
citations and even citations to the applicable law in which
Mr. Epstein claims to be expert (*e.g.* his reference to unspecified
"U.S. tax rules" on p. 3 and his reference to "general tax rules" on
p. 7) is further proof that the declaration is conclusory and useless.

As the KG Parties showed in their reply memorandum, and as SS Japan will also show in its surreply, the significance of the record evidence in light of tax law can be capably argued and explained by attorneys with no special expertise in tax law. And this Court is certainly able to come to its own conclusions based on its evaluation of the law and the evidence. The Epstein Declaration provides no facts that will assist this Court's resolution of the KG Parties' motion and the Court should therefore strike it.

## C.    PORTIONS OF THE EPSTEIN DECLARATION ARE OUTSIDE THE SCOPE OF A REPLY MEMORANDUM.

SS Japan also objects to those portions of the Epstein Declaration that address the KG Parties' argument concerning net operating loss. Epstein Dec. at 2-4, 8-11, 13. This is clearly a new argument that may not be raised in reply. *See Kansas Wastewater, Inc. v. Alliant Techsystems, Inc.*, 257 F. Supp. 2d 1344, 1351 (D. Kan. 2003) ("Generally, a party is prohibited from raising new arguments and issues in a reply brief ... and a court should not

consider issues first raised in a reply brief.") (internal citations omitted).[2]

The KG Parties' attempt to "sandbag" is especially egregious given the extraordinary amount of time they were given to prepare their reply.  Rather than preparing to address SS Japan's arguments and evidence, the KG Parties appear to have focused on raising new arguments that purportedly support their motion.  This Court should not countenance this tactic and should strike at least those portions of the Epstein Declaration that address the net operating loss argument.

---

[2] By contrast to considering new **arguments** raised in reply, which is prohibited, *Kansas Wastewater, Inc.*, 257 F. Supp. 2d at 1351, a court may consider new **evidence** if the party opposing summary judgment is allowed to reply to the new evidence, *Provenz v. Miller*, 95 F.3d 1376, 1381-82 (9th Cir. 1996).  The Epstein Declaration contains both new arguments (i.e. the NOL argument) and new evidence (i.e. his purported expert opinion regarding Form 5472 and the Section 1.6038 Report).  Because SS Japan is allowed a surreply pursuant to stipulation, it does not object to the Epstein Declaration (other than as stated in Sections A and B) to the extent it constitutes new evidence as opposed to supporting a new argument.

## IV.  CONCLUSION

Given his claimed experience and expertise, Mr. Epstein would likely be a fine addition to the KG Parties' legal team.  And the KG Parties are free to retain him in that capacity.  But no attorney – no matter how expert or experienced – can presume to substitute his judgment for this Court's on the applicable law, the legal consequences of certain facts, or the inferences to be drawn from the evidence in the record.  This Court should strike Mr. Epstein's declaration.

DATED:    Honolulu, Hawai`i, November 2, 2007.

/s/ Jason H. Kim
PAUL ALSTON
BRUCE H. WAKUZAWA
GLENN T. MELCHINGER
JASON H. KIM
Attorneys for Plaintiff
and Third-Party Defendants
the Sports Shinko Companies

661,494 / 6850-5

-15-