PRICE OKAMOTO HIMENO & LUM
WARREN PRICE III          1212
ROBERT A. MARKS          2163
707 Richards Street, Suite 728
Honolulu, Hawaii  96813
Phone: 808.538.1113
Fax: 808.533.0549
E-mail:    wprice@pohlhawaii.com
           ram@pohlhawaii.com
KLEVANSKY PIPER & VAN ETTEN, LLC
SIMON KLEVANSKY          3217-0
CARISA LIMA KA'ALA HEE 7372-0
Bishop Square, Pauahi Tower
1001 Bishop Street, Suite 770
Honolulu, Hawaii 96813
Phone:  (808) 536-0200
Fax:  (808) 536-0221
E-mail:    sklevansky@kpvlawhawaii.com
           kaalahee@ kpvlawhawaii com
Attorneys for KG Parties[1]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., ,<br><br>            Plaintiff,<br><br>      vs.<br><br>QK HOTEL, LLC, et al.,<br><br>            Defendants,<br><br>      and | CV 04-00124 BMK<br>CV 04-00127 BMK<br><br>CONSOLIDATED CASES<br><br>KG PARTIES' MEMORANDUM<br>IN OPPOSITION TO PLAINTIFF'S<br>MOTION TO STRIKE<br>DECLARATION OF ROGER H. |

---

[1]    The KG Parties are Defendants, Counterclaimants, and Third-Party Plaintiffs
KG HOLDINGS, LLC, KIAHUNA GOLF CLUB, LLC, KG KAUAI
DEVELOPMENT, LLC, PUKALANI GOLF CLUB, LLC, KG MAUI
DEVELOPMENT, LLC, MILILANI GOLF CLUB, LLC, QK HOTEL, LLC, and
OR HOTEL, LLC

| | |
|---|---|
| FRANKLIN K. MUKAI, et al., | EPSTEIN, EXHIBIT 1; |
| Third-Party Plaintiffs, | DECLARATION OF ROBERT A. |
| vs. | MARKS; CERTIFICATE OF |
| SPORTS SHINKO (USA) CO., LTD., | SERVICE |
| et al., | |
| Third-Party Defendants. | HEARING |
| | DATE:      November 16, 2007 |
| | TIME:      2:30 p.m. |
| | JUDGE:    Hon. Barry M. Kurren |
| SPORTS SHINKO CO., LTD., | CV 04-00127 BMK |
| Plaintiff, | |
| vs. | |
| OR HOTEL, LLC, et al., | |
| Defendants, | |
| and | |
| FRANKLIN K. MUKAI, et al., | |
| Third-Party Plaintiffs, | |
| vs. | |
| SPORTS SHINKO (USA) CO., LTD., | |
| et al., | |
| Third-Party Defendants. | |

KG PARTIES' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
TO STRIKE DECLARATION OF ROGER H. EPSTEIN

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................ii

I.    SUMMARY OF ARGUMENTS ................................................................ 1

II.   THE EPSTEIN DECLARATION ............................................................. 3

III.  EXPERTS ARE PERMITTED TO OFFER LEGAL
      OPINIONS ABOUT HIGHLY COMPLEX AREAS
      OF THE LAW SUCH AS TAXATION ....................................................... 4

IV.   THE DECLARATIONS OF DOREEN GRIFFITH,
      C.P.A., SUBMITTED BY SS, ADDRESSES THE
      SAME ISSUE AS THE EPSTEIN DECLARATION ................................. 8

V.    THE REMEDY FOR OBJECTIONABLE
      MATERIAL IN A DECLARATION IS TO
      DISREGARD THE OBJECTIONABLE PORTIONS,
      NOT TO STRIKE THE ENTIRE DECLARATION ................................... 9

VI.   MR. EPSTEIN'S DISCUSSION OF NET
      OPERATING LOSSES DOES NOT RAISE NEW
      EVIDENCE; IT MERELY REBUTS AN
      ARGUMENT PRESENTED IN SS'S OPPOSITION
      TO THE SUMMARY JUDGMENT ......................................................... 10

VII.  CONCLUSION ......................................................................................... 15

TABLE OF AUTHORITIES

CASES

*Crom Corp. v. Crom,* 677 F.2d 48 (9th Cir. 1982) .................................................. 6

*Kephart v. Data Systems Intern., Inc.,* 243 F.Supp.2d
1205 (D.Kan. 2003) ........................................................................................... 10

*Lozano v. City of Hazleton,* 241 F.R.D. 252 (M.D.Pa. 2007)................................ 7

*Nieves-Villanueva v. Soto-Rivera,* 133 F.3d 92 (1st Cir. 1997) ............................ 5

*Oxford Life Ins. Co. v. U.S.,* 574 F.Supp. 1417 (D.Ariz. 1983),
*aff'd in part and rev'd in part on other grounds,* 790 F.2d
1370 (9th Cir. 1986) .......................................................................................... 10

*Reddy v. Good Samaritan Hosp. & Health Ctr.,* 137
F.Supp.2d 948 (S.D.Ohio 2000) (citation omitted) ........................................... 10

*SIL-FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507 (10th Cir. 1990)................................ 8

*U.S. v. Clardy,* 612 F.2d 1139 (9th Cir. 1980)

*U.S. v. Hankey,* 203 F.3d 1160 (9th Cir. 2000)....................................................... 6

TREATISES AND LAW REVIEW ARTICLES

Olicker, *The Admissibility Of Expert Witness
Testimony: Time To Take The Final Leap?,* 42 U.
MIAMI L. REV. 831, 882-83 (March/May 1988)..................................................... 6

Pollack, *The Admissibility and Utility of Expert Lega
Testimony in Patent Litigation,* 32 IDEA: J.L. & TECH.
361, 363 (1992) (footnote omitted)...................................................................... 6

J. Moore & J. Wicker, 6 MOORE'S FEDERAL PRACTICE
P 56.22(1), at 56-742 (2d ed. 1988) ....................................................................... 9

27A FED. PROC., L. Ed. § 62:718 (updated September 2007)................................ 8

29 C. Wright & V. Gold, FEDERAL PRACTICE AND
PROCEDURE *Evid.* § 6264 (2007 update).................................................................5

C. Wright, A. Miller & M. Kane, 10B FED. PRAC. & PROC.
CIV. 3d § 2738 (2007 Update) ...............................................................................9

I.    <u>SUMMARY OF ARGUMENTS</u>

The Sports Shinko Parties ("SS") Motion to Strike the Epstein Declaration

("SS Motion to Strike") is misleading and should be denied for four independent

reasons.

<u>First</u>, while there have been instances where courts have struck the opinions

of legal experts in traditional areas of the law such as common law torts and

contracts, the same is not true for highly complex areas of the law such as federal

tax law where the line between questions of law, questions of fact, and mixed

questions is often blurry.  The basic standard for admitting expert testimony is

whether it will assist the trier of fact to understand the evidence, and there is no

question that the Epstein Declaration ("Epstein decl.") serves this function.

<u>Second</u>, SS relies upon the declarations of Doreen Griffith, C.P.A.[2] that

discuss the same basic issue as the Epstein Declaration: whether the alleged "debt"

owed by SS-W to SS-Japan was extinguished in 2004.  The Court can therefore

benefit from the dueling opinions offered in the opposing declarations.

---

[2]    <u>See</u> Declaration of Doreen Griffith ("Griffith decl."), filed with Plaintiff's
Memorandum in Opposition to the KG Parties Motion for Partial Summary
Judgment, filed on August 24, 2007 ("SS Opp. to SJ"), <u>and</u> Second Declaration of
Doreen Griffith filed with SS's surreply memorandum on November 9, 2007
("Second Griffith decl.").

Third, even if there were objectionable portions of a declaration, the appropriate remedy would be for the Court to disregard those portions, rather than strike the entire declaration.

Fourth, Plaintiff's contention that the Epstein Declaration's discussion of net operating losses (NOLs) raises new evidence and argument for the first time in the reply memorandum is simply incorrect. The NOL evidence was presented in the KG Parties' Concise Statement of Facts In Support of Motion for Partial Summary Judgment.[3] The NOL argument in KG's reply memorandum powerfully – and properly – rebuts SS's convenient assertions that 1) SS's statement to the IRS in its 2004 Form 5472 that the debt was eliminated was due to a misunderstanding by SS-USA's accountants, and 2) the tax-free transfer statement was merely a "precaution" to avoid recognition of taxable income by SS-USA.[4]

In any case, SS has addressed both the evidence and the argument about the NOL issue in the surreply it filed on November 9 pursuant to the parties' agreement, so it has had ample opportunity to address any arguments it perceives as "new".

---

[3]     KG Ex. 3 at 256 1598.

[4]     SS Opp. to SJ at IV.C., p. 30, and supporting exhibits.

II.    THE EPSTEIN DECLARATION

SS's Motion to Strike mischaracterizes the Epstein Declaration as largely an explication of federal tax law:

> Much of the Epstein Declaration consists solely of Mr. Epstein's interpretation and explanation of various provisions of the IRC and related regulations.[5]

The Court will readily note, upon reviewing the 13-page declaration,[6] that Mr. Epstein's discussion is essentially an interpretation of tax returns filed by SS-USA and its subsidiaries. This is entirely appropriate testimony by a tax law expert.

The gist of the Epstein declaration is to walk the Court through the key components of the 2004 tax return filed by SS-USA and its subsidiaries, namely, the Form 5472,[7] the Statement of Tax-Free Incorporation Transfer,[8] and the NOL statement.[9]  Mr. Epstein concludes, based on the tax-related evidence before the Court on KG's motion for partial summary judgment, that the principals of SS-USA and its subsidiaries, acting on behalf of, and with the knowledge of their

---

[5]    SS Motion to Strike at 7.

[6]    For the Court's convenience, the Epstein Declaration ("Epstein decl") is attached hereto as Exhibit 1.

[7]    KG Ex. 3 at 256 1596-97; Epstein decl. 5-6, ¶ II.A.

[8]    KG Ex. 3 at 256 1599; Epstein decl. 6-8, ¶ II.B.

[9]    KG Ex. 3 at 256 1598; Epstein decl. 8-11, ¶ II. C.

owners, Goldman Sachs, unambiguously, seamlessly and comprehensively represented to the IRS that the SS-W – SS-Japan debt was eliminated in February 2004.

Mr. Epstein also explains the further corroborating evidence in the 2005 and 2006 tax returns,[10] and various e-mails to and from SS-USA's tax accountants[11], showing that SS *continues* to represent to the IRS and the Hawaii Tax Director that the SS-W – SS-Japan debt cannot presently exist, and has not existed since 2004. Mr. Epstein's very limited explanation of the law is merely to establish the foundation for his well-founded conclusion:

> In my opinion, all of the U.S. tax filings of SS-USA (which include SS-Waikiki) unequivocally state (under penalties of perjury) that on or before February 24, 2004, Sports Shinko Co., Ltd. ("SS-Japan") ceased to be a creditor of SS-USA (including SS-Waikiki). The 2004 Federal tax return signed by Yoshihiko Machida as President of SS-USA, unequivocally states that SS-Japan relinquished all of its interest in all debt owed it by SS-USA by contributing such interest to the capital of SS-USA on or before February 24, 2004.[12]

## III.    EXPERTS ARE PERMITTED TO OFFER LEGAL OPINIONS ABOUT HIGHLY COMPLEX AREAS OF THE LAW SUCH AS TAXATION

SS's Motion to Strike creates the false impression that expert legal opinions about domestic law are never permissible.  SS Motion to Strike at 6.  While such

---

[10]    KG Exs. 10A – 12, inclusive; Epstein decl. 11-13, ¶¶ II.D - G.

[11]    Epstein decl. *passim*.

[12]    Epstein decl. 1, unnumbered ¶ 2.

4

opinions have been excluded when they relate to mainstream areas of the law such
as common law torts and contracts, the same has not been true when a complex
area of the law is at issue:

> The courts seem more open to the admission of expert legal opinions
> where the subject is the application of some complex regulatory or
> legal standard to a specific factual background. In such a context, the
> opinions often involve questions of law and fact that overlap to the
> extent they are virtually indistinguishable.[13]

Moreover, the general trend in federal courts is to permit any expert legal
testimony that will assist the trier of fact:

> The traditional common law rule against testimony on legal issues has
> been eroded by the enactment of the Federal Rules. In the past, it was
> presumed that the judge knew the law, and thus had no need for expert
> testimony on legal matters. The Federal Rules make no such
> distinction, and instead provide that the judge may admit any evidence
> which will aid the trier of fact in making a decision. In addition, the
> abolition of the "ultimate issue" rule by F.R.E. 704, opens the door for
> experts to state opinions on ultimate issues, even if such opinions
> require legal conclusions.

---

[13]     29 C. Wright & V. Gold, FEDERAL PRACTICE AND PROCEDURE *Evid.* § 6264
(2007 update) (citing cases).  See also *Nieves-Villanueva v. Soto-Rivera,* 133 F.3d
92, 100-101 (1st Cir. 1997):

> [I]t is often difficult to draw the line between what are questions of
> law, what are questions of fact, and what are mixed questions.… This
> may be particularly so when the issues involve not only a statute and
> formally promulgated regulations, but also guidelines, handbooks,
> advisory rulings, interpretive bulletins, general counsel's letter
> opinions, informational notices and similar accoutrements of the
> modern bureaucratic state.

. . . With the proliferation of modern statutory law, and an ever increasing number of judicial decisions on the books, the presumption that the judge is completely familiar with all aspects of U.S. law, especially the more complex and obscure areas of practice, is itself being eroded.  With the focus of the Federal Rules on helpfulness as the major criteria, courts seem more willing to admit testimony from experts on what are technically legal issues.[14]

The Ninth Circuit has specifically permitted expert legal testimony in the areas of patent law[15] and tax law.[16]  Here, the tax issues are particularly arcane, as they implicate various aspects of trans-national tax as well as the tax aspects of mergers and acquisitions.  Specifically, KG's motion for partial summary judgment puts before the Court the tax implications of:

---

[14]     Howard G. Pollack, *The Admissibility and Utility of Expert Legal Testimony in Patent Litigation,* 32 IDEA: J.L. & TECH. 361, 363 (1992) (footnote omitted).

[15]     *Crom Corp. v. Crom,* 677 F.2d 48, 50 (9th Cir. 1982) (permitting expert patent law testimony about the interpretation and application of patent claims since it would assist trier of fact).  *See also* Pollack, 32 IDEA: J.L. & TECH. at 380-81:

> One thing that is apparent from the case law is that testimony by experts on legal questions related to patents is being admitted and given weight by the federal courts. … If a trial judge believes that the testimony of an expert will aid in clarifying a difficult question of patent law, or in the application of the law to complex sets of facts, then such evidence will be admitted, and possibly relied upon heavily.

[16]     *U.S. v. Clardy,* 612 F.2d 1139, 1153 (9th Cir. 1980) (permitting IRS agent to state that deduction was improper). *See also* Maury R. Olicker, *The Admissibility Of Expert Witness Testimony: Time To Take The Final Leap?,* 42 U. MIAMI L. REV. 831, 882-83 (March/May 1988) ("In tax cases, expert witnesses are permitted to state their summary conclusions about the meaning of defendants' transactions.")

- a foreign owned U.S. corporation (SS-USA and subsidiaries) with foreign debt (to SS-Japan) (the Form 5472);

- a tax-free incorporation transfer between SS-Japan and SS-USA that was necessary in order for SS-USA to avoid the harsh tax consequences of recognizing over $██████ in imputed income,[17] and

- the preservation of net operating loss carry forwards that, over time, will generate approximately $██████ in tax savings to SS-USA[18] by allowing South Wind/Goldman Sachs to shelter $██████ in taxable income over the next 17 years.[19]

It should also be noted that courts are less concerned with the possibility of causing confusion to the trier of fact by the admission of expert legal opinions that are presented to a judge as opposed to a jury.[20]  Such is the case here on this partial summary judgment motion to be decided by the Court.

---

[17]    Griffith decl. 4 ¶ 10; Epstein decl 10 at ¶ II.C.7.a.  See KG Ex. 3 at 256 1599.

[18]    Epstein decl. 10, ¶ II.B.7.b. and c.; 2nd Griffith decl. (not refuting Epstein's conclusions re same).

[19]    Epstein decl. 13 ¶ II.F.2.

[20]    *Lozano v. City of Hazleton,* 241 F.R.D. 252, 256 (M.D.Pa. 2007).

The trial court has broad discretion to decide *whether* to admit expert testimony,[21] and any doubts about the usefulness of expert testimony should generally be resolved in favor or admissibility.[22]

## IV. THE DECLARATIONS OF DOREEN GRIFFITH, C.P.A., SUBMITTED BY SS, ADDRESSES THE SAME ISSUE AS THE EPSTEIN <u>DECLARATION</u>

The Epstein Declaration is essentially devoted to the issue of whether SS-USA's 2004, 2005 and 2006 tax filings show that all the "debt" allegedly owed by SS-W to SS-Japan was extinguished in 2004. This is precisely the issue stated through SS's tax expert, Doreen Griffith, C.P.A.:

> The 2004 Form 5472 … was prepared based on our understanding that SS Japan no longer held the debt owed by the US subsidiaries.[23]

Given that the Court now has before it the analyses of two declarants, one a tax lawyer and the other a tax accountant,[24] the overarching interest of the rules of evidence in assisting the trier of fact is amply served.

---

[21]  *U.S. v. Hankey,* 203 F.3d 1160, 1168 (9th Cir. 2000).

[22]  *SIL-FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1517 (10th Cir. 1990).

[23]  Griffith decl. at 4 ¶ 9. <u>See also</u> Second Declaration of Doreen Griffith filed with SS's Sur-Reply Memorandum on November 9, 2007, *passim*, generally responding to the Epstein declaration.

[24]  Griffith decl. at 1 ¶ 1(describing herself as "the tax partner" responsible for the tax returns in question).

In addition to the Epstein declaration, with its reply memorandum, KG submitted the declaration of Michael Cohan, an accountant whose focus is in auditing.  SS has not filed a motion to strike Mr. Cohan's declaration.

Therefore, reduced to its essence, SS's argument appears to be that Mr. Epstein's tax opinions should be stricken because he is an attorney, but Ms. Griffith's tax opinions should be credited because she is not an attorney.  This proposition is facially absurd.

V.    THE REMEDY FOR OBJECTIONABLE MATERIAL IN A DECLARATION IS TO DISREGARD THE OBJECTIONABLE PORTIONS, NOT TO STRIKE THE ENTIRE DECLARATION

SS seeks to strike the Epstein Declaration in its entirety because, it asserts, the declaration contains objectionable portions. The relief SS requests is plainly improper:

> The court will disregard **only the inadmissible portions** of a challenged affidavit and consider the rest of it. …  It follows that a motion to strike should specify the objectionable portions of the affidavit and the grounds for each objection.[25]

---

[25]    10B C. Wright, A. Miller & M. Kane, FED. PRAC. & PROC. CIV. 3d § 2738 (2007 Update) (emphasis added).  *See also* 27A FED. PROC., L. Ed. § 62:718 (updated September 2007) ("the court should not strike the affidavit in its entirety but should consider the admissible evidence and strike or disregard the inadmissible evidence"); J. Moore & J. Wicker, 6 MOORE'S FEDERAL PRACTICE P 56.22(1), at 56-742 (2d ed. 1988) ("the presence of some inadmissible material does not require that the entire affidavit be stricken.").

Moreover, the court "cannot and should not be expected to go through the …
affidavit 'with a fine-tooth comb' and pick out the 'certain portions' which the
defendants (from their viewpoint) feel should be stricken."[26]

Finally, on a summary judgment motion, it is not even necessary that the
objectionable portions be stricken: it is sufficient that the court *disregard* them.[27]

## VI.    MR. EPSTEIN'S DISCUSSION OF NET OPERATING LOSSES DOES NOT RAISE NEW EVIDENCE; IT MERELY REBUTS AN ARGUMENT PRESENTED IN SS'S OPPOSITION TO THE SUMMARY JUDGMENT

Although SS has waived any objection to the Epstein Declaration's
discussion of NOLs on the ground that it raises new evidence,[28] the insinuation
that the NOL discussion presents new evidence is flat wrong.  The KG Parties
placed the evidence squarely before the Court – and SS – as an exhibit in support
of KG's Motion for Partial Summary Judgment.[29]

---

[26]     *Reddy v. Good Samaritan Hosp. & Health Ctr.,* 137 F.Supp.2d 948,
958 (S.D.Ohio 2000) (citation omitted).

[27]     *Oxford Life Ins. Co. v. U.S.,* 574 F.Supp. 1417, 1421-22 (D.Ariz. 1983),
*aff'd in part and rev'd in part on other grounds,* 790 F.2d 1370 (9th Cir. 1986)
(denying motion to strike since court disregarded portions of affidavit dealing with
legal conclusion); *Kephart v. Data Systems Intern., Inc.,* 243 F.Supp.2d 1205,
1209 (D.Kan. 2003) (court disregarding portions of affidavit but refusing to strike
in entirety).

[28]     Plaintiff's Memo at 14 n.2.

[29]     KG Ex. 3 at 256 1598.

SS's contention that the discussion of NOLs in the Epstein Declaration presents a new argument for the first time on reply is also highly misleading. The Epstein discussion is merely a rebuttal of the argument in SS's Memorandum in Opposition to KG's Motion for Partial Summary Judgment, where SS asserts that: 1) the 2004 Form 5472 filing was due to a 'misunderstanding', 2) the tax-free transfer statement was an untrue 'precaution' to avoid recognition of taxable income, and 3) SS-USA's 2005 Form 5472 reported a debt owing to South Wind.[30]

SS concedes, at a minimum, "the appearance that the loan has been cancelled,"[31] but attempts to explain away this "appearance" by showing that it was a mistake:

> The 2004 Form 5472 … was prepared based on our understanding that SS Japan no longer held the debt owed by the US subsidiaries. At the time of the 2004 return preparation, we were uncertain of the exact disposition of this debt.[32]

---

[30]    SS admits there was an error with the 2005 Form 5472 in that it showed South Wind is a debtor rather than a creditor. Second Griffith decl. ¶ 14. However, they do not address that regardless of the line where the "debt" was reported, it showed there was **no balance due as of January 1, 2005**.

[31]    SS Opp. to SJ at 32.

[32]    Griffith decl. 4 at ¶ 9. Note that the last sentence of the quoted statement from Ms. Griffith's declaration is inconsistent with the evidence. See SS Ex. 65 at GT037988 (e-mail exchange dated August 26, 2005 between Griffith and GSRJL's Ms. Ono, in which Ms. Ono provides Griffith with "the exact disposition of the debt", stating: "█████████████████████████████████████
███████████ ").

Regardless of the 'misunderstanding' regarding the Form 5472 and the 'precautionary' tax-free transfer statement, Epstein's declaration explains the simple reality:

- the Form 5472 filed in 2004 clearly stated there was substantial net debt at January 1, 2004 ($█████)[33], which was reduced to "none" at December 31, 2004.[34]

- SS-Japan made a tax-free transfer to SS-USA of that <u>exact</u> amount of the debt that was eliminated in the 2004 Form 5472 as reflected in the tax-free transfer statement.[35]

- The 2005 Form 5472 regarding the relationship between SS-USA and South Wind shows there was no borrowing at January 1, 2005.[36]

Of course, the elimination of the January 1, 2004 debt by way of the tax-free transfer was prerequisite to SS-USA's NOL claim, because if the debt still existed after South Wind's acquisition, SS-USA and subsidiaries would have had zero (or negative) fair market value and there could be no future tax savings for NOL carryforwards.

---

[33]    KG Ex. 3 at 256 1597.

[34]    *Id.*

[35]    KG Ex. 3 at 256 1599.

[36]    SS Ex. 68/KG Ex. 11A at GT037051-52 at line 7(a) and 18(a).

Moreover, the key documents proving that the $▮▮▮▮ NOL value of SS-USA and subsidiaries was derived from the value of the Kobayashi notes, without reduction for the companies' alleged debts, were produced the very day the motion for partial summary judgment was filed. These documents – KG Exs. 14-16 – were buried in over 6,000 pages of Grant Thornton documents that were produced by SS's attorneys[37] to KG's attorneys just a couple hours before the motion was filed. KG's attorneys did not, and could not reasonably know, the import of these documents in this time frame. See Declaration of Robert A. Marks hereto.

Moreover, as of the May 2007 date of filing the Motion for Partial Summary Judgment, SS-USA's 2006 tax returns, showing the NOL continuing to be claimed as recently as September 2007 (and hence, confirming that SS-USA and subsidiaries had no debt by the end of 2004), had not yet been filed with the IRS or the State of Hawaii.[38]

The bottom line is this: Mr. Epstein's analysis of the NOLs – and other aspects of SS's tax filings –support the KG Parties' initial argument that the "debt"

---

[37]    The documents in question are the records of Grant Thornton, LLP ("GT"), SS-USA (and subsidiaries') accountants. Pursuant to a long-standing agreement between the parties and GT, when responding to KG's subpoenae, GT first produces their documents to SS's attorneys for review. When that is completed, SS's attorneys would then produce the GT documents to KG's attorneys. See Marks decl.

[38]    The 2006 returns were filed in September, 2007. See KG Ex. 12A and 12B.

owed by SS-W to SS-Japan was extinguished in 2004.  The NOL evidence that merely bolsters this fact was not a focus of KG's memorandum supporting the partial summary judgment motion because

1)    the Form 5472 filed with the 2004 tax return, coupled with the Statement of Tax-Free Transfer shows, simply and clearly *on their face,* that the debts owed by SS-W, and all the subsidiaries of SS-USA, had disappeared by December 31, 2004, and therefore, the NOL evidence that then existed was merely cumulative, and

2)    additional evidence that makes the NOL argument compelling was not yet known to KG (although it was known to SS).

For these reasons, the Epstein Declaration discusses the NOLs, and the discussion is clearly in rebuttal to the argument in SS's opposition to the pending partial summary judgment motion that the 'debt' was not cancelled.[39]

Hence, SS's scurrilous allegation of "sandbagging" lacks any merit whatsoever, and in any case, SS has had ample opportunity to address both the evidence and the argument in KG's reply in the surreply SS filed, by stipulation, on November 9, 2007.

---

[39]    See SS Opp. to SJ, Section IV.C., "The Loan Was Not Cancelled in 2004."

VII.   <u>CONCLUSION</u>

The evidence before the Court on KG's motion for partial summary judgment clearly shows that the "debt" between SS-W and SS-Japan – the very foundation for SS's fraudulent transfer claims – does not presently exist, and was eliminated from the books of SS-W in 2004.  The Epstein declaration is a useful explication of the tax-related evidence in the record before the Court on the motion for partial summary judgment, and therefore properly aids the Court in its deliberations.  For this and the other reasons set forth above, SS's motion to strike Mr. Epstein's declaration should be denied.

DATED Honolulu, Hawaii, November 13, 2007.

<u>/s/ Robert A. Marks</u>
WARREN PRICE III
ROBERT A. MARKS

Attorney for the KG Parties