Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

| | |
|---|---|
| PAUL ALSTON | 1126-0 |
| BRUCE H. WAKUZAWA | 4312-0 |
| GLENN T. MELCHINGER | 7135-0 |
| JASON H. KIM | 7128-0 |

American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawai`i  96813
Telephone:  (808) 524-1800
Facsimile:   (808) 524-4591
Email:  palston@ahfi.com
           bwakuzawa@ahfi.com
           gmelchinger@ahfi.com
           jkim@ahfi.com

Attorneys for Plaintiff
and Third-Party Defendants
the Sports Shinko Companies

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| SPORTS SHINKO CO., LTD., | ) CV 04-00124 BMK |
| | ) CV 04-00127 BMK |
| Plaintiff, | ) |
| | ) CONSOLIDATED CASES |
| vs. | ) |
| | ) **REPLY MEMORANDUM IN** |
| QK HOTEL, LLC, et al., | ) **SUPPORT OF PLAINTIFF'S** |
| | ) **MOTION TO STRIKE** |
| Defendants, | ) **DECLARATION OF ROGER H.** |
| | ) **EPSTEIN, FILED** |
| | ) **OCTOBER 19, 2007 IN** |

662,486 / 6850-5

|  |  |
|---|---|
| and ) | **SUPPORT OF THE KG PARTIES' MOTION FOR PARTIAL SUMMARY JUDGMENT, FILED MAY 10, 2007;** CERTIFICATE OF SERVICE |
| FRANKLIN K. MUKAI, et al., ) | |
|  ) | |
|    Third-Party Plaintiffs, ) | |
|  ) | |
|  vs. ) | HEARING: |
|  ) | Date:    November 16, 2007 |
| SPORTS SHINKO (USA) CO., ) | Time:    2:30 pm |
| LTD., et al., ) | Judge:   Hon. Barry M. Kurren |
|  ) | |
|    Third-Party Defendants, ) | |
|  ) | |
| and ) | |
|  ) | |
| SPORTS SHINKO (HAWAII) CO., ) | |
| LTD., et al., ) | |
|  ) | |
|    Third-Party Defendants/ ) | |
|    Counterclaimants, ) | |
|  ) | |
|  vs. ) | |
|  ) | |
| QK HOTEL, LLC, et al., ) | |
|  ) | |
|    Third-Party Counterclaim Defendants. ) | |
|  ) | |
| AND CONSOLIDATED CASES ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE DECLARATION OF ROGER H. EPSTEIN, FILED OCTOBER 19, 2007 IN SUPPORT OF THE KG PARTIES' MOTION FOR PARTIAL SUMMARY JUDGMENT, FILED MAY 10, 2007**

**I.    INTRODUCTION**

The KG Parties' Memorandum in Opposition to Plaintiff's Motion to Strike Declaration of Roger H. Epstein ("Opposition" or "Opp.") relies on inapplicable precedents and analogies.  First, the KG Parties have offered no precedent that allows for pure statements of law by an expert.  Second, this is not a case involving application of complex law to complex facts; rather the tax issues on which Mr. Epstein provides an opinion are straightforward and well within the competence of this Court to understand without "expert" assistance.  Indeed, the key issue is the intent of Plaintiff Sports Shinko Co., Ltd. ("SS Japan") and its affiliates and Mr. Epstein has no special expertise to infer intent.  Third, the declarations of Doreen Griffith – while addressing the same general issues as the Epstein Declaration – are based on personal knowledge and are not offered as expert opinion.  Despite the arguments of the KG Parties, this Court should disregard the

Epstein Declaration because it (1) contains improper legal conclusions and (2) is not helpful to the Court.

Furthermore, those portions of the Epstein Declaration that support the KG Parties' net operating loss ("NOL") argument should be disregarded because they support an argument raised for the first time in a reply memorandum. *See* LR 7.4. By the KG Parties' own admission, they were aware of the NOL argument when they filed their motion for partial summary judgment in May and purposely choose to omit it. Opp. at 14.

## II.   ARGUMENT

### A.   There is No Precedent For Allowing Purely Legal Conclusions by an Expert.

As SS Japan pointed out in its Memorandum in Support of its Motion ("Mem. Supp."), portions of Mr. Epstein's Declaration contain pure statements of law. *See* Mem. Supp. at 7. Contrary to the KG Parties' claimed distinction between "common law torts and contracts" and "complex area[s] of law," Opp. at 5, courts routinely exclude expert opinion on complex statutory law. *See, e.g, Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) (excluding

expert opinion on securities laws); *McCabe v. Crawford & Company*, 272 F. Supp. 2d 736, 740 (N.D. Ill. 2003) (excluding expert opinion on Fair Debt Collection Practices Act).

Furthermore, while courts have in some cases allowed expert testimony that involves "the ***application*** of some complex regulatory or legal standard to a ***specific factual background***," Opp. at 5 (emphasis added), the KG Parties have cited no precedent for allowing an expert to merely opine on the applicable law with no reference to any particular facts. The portions of the Epstein Declaration identified on page 7 of the Memorandum in Support do just that. The KG Parties have provided no precedent for allowing Mr. Epstein to interpret and explain the applicable law to this Court.

**B.  Even Those Parts of the Epstein Declaration That Purport to Apply Fact to Law Do Not Deal with "Complex" Matters and are Thus Not Useful to the Court.**

Contrary to the KG Parties' claim that the tax matters at issue are " particularly arcane," Opp. at 6, it should be apparent to this Court from the memoranda filed by the parties in connection

with the KG Parties' Motion for Partial Summary Judgment ("Motion") that the tax law issues the Motion raises are straightforward and well within this Court's competence.  The parties do not disagree on the meaning of I.R.C. § 382.  Rather, the parties dispute whether calculating the "fair market value" of SS USA at $9 million necessarily means that SS Japan (and/or affiliated companies) made a conscious decision to cancel or transfer intercompany debt owed to SS Japan in order to obtain tax benefits.  In other words, the disputed issues are (1) how to calculate the "fair market value" of SS USA; and (2) what the fair market value calculation proves about SS Japan and its affiliated companies' intent.

The Epstein Declaration offers nothing useful to assist this Court in deciding either issue.  First, Mr. Epstein is not qualified as a business valuation expert and, even if he were, he provides an opinion on book value rather than fair market value.  *See also* Plaintiff's Surreply Memorandum in Opposition to the KG Parties' Motion for Partial Summary Judgment Filed May 10, 2007, filed November 9, 2007 at 3-4.

Second, as a tax attorney, Mr. Epstein has no special qualifications to infer the intent of the parties to a transaction based on the evidence in the record. *See Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) (trial court properly excluded expert testimony from attorney as to the legal significance of various documents). Mr. Epstein's overreaching is best exemplified by the KG Parties' claim that he has specialized expertise in interpreting emails. Opp. at 4 (Epstein "explains the further corroborating evidence in the ... various emails to and from SS-USA's tax accountants").

Mr. Epstein's opinions regarding the Form 5472 and Statement of Tax-Free Incorporation Transfer are equally unhelpful. Again, there is no dispute as to what these forms say or whether the filing of such forms were required. The only dispute is what inferences about SS Japan's intent can be drawn from those forms. Again, Mr. Epstein is not, and could not be, an expert on ***intent***.

The cases cited by the KG Parties are distinguishable. First, in *United States v. Clardy*, 612 F.2d 1139, 1153 (9th Cir. 1980), an Internal Revenue Agent was allowed to testify about

whether the defendant's interest deductions were proper. This was because the testimony was "relevant to the issue of willfulness where the theory of the defense is that there is a good faith dispute as to the interpretation of the tax laws." *Id.* Here, whether or not SS USA's accountants' interpretation and application of the tax laws was objectively reasonable is not relevant.

*Crom Corp. v. Crom*, 677 F.2d 48, 50 (9th Cir. 1982), a patent case, is equally inapposite. Patent cases raise unique issues and the widespread acceptance of legal testimony in such cases is not instructive outside that context. As the Court stated in *Nieves-Villanueva v. Sota-Rivera*, 133 F.3d 92, 101 (1st Cir. 1997) (a case cited by the KG Parties), it is only in a ***"rare, highly complex, and technical matter*** where a judge ... permits some testimony seemingly at variance with the general rule [against legal opinions]." (Emphasis added.) "Such an instance may be patent litigation in which technical experts are generally allowed to comment on the scope of a patent's coverage and give their conclusions on the issue of infringement." *Id.* at 101, n. 13. As the court recognized in that case, patent cases are *sui generis* and the practice in such cases

662,486 / 6850-5                               -8-

provides no authority for admitting legal testimony in cases where "the issues raised ... are routinely before the federal courts" and "are not complex."  *Id.* at 101.

Despite SS Japan's express challenge to do so, the KG Parties have failed to identify any specific fact that the Epstein Declaration provides that is not equally available from the face of the applicable law and regulations or the evidence in the record.  The KG Parties have also failed to explain why this Court is incapable of coming to its own conclusions based on its own review of that law and evidence.  Thus, the Declaration is "utterly unhelpful" and should be excluded.  *See Aguilar v. International Longshoremen's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992).

**C.   The Griffith Declarations Are Completely Different from the Epstein Declaration.**

The KG Parties also argue that the Epstein Declaration should be considered because the two declarations submitted by Doreen Griffith on behalf of SS Japan address the same issues.  This ignores the key difference between Ms. Griffith and Mr. Epstein.  Ms. Griffith is a percipient witness – she was directly

and personally involved with the preparation of each of the tax returns at issue in the Motion.  *See* 2nd Declaration of Doreen Griffith, filed November 9, 2007, at ¶ 1.  She is not being offered as a retained tax or accounting expert.  Rather, her declarations go to the intent of SS Japan.

To the extent Ms. Griffith's declarations address tax law and regulations at all, she is merely explaining why she prepared the forms in the way that she did.  Unlike Mr. Epstein, she nowhere states or implies that her understanding of these laws or regulations is correct and should be adopted by the Court.  The fact that Ms. Griffith offers useful, admissible factual evidence bearing on the real issue – SS Japan's intent – to this Court in no way means that Mr. Epstein's opinion testimony on the same topics is useful or admissible.

**D. Mr. Epstein's Discussion of Net Operating Losses Raises New Issues and Should be Disregarded.**

The NOL argument supported by the Epstein Declaration is new.  The KG Parties claim that the NOL argument was merely offered to rebut SS Japan's argument that the debt was not

cancelled. Opp. at 11. They also admit that they knew of the NOL issue at the time they filed the Motion, but suggest that they chose to omit it because it was "cumulative." *Id.* at 14. Finally, they claim that "compelling evidence" to support this argument was first produced on the day they filed the Motion. *Id.* at 13.

The KG Parties' justifications for raising the NOL argument for the first time in their reply memorandum are transparently flimsy. It was obviously foreseeable that SS Japan would oppose the Motion by arguing that the intercompany debt was not cancelled. This could not have come as a surprise to the KG Parties. SS Japan's opposition does not mention the NOLs. The NOL argument is not being offered to rebut any specific evidence offered by SS Japan – rather, as the KG Parties admit, it is merely "cumulative" of the arguments in the Motion.

Furthermore, the KG Parties admit that they knew of the NOL argument at the time of the Motion but chose to omit it. Opp. at 14. Even if additional evidence supporting that argument was produced too late to be incorporated into the Motion, the KG Parties could have simply amended the Motion or withdrawn the Motion

and filed a new one. Nothing required the KG Parties to file their Motion when they did or to stand on a motion filed five months before the hearing date. Furthermore, the purportedly new evidence was produced in response to the KG Parties' subpoena. They were aware the subpoena was outstanding at the time they filed the Motion.

By the KG Parties' own admission, they waited until the eve of the hearing in October to raise an argument that they were aware of in May when they filed the Motion. This can only be described as sand bagging.

**III.  CONCLUSION**

For the foregoing reasons, this Court should strike Mr. Epstein's declaration.

DATED:   Honolulu, Hawai`i, November 15, 2007.

/s/ Jason H. Kim
PAUL ALSTON
BRUCE H. WAKUZAWA
GLENN T. MELCHINGER
JASON H. KIM
Attorneys for Plaintiff
and Third-Party Defendants
the Sports Shinko Companies