IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>QK HOTEL, LLC, a Hawai'i limited liability company, et al.,<br><br>　　　　Defendants,<br><br>　　and<br><br>FRANKLIN K. MUKAI,<br><br>　　　　Third-Party<br>　　　　Plaintiff,<br><br>　　vs.<br><br>SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, et al.,<br><br>　　　　Third-Party<br>　　　　Defendants. | CIVIL NO. CV 04-00124<br>　　　ACK/BMK<br><br>CONSOLIDATED CASES<br><br>**DECLARATION OF TSUGIO FUKUDA;**<br>**EXHIBIT "T-1"** |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>PUKALANI GOLF CLUB, LLC, a Hawai'i limited liability company, et al.,<br><br>　　　　Defendants,<br><br>　　and<br><br>FRANKLIN K. MUKAI,<br><br>　　　　Third-Party | CIVIL NO. CV 04-00125<br>　　　ACK/BMK |

EXHIBIT 4

|  |  |
|---|---|
| Plaintiff, )<br>)<br>vs. )<br>)<br>SPORTS SHINKO CO., LTD., )<br>a Japan corporation, et al., )<br>)<br>Third-Party )<br>Defendants. )<br>_____) | |
| SPORTS SHINKO (USA) CO., LTD, a )<br>Delaware corporation, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KIAHUNA GOLF CLUB, LLC, )<br>a Hawai'i limited liability )<br>company, et al., )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>FRANKLIN K. MUKAI, )<br>)<br>Third-Party )<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SPORTS SHINKO CO., LTD., )<br>a Japan corporation, et al., )<br>)<br>Third-Party )<br>Defendants. )<br>_____) | CIVIL NO. CV 04-00126<br>ACK/BMK |
| SPORTS SHINKO CO., LTD., a )<br>Japanese corporation, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>OR HOTEL, LLC, a Hawai'i )<br>limited liability company, )<br>et al., )<br>)<br>Defendants, ) | CIVIL NO. CV 04-00127<br>ACK/BMK |

```
                              )
     and                      )
                              )
FRANKLIN K. MUKAI,            )
                              )
         Third-Party          )
         Plaintiff,           )
                              )
     vs.                      )
                              )
SPORTS SHINKO (USA) CO., LTD.,)
a Delaware corporation, et al.,)
                              )
         Third-Party          )
         Defendants.          )
_____)
                              )
SPORTS SHINKO (USA) CO., LTD.,)   CIVIL NO. CV 04-00128
a Delaware corporation,       )             ACK/BMK
                              )
         Plaintiff,           )
                              )
     vs.                      )
                              )
MILILANI GOLF CLUB, LLC,      )
a Hawai`i limited liability   )
company, et al.,              )
                              )
         Defendants,          )
                              )
     and                      )
                              )
FRANKLIN K. MUKAI,            )
                              )
         Third-Party          )
         Plaintiff,           )
                              )
     vs.                      )
                              )
SPORTS SHINKO CO., LTD.,      )
a Japan corporation, et al.,  )
                              )
         Third-Party          )
         Defendants.          )
_____)
```

## DECLARATION OF TSUGIO FUKUDA

I, TSUGIO FUKUDA, being duly sworn on oath, declare as follows:

1. I make this Declaration based on personal knowledge and I am competent to testify to the matters set forth in this Declaration.

2. I am a former officer and director of various Sports Shinko companies. Specifically, until February, 2002, and for at many years prior, I was an officer and director as follows:

| Name of Entity: | Title: |
|---|---|
| Sports Shinko Co., Ltd., a Japan corporation ("SS-Japan") | Director |
| Sports Shinko (USA) Co., Ltd., a Delaware corporation ("SS USA") | Director |
| Sports Shinko Resort Hotel Corporation, a Hawaii corporation ("SSRHC") | Secretary / Treasurer / Director |
| Sports Shinko (Hawaii) Co., Ltd., a Hawaii corporation ("SSH") | Secretary / Treasurer / Director |
| Sports Shinko (Kauai) Co., Ltd., a Hawaii corporation ("SSK") | Secretary / Treasurer |
| Sports Shinko (Mililani) Co., Ltd., a Hawaii corporation ("SSM") | Secretary / Treasurer |
| Sports Shinko (Pukalani) Co., Ltd., a Hawaii corporation ("SSP") | Secretary / Treasurer / Director |
| Sports Shinko (Waikiki) Corporation, a Hawaii corporation ("SSW") | Secretary / Treasurer / Director |
| Ocean Resort Hotel Corporation, a Hawaii corporation ("ORHC") | Secretary / Treasurer / Director |

| | |
|---|---|
| Pukalani STP Co., Ltd., a Hawaii corporation ("STP") | Secretary / Treasurer / Director |
| Sure Transportation, Inc., a Hawaii corporation | Secretary / Treasurer |

3. I graduated from Gakushuuin University in Tokyo, Japan in 1957. I speak and read English and Japanese fluently.

4. Prior to joining Sports Shinko ("SS"), I worked for approximately 31 years on accounting and financial issues for Nissho Iwai, a major Japan trading company. My work for Nissho Iwai included about eleven (11) years working in Nissho Iwai's New York office. I also worked in Australia for approximately five (5) years for Nissho Iwai on various projects. I was General Manager of Accounting and Finance in Nissho Iwai's Australia affiliate, Brown Coal Liquefaction (Victoria) Pty. Ltd.

5. The SS group hired me around May, 1988. In brief, SS hired me because of my background in dealing with real property issues, dealing with U.S. attorneys and legal issues, and my extensive accounting and financial experience from my work for and experience at Nissho Iwai.

6. At SS, in late 1988, I became the General Manager of SS-Japan's International Business Department (Kokusai Jigyoubu) (hereinafter, the "IBD"). The IBD, headquartered in Tokyo, Japan, supervised and handled all aspects of SS's overseas

2

operations and properties, including SS's properties and entities in the United States (including Florida, California, and Hawai'i and Europe (Germany and France)). The IBD operated under the supervision and direction of Mr. Toshio Kinoshita, the President and Representative Director of SS-Japan.

7. As part of my work in the IBD, I was involved in, among other things: (1) working with SS's overseas CPAs in preparing consolidated financial statements for SS USA and its subsidiaries, including the SS Hawai'i subsidiaries; (2) communicating with the SS Financial Department in the Osaka Head Office regarding intercompany debt issues; and (3) preparing monthly reports regarding the operations of the SS overseas properties for the Osaka Office's Financial Department. In addition, the IBD and I would help prepare reports regarding intercompany debt for SS-Japan's Japan lenders. I also handled other aspects of SS's overseas properties and operations.

8. Four other people worked with me in the IBD when I joined, including Mr. Katsuhei Kubo and Mr. M. Wakamori, who were both managing directors of SS-Japan. Eventually, in 1992 or so I took over management of the IBD.

9. I supervised and handled the financial issues and intercompany loan balances related to the SS overseas properties as part of my work with the IBD. I also handled acquisition

3

projects and sale of the SS assets/resort properties. Once a year, the IBD compiled a list of the intercompany loan balances, including principal and interest. We reconciled those lists against the records in the Osaka Financial Department, which handled issues regarding the debts owed to SS-Japan's Japan lenders, and also the records of the SS Accounting Department, which tracked the intercompany loan balances. The IBD would then check these lists of SS intercompany loans against the consolidated financial statements for the overseas subsidiaries prepared by SS's overseas CPAs. The lists of intercompany loan balances would also be provided to SS-Japan's Japan lenders at their request. SS-Japan's Japan lenders requested periodic reports on the SS intercompany loan balances.

10. I supervised the restructuring of the SS intercompany debt to its Hawai`i subsidiaries in the early 1990's. Many SS intercompany loans had originally been set up as Original Issue Discount debt, which created many accounting difficulties. We restructured the SS intercompany debt to simplify recordkeeping regarding interest income.

11. SS acquired its overseas properties using the following basic structure: SS-Japan obtained financing from Japan lenders and, in turn, loaned the funds to SS's overseas subsidiaries, which acquired the resort properties in Hawaii,

4

California, Florida, and Europe. In effect, SS-Japan passed the loan proceeds from the Japan lenders directly to its local subsidiaries, which acquired the assets. SS-Japan loaned the subsidiaries the funds necessary to purchase and operate the overseas properties, and the loans were treated and documented as intercompany debt.

12. SS's goal was for the local subsidiaries that had acquired overseas resort properties was to repay the intercompany loans from profits from their overseas operations. Then SS USA and SS-Japan would repay the Japan lenders' loans.

13. A prime reason the for this structure of loans to SS-Japan and SS-Japan intercompany loans to overseas subsidiaries Japan's Foreign Exchange and Foreign Trade Control Act (the "FECA"). The FECA gave Japan Ministries direct oversight into investments in overseas properties and lending to overseas entities. In my experience, the FECA required Japan banks to reports to the Ministries and obtain licenses in some cases, for transactions involving overseas lending and assets. Even though it was not a bank, SS-Japan had to make certain filings to the Ministry of Finance of Japan ("MOF") regarding its overseas intercompany loans. Also, loans made overseas were initially restricted to loans to SS USA, as it was a company directly owned by SS-Japan. Japan banks had heavy reporting burdens associated

5

with lending directly to the SS subsidiaries under Japan law, and so SS structured intercompany loans in order to pass the funds from the Japan lenders to local SS subsidiaries which would acquire the resort properties.

14. Japan banks with overseas branches could and did lend directly to SS subsidiaries and take securities. For example, the Long Term Credit Bank of Japan ("LTCB") closed out a loan that its U.S. LTCB branch had made directly to Sports Shinko (Florida), Co. Ltd. ("SS-Fla."). That loan was secured by a mortgage on SS Fla.'s resort property. LTCB closed out the loan by having its Japan bank branch loan to SS-Japan an amount sufficient for payoff of the SS-Fla. loan. SS-Japan then loaned the LTCB loan proceeds down a chain of subsidiaries back to SS-Florida, which in turn paid off the LTCB branch loan to the U.S. LTCB branch. The end result is that the LTCB converted its secured, direct loan to an SS subsidiary into intercorporate debt.

15. Attached hereto as Exhibit "T-1" (Bates No. 108 1530 -1531) is a true and correct copy of a sample Notification Concerning Monetary Loan Contract Related to Overseas Direct Capital Investments, bearing the SS-Japan corporate seal, which SS-Japan submitted to the MOF as part of its FECA reporting requirements. The attached Notification concerns notification of

6

a 10 billion yen loan to Sports Shinko (Waikiki) Corporation and sets forth the loan terms.

16. If the funds that SS loaned to its overseas subsidiaries had been structured as capital investment, SS would have had burdensome tax consequences when repaying funds to SS-Japan to repay its debt to its Japan lenders.

17. The intercompany debts were not forgiven. Forgiving the debt would have caused the subsidiaries to recognize the forgiven debt as income. Instead, the local subsidiaries paid down the loans when they had ready funds.

18. Another business reason that the funding of SS's property acquisitions were structured as intercompany loans is for tax reasons.

19. Certain SS-Japan intercompany loans to SS's overseas subsidiaries were capitalized (as to each subsidiary) in order to prevent adverse tax results to SS-Japan in Japan, and maintain proper debt to equity ratios.

20. The Hawai'i CPAs (Grant Thornton in particular) kept accurate records of the amounts of SS's intercompany debt on the SS financial statements they prepared. The IBD and I reconciled the intercompany notes and SS records of intercompany debt balances with SS's CPAs each year.

21. SS-Japan was in severe financial crisis by

7

January, 2000, and was having problems servicing its debt. By this time, a majority of its debt had been assigned to the Resolution and Collection Corporation ("RCC"). By this time, the RCC and SS-Japan's lenders had also told SS-Japan that legal reorganization was a step they may have to take.

22. Despite my obligations as General Manager of the IBD, I had little to do with the decision to sell the Hawaii properties, was not invited to meet with the KG representatives from Hawai'i, and President Toshio Kinoshita and Vice President Satoshi Kinoshita handled most of that transaction alone, without consulting me or others.

23. Prior to its filing its reorganization proceeding on January 28, 2002, RCC advised SS-Japan that the RCC planned to file involuntary reorganization proceedings against SS-Japan in January, 2002. Toshio Kinoshita held a meeting of the SS-Japan directors had a meeting prior to the RCC's filing of the reorganization proceeding and were advised of the RCC's plans.

I declare under penalty of perjury under the Laws of the United States of America that the foregoing is true and correct.

EXECUTED ON: Tokyo, Japan, February 17, 2006.

TSUGIO FUKUDA

8