## STOCK OPTION AGREEMENT

THIS STOCK OPTION AGREEMENT (the "Agreement") is made and entered into this 10th day of September, 2000, by and between YASUO NISHIDA ("Optionor"), and SATOSHI KINOSHITA, TAKESHI KINOSHITA and TOSHIYA KINOSHITA ("Optionee").

### WITNESSETH:

WHEREAS, RESORT MANAGEMENT SERVICES (HAWAII), INC., a Hawaii corporation (the "Corporation"), is authorized to issue One Thousand (1,000) shares of common stock with no par value;

WHEREAS, the Corporation has issued One Thousand (1,000) shares of common stock with no par value;

WHEREAS, Optionor is the legal, beneficial and record owner of One Thousand (1,000), as evidenced by stock certificate no. 2 (the "Shares"), which shares constitute all of the issued and outstanding shares of the Corporation;

WHEREAS, Optionor, as the sole shareholder and the sole director of the Corporation, represents that it will not increase the capitalization of the Corporation during the term of this Agreement; and

WHEREAS, Optionor desires to grant to Optionee an option to purchase the Shares upon the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and promises hereinafter contained, the parties hereto agree as follows.

1.  Option. In consideration of the sum of TEN DOLLARS ($10.00), the receipt of which is hereby acknowledged, Optionor hereby grants to Optionee the exclusive and irrevocable option to purchase the Shares (the "Option") owned by Optionor upon the terms and conditions set forth herein.

2.  Term of Option. The term the Option shall commence on 10th day of September, 2000 and shall expire on 9th day of September, 2005; provided, however, that in the event that Optionee does not exercise the Option within said five (5) year period, this Agreement shall automatically be extended for an additional five (5) year period.

1



001 1581



3. **Exercise of Option.** The Option may be exercised by any of the following Optionees, Satoshi Kinoshita, Takeshi Kinoshita or Toshiya Kinoshita by serving written notice thereof upon Optionor at any time during the term of this Agreement, but no later than the expiration of the term of the Option as set forth in paragraph 2, above.

4. **Purchase Price, Closing.** Within 30 days of Optionee's exercise of the Option, Optionee shall (a) pay to Optionor One Dollar and 50/100 ($1.50) per share for a total amount of ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($1,500.00) at the office of the Corporation; and (b) duly endorse stock certificate no. 2 to any of the Optionee and (c) deliver the stock certificate no. 2 to Optionee at the office of the Corporation ("Closing").

5. **Security Interest.** Concurrent with the execution of this Agreement, Optionor shall deliver to Optionee, the original stock certificate no. 2 of the Corporation, to secure Optionor's performance under this Agreement. In the event that Optionor shall fail to perform under the terms of this Agreement, Optionee shall have all rights and remedies to enforce the terms of this Agreement against Optionor. Furthermore, Optionor hereby appoints Optionee as its attorney-in-fact to execute, deliver and do any and all acts necessary to consummate the Closing of the transfer of Shares under the terms of this Agreement.

6. **Representations of Optionor.** Optionor represents and warrants as follows:

   (a) Optionor is the legal, beneficial and record owner of the Shares, free and clear of any and all security interests, pledges, mortgages, conditional sales or other title retention agreements, encumbrances, liens, claims, rights, covenants, restrictions, options or charges of any kind or nature whatsoever (collectively, "Liens");

   (b) During the term of this Agreement, Optionor shall have valid title to the Shares, free and clear of any Liens, and will transfer the Shares upon exercise of the Option to Optionee free and clear of any Liens.

   (c) Optionor has full power and authority to execute and deliver this Agreement, and this Agreement is a valid and binding agreement enforceable against the Optionor according with its terms;

   (d) Prior to Optionee's exercise of the Option, Optionor shall not sell, assign, transfer, pledge, hypothecate, or otherwise encumber any of the Shares;

   (e) The Shares represent all of the issued and outstanding shares of the Corporation.

   (f) Prior to the exercise of the Option, Optionor, as the sole shareholder and sole director of the Corporation, shall not increase the capitalization of the Corporation or permit any additional shares to be issued; and

2

001 1582

(g)     Neither the execution of this Agreement nor the sale of the Shares will constitute a violation or conflict within, or default under, any contract, commitment, agreement, understanding, or arrangement to which Optionor is a party or by which Optionor is bound or of any law, decree or judgment.

7      Indemnification. Optionor shall indemnify and hold harmless Optionee from and against any losses (including reasonable attorneys' fees), whether or not involving third-party claims, arising directly or indirectly from or in connection with (a) the transfer of Shares pursuant to this Agreement or (b) the breach by Optionor of any representation or warranty made in paragraph 6, above. This provision shall survive termination of this Agreement.

8.     Endorsement on Certificate. During the term of this Agreement, all stock certificates of the Corporation shall bear an endorsement as follows:

> "This certificate is held subject to the terms and conditions of a Stock Option Agreement, dated 10th day of September, 2000, a copy of which is on file at the principal office of RESORT MANAGEMENT SERVICES (HAWAII), INC. in Honolulu, Hawaii."

9.     Notice.

Any notice required or permitted hereunder shall be in writing and shall be deemed delivered if given by personal delivery or two (2) days after deposit in the U.S. mail, by certified or registered mail, postage prepaid, return receipt requested, addressed to the party to receive same at the address of such party shown below or such other address as such party may, by notice, hereafter furnish to the other:

"Optionee":

SATOSHI KINOSHITA
1139 Makaiwa Street, Honolulu, Hawaii 96816

TAKESHI KINOSHITA
2-26-605, Ketsuzencho, Nishinomiya-shi,
Hyogoken 662-0037

TOSHIYA KINOSHITA
1-7-2-606, Mikatadai, Nishi-ku, Kobeshi
Hyogoken 651-2277

3

001 1583

"Optionor":    YASUO NISHIDA
Resort Management Services (Hawaii), Inc.
Suite 300A
Ocean Resort Hotel Waikiki
175 Paoakalani Street, Honolulu, Hawaii 96815

10.   Miscellaneous.

    10.1   This Agreement constitutes the entire agreement between the parties hereto relative to the subject matter hereof, and all prior negotiations, conversations, representations, agreements and understandings are specifically merged herein and superseded hereby. This Agreement may be modified only by a written instrument executed by the parties hereto.

    10.2   The terms and provisions of this Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors, representatives and assigns.

    10.3   Time is of the essence of this Agreement.

    10.4   This Agreement shall be construed in accordance with and governed by the laws of the State of Hawaii.

    10.5   The paragraph headings used in this Agreement have been inserted for convenience and reference only and should not be construed to limit or restrict the terms and provisions, covenants and conditions hereof.

    10.6   If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such terms or provision to persons or circumstances other than those as to which it is held invalid or enforceable, shall not be affected thereby and each remaining term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

    10.7   This Agreement may be executed by the parties hereto in two or more

4

001 1584

10.7  This Agreement may be executed by the parties hereto in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument.

10.8  All representations, warranties, agreements, promises and covenants specifically set forth in this Agreement shall survive the execution of this Agreement, any exercise of the Option or any Closing.

10.9  Each party shall, upon the request of the other party, promptly execute and deliver all additional documents reasonably deemed by the requesting party to be necessary, appropriate or desirable to complete and evidence the sale, assignment and transfer of the Shares pursuant to this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this agreement the day and year first above written.

"Optionor"

_____
Yasuo Nishida

"Optionee"

_____
Satoshi Kinoshita

_____
Takeshi Kinoshita

_____
Toshiya Kinoshita

5

001 1585

***ATTORNEY-CLIENT PRIVILEGE***                    96

```
 1              IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
 2                            STATE OF HAWAII
 3     ---------------------------------------------
 4     SPORTS SHINKO (USA) CO., LTD., a Delaware
 5     Corporation; SPORTS SHINKO (MILILANI)
 6     CO., LTD., a Hawaii corporation, et al.,
 7              Plaintiff,
 8         vs.              Case No. 02-1-2766-11 (EEH)
 9     RESORT MANAGEMENT SERVICES
10     (HAWAII), INC., a Hawaii corporation,
11     YASUO NISHIDA, SATOSHI KINOSHITA, et al.
12              Defendants.
13     ---------------------------------------------
14
15              DEPOSITION OF SATOSHI KINOSHITA
16                          (Volume II)
17
18     Taken on behalf of the Plaintiff at Alston Hunt Floyd &
19     Ing, 1001 Bishop St., ASB Tower, 18th Floor, Honolulu,
20     Hawaii 96813, commencing at 9:04 a.m., Wednesday, April
21     20, 2005, pursuant to Notice.
22
23     BEFORE:   BARBARA ACOBA, CSR No. 412, RPR
24              Notary Public, State of Hawaii
25
```

RALPH ROSENBERG COURT REPORTERS
Honolulu, Hawaii  (808) 524-2090

***ATTORNEY-CLIENT PRIVILEGE***                    97

```
 1   APPEARANCES:
 2   For Plaintiff:         GLENN MELCHINGER, Esq.
 3                          ALSTON HUNT FLOYD & ING
 4                          ASB Tower
 5                          1001 Bishop St., 18th Floor
 6                          Honolulu, Hawaii 96813
 7
 8   For Defendant SATOSHI KINOSHITA:
 9                          JOHN KOMEIJI, Esq.
10                          WATANABE ING KAWASHIMA & KOMEIJI
11                          First Hawaiian Center
12                          999 Bishop St., 23rd Floor
13                          Honolulu, Hawaii 96813
14
15
16   Also Present:          STEVEN SILVER - Interpreter
17
```

RALPH ROSENBERG COURT REPORTERS
Honolulu, Hawaii  (808) 524-2090

1    A.   I don't recall.

2    Q.   And you don't recall anything about whether
3 there was an option agreement for the RMS stock?

4    A.   That's correct.

5    Q.   And do you remember that's what you reported to
6 the trustee and to Mr. Iwamura as well, that you didn't
7 remember anything about it?

8    A.   Yes.

9         MR. MELCHINGER:  Let's mark that, 28.

10        (Exhibit 28 marked for identification.)

11 BY MR. MELCHINGER:

12   Q.   Show you what's been marked Exhibit 28 to your
13 deposition.  If you can look at that and tell me whether
14 you've seen that document before.

15   A.   You were asking me whether I've seen this
16 document before?

17   Q.   Correct.

18   A.   On the fifth page of this document, there's a
19 place for the signature Satoshi Kinoshita and this
20 signature is certainly my signature.

21   Q.   On that same fifth page, do you recognize
22 Mr. Nishida's signature on that page?

23   A.   Yes.

24   Q.   Okay.  You're familiar with Mr. Nishida's
25 signature, correct, from several other agreements and

***ATTORNEY-CLIENT PRIVILEGE*** 156

```
 1   his communications within Sports Shinko, et cetera?
 2        A.   That's right.
 3        Q.   Do you recognize Takeshi Kinoshita, your
 4   brother's signature on that page as well?
 5        A.   Yes.
 6        Q.   Do you remember seeing this document before?
 7        A.   I don't recall.  Even though I did sign this
 8   document, it's likely that I probably just signed it at
 9   the instruction of the president, but I don't clearly
10   recall.
11        Q.   Okay.  So I guess you don't remember having
12   read it before you signed it either; is that right?
13        A.   That's right.
14        Q.   As you sit here and review it, do you have any
15   understanding of what this document does or what rights
16   it gives you?
17        A.   Based on what I've just read of this document,
18   it seems to be -- it seems to involve -- excuse me, it
19   seems to be an agreement regarding the assignment of
20   stock.
21        Q.   Does it allow you to, on its face, buy the
22   stock of RMS?  Assuming it's valid.
23             MR. KOMEIJI:  I want to know when you say you,
24   you as a group?  You as optionee?
25             MR. MELCHINGER:  I mean him individually.
```

***ATTORNEY-CLIENT PRIVILEGE***                     195

C E R T I F I C A T E

STATE OF HAWAII            )
CITY AND COUNTY OF HONOLULU )

I, BARBARA ACOBA, Certified Shorthand Reporter and Notary Public, State of Hawaii, do hereby certify:

That on Wednesday, April 20, 2005, at 9:04 a.m., appeared before me SATOSHI KINOSHITA, the witness whose deposition is contained herein; that prior to being examined he was by me duly sworn;

That the deposition was taken down by me in machine shorthand and was thereafter reduced to typewriting under my supervision; that the foregoing represents, to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

Dated this 30th day of April, 2005, in Honolulu, Hawaii.

BARBARA ACOBA, CSR NO. 412
Notary Public, State of Hawaii
My Commission Exp: 10-22-2008

RALPH ROSENBERG COURT REPORTERS
Honolulu, Hawaii  (808) 524-2090